**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SLUSH PUPPIE LIMITED, | ) | Case No.  1:19-cv-00189-MRB |
| | ) | |
| Plaintiff, | ) | Judge Michael R. Barrett |
| | ) | |
| vs. | ) | Magistrate Judge Bowman |
| | ) | |
| THE ICEE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

---

**MEMORANDUM IN OPPOSITION TO DEFENDANT THE ICEE COMPANY'S MOTION FOR SANCTIONS AGAINST NON-PARTIES BENESCH, FRIEDLANDER, COPLAN & ARONOFF, LLP, MARK AVSEC, ELIZABETH R. EMANUEL, MATTHEW D. GURBACH, RONALD L. HOUSE, JENNIFER M. TURK AND ERIC LARSON ZALUD**

---

Patrick Kasson (0055570) (Trial Attorney)
Steven A. Chang (0088321)
**REMINGER CO., L.P.A.**
200 Civic Center Drive, Suite 800
Columbus, Ohio 43215
(614) 228-1311 / Fax: (614) 232-2410
pkasson@reminger.com
schang@reminger.com

Robert W. Hojnoski (0070062)
Ian D. Mitchell (0090643)
**REMINGER CO., L.P.A**
525 Vine Street, Suite 1500
Cincinnati, Ohio 45202
(513) 721-1311 / Fax: (513) 721-2553
rhojnoski@reminger.com
imitchell@reminger.com

*Counsel for Non-Parties Benesch, Friedlander, Coplan & Aronoff LLP, Mark Avsec, Elizabeth R. Emanuel, Matthew D. Gurbach, Ronald L. House, Jennifer M. Turk, and Eric Larson Zalud*

**COMBINED TABLE OF CONTENTS AND
SUMMARY OF THE ARGUMENT**

**PAGE**

TABLE OF AUTHORITIES ................................................................................. vii

PRELIMINARY STATEMENT ................................................................1

I.     THE LEGAL STANDARDS....................................................................2

       A.    For Sanctions Under 28 U.S.C. § 1927, ICEE Must Prove – by Clear and
             Convincing Evidence – that the Benesch Lawyers Knew or Reasonably
             Should Have Known the Claims Were Frivolous.....................................2

       B.    For Sanctions Pursuant to Fed. R. Civ. P. 26(g) ICEE Must Prove that the
             Benesch Lawyers Interposed Objections to Harass, Cause Unnecessary
             Delay, and Increase the Cost of Litigation................................................3

       C.    For Sanctions Pursuant to the Court's Inherent Authority, ICEE Must Prove
             by Clear and Convincing Evidence that the Benesch Lawyers' Conduct was
             Motivated by Bad Faith ...........................................................................4

       D.    ICEE Cannot Meet Its Burden of Clear and Convincing Evidence Through
             Speculative Inferences .............................................................................4

II.    ARGUMENT ..........................................................................................6

       A.    ICEE's Motion for Sanctions Must Be Denied Because It Does Not Comply
             with the Sixth Circuit's Mandatory Requirements for Due Process......................6

             In order to satisfy due process, ICEE is required to identify: (1) the law under which
             sanctions are sought; (2) the "conduct alleged to be sanctionable" under that law;
             and (3) "which of the numerous attorneys involved... defendant seeks to be
             sanctioned," for that specific conduct. *Nisus Corp. v. Perma-Chink Sys.*, No. 3:03-
             CV-120, 2007 U.S. Dist. LEXIS 58363, at *10-11 (E.D. Tenn. Aug. 9, 2007)
             (summarizing cases).  Neither the Statement of Facts nor the Argument section of
             ICEE's motion provides the requisite specificity – under the three separate legal
             bases for sanctions – as to each attorney's individual liability. Because "simply
             describing the conduct is not sufficient," the Motion fails as a matter of law. *Id.*

       B.    ICEE Cannot Satisfy its Heavy Burden of Proving Sanctions are Warranted
             for the Filing of the Complaint ...............................................................8

             To satisfy its heavy burden, ICEE must prove that each individual Benesch attorney
             "[knew] or reasonably should [have known] that a claim pursued is frivolous," at

the time the lawsuit was filed. *Ridder v. City of Springfield*, 109 F.3d 288, 298 (6th Cir. 1997). The "Argument" section of ICEE's Motion conspicuously omits any argument Benesch lacked a good-faith basis to file the lawsuit. And, for good reason—at the time the Complaint was filed, Benesch had ample documentation – collateral to the 2000 Appointment – which supported its validity, including the contract itself, multiple letters between SPL and ICEE's predecessor, and a 2001 letter from a prominent British accounting firm. Accordingly, ICEE cannot demonstrate, by clear and convincing evidence, any Benesch lawyer knew or reasonably should have known the claims pursued under the 2000 Appointment were frivolous at the time the Complaint was filed.

C.     ICEE Cannot Satisfy its Burden to Prove by Clear and Convincing Evidence Sanctions Are Warranted Under 28 U.S.C. § 1927 ................................................11

     1.     Benesch Did Not Have a Duty to Correct Mr. Peters' Deposition Testimony ................................................................................................12

The Sixth Circuit has held "[a]bsent some further evidence of attorney fault, a lawyer cannot be sanctioned because a judge at some later date believes his client lacks credibility or is even lying under oath." *Silverman v. Mut. Trust Life Ins. Co. (In re Big Rapids Mall Assocs.)*, 98 F.3d 926, 932 (6th Cir. 1996). Further, under Ohio Prof. Cond. Rule 3.3 and precedent in this circuit, lawyers have an affirmative "ethical obligation to resolve any reasonable doubts concerning his client's credibility in favor of his client." *Maddox v. E.F. Hutton Mtge. Corp.*, 723 F.Supp. 1246, 1249 (M.D.Tenn. 1989). Benesch cannot be sanctioned for failing to correct alleged perjury where, as here, ICEE offers no evidence that Mr. Peters has ever admitted any document was a forgery or that he committed perjury.

     2.     Benesch's Timely Withdrawal of All Causes of Action Based on the 2000 Appointment Precludes a Finding of Vexatious Conduct.................14

Under binding Sixth Circuit precedent, attorneys cannot be sanctioned pursuant to 28 U.S.C. § 1927 merely because a claim or lawsuit was unsuccessful. *Ridder v. City of Springfield*, 109 F.3d 288, 290 (6th Cir. 1997). Here, less than two months after ICEE produced the expert report of Ms. Leonard questioning the validity of the 2000 Agreement, Benesch sought to withdraw all claims related to the Agreement to obviate the need for any motion practice. Benesch's timely withdrawal of all causes of action is not "proof" of vexatious conduct—it is conclusive evidence of Benesch's good faith conduct and candor to the Court.

     3.     Benesch Properly and Timely Withdrew the November 2008 Email Upon Concluding That It Could Not Verify its Authenticity ...................15

Neither Ohio Prof. Cond. Rule 3.3(a)(3) nor any law requires counsel to immediately accuse its own client of fraud – and notify opposing counsel and/or the court – upon determining that it cannot verify the authenticity of a document.  Where, as here, Benesch: (1) was unaware of the misspelling until late February 2020; (2) immediately withdrew the document upon concluding it could not verify its authenticity; and (3) did not use the document or submit it in any pleading to the Court, it satisfied its duty to "take reasonable measures to remedy the situation," as required by the Rule.

4.	Benesch's Efforts to Preserve and Collect the Underlying Computers Was Reasonable Under the Circumstances ............................18

There is simply no basis to sanction a law firm or its attorneys for properly notifying its client of an opposing parties' request for inspection.  ICEE's bizarre accusation that Benesch "tipped off" Mr. Peters to destroy his own computers is mere speculation, devoid of both logic and actual evidence.  Benesch cannot be blamed – let alone sanctioned – for losing something that was never in its possession, custody, or control.

5.	Benesch Did Not Knowingly Withhold the Alleged Incriminating Documents and Metadata ...........................................................................19

ICEE's accusation that Benesch knowingly withheld two "smoking-gun" documents and metadata to conceal fabricated evidence is patently false.  The actual facts reveal a benign truth – (1) the November 2008 email was produced from a hard copy binder in Benesch's file that was discovered to have additional documents that had not yet been produced; and (2) the version of the "Working History" document containing metadata was inadvertently flagged as "non-responsive" in Benesch's ESI program – EverLaw – and, therefore, was not produced initially.  Because it is well settled that inadvertence or negligence will not support a sanction under § 1927, as a matter of law, ICEE's Motion must be denied.  *Riddle v. Egensperger*, 266 F.3d 542, 553 (6th Cir. 2001).

D.	ICEE Fails to Satisfy its Burden to Demonstrate Benesch Violated the Provisions of Fed. R. Civ. P. 26(g) .......................................................................21

1.	ICEE Fails to Identify the Specific Discovery Documents and Signers Upon Which It Seeks Sanctions Pursuant to Rule 26(g) ..............21

Is well settled it ICEE's burden is to "indicate a specific discovery document that was falsely certified by [respondent] before sanctions may be imposed." *McGuire v. Metro Life Ins. Co.*, No. 12-cv-10797, 2015 U.S. Dist. LEXIS 50697, at *17 (E.D. Mich. 2015).  ICEE's Motion pursuant to Civ.R. 26(g) must be denied because it fails to identify the actual discovery

requests, and specific signers upon which it seeks sanctions, in ICEE's one paragraph Argument section of its brief.

2.    Benesch Did Not "Falsely Certify" Discovery Responses ........................23

(i)    Supplemental Productions Are Not Evidence of Rule 26(g) Violations – They Are Specifically Authorized, and Contemplated, by the Rule.............................................................23

Under Sixth Circuit law, a party "need not . . . affirm that their document searches and productions are complete without qualification and that no additional responsive documents exist." *In re Porsche Cars N. Am., Inc.*, No. 2:11-md-2233, 2012 U.S. Dist. LEXIS 136954 (S.D. Ohio Sept. 25, 2012). In fact, "the rules contemplate that responses will be supplemented where the party learns that the initial response to the request was incomplete." *JP Morgan Chase Bank, N.A. v. Winget*, E.D.Mich. No. 08-13845, 2010 U.S. Dist. LEXIS 155081, at *3 (May 21, 2010). Accordingly, Benesch's supplemental productions cannot and do not warrant sanctions pursuant to Fed. R. Civ. Proc. 26(g).

(ii)    Rule 26(g) Does Not Require that Benesch Certify the Ultimate Factual Accuracy or Truthfulness of its Client's Factual Responses ..........................................................24

Rule 26(g) is clear that an attorney "may rely on assertions by the client," in fulfilling its duty to make a reasonable inquiry, and "does not require the signing attorney to certify the truthfulness of the client's factual responses to a discovery request." Fed. R. Civ. Proc. 26(g), Committee Notes. As such, Benesch cannot be sanctioned for signing discovery responses stating that SPL can neither "admit or deny" the 2000 Appointment was an alleged forgery.

(iii)    Rule 26(g) Does Not Require That Benesch Conduct Digital Forensic Investigations of its Documents to Satisfy the "Reasonable Inquiry" Standard.....................................................25

Federal courts that have routinely declined to impose sanctions based on a lawyer's failure to identify unauthentic documents through a forensic investigation of its metadata. *Lawrence v. City of New York* No. 15cv8947, 2018 U.S. Dist. LEXIS 126010, at *12 (S.D.N.Y. 2018); *Bright v. First Senior Fin. Group*, No. 12-cv-360, 2013 U.S. Dist. LEXIS 89092 (E.D. Pa. 2013); *Davis v. Crescent Electric Co.*, No. 12-5008, 2016 U.S. Dist. LEXIS 53241, at *13-19 (D.S.D. Apr. 21, 2016). This Court should decline to be the first to do so in this circuit – there is simply no basis to judge Benesch's

actions or inaction on 20/20 hindsight, which is contrary to binding Sixth Circuit precedent. *Merritt v. Int'l Ass'n of Machinists and Aerospace Workers*, 613 F.3d 609, 626 (6th Cir. 2010).

(iv)    Benesch Satisfied Its Obligation to Preserve Evidence and Was Not Required to Physically Collect Laptops, Computers, and Other Physical Evidence at the Inception of the Case ............................27

Benesch was not obligated to collect the original laptops and computers of Mr. Peters at the inception of this lawsuit; to the contrary, "[a] party to civil litigation has a duty to preserve relevant information . . . when that party 'has notice that the evidence is relevant to litigation or . . . should have known that the evidence may be relevant to future litigation.'" *John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008). Benesch properly and timely requested the original computers upon service of ICEE's request for inspection.

E.    ICEE Fails to Satisfy its Burden to Prove by Clear and Convincing Evidence Sanctions Are Warranted Under This Court's Inherent Authority ........................28

A court may assess sanctions under its inherent powers only when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, or when the conduct is "tantamount to bad faith." *Metz v. Unizan Bank*, 655 F.3d 485, 489 (6th Cir. 2011). There is simply no evidence – let alone clear and convincing evidence – that any attorney was "motivated by bad faith" in this lawsuit. ICEE's Motion must be denied.

III.    CONCLUSION ...................................................................................................29

CERTIFICATE OF SERVICE ......................................................................................30

## <u>TABLE OF AUTHORITIES</u>

<u>PAGE</u>

**Cases**

*Allison v. Wise*, No. 2:08-cv-157, 2009 U.S. Dist. LEXIS 152752 (S.D. Ohio Dec. 23, 2009)... 24

*Avandia Marketing, Sales Practices & Prods. Liab. Litigation*, 469 F. Supp. 3d 357 (E.D.Pa. 2020)........................................................................................................................................ 3

*BAC Home Loans Servicing, L.P. v. Wells Fargo, N.A.*, No. 11-10327, 2013 U.S. Dist. LEXIS 37888 (E.D. Mich. Mar. 19, 2013) ....................................................................................... 4, 11

*BDT Prods. v. Lexmark Int'l, Inc.*, 602 F.3d 742 (6th Cir. 2010).................................................. 7

*Bradford Co. v. Afco Mfg.,* No. 1:05-cv-449, 2007 U.S. Dist. LEXIS 31975 (S.D. Ohio 2007) ... 4

*Brenay v. Schartow*, 709 F. App'x 331 (6th Cir. 2017).................................................................. 6

*Bright v. First Senior Fin. Group*, No. 12-cv-360, 2013 U.S. Dist. LEXIS 89092 (E.D. Pa. 2013) ...................................................................................................................................... v, 26

*Cook v. American S.S. Co.*, 134 F.3d 771 (6th Cir. 1998) ............................................................ 3

*Davis v. Crescent Electric Co.*, No. 12-5008, 2016 U.S. Dist. LEXIS 53241 (D.S.D. Apr. 21, 2016)....................................................................................................................................... vi, 26

*DiLuzio v. Vill. of Yorkville*, No. 2:11-cv-1102, 2016 U.S. Dist. LEXIS 177376 (S.D. Ohio Dec. 22, 2016)..................................................................................................................................... 4

*ECIMOS, LLC v. Nortek Global HVAC, LLC*, 736 Fed. Appx. 577 (6th Cir. 2018)................. 6, 7

*First Bank v. Hartford Underwriters Ins. Co.*, 307 F.3d 501 (6th Cir. 2002) ............................. 28

*Gibson v. Solideal USA, Inc.*, 489 Fed. Appx. 24 (6th Cir. 2012)............................................... 15

*Hewlett Packard Co. v. Papst Licensing GmbH & Co. KG*, 791 F.Supp.2d 175 (D.D.C. 2011).. 3, 15

*J.T. Shannon Lumber Co. v. Barrett*, No. 07-2847-Ml/P, 2011 U.S. Dist. LEXIS 30916 (W.D.Tenn. Feb. 9, 2011) ......................................................................................................... 13

*John B. v. Goetz*, 531 F.3d 448 (6th Cir. 2008) .................................................................... vi, 27

*JP Morgan Chase Bank, N.A. v. Winget*, E.D.Mich. No. 08-13845, 2010 U.S. Dist. LEXIS 155081 (May 21, 2010) ......................................................................................................... v, 24

*Laukus v. Rio Brands, Inc.*, 292 F.R.D. 485 (N.D. Ohio 2013).................................................. 14

*Lawrence v. City of New York* No. 15cv8947, 2018 U.S. Dist. LEXIS 126010, at *12 (S.D.N.Y. 2018)....................................................................................................................................... v, 26

*Lawyers Title Ins. Corp. v. Doubletree Partners, L.P.*, 739 F.3d 848 (5th Cir. 2014) ................. 3

*Maddox v. E.F. Hutton Mtge. Corp.*, 723 F.Supp. 1246 (M.D.Tenn. 1989) .................... iii, 13, 17

*McGuire v. Metro Life Ins. Co.*, No. 12-cv-10797, 2015 U.S. Dist. LEXIS 50697 (E.D. Mich. 2015)..................................................................................................................................... iv, 22, 23

*Merritt v. Int'l Ass'n of Machinists and Aerospace Workers*, 613 F.3d 609 (6th Cir. 2010) .. vi, 25, 27

*Metz v. Unizan Bank*, 655 F.3d 485 (6th Cir. 2011) ................................................................ vi, 4

*Milner v. Biggs*, 566 Fed. Appx. 410 (6th Cir. 2014) ................................................. 14

*Mueller Cooper Tube Prods. v. Pa. Manufacturers Ass'n,* 254 Fed. Appx. 491 (6th Cir. 2007)....5

*N.T. v. Children's Hosp. Med. Ctr.*, No. 1:13CV230, 2017 U.S. Dist. LEXIS 222936 (S.D. Ohio Sept. 27, 2017) .................................................................................................................. 3

*Nemir v. Mitsubishi Motors Corp.*, 228 F.R.D. 573 (E.D.Mich. 2005) ............................. 23

*Nisus Corp. v. Perma-Chink Sys.*, No. 3:03-CV-120, 2007 U.S. Dist. LEXIS 58363 (E.D. Tenn. Aug. 9, 2007) ............................................................................................................ ii, 6, 8

*Porsche Cars N. Am., Inc.*, No. 2:11-md-2233, 2012 U.S. Dist. LEXIS 136954 (S.D. Ohio Sept. 25, 2012) ............................................................................................................... v, 23

*Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642 (6th Cir. 2006)........ 12

*Rentz v. Dynasty Apparel Indus., Inc.*, 556 F.3d 389 (6th Cir. 2009) ...................................... 3, 11

*Ridder v. City of Springfield*, 109 F.3d 288 (6th Cir. 1997) ................................................ iii, 3, 14

*Riddle v. Egensperger*, 266 F.3d 542 (6th Cir. 2001) ..................................................... iv, 3, 21

*Sanborn v. Parker,* 629 F.3d 554, 579 (6th Cir. 2010) ......................................................... 6, 22

*Shafii v. British Airways*, PLC, 83 F.3d 566 (2d Cir. 1996) ........................................................ 3

*Silverman v. Mut. Trust Life Ins. Co. (In re Big Rapids Mall Assocs.)*, 98 F.3d 926 (6th Cir. 1996) .................................................................................................................. iii, 13, 14, 17

*St. Mary's v. Oglays Cty. Bd. of Commrs.,* 115 Ohio St. 3d 387 (2007) ....................................... 9

*Suntrust Mortg. Inc. v. AIG Guar. Corp.*, No. 3:09CV529, 2011 U.S. Dist. LEXIS 33118 (E.D. Va. Mar. 29, 2011) .................................................................................................. 26, 27

*Suntrust Mortg., Inc. v. United Guar. Residential Ins. Co. of N. Carolina*, 508 F. App'x 243 (4th Cir. 2013) ................................................................................................................... 26

*Ted Lapidus, S.A. v. Vann*, 112 F.3d 91 (2d Cir. 1997) ........................................................... 6

*United States ex rel. Scott v. Humana, Inc.*, No. 3:18-CV-61-GNS-CHL, 2019 U.S. Dist. LEXIS 223916 (W.D.Ky. Sep. 25, 2019) .............................................................................. 23

*Winter Ents., LLC v. W. Bend Mut. Ins. Co.*, No. 1:17-cv-360, 2019 U.S. Dist. LEXIS 125841 (S.D. Ohio July 29, 2019) ........................................................................................... 23

**Statutes**

28 U.S.C. § 1927 ...................................................................................................... passim

**Rules**

Fed. R. Civ. Proc. 26 ................................................................................................ passim

Ohio Prof. Cond. Rule 3.3 ................................................................. iii, 12, 13, 14, 17, 18

## <u>MEMORANDUM</u>

Some see ghosts everywhere. ICEE sees sinister, sanctionable conduct from Benesch,[1] everywhere. The Motion for Sanctions presents a grand conspiracy based on nothing but sweeping and unfounded accusations. ICEE claims **six** attorneys[2] "aided and abetted . . . criminality" and "committed fraud on the Court." But drawing sinister inferences without citation, everywhere, does not meet ICEE's clear and convincing burden to establish this alleged criminality and fraud. And ICEE, tellingly, fails to mention the overwhelming evidence and case law demonstrating Benesch's good faith. Rather, ICEE only presents a one-sided version of every event, such as omitting that it appears ICEE's counsel had the "Wendsday" email *for months* and never caught the misspelling, while claiming Benesch acted "criminally" because it did not discover the misspelling earlier.

Regardless, ICEE's Motion should be denied for several independent reasons. First, the Motion does not even come close to meeting the Sixth Circuit's due process requirements. Second, ICEE never mentions the mountain of evidence demonstrating Benesch had a good-faith belief the 2000 Appointment was valid. And with respect to ICEE's call for 28 U.S.C. § 1927 sanctions, the Motion ignores:

1. Benesch had no duty to correct Mr. Peters' deposition testimony;

2. Benesch timely withdrew all causes of action based upon the 2000 Appointment;

3. Benesch timely withdrew the 2008 email, *never relied* upon it in the case, and – at the same time – advised ICEE's counsel that it would not be used in the case;

---

[1] The lawyers who are subject to the Motion for Sanctions, for convenience sake, may individually or collectively be referred to as "Benesch" throughout this Memorandum. As each lawyer had differing roles and was involved in the case at differing times, the use of the term "Benesch" does not imply that each lawyer was involved with a particular issue being discussed in this Memorandum when the term "Benesch" is used.

[2] And presumably the U.K. lawyers who referred the case to Benesch.

    4.   Benesch made reasonable efforts to preserve the laptops and other hardware for forensic imaging; and

    5.   Benesch did not knowingly withhold alleged incriminating metadata in an effort to sabotage ICEE.

ICEE's request for sanctions under Fed. R. Civ. P. 26(g) is likewise flawed.  Case law is uniform that Benesch was not required to conduct a digital forensic examination of any documents prior to producing them.  Indeed, Benesch had no reason to believe the 2000 Appointment was anything but an enforceable contract.  Finally, ICEE's "inherent authority" request for sanctions fails because it has not made any attempt – nor can it – to offer evidence meeting that incredibly-high standard.

ICEE's Motion speculates a sinister motive in every Benesch act but curiously does not mention any of the evidence known to ICEE that Benesch cites below. This Court must consider the frequency with which this occurs in ICEE's Motion.  As hyperbole and sinister conjecture are all ICEE brings to this Court, the Motion should be denied.

## IV.    THE LEGAL STANDARDS

### A.    For Sanctions Under 28 U.S.C. § 1927, ICEE Must Prove – by Clear and Convincing Evidence – that the Benesch Lawyers Knew or Reasonably Should Have Known the Claims Were Frivolous.

Section 1927 provides, in relevant part:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

28 U.S.C. § 1927.  In order to issue sanctions under Section 1927, this Court must find "some conduct on the part of the subject attorney that trial judges, applying the collective wisdom of their experience on the bench, could agree falls short of the obligations owed by a member of the bar to

the court and which, as a result, causes additional expense to the opposing party." *Rentz v. Dynasty Apparel Indus., Inc.*, 556 F.3d 389, 396 (6th Cir. 2009). The proper inquiry is whether "an attorney knows or reasonably should know that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of non-frivolous claims." *Id.* (quoting *Ridder v. City of Springfield*, 109 F.3d 288, 298 (6th Cir. 1997)).

Notably, "[t]he mere finding that an attorney failed to undertake a reasonable inquiry into the basis of a claim does not automatically imply that the proceedings were intentionally or unreasonably multiplied." *Riddle v. Egensperger*, 266 F.3d 542, 553 (6th Cir. 2001). Further, "inadvertence or negligence that frustrates the trial judge will not support a sanction under § 1927." *Id.* (citation omitted).

ICEE bears the burden of proof. *Cook v. American S.S. Co.*, 134 F.3d 771, 776 (6th Cir. 1998). Although the Sixth Circuit has not yet decided the issue, other federal courts have routinely held that such proof must be by "clear and convincing evidence." *Hewlett Packard Co. v. Papst Licensing GmbH & Co. KG*, 791 F.Supp.2d 175, 184 (D.D.C. 2011); *Shafii v. British Airways, PLC*, 83 F.3d 566, 571 (2d Cir. 1996); *In re Avandia Marketing, Sales Practices & Prods. Liab. Litigation*, 469 F. Supp. 3d 357, 360 (E.D.Pa. 2020); *Lawyers Title Ins. Corp. v. Doubletree Partners, L.P.*, 739 F.3d 848, 872 (5th Cir. 2014).

**B.** **For Sanctions Pursuant to Fed. R. Civ. P. 26(g) ICEE Must Prove that the Benesch Lawyers Interposed Objections to Harass, Cause Unnecessary Delay, and Increase the Cost of Litigation.**

Sanctions pursuant to Rule 26(g)(3) are evaluated under the same standard that applies to Rule 11. *N.T. v. Children's Hosp. Med. Ctr.*, No. 1:13CV230, 2017 U.S. Dist. LEXIS 222936, at *16 (S.D. Ohio Sept. 27, 2017) (J. Barrett, citation omitted). "By signing a discovery response or objection, an attorney certifies under Fed. R. Civ. P. 26(g)(1)(B)(ii) that every objection is based

on 'knowledge, information, and belief formed after a reasonable inquiry' and, inter alia, that the objection is not 'interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation.'" *Id.* "Sanctions under Rule 26(g)(3) are appropriate if the attorney fails to fulfill the 'duty to make a reasonable investigation to assure that their clients have provided all available responsive information and documents.'" *Id.* quoting *DiLuzio v. Vill. of Yorkville*, No. 2:11-cv-1102, 2016 U.S. Dist. LEXIS 177376, at *99 (S.D. Ohio Dec. 22, 2016)). "The Sixth Circuit has not clarified who carries the burden in establishing that Rule 26(g)(3) sanctions are warranted," thus, this Court has previously evaluated such motions under both a movant-borne and opponent-borne burden. *Id.*

C. **For Sanctions Pursuant to the Court's Inherent Authority, ICEE Must Prove by Clear and Convincing Evidence that the Benesch Lawyers' Conduct was Motivated by Bad Faith.**

Lastly, a court may assess sanctions under its inherent powers only when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, or when the conduct is "tantamount to bad faith." *Metz v. Unizan Bank*, 655 F.3d 485, 489 (6th Cir. 2011). "To impose sanctions under inherent authority, Sixth Circuit law requires a district court to find: (i) the claims advanced were meritless; (ii) counsel for the offending party knew or had reason to know the claims were meritless; and (iii) the motive for filing the suit was an improper purpose such as harassment." *BAC Home Loans Servicing, L.P. v. Wells Fargo, N.A.*, No. 11-10327, 2013 U.S. Dist. LEXIS 37888, at *7 (E.D. Mich. Mar. 19, 2013) (citing *Metz*, 655 F.3d at 489).

D. **ICEE Cannot Meet Its Burden of Clear and Convincing Evidence Through Speculative Inferences.**

As discussed above, ICEE's burden of proof is clear and convincing evidence. Thus, ICEE must provide evidence which provides the Court with an "abiding conviction" that it is highly probable ICEE's factual contentions are true. *Bradford Co. v. Afco Mfg.*, No. 1:05-cv-449, 2007

4

U.S. Dist. LEXIS 31975 (S.D. Ohio 2007) (quoting *Pfizer, Inc. v. Apotex, Inc.,* 480 F.3d 348 at

*8, N.5 (Fed. Cir. 2007)). Importantly, **inferences are not sufficient evidence to meet a clear**

**and convincing standard**. *Mueller Cooper Tube Prods. v. Pa. Manufacturers Ass'n,* 254 Fed.

Appx. 491, 495 (6th Cir. 2007). Examples of ICEE's many speculative inferences include:

- "Counsel had to have been aware from the outset that both the "Wendsday" email and its metadata … were forged by Mark Peters to make the 2000 Appointment appear to be genuine." (Doc. #89, Page ID # 2308).

- "Although the Benesch lawyers are not copied, they likely discussed RPC's concerns on the phone." (*Id.*, Page ID # 2313).

- "Had they done so, they likely would have found it on one or more of Peters' computers." (*Id.*, Page ID # 2314-2315).

- "Certainly by October 2019 they [Benesch] knew from ICEE's production that the history ***they*** had received from RPC in 2018 was a forgery. . ." (*Id.*, Page ID # 2316) (emphasis original).

- "Peters was likely insisting that the 'Wendsday' email was genuine, which House knew was false." (*Id.*, Page ID # 2319).

- "House knew this was not just a typical Peters typo." (*Id.*).

- "Counsel knew Peters was the forger." (*Id.*, Page ID #2321).

- "[t]hey must have tipped off Peters..." (*Id.*, Page ID # 2322).

ICEE's Motion is simply littered with such inferential speculation, *without citation*. As a matter

of law, these sinister inferences are not clear and convincing evidence. *Mueller Cooper Tube*

*Prods.,* 254 Fed. Appx. at 495.

## II.    ARGUMENT

### A.    ICEE's Motion for Sanctions Must Be Denied Because It Does Not Comply with the Sixth Circuit's Mandatory Requirements for Due Process.

ICEE's Motion is legally deficient.  It fails to afford the Benesch attorneys the proper particularized due process the law demands.[3]  The Motion must, therefore, be denied on its face.

ICEE is required to identify: (1) the law under which sanctions are sought; (2) the "conduct alleged to be sanctionable" *under that law*; and (3) "which of the numerous attorneys involved... defendant seeks to be sanctioned," for that specific conduct.  *Nisus Corp. v. Perma-Chink Sys.*, No. 3:03-CV-120, 2007 U.S. Dist. LEXIS 58363, at *10-11 (E.D. Tenn. Aug. 9, 2007) (summarizing cases denying motions for sanctions for failing to provide particularized notice). The seven respondents *are each* entitled to know the specific charges, under each law, so they can provide a meaningful response.  *Id.* (holding that particularized notice is required to satisfy due process where sanctions are sought under multiple laws).  And Federal courts have routinely held that "[s]imply describing the conduct is not sufficient," as a matter of law.  *Id.*  To the contrary, each lawyer must receive *specific* notice of the conduct alleged to be sanctionable and the standard by which ICEE claims they should be sanctioned. *Id.* (quoting *Ted Lapidus, S.A. v. Vann*, 112 F.3d 91, 97 (2d Cir. 1997)).

And the Court is entitled to the same notice.  It is improper for ICEE to expect the Court to "flesh out the parties' arguments for" it.  *Brenay v. Schartow*, 709 F. App'x 331, 337 (6th Cir. 2017).  Indeed, "[J]udges are not like pigs, hunting for truffles that might be buried in the record." *ECIMOS, LLC v. Nortek Global HVAC, LLC*, 736 Fed. Appx. 577, 585 (6th Cir. 2018).

---

[3] Obviously, this deficiency cannot be remedied in a Reply Brief, which cannot raise new arguments and would not provide an opportunity for a response.  *Sanborn v. Parker,* 629 F.3d 554, 579 (6th Cir. 2010).

6

The problems with ICEE's purposeful vagueness permeate every level of its Motion. ICEE claims to be seeking sanctions for "the entire lawsuit." (*See* Exhibit A). But ICEE fails to mention this – let alone set forth any analysis supporting it – in its anemic three-page "Argument." (*See* Doc. # 89 Page ID # 2324-26). ICEE claims to be seeking sanctions pursuant to this Court's "inherent authority," yet the only "analysis" it offers in support is five words:

> The Benesch firm and counsel should also be sanctioned pursuant to Rule 26(g) and the Court's inherent authority. Under Rule 26(g), counsel has an obligation to "conduct a reasonable

(*Id.*, Page ID # 2326).

And ICEE also ***claims*** to be seeking sanctions pursuant to 28 U.S.C. § 1927 – which can only be asserted against ***individual attorneys*** – yet fails to mention ***a single individual's name*** anywhere in its three-page legal "Argument." (*See Id.*, Page ID # 2324-26); *BDT Prods. v. Lexmark Int'l, Inc.*, 602 F.3d 742, 751 (6th Cir. 2010). As just one example of this fatal vagueness, Elizabeth Emanuel, an associate, entered the case on October 25th, 2019. (Doc. # 26). She left Benesch and withdrew from the case on May 7th, 2020. (Doc. # 50). Shabbily, the Motion appears to seek sanctions against this *associate* for every action taken in the case – before and after her involvement. (Doc. # 89, Page ID # 2299 – "holding the individual lawyers … jointly and severally liable for ICEE's costs and attorney fees in defending the case"; *see also* Exhibit A). But no explanation is given to support this harsh request. (*See id.*, gen.).

Presumably, ICEE expects the Court to go "hunting" for its specific arguments elsewhere in the Memorandum, like "truffles" buried in a forest. *See ECIMOS, LLC*, 736 Fed. Appx. at 585. And ICEE's Memorandum does provide a "Statement of Facts," full of sinister inferences supported by a truckload of speculation, but no citations. But neither the Statement of Facts nor the Argument section provides any specificity – *under any of the three <u>separate</u> legal bases for*

*sanctions* – as to: (1) what sanctions it seeks under each law, (2) for what actions, and (3) who violated each specific law. *Nisus Corp.,* 2007 U.S. Dist. LEXIS 58363 at *10-11. Because "simply describing the conduct is not sufficient," ICEE's Motion fails as a matter of law. *Id.* The Motion should be denied without any further analysis.

> **B.**    **ICEE has not Satisfied its Heavy Burden of Proving Sanctions are Warranted for the Filing of the Complaint.**

As to the merits, the Motion for Sanctions is somewhat odd. It seeks attorney fees and costs for "defending the case." (Doc. #89, Page ID # 2299). But the "Argument" section of the Memorandum conspicuously makes no argument Benesch lacked a good-faith basis to file the lawsuit. (*Id.*, Page ID # 2324-2326). Rather, the "Argument" is limited to acts solely occurring *after* the filing of the Complaint. (*Id.*). Yet, ICEE informally confirms it still seeks sanctions for the filing of the lawsuit. (*See* Exhibit A).[4] But curiously absent from the Motion is any mention of the compelling documents and evidence of the parties' dealings that support the existence of a 2000 Appointment. Not coincidentally, this unreferenced evidence provides ample reason why Benesch believed the 2000 Appointment was valid when it filed the Complaint.

First, there is no dispute the 1999 Agreement existed and bound the parties. (Doc. # 27, Page ID # 353-354; Doc. #29, Page ID # 353-355). Under the 1999 Agreement, the royalty was 5 percent. (Doc. # 2, Page ID # 121, ¶ 3A; Exhibit B, ICEE SPL_005768 "UK: 5%."). Under the 2000 Appointment, it was 2.5 percent – half the royalty due under the 1999 Agreement. (Doc. # 27, Page ID # 130). And there is no dispute the royalty paid for nearly two decades was 2.5 percent. (Doc. #29, Page ID # 355; Exhibit B, ICEE SPL_005767). *This fact alone gave Benesch no reason to doubt the authenticity of the 2000 Appointment.* If the 2000 Appointment was not

---

[4] This only highlights the due process violations perpetrated by ICEE's Motion and why it should be denied on that basis, alone. *See* Section II.A. *supra.*

authentic, and the 1999 Agreement thus still governed, why would ICEE (and its predecessors) accept half the royalty (2.5 percent) for nearly 20 years? And accepting payment of the 2.5 percent royalty for almost 20 years gives *an inference of ICEE's knowledge* of the 2000 Appointment.[5] There is no other signed agreement referencing a 2.5 percent rate.

Moreover, Ohio law permits the modification of an original agreement through a different course of performance between the parties. *St. Mary's v. Oglays Cty. Bd. of Commrs.,* 115 Ohio St. 3d 387, ¶ 39 (2007). Here, even if the 2000 Appointment did not exist, SPL had an argument the 1999 Agreement had been modified by a consistent course of dealing where SPL paid a 2.5 percent royalty and effectively had an exclusive license. Benesch thus had a good faith basis to file the Complaint, based on ICEE's nearly 20-year course of conduct, even if Benesch had not seen the 2000 Appointment. *Id.*

And Benesch had ample documentation – collateral to the 2000 Appointment – which supported its validity.[6] In addition to ICEE's acceptance of 2.5 percent royalties, Benesch was in possession of two letters which appeared to be signed by the President of ICEE's predecessor, confirming the terms of the 2000 Appointment. (Doc. # 2, Page ID # 136, 138).

Most compelling, Benesch had a 2001 correspondence from BlevinsFranks, a prominent U.K. accounting firm. (Doc. # 82, Page ID # 2061-2063). This letter references a "signed" 2000 contract (the 2000 Appointment). *Id.* BlevinsFranks discussed the 2000 Appointment – **a decade before ICEE contends the contract was forged**. (*Id.* at Page ID # 2062). ICEE speculates that

---

[5] ICEE has never—even post-filing—provided a good explanation as to why it accepted a royalty of 2.5 percent, when the only signed and enforceable Agreement ICEE is willing to recognize calls for a 5 percent royalty. Indeed, the internal confusion at ICEE is evident where an employee notes that "I think" UK Agreement was "changed around 2002 to be 2.5 percent." (*See* Exhibit B; ICEE SPL_005767). And ICEE has "no signed copy or approval" in its files for the change. *Id.*

[6] The 2008 email was thus never relied upon by Benesch, in the litigation, to establish the validity of the 2000 Appointment. It didn't need the "Wendsday" email given the mountain of evidence it had when it filed the Complaint. ICEE may bang a drum that the email is crucial to show ICEE knew of the arrangement. But accepting payment of the 2.5 percent royalty for nearly two decades provides an inference of ICEE's knowledge of the 2000 Appointment.

the forgery took place after 2011, because a 2011 signature was used. (Doc. # 89, Page ID # 2309). Then why does BevinsFranks' *2001 letter* reference an Appointment supposedly forged *after 2011*?  More importantly, why would Benesch think the 2000 Appointment was forged with a 2011 signature, when the accountants referenced seeing the *signed* 2000 Appointment in 2001? ICEE's Motion is silent here.  BlevinsFranks is never mentioned.

Yet ICEE contends Benesch should have been "suspicious" of a forgery because the 2000 Appointment had odd language in it, such as venue selection of "Ohio County, USA."  (Doc. # 82, Page ID # 2062).  But in 2001, BlevinsFranks specifically quotes the 2000 Appointment's odd venue selection provision including the "Ohio county, USA" language. *Id.*  Benesch would not assume the 2000 Appointment was a post-2011 forgery based upon the "Ohio county, USA" language; that language was specifically quoted by BlevinsFranks *in 2001* – a decade before the dispute arose and the forgery is alleged to occur.  ICEE's Motion is silent here as well.

Thus, without regard to the "Wendsday" email, *never relied upon by Benesch in any filing*, at the time the suit was filed, the following was known to Benesch:

- A prominent British law firm referred the case and thought well enough of it to help draft the Complaint and send it to litigation, after its own due diligence.

- A written contract appeared to have been signed by the parties followed by a course of dealing in which the royalty rate was half the 1999 Agreement's rate, which would have been the controlling Agreement if the 2000 Appointment was not agreed to by ICEE.

- Two separate letters from ICEE's predecessor acknowledged the 2000 Appointment and the terms contained within it.

- A 2001 letter from a prominent British accounting firm referencing a 2000 Appointment and the odd "Ohio county" language within it, a decade before ICEE claims it was forged.

It is baseless to suggest Benesch's lawyers – with this information – should have assumed its client forged the 2000 Appointment and not filed the case, just because ICEE denied the 2000

Appointment was authentic.[7]  No doubt, ICEE has not demonstrated, by clear and convincing evidence, any Benesch lawyer knew or reasonably should have known the claims pursued under the 2000 Appointment were frivolous at the time the Complaint was filed.  *Rentz,* 556 F.3d at 396.  Moreover, there is no evidence Benesch knew or had reason to know the claim was meritless and filed the suit for an improper purpose. *BAC Home Loans Servicing*, 2013 U.S. Dist. LEXIS 37888, at * 7.  Sanctions should thus be denied.

Likewise, ICEE makes no reference to the alternative claim in the Amended Complaint.  (Doc. # 27).  ICEE attempts to make the entire case about sanctions.  It ignores there is another claim for which ICEE has both failed to file for summary judgment[8] and failed to mention in the Motion for Sanctions.

And this all matters for the rest of the Motion.  ICEE is aware of what was in front of Benesch.  Indeed, it was attached to the Complaint.  (*See* Doc. # 2, Page ID # 115-142).  But ICEE chose to request sanctions for the filing of the lawsuit without referencing *any* of the above evidence or the alternative claim.  This choice is illuminating – as is the purposeful vagueness of the "Argument" section of the Motion.  These choices cast a shadow of doubt over the credibility of the remaining arguments ICEE makes in its Motion for Sanctions.

**C.     ICEE Cannot Satisfy its Burden to Prove by Clear and Convincing Evidence Sanctions Are Warranted Under 28 U.S.C. § 1927.**

As to ICEE's remaining allegations of misconduct beyond the filing of the Complaint, none demonstrate that Benesch intentionally abused the judicial process or knowingly disregarded the

---

[7] ICEE had to use an expert to argue the 2000 Appointment was a forgery.  But the same expert could not opine, to a reasonable degree of scientific probability, that the two letters from ICEE's predecessor and the BlevinsFranks letter were forgeries.
[8] ICEE appears to be taking the position Benesch was not allowed to plead a claim in the alternative.  *But see* Fed. R. Civ. P. 8 (d)(2).

risk that their actions would needlessly multiply the proceedings. *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 646 (6th Cir. 2006).  To the contrary, Benesch:

> (1) did not have a duty to correct Mr. Peters' deposition testimony, of which it could not affirm or deny;
>
> (2) timely withdrew all causes of action based on the 2000 Appointment;
>
> (3) appropriately and timely withdrew the 2008 email upon concluding it could not be authenticated and confirmed that it would not be used;
>
> (4) made all reasonable efforts to preserve the underlying laptops, computers, and/or other hardware for forensic digital examination; and
>
> (5) did not knowingly withhold the alleged "incriminating metadata," at any time.

Indeed, ICEE's alleged "evidence" on these points – largely consisting of the conjecture as to Benesch's sinister motives – is without support.

### 1. Benesch Did Not Have a Duty to Correct Mr. Peters' Deposition Testimony.

ICEE's assertion Benesch had an affirmative obligation to correct Mr. Peters' deposition testimony is contrary to the facts of the case, Ohio Prof. Cond. Rule 3.3, and controlling Sixth Circuit law.  In short, ICEE seeks sanctions against Benesch for failing to make "on-the-spot" credibility determinations during Mr. Peter's deposition and calling him out on alleged perjury. (*See* Doc. # 89, Page ID # 2326).  Specifically, ICEE claims that Benesch had a duty to "correct" Mr. Peters' denials that: (1) Lindsey Kirby did not type the "Wendsday" email; (2) he did not type the email; and (3) he did not "copy and paste" witness signatures into the 2000 Appointment.  (*See* Doc. # 89, Page ID # 2320).  These arguments fail for several, independent reasons.

**First**, ICEE's assertion that Benesch was required to make credibility determinations of its client has been explicitly rejected by the Sixth Circuit.  To the contrary, the Sixth Circuit has held "[a]bsent some further evidence of attorney fault, a lawyer cannot be sanctioned because a judge

at some later date believes his client lacks credibility or is even lying under oath." *Silverman v. Mut. Trust Life Ins. Co. (In re Big Rapids Mall Assocs.)*, 98 F.3d 926, 932 (6th Cir. 1996). Consistent with this precedent and Ohio Prof. Cond Rule 3.3, Sixth Circuit district courts hold lawyers have "an ethical obligation to resolve any reasonable doubts concerning his client's credibility in favor of his client." *Maddox v. E.F. Hutton Mtge. Corp.*, 723 F.Supp. 1246, 1249 (M.D.Tenn. 1989). And courts in this circuit have routinely rejected requests for sanctions in the absence of evidence that a witness admitted to committing perjury to his/her lawyer. *See, e.g.*, *J.T. Shannon Lumber Co. v. Barrett*, No. 07-2847-Ml/P, 2011 U.S. Dist. LEXIS 30916, at *4 (W.D.Tenn. Feb. 9, 2011) (Rejecting request for sanctions when the deponent "has not admitted to committing perjury; to the contrary, [deponent] continues to maintain that his testimony is truthful.").

ICEE offers no evidence that Mr. Peters – in speaking with counsel or under oath – has ever admitted any document was a forgery, he forged it, or that he committed perjury. To the contrary, Mr. Peters' deposition testimony – regardless of what the Court may think of its ultimate credibility – has not been contradicted by statements to counsel. (*See* Decl. of Matthew Gurbach ("Gurbach Decl."), Exhibit C, at ¶ 3; Decl. of Ronald House ("House Decl."), Exhibit D, ¶ 13; Decl. of Elizabeth Turk ("Turk Decl."), Exhibit E, ¶ 10). As such, no duty to disclose the alleged perjury was ever triggered. *Shannon Lumber,* 211 U.S. Dist. LEXIS 30916, at * 4.

**Second**, at the time of Peters' deposition – and still today – Benesch has no actual knowledge by which it can confirm or deny its clients' representations as to the alleged forgeries without making a credibility determination. Notably, as of the deposition, ICEE's expert report had not been disclosed, and the metadata relating to the documents in question had not yet been examined. And regardless of the strength of ICEE's handwriting expert *there is simply no evidence*

13

*that connects Mr. Peters as the forger* in a conclusive manner. *Silverman,* 98 F.3d at 932 (Lawyers must resolve all doubts in favor of their client).

**Finally**, ICEE's reliance on, and selective quotation of, *Laukus v. Rio Brands, Inc.* is misplaced. *Laukus* is easily distinguishable. It involved a failure of counsel to correct his client's testimony the attorney *actually knew to be false* by evidence that was not disclosed. 292 F.R.D. 485, 506 (N.D. Ohio 2013). It does not hold that counsel must make a credibility determination as to his client's statements on subjects for which counsel itself lacks actual knowledge. *Id.* Nor does it hold a lawyer has an affirmative duty to correct statements that it can neither confirm nor deny. *Id.* Rather, Ohio Prof. Cond. Rule 3.3[9] only prohibits a lawyer from presenting testimony the lawyer *knows* is false, and does not otherwise impose a duty even if the lawyer has a reasonable belief it is false. Ohio Prof. Cond. Rule 3.3 comment 8. Thus, *Laukus* is irrelevant because there is no evidence any Benesch lawyer *knew* Mr. Peter's testimony was false. *Id.*

### 2. Benesch's Timely Withdrawal of All Causes of Action Based on the 2000 Appointment Precludes a Finding of Vexatious Conduct.

In the long-standing tradition of "no good deed goes unpunished," ICEE ironically argues Benesch's timely withdrawal of all causes of action based on the 2000 Appointment is "proof" of vexatious conduct. *It is precisely the opposite.* Benesch's decision to no longer prosecute claims based on the 2000 Appointment – made prior to any dispositive motion – further evidences its good-faith and candor.

It is well settled attorneys cannot be sanctioned merely because a claim was ultimately found to be without merit. *See Ridder v. City of Springfield*, 109 F.3d 288, 290 (6th Cir. 1997); *Gibson v. Solideal USA, Inc.*, 489 Fed. Appx. 24, 33 (6th Cir. 2012); *Milner v. Biggs*, 566 Fed. Appx. 410, 414 (6th Cir. 2014). This is particularly true where, as here, the determination was

---

[9] Similarly, Ohio Prof. Cond. Rule 3.4 imposes no such duty.

made after the conclusion of discovery. *Id.* Obviously, the very purpose of discovery is to test the veracity of the parties' claims. Section 1927 is not, and has never been**,** a fee-shifting provision for the prevailing party. *Id.* To the contrary, sanctions may only be imposed upon a finding of clear and convincing evidence a party acted vexatiously and thereby multiplied the proceedings. *Hewlett Packard Co. v. Papst Licensing GmbH & Co. KG*, 791 F.Supp.2d 175, 184 (D.D.C. 2011).

Here, ICEE produced the expert report of Ms. Leonard on August 21, 2020. *Less than two months later,* Benesch obviated the need for any summary judgment motion practice by seeking leave to voluntarily withdraw all claims related to the 2000 Appointment. (Doc. # 72). Prior to Mr. Leonard's report, there was no evidence conclusively proving the 2000 Appointment was a forgery. (*See* Section II.B., *supra*). And Benesch withdrew the claims despite having the BlevinsFranks 2001 letter referencing the 2000 Appointment, which contradicts ICEE's conclusion it was forged post-2011. (*See* Doc. # 82-1, Page ID # 2062) (BlevinsFranks letter specifically referencing the 2000 Appointment in 2001 and its odd "Ohio county" language over a decade before the forgery was alleged to have occurred). If Benesch was attempting to be "vexatious" it could have used the BlevinsFranks letter and the letters from ICEE's predecessor's President and still pursued the claim. But Benesch showed good faith choosing not to do this. ICEE cannot twist this good faith to claim Benesch was vexatious. Simply, sinister motives are not behind every Bar member's decision making. And they are not present here.

### 3. Benesch Properly and Timely Withdrew the November 2008 Email Upon Concluding That It Could Not Verify its Authenticity.

ICEE claims Benesch "must have known" the "Wendsday" email was a forgery because the misspelling was "so obvious." (*See* Doc. # 89, Page ID # 2319). ICEE thus argues Benesch should be sanctioned pursuant to 18 U.S.C. § 1927. ICEE's argument is directly contradicted by a mountain of evidence.

**First**, Benesch produced multiple emails conclusively establishing that it was not aware of the "Wendsday" misspelling until February 2020 and immediately investigated the same:

(1) An email from Mr. House to Mr. Peters, dated February 25, 2020, identifying the email and requesting that SPL immediately locate the native for review; (House Decl., Exs. D-1 and D-2).

(2) An email from Mr. House to Mr. Peters, dated February 26, 2020, repeating Benesch's request for a native copy of the document for further review; (*Id.*, Ex. D-3).

(3) An email from Mr. House to Mr. Peters, dated March 3, 2020, demanding *in all bold* that SPL provide the native email and more information as to its origin; (*Id.*, Ex. D-4).

(4) An email from Mr. Gurbach to Mr. Cran (U.K. counsel), dated June 25, 2020, requesting a call to discuss the authenticity of the document in question and where it came from; (*Id.*, Ex. D-5).

(5) An email from Mr. House to Mr. Peters, dated June 25, 2020, noting that Mr. House had <u>spoken to Mr. Peters at least two more times about the email</u> and – because Mr. Peters "**could not vouch for its authenticity**" – Benesch must fulfill its obligation to withdraw it.  (*Id.*, Ex. D-6) (emphasis added).

And, in fact, Benesch immediately followed through with its promise, and sent a letter withdrawing the document **the very next day**.[10]  (*See* Doc. # 60-10, Page ID # 1044).

**Second**, ICEE's assertion that Mr. House's inquiry and request for a native copy of the email from Mr. Peters was "facetious" is, once again, nothing but sinister conjecture.  (Doc. # 89; Page ID # 2319).  It is not supported by any actual evidence.  Indeed, no member of the Bar would immediately accuse his or her client of forgery without a diligent inquiry and opportunity for the client to investigate and provide an explanation.[11]  To the contrary, federal courts have routinely held that an attorney has "**an ethical obligation** to resolve any reasonable doubts concerning his

---

[10] Obviously, the "Wendsday" email misspelling was discovered a week before the COVID-19 pandemic blew up in the United States.  ICEE will argue Benesch should have addressed matters quicker – over the next three months.  This ignores what occurred in Ohio from March through May of 2020.  Lawyers were hardly as productive as they otherwise would have been during those initial months.

[11] Moreover, if the spelling of "Wendsday" is sufficient to conclusively establish the document is a forgery, why did ICEE's counsel recently spend an hour with the Court arguing metadata from Ms. Kirby's 2008 computer and the software brand utilized still needs to be discovered?

client's credibility **in favor of his client**." *Maddox v. E.F. Hutton Mtge. Corp.*, 723 F.Supp. 1246 (M.D.Tenn. 1989) (emphasis added). ICEE's position that Benesch must accuse its own client from the very beginning of fraud – or else be subject to sanctions – is nonsensical. *Silverman*, 98 F.3d 926 at 932 (6th Cir.1996) (holding that "a lawyer cannot be sanctioned because a judge at some later date believes his client lacks credibility or is even lying under oath.").

**Third**, ICEE speculates– without evidence – Benesch, sinister as can be, was aware of the "obvious" misspelling and "ignor[ed] the evidence of forgery[.]" (Doc. # 89, Page ID # 2314). *But ICEE's counsel appears to have never caught the misspelling, as well*. It is undisputed: (1) the email was produced to ICEE on February 19, 2020; (2) the document was included in an incredibly small production of only 19 documents; (3) ICEE was preparing for a deposition where the 2000 Appointment would be a major issue; (4) ICEE actually deposed Ralph Peters on February 24, 2020 and discussed the 2000 Appointment, and still failed to question him about the misspelling; and (5) it seems ICEE's counsel finally became aware of the misspelling on June 26, 2020 **after** Benesch withdrew the document and confirmed it would not be used. (*See* Doc. # 60-10, Page ID # 1044; Doc. #89, Page ID # 2318-19). But ICEE urges the Court to conclude Benesch was criminally aware of the misspelling because it was "obvious." *But ICEE's counsel, in all its litigation might, apparently did not catch it, as well.*[12] The misspelling is simply not as "obvious" as ICEE claims – people do not scrutinize the spelling on email headers.

**Fourth,** ICEE ignores the actual requirements of Ohio Prof. Cond. Rule 3.3. Repeatedly, ICEE argues that Benesch "had a duty to inform the Court and defense counsel of their client's crime and fraud" with respect to the "Wendsday" email. (Doc. # 89, Page ID # 2317). Of course, there is no citation, because this is not what Ohio Prof. Cond. Rule 3.3 provides. Indeed, Benesch

---

[12] Likewise, RPC – the prominent U.K. firm, which referred the case – did not catch the misspelling.

only needs to report the situation to the Court "if necessary." Ohio Prof. Cond. Rule 3.3(a)(3). Rather, Benesch was required to take reasonable measures to remedy the situation. (*Id.*). The Rule is clear Benesch was not required to tell opposing counsel or the Court it thought the 2008 email was a forgery, if it could remedy the situation by withdrawal of the document. (*Id.* at comments 10, 15). Here, Benesch withdrew the email from its production when it could not authenticate it. *And it never relied upon the email*, in any aspect of the case. This complies with its obligations. (*Id.*).

**Finally**, ICEE's accusation that Benesch tried to "use" the alleged forgery as "leverage" during settlement negotiations is patently false. ICEE has not, and cannot, point to a single document where Benesch used the 2008 email. It was not attached to the Complaint. (*See* Doc. #2, generally). Nor was it attached to a settlement demand. And it certainly was not contained within any pleading. This is yet another unsupported, sinister claim made by ICEE's in its Motion.

### 4. Benesch's Efforts to Preserve and Collect the Underlying Computers Was Reasonable Under the Circumstances.

Next, ICEE asserts that Benesch should be sanctioned for "failing to preserve evidence" – the computers Mr. Peters claims were stolen. (Doc. # 89, Page ID # 2326). In doing so, ICEE's counsel actually accuses several members of the Bar of "tipping off" Mr. Peters to destroy his computers. (*Id.*, Page ID # 2322). ICEE's zeal to speculate about sinister motives aside, the actual evidence demonstrates Benesch behaved appropriately.

**First,** ICEE's assertion Benesch should be sanctioned for "tipping off" its client that there was an impending inspection is as non-sensical as it is absurd. ICEE's claim is the purest definition of a "Catch-22." **Of course, Benesch informed its client of the requested inspection. If it hadn't, ICEE would be filing the instant Motion for Sanctions for failing to do so.** It's rather basic that, when a party requests the production of evidence, counsel must seek the evidence from

18

its client as the *client is the one who has the evidence*.  The fact that ICEE is critical of Benesch for telling its client of the request for inspection is a metaphor for ICEE's entire Motion.  It does not matter what Benesch did – ICEE will claim there was a sinister motive for Benesch's conduct.

**Second,** Benesch was reasonable in its pursuit of the evidence.  Benesch obviously informed Mr. Peters of ICEE's request.  But Benesch never received them.  And it was then informed that the computers were stolen.  ICEE acknowledges that such information was passed on to ICEE's counsel and Benesch supplemented SPL's response to the Request for Inspection.  (*See* Doc. # 89, Page ID 2322-23).  Benesch cannot be blamed – let alone sanctioned – for losing something *that was never in its possession*, custody, or control.

**Third,** ICEE fails to explain what additional actions Benesch could have taken.[13]  It is not a law enforcement agency.  It cannot "seize" Mr. Peters' computers in the dead of night, which were located on a different continent.  ICEE simply fails to explain what Benesch could have done to preserve Mr. Peters' computers, located literally an ocean away, other than request he produce them, as ICEE admits Benesch did.

### 5.    Benesch Did Not Knowingly Withhold the Alleged Incriminating Documents and Metadata.

Finally, ICEE accuses Benesch of knowingly "withholding" two "smoking-gun" documents and metadata to "conceal" fabricated evidence.  (Doc. # 89, Page ID # 2325).  It complains the production of the November 2008 email and the "Working History" document without metadata is proof of Benesch's sinister motives.  (*Id.*).  The actual facts, however, reveal a much more benign truth – (1) the November 2008 email was produced from *hard copy documents* located in Benesch's file that Benesch discovered had not yet been produced; and (2) the version

---

[13] How, in accordance with due process, can Benesch defend itself with such vague accusations? See Section II.A., *supra*.

of the "Working History" document containing metadata was inadvertently flagged as "non-responsive" in Benesch's ESI program – EverLaw – and, therefore, was not produced initially. When the metadata for both became an issue in this case, Benesch produced both.

**First**, as it relates to the 2008 Email: (1) Ms. Turk received from Mr. House hard copy documents that were located in the case file on February 7, 2020. (Turk Decl., at ¶ 3). (2) Ms. Turk then reviewed the documents, searched the EverLaw database, and determined that several documents were not yet produced. (*Id.* at ¶ 4). (3) Benesch thus produced the email on February 19, 2020. (*Id.* at ¶ 5). At that time, the original April 17, 2018 email received by Attorney Avsec was not in the EverLaw database, just the hard copy Mr. Turk entered. (*Id.* at ¶ 8-9). So the metadata was not produced. (*Id.*). And Ms. Turk produced the email before Benesch caught the misspelling. (*Id.* at ¶ 6). So, she had no reason to think any metadata would matter.

**Second**, the Working History was initially not produced for the same reason as the 2008 email. But when Benesch went to produce it, the version entered in Benesch's ESI database EverLaw was mistakenly marked "non-responsive" – a "duplicate" in the file. Thus, that version was inadvertently not produced, initially. (*Id.* at ¶ 7). Then, in response to the Court's order, Benesch produced certain privileged communications, the document was a non-responsive attachment to such a privileged email. (House Decl., Ex. D-7). When ICEE followed up, it was provided with this explanation. (*Id.*).[14] Benesch did not know, nor did it have reason to know, the metadata for either would be critical later in the litigation. As was discussed in section II.B., *supra*, there was ample support for Benesch's belief the 2000 Appointment was a valid document. Why would it think that metadata from a 2011 document would demonstrate a signature was forged post-2011 when the 2000 Appointment was referenced by reputable accountants in 2001?

---

[14] ICEE makes no reference to this reasonable explanation it was provided, in its Motion.

**Finally**, the metadata for such documents were produced by Mr. House to ICEE via email on September 21, 2020, in advance of an official Bates-stamped production. (*Id.*). As Mr. House could not locate the original transmission email from the UK attorneys to Benesch with the "original" documents in Benesch's system, he obtained those documents by requesting and receiving the same from the UK attorneys in September 2020. (*Id.* at ¶ 11). Accordingly, there is simply no basis to conclude that Benesch, at any time, intentionally and wrongfully withheld information from ICEE warranting sanctions under 18 U.S.C. § 1927. *Riddle v. Egensperger*, 266 F.3d 542, 553 (6th Cir. 2001). It is well settled that inadvertence or negligence will not support a sanction under § 1927, as a matter of law. *Id.*

> **D.      ICEE Fails to Satisfy Its Burden to Demonstrate Benesch Violated the Provisions of Fed. R. Civ. P. 26(g).**

ICEE's alternative request for sanctions pursuant to Rule 26(g) must also be denied. Put simply: (1) ICEE fails to identify with reasonable particularity the specific discovery documents and signers for which it seeks sanctions; (2) Benesch did not "falsely certify" its responses to discovery, at any time. At every juncture, ICEE attempts to impose obligations upon Benesch based solely on 20/20 hindsight – that is not the law. At all times, Benesch's actions were reasonable.

> **1.      ICEE Fails to Identify the Specific Discovery Documents and Signers Upon Which It Seeks Sanctions Pursuant to Rule 26(g).**

As a threshold issue, ICEE's Motion pursuant to Fed. R. Civ. P. 26(g) should be denied because it fails to identify the actual discovery requests and specific signers, upon which it seeks sanctions in ICEE's *one paragraph* Argument section of its Memorandum.[15] (*See* Doc # 89, Page ID # 2326). But it is well settled ICEE's burden is to "indicate a specific discovery document that

---

[15] Again, ICEE's strategic deficiency cannot be remedied in a Reply Brief, which cannot raise new arguments and would not provide an opportunity for a response. *Sanborn,* 629 F.3d at 579.

was falsely certified by [respondent] before sanctions may be imposed." *McGuire v. Metro Life Ins. Co.*, No. 12-cv-10797, 2015 U.S. Dist. LEXIS 50697, at *17 (E.D. Mich. 2015). ICEE's one-paragraph "analysis" merely cites black letter law, and then states in conclusory fashion: "[T]he Benesch attorneys violated this rule, and they therefore 'must' be sanctioned." (Doc. # 89, Page ID #2326). This does not identify a single discovery document, a single attorney, and/or a single particularized basis for its request for sanctions. *Id.* Such a cursory analysis is deficient as a matter of law. *McGuire,* 2015 U.S. LEXIS 50697 at * 17.

And the problems with ICEE's purposeful vagueness are easily seen. In one example, ICEE misrepresents that Ms. Emanuel signed "False Discovery Responses," on page 10 of its Memorandum, yet conveniently omits – or deliberately ignores – that *Ms. Emanuel did not sign the discovery document*. (*See e.g.*, Doc. #89, Page ID # 2316 (the false accusation); Doc. # 89-4, Page ID #2369 (the discovery document Ms. Emanuel did sign)). ICEE continues its misrepresentations by next accusing Mr. Gurbach and Ms. Turk[16] of signing "false" requests for admission responses—when neither are the signatories to that discovery document. (*See* Doc. # 89, Page ID # 2321 (the false accusation); Doc. # 60-12, Page ID # 1053).

Significantly, the plain language of Fed. R. Civ. P. 26(g) only permits sanctions *on the actual signer*. Fed. R. Civ. P. 26(g) ("the court. . . impose an appropriate sanction on the signer."). This purposeful vagueness leaves the Court and respondents guessing as to whether ICEE is simply (1) falsely asserting there are signers on discovery requests or (2) taking the untenable position the entire "signature block" should be sanctioned. In either scenario, the Motion should be denied because this type of "guess work" has been specifically rejected. *McGuire,* 2015 U.S. LEXIS

---

[16] Ms. Turk has never signed a discovery document in this case.

50697 at * 17.  In any event, ICEE's scattered accusations of Rule 26(g) violations do not support a finding of sanctions against Benesch.

### 2.    Benesch Did Not "Falsely Certify" Discovery Responses.

ICEE accuses Benesch several times of "falsely certifying" discovery responses and even suggests that sanctions are appropriate merely because Benesch later supplemented its production of documents. (Doc. # 89, Page ID # 2316-18).  This argument has been soundly rejected by federal courts. ICEE's accusations must be rejected for several, independent reasons.

> (i)    Supplemental Productions Are Not Evidence of Rule 26(g) Violations – They Are Specifically Authorized, and Contemplated, by the Rule.

ICEE's accusation that Benesch did not conduct "reasonable inquiries" because it ultimately supplemented its document productions is entirely without merit.  It is well settled that a party "need not . . . affirm that their document searches and productions are complete without qualification and that no additional responsive documents exist." *In re Porsche Cars N. Am., Inc.*, No. 2:11-md-2233, 2012 U.S. Dist. LEXIS 136954 (S.D. Ohio Sept. 25, 2012); *see also Winter Ents., LLC v. W. Bend Mut. Ins. Co.*, No. 1:17-cv-360, 2019 U.S. Dist. LEXIS 125841, at *16 (S.D. Ohio July 29, 2019) (declining requests to impose monetary sanctions under Fed. R. Civ. P. 26(g)(3) based on parties' failure to produce all responsive documents in initial discovery responses); *Nemir v. Mitsubishi Motors Corp.*, 228 F.R.D. 573, 605 (E.D.Mich. 2005); *United States ex rel. Scott v. Humana, Inc.*, No. 3:18-CV-61-GNS-CHL, 2019 U.S. Dist. LEXIS 223916, at *29 (W.D.Ky. Sep. 25, 2019) (party providing supplemental responses to discovery requests was consistent with the duty to supplement responses and was not proof that initial responses were incomplete).

To the contrary, federal courts routinely recognize the Civil Rules specifically contemplate parties supplementing discovery responses, and such supplementation is not evidence of a Rule 26(g) violation.  *See JP Morgan Chase Bank, N.A. v. Winget*, No. 08-13845, 2010 U.S. Dist. LEXIS 155081, at *3 (E.D.Mich. May 21, 2010) (noting that the Civil Rules specifically contemplate parties supplementing discovery responses).  Moreover, where, as here, "there is no evidence of purposeful delay in supplementing discovery responses, sanctions are not warranted." *Allison v. Wise*, No. 2:08-cv-157, 2009 U.S. Dist. LEXIS 152752, at *12 (S.D. Ohio Dec. 23, 2009).  ICEE's complaints regarding Benesch's supplemental productions in this lawsuit are simply not "evidence" that its prior certifications were inaccurate. *Id.*  This includes ICEE's baseless accusations that Benesch "lied" to them on January 8, 2020 by failing to produce the "Wendsday" email and Working History in its first productions.  Supplemental productions are proper.  And, to the extent there was any purported delay, explanations have already been provided to this Court, above.

    (ii) <u>Rule 26(g) Does Not Require that Benesch Certify the Ultimate Factual Accuracy or Truthfulness of its Client's Factual Responses.</u>

ICEE's assertion that Benesch "falsely certified" discovery responses denying its requests for admission is equally without merit.  (Doc. # 89, Page ID # 2316).  Specifically, ICEE accuses Benesch of falsely certifying responses to Requests for Admission Nos. 4 and 5, which requested SPL admit a copy of the 2000 Agreement was not provided to ICEE until February 28, 2018, and that there were no records indicating otherwise, respectively. *Id.*  The response – that SPL cannot admit or deny anything – was proper.  As set forth in detail above, there were multiple documents corroborating the existence of the 2000 Agreement and the parties' course of dealing pursuant to its terms including, without limitation, two separate letters from ICEE's predecessor acknowledging the 2000 Appointment, a 2001 letter from a prominent British accounting firm

referencing the 2000 Appointment, and financial documents evidencing that ICEE (and its predecessor) was accepting royalties at 2.5 percent, rather than the 5 percent provided for in prior agreements. (*See supra*, at Section II.B.).

In any case, ICEE attempts to impose a burden upon Benesch far greater than what is required under the Rule. The Committee Notes to Fed. R. Civ. Proc. 26(g) make clear that an attorney "may rely on assertions by the client and on communications with other counsel in the case," in fulfilling its duty to make a reasonable inquiry, and "Rule 26(g) **does not require the signing attorney to certify the truthfulness of the client's factual responses** to a discovery request." Fed. R. Civ. P. 26(g), Committee Notes (emphasis added). Further, it is well settled that "the court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted." *Merritt v. Int'l Ass'n of Machinists & Aerospace Workers*, 613 F.3d 609, 626 (6th Cir. 2010). Thus, ICEE's demands that Benesch be sanctioned because a response may ultimately be proved to be factually inaccurate through the course of discovery is without support.

> (iii) Rule 26(g) Does Not Require That Benesch Conduct Digital Forensic Investigations of its Documents to Satisfy the "Reasonable Inquiry" Standard.

ICEE's further suggestion that to satisfy Rule 26's "reasonable inquiry" standard, attorneys must conduct digital forensic investigations of the documents in their possession is without merit. (*See, e.g.*, Doc. # 89, Page ID #2317-18) (accusing Mr. Gurbach and Ms. Emanuel of certifying "false" responses to requests for admission Nos. 4 and 5, and interrogatory nos. 6 and 7, for failing to check the metadata of the 2008 Email and Working History). *Unsurprisingly, ICEE fails to cite a single authority in its entire brief for this proposition and avoids any actual analysis on the*

*subject in its "Argument."* Because this is not the law – Benesch was not required to conduct digital forensic investigations to satisfy its discovery obligations.

Federal courts that have smartly declined to impose sanctions based on a lawyer's failure to identify unauthentic documents through a forensic investigation of its metadata. For example, in *Lawrence v. City of New York,* a district court declined to impose sanctions on an attorney where photos produced were proven to have been doctored by his client despite the fact the metadata showed the forgery. No. 15cv8947, 2018 U.S. Dist. LEXIS 126010, at *12 (S.D.N.Y. 2018). Likewise, in *Bright v. First Senior Fin. Group,* a district court refused to impose sanctions on an attorney who submitted fabricated emails which were evidenced by inconsistent dates that gave the wrong day of the week. No. 12-cv-360, 2013 U.S. Dist. LEXIS 89092 (E.D. Pa. 2013). Similarly, in *Davis v. Crescent Electric Co.*, the court declined to issue sanctions for the production of falsified emails where the font differed in appearance from two other emails in the chain. No. 12-5008, 2016 U.S. Dist. LEXIS 53241, at *13-19 (D.S.D. Apr. 21, 2016). And, in *Suntrust*, the court declined to sanction attorneys who filed a complaint relying upon a fabricated email, notwithstanding that the attorneys did not investigate the metadata of the email and knew at the time they filed the complaint that the custodian of that fake email had forged two other "similar" emails. *Suntrust Mortg. Inc. v. AIG Guar. Corp.*, No. 3:09CV529, 2011 U.S. Dist. LEXIS 33118, at *69-77 (E.D. Va. Mar. 29, 2011), *aff'd sub nom. Suntrust Mortg., Inc. v. United Guar. Residential Ins. Co. of N. Carolina*, 508 F. App'x 243 (4th Cir. 2013). Imposing a standard on lawyer that they must analyze metadata in the first instance, or face sanctions, has never been adopted in this circuit. And this Court should decline to be the first to do so.

Indeed, once again, ICEE wrongly assumes this Court must view the reasonableness of Benesch's certification – without metadata analysis – with 20/20 hindsight. Not true. "A court is

expected to **avoid using the wisdom of hindsight** and should test the signer's conduct by inquiring what was reasonable to believe <u>at the time the pleading</u>, motion, or other paper was submitted." *Merritt v. Int'l Ass'n of Machinists & Aerospace Workers*, 613 F.3d 609, 626 (6th Cir. 2010) (emphasis added). Here, the 2008 email was produced before 1) Benesch caught the misspelling, and 2) Benesch received the expert report detailing the alleged forgery of the 2000 Appointment. There was no reason for Benesch to be suspicious of the email, when it had ample evidence the 2000 Appointment was valid. (*See supra*, Section II.B.); *compare with Suntrust*, 2011 U.S. Dist. LEXIS 33118, at *77 (holding attorneys' actions "cannot be placed in that category" of sanctionable despite not investigating an email even though they knew that the custodian of that email had fabricated two other emails by "the same author on the same topic," given that "they had been led to believe by their client that the problem was not pervasive").

        (iv)    <u>Benesch Satisfied Its Obligation to Preserve Evidence and Was Not Required to Physically Collect Laptops, Computers, and Other Physical Evidence at the Inception of the Case.</u>

Finally, ICEE's suggestion that Benesch was somehow obligated to collect all laptops, computers, and/or other physical evidence at the inception of this case *prior to any request for inspection,* which was served on August 21, 2020, is simply without merit. (*See* Doc. # 89, Page ID # 2320) (criticizing Benesch for failing to examine Peters' laptops, in the first instance). ICEE cites to no legal authority in support of its baseless accusation because, once again, this is not the law.

"[A] party to civil litigation has a duty to preserve relevant information . . . when that party 'has notice that the evidence is relevant to litigation or . . . should have known that the evidence may be relevant to future litigation.'" *John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008). Notably, a party discharges that duty by collecting relevant ESI data – it is not required to

physically collect laptops, computers, or hardware until if and when they are placed on notice of a party's request for the same, or when the forensic investigation of such evidence becomes necessary in a case. *See generally id.* (holding that the "trigger date" is not until a party has notice of a duty to preserve specific evidence). Here, Benesch was placed on notice of ICEE's intent to forensically analyze the actual physical laptops of Mr. Peters no earlier than August 21, 2020, after which Benesch made every effort to preserve this evidence. (*See supra* Section II.C.4.). At that time, the 2008 email, which was the apparent underlying reason for the examination, had been withdrawn. There is simply no basis to sanction Benesch for circumstances outside of its control when such physical evidence was lost prior to its receipt by the firm.

### E. ICEE Fails to Satisfy its Burden to Prove by Clear and Convincing Evidence Sanctions Are Warranted Under This Court's Inherent Authority.

This Court need not evaluate whether sanctions are warranted under the Court's "inherent authority" if it determines that ICEE's request for sanctions pursuant to 28 U.S.C. 1927 and Fed. R. Civ. P. 26(g) are without merit. *See, e.g.*, *Rizvi v. St. Elizabeth Hosp. Med. Ctr.*, No. 4:08cv440, 2009 U.S. Dist. LEXIS 141233, at *11 (N.D. Ohio Nov. 9, 2009). Sanctions pursuant to a court's inherent authority are subject to a higher standard. And, it is well settled that "a court's inherent power should be reserved for those cases in which the conduct of a party or an attorney is egregious and no other basis for sanctions exists." *First Bank v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 516 (6th Cir. 2002). There is simply no evidence – let alone clear and convincing evidence – that any attorney was "motivated by bad faith" in this lawsuit. And ICEE makes no attempt to even argue the inherent authority standard *beyond a five-word conclusion* in its Memorandum. (Doc. # 89, Page ID # 2326). ICEE's Motion is thus properly denied on all counts.

## III.    CONCLUSION.

ICEE's motion is wholly predicated upon sinister conjecture.  And it is submitted without reference to any of the evidence cited above – known to ICEE – which demonstrates there is no basis for ICEE's sinister assumptions.  Frankly, accusing other members of the Bar of "complicity" and "tacit encouragement" of forgery ought to, and does, require that ICEE come forth with actual evidence.  But ICEE does not – only conjecture.  As a result, its Motion for Sanctions should be denied.

Respectfully submitted,

*/s/ Robert W. Hojnoski*
Patrick Kasson (0055570) (Trial Attorney)
Steven A. Chang (0088321)
**REMINGER CO., L.P.A.**
200 Civic Center Drive, Suite 800
Columbus, Ohio 43215
(614) 228-1311 / Fax: (614) 232-2410
pkasson@reminger.com
schang@reminger.com

Robert W. Hojnoski (0070062)
Ian D. Mitchell (0090643)
**REMINGER CO., L.P.A**
525 Vine Street, Suite 1500
Cincinnati, Ohio 45202
(513) 721-1311 / Fax: (513) 721-2553
rhojnoski@reminger.com
imitchell@reminger.com

*Counsel for Non-Parties Benesch,*
*Friedlander, Coplan & Aronoff LLP, Mark*
*Avsec, Elizabeth R. Emanuel, Matthew D.*
*Gurbach, Ronald L. House, Jennifer M. Turk,*
*and Eric Larson Zalud*

29

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 23, 2021 a copy of the foregoing was filed electronically.

Notice of this filing will be sent by operation of the Court's electronic filing system to all parties

indicated on the electronic filing receipt.  Parties may access this filing through the Court's system.

*/s Robert W. Hojnoski*
Robert W. Hojnoski (0070062)