## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO

SLUSH PUPPIE LIMITED,

        Plaintiff/Counterclaim Defendant,

        v.

THE ICEE COMPANY,

        Defendant/Counterclaim Plaintiff.

CASE NO. 1:19-cv-00189-MRB

Judge Michael R. Barrett

## DEFENDANT THE ICEE COMPANY'S
## <u>MOTION FOR PRELIMINARY INJUNCTION</u>

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, Defendant/Counterclaim plaintiff The ICEE Company ("ICEE"), by its attorneys, Duane Morris LLP, hereby moves this Court to preliminarily enjoin Plaintiff/Counterclaim defendant Slush Puppie Limited ("SPL") now known as Frozen Brothers Limited ("Frozen Brothers"), including its officers, agents, employees, and representatives, and those acting in privity and/or concert therewith, pending final hearing or trial in this proceeding as follows:

        (a)      From making, using, importing, distributing, offering for sale and selling any product bearing the SLUSH PUPPIE® marks or logos;

        (b)      From directly or indirectly using the SLUSH PUPPIE® marks in any manner;

        (c)      From holding itself out as a licensee or owner of the SLUSH PUPPIE® marks or holding itself out as being authorized by ICEE or J&J Snack Foods to use the SLUSH PUPPIE® marks.

        (d)      From operating or posting content to any websites or social media sites that (1) contain the Slush Puppie name or any confusingly similar name in their URL or title or (2) in a

manner that indicates or implies that SPL/Frozen Brothers is affiliated with SLUSH PUPPiE or authorized to use the SLUSH PUPPiE name or marks.

       (e)     Within five (5) business days, SPL/Frozen Brothers will surrender and return all URLs containing the SLUSH PUPPiE names or mark to ICEE.

       This Motion is supported by ICEE's memorandum and accompanying materials filed concurrently herewith.

       WHEREFORE, ICEE respectfully requests that the Court grant this Motion and preliminarily enjoin SPL.

Dated:  April 16, 2021                Respectfully submitted,

                                 **DUANE MORRIS LLP**

                                 BY:  _/s/ David J. Wolfsohn_
                                 David J. Wolfsohn (*admitted pro hac vice*)
                                 Tyler R. Marandola (*admitted pro hac vice*)
                                 30 South 17th Street
                                 Philadelphia, PA 19103
                                 Tel.: (215) 979-1000
                                 Fax: (215) 979-1020
                                 djwolfsohn@duanemorris.com
                                 tmarandola@duanemorris.com

                                 Kenneth M. Argentieri (Ohio Bar No. 0067493)
                                 Trial Attorney
                                 600 Grant St., Ste. 5010
                                 Pittsburgh, PA 15219
                                 Tel.: (412) 497-1000
                                 Fax: (412) 497-1001
                                 kmargentieri@duanemorris.com

                                 *Attorneys for Defendant/Counterclaim Plaintiff,*
                                 *The ICEE Company*

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO**

SLUSH PUPPIE LIMITED,

      Plaintiff/ Counterclaim Defendant,

           v.

THE ICEE COMPANY,

      Defendant/ Counterclaim Plaintiff.

CASE NO. 1:19-cv-00189-MRB

Judge Michael R. Barrett

**MEMORANDUM IN SUPPORT OF DEFENDANT THE ICEE COMPANY'S
<u>MOTION FOR PRELIMINARY INJUNCTION</u>**

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ........................................................................................................ 1

II.     FACTUAL BACKGROUND ...................................................................................... 3

        A.      The SLUSH PUPPIE® Marks and ICEE's Acquisition of Them .......................... 3

        B.      ICEE's 1996 and 1999 Agreements With SPL ...................................................... 4

        C.      ICEE Terminates the 1996 and 1999 Agreements but, Based on the Forged
                2000 Appointment, SPL/Frozen Brothers Willfully Infringes the SLUSH
                PUPPIE® Marks and Refuses to Comply with those Agreements'
                Termination Provisions ......................................................................................... 6

III.    ARGUMENT ............................................................................................................. 12

        A.      Legal Standard ..................................................................................................... 12

        B.      ICEE Is Highly Likely to Succeed on the Merits of Its Claims ........................... 12

                1.      ICEE Is Likely To Succeed On Its Lanham Act and Ohio State Law
                        Claims ................................................................................................... 13

                        a)      ICEE owns the SLUSH PUPPIE® Marks and SPL Has Used,
                                and Continues to Use, the SLUSH PUPPIE® Marks Without
                                Authorization ............................................................................. 14

                        b)      SPL's Continued Use of the SLUSH PUPPIE® Marks Is
                                Likely to Cause Confusion .......................................................... 15

                2.      ICEE Is Likely To Succeed On Its Breach of Contract Claims ............... 16

        C.      ICEE Will Suffer Irreparable Harm if a Preliminary Injunction Is not
                Granted ................................................................................................................. 17

        D.      The Balance of Hardships Between ICEE and SPL Tips In ICEE's Favor .......... 18

        E.      The Public Interest Favors the Entry of a Preliminary Injunction ....................... 19

IV.     ICEE SHOULD NOT BE ORDERED TO PAY A BOND .......................................... 19

V.      CONCLUSION ......................................................................................................... 20

i

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*Abercrombie & Fitch Stores, Inc .v. Am. Eagle Outfitters, Inc.,*
    280 F.3d 619 (6th Cir. 2002) ...................................................13

*Abercrombie & Fitch v. Fashion Shops of Kentucky,*
    363 F. Supp. 2d 952 (S.D. Ohio 2005) ...........................................13, 19

*Bonnell v. Lorenzo*,
    241 F.3d 800 (6th Cir. 2001) ...................................................12

*Champions Gulf Club, Inc. v. Champions Golf Club,*
    78 F.3d 1111 (6th Cir. 1996) ...................................................15

*Collins v. Click Camera & Video, Inc.* (1993),
    86 Ohio App. 3d 826, 621 N.E. 2d 1294 ........................................17

*CompuServe Inc. v. Cyber Promotions, Inc.*,
    962 F.Supp. 1015 (S.D. Ohio 1997 ) ............................................12

*Dunkin' Donuts Franchising LLC v. Oza Bros., Inc.,*
    10-cv-13606, 2012 WL 4498118 (E.D. Mich. Sept. 28, 2012) ...............18

*Gaib Equip. Co. v. J.I. Case Co.,*
    875 F.2d 863 (6th Cir. 1989) ...................................................17

*Interactive Products Corp. v. a2z Mobile Office Solutions, Inc.,*
    195 F.Supp.2d 1024 (S.D. Ohio 2001) ..........................................13

*Little Caesar Enters., Inc. v. R-J-L Foods, Inc.,*
    796 F.Supp. 1026 (E.D. Mich. 1992).............................................18

*Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*,
    453 F.3d 377 (6th Cir. 2006) ...................................................19

*NAACP, Nat. Office v. NAACP, Cincinnati Branch*,
    No. 1:15-cv-00433, 2015 WL 4164696 (S.D. Ohio July 9, 2015) ...........12

*Oldendick v. Crocker*,
    2016-Ohio-5621, 70 N.E. 3d 1033..............................................17

*Roth v. Bank of the Commonwealth*,
    58 3 F.2d 527 (6th Cir. 1978 ) ...................................................19

*U.S. Structures, Inc. v. J.P. Structures. Inc.,*
    130 F.3d 1185 (6th Cir. 1997) ...................................................................................15

*Urbain v. Knapp Bros. Mfg .Co.,*
    217 F.2d 8 10, 8 15-16 (6th Cir. 1954) .....................................................................19

*Victoria's Secret Stores v. Artco Equip. Co.,*
    194 F.Supp.2d 704 (S.D. Ohio 2002) .......................................................................13

**Statutes**

15 U.S.C. § 1057 ...............................................................................................................14

15 U.S.C. § 1114 ..........................................................................................................12-13

15 U.S.C. § 1116 ...............................................................................................................17

15 U.S.C. § 1125 ...............................................................................................................12

Ohio R.C. § 4165 ..............................................................................................................12

**Other Authorities**

Fed. R. Civ. P. 65 .........................................................................................................12, 19

I. __INTRODUCTION__

This motion seeks the immediate end to Slush Puppie Limited's brazen trademark infringement, which is being conducted for the sole purpose of satisfying Mark Peters' spiteful vendetta against the ICEE Company for daring to turn down his increasingly onerous and erratic demands and exposing his criminally fraudulent activity in this litigation.

For over five decades, the SLUSH PUPPIE® trademarks have been used to identify and distinguish ICEE's high-quality products from those of its competitors. As such, any instance of unauthorized use of the SLUSH PUPPIE® marks causes irreparable harm to ICEE, the owner of the SLUSH PUPPIE® business and SLUSH PUPPIE® marks.

SPL was a party to two agreements with ICEE relating to the manufacture of syrups and the distribution of certain SLUSH PUPPiE-branded products: a 1996 Appointment of Syrup Manufacturer ("1996 Manufacturer Appointment") (Doc. 27-2) and a 1999 International Independent Area Distributor License Agreement ("1999 Distributor Agreement") (Doc. 27-3). On June 25, 2019, ICEE exercised its right to terminate, effective immediately, the 1996 and 1999 agreements.  Doc. 29-6.  The termination was based on the plain language in both contracts that give ICEE the right to terminate them if and when it is sued by SPL.

When, in December 2019, SPL filed an amended complaint, it alleged that the termination was "ineffective" because the (forged) 2000 Appointment of Trade Mark Licence Agreement "superseded" the 1996 and 1999 agreements: "By letter dated June 28, 2019, from SPL's counsel to ICEE's counsel . . ., SPL informed ICEE that the purported termination of the 1996 Appointment and 1999 Agreement was a nullity as each had been ***superseded by the 2000 Appointment***."  Am. Cmplnt., Doc. 27 ¶ 58 (emphasis supplied); *see also* SPL's Answer to ICEE's counterclaims.  Doc. 32 ¶¶ 36, 37, 38, 39, 42, 43, 51, 52, 53, 54, 56, 57, 59, 60, 61, 62,

63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 83, 85, 87, 93. Accordingly, notwithstanding ICEE's termination, Frozen Brothers has refused to comply with its post-termination obligations under the 1996 Appointment and the 1999 Agreement and it has continued willfully to infringe ICEE's trademarks, in violation of the Lanham Act and Ohio state law, and to refuse to turn over to ICEE domain names and social media accounts using the SLUSH PUPPiE name and marks.

Frozen Brothers' only basis for claiming that the termination was "ineffective" is the forged 2000 Appointment.  Of course, Mark Peters forged the 2000 "Appointment," and it did not "supersede" these two contracts. Doc. 73 PAGEID 1298-1302; Doc. 87 PAGEID 2190-297; DOC. 89 PAGEID 2309-2316; Doc. 98 PAGEID 2507-2511.  While continuing to claim that the termination was "ineffective" because the 2000 Appointment superseded the 1996 and 1999 agreements, paradoxically, Frozen Brothers has admitted that its claims under the 2000 Appointment are "meritless" (Doc. 85 at p. 4), and conceded that "counsel for SPL determined that it could no longer ethically continue to prosecute" those claims (Doc. 82 at p. 11). Indeed, SPL's counsel wants credit for doing the "good deed" of withdrawing those same allegations based on the forged Appointment:  "In the long-standing tradition of 'no good deed goes unpunished,' ICEE ironically argues Benesch's timely withdrawal of all causes of action based on the 2000 Appointment is 'proof' of vexatious conduct.  *It is precisely the opposite*.  Benesch's decision to no longer prosecute claims based on the 2000 Appointment – made prior to any dispositive motion – further evidences its good faith and candor." (emphasis in original). Doc. 95 at PAGEID 2448 (pp. 14-15)  Yet at the same time that SPL wants credit for withdrawing meritless claims two years after they were initiated, SPL continues to use the pendency of this litigation as an excuse to willfully violate ICEE's trademarks.

Given that SPL has now admitted that the 2000 Appointment is a forgery—and wants credit for its "good deed" of belatedly fessing up—SPL cannot claim that the 1996 and 1999 agreements were superseded by the forged Appointment. SPL/Frozen Brothers therefore has no basis to assert that the June 25, 2019 termination notice was ineffective, and thus no defense to its continuing, willful trademark infringement.

ICEE is accordingly entitled to a preliminary injunction barring SPL/Frozen Brothers from continuing to use the SLUSH PUPPIE® marks. ICEE is highly likely to succeed on the merits of its claims because SPL is using the SLUSH PUPPIE® marks without authorization, which is a clear violation of the Lanham Act, Ohio state law, and SPL's post-termination obligations under the agreements. The injury that SPL's conduct is causing to ICEE is immediate, substantial, and irreparable. An injunction would inflict no damage at all on SPL, and the public interest favors avoiding consumer deception and honoring lawfully made agreements. Accordingly, ICEE is entitled to the requested injunction.

## II.     <u>FACTUAL BACKGROUND</u>

### A.     The SLUSH PUPPIE® Marks and ICEE's Acquisition of Them

The SLUSH PUPPIE® frozen drink business was started by Willard ("Will") Radcliff, who founded the Slush Puppie Corporation in Cincinnati, Ohio and built it into a successful international business. Counterclaims to Amended Complaint ("Counterclaims") (ECF Doc. 29) at ¶ 5; Fachner Decl. ¶ 7. From around 1978 until early 2001, Slush Puppie Corporation owned the trademarks for SLUSH PUPPIE® along with various logos and designs used in connection with Slush Puppie Corporation's goods and services. Counterclaims at ¶ 6; Fachner Decl. ¶ 8. The SLUSH PUPPIE® Marks are registered trademarks worldwide, including in the United States, the United Kingdom, and the European Union. Counterclaims at ¶ 7, Ex. D; Fachner

Decl. ¶ 9.  The SLUSH PUPPIE® Marks include U.S. Trademark Registration No. 1,665,188

covering "nonalcoholic slush type beverages, syrups, and preparations for making slush type

beverages" and U.S. Trademark Registration No. 3,132,350 covering "clothing, namely tops, t-

shirts, pants and loungewear, headwear, jackets and footwear." Declaration of Dan Fachner

("Fachner Decl.") at Exs. A and B.

In a December 20, 2000 asset purchase sale, Slush Puppie Corporation sold the SLUSH

PUPPIE business to Dr. Pepper/Seven Up, Inc., which became the new owner of the SLUSH

PUPPiE® trademarks. Counterclaims (Doc. 29) at ¶ 8; Am. Cmplnt. (Doc. 27) ¶ 34, 35.  In 2006,

ICEE acquired the assets of the SLUSH PUPPiE® business from Dr. Pepper/Seven Up and has

been the owner of the Slush Puppie business and of the SLUSH PUPPIE® trademarks ever

since. *Id*.

### B.    ICEE's 1996 and 1999 Agreements With SPL

On or about January 1, 1996, Slush Puppie Corporation entered into an Appointment of

Syrup Manufacturer ("1996 Manufacturer Appointment") with SPL's predecessor, Able Foods

Ltd.  Counterclaims at Ex. A (Doc. 29-1), 1996 Manufacturing Appointment; Fachner Decl. ¶ 13.

Under this agreement, SPL had a limited license to manufacture SLUSH PUPPIE syrup and

neutral base within Europe, the United Kingdom, and Ireland.  *Id.* at p. 1.  The 1996

Manufacturing Appointment provides that Slush Puppie Corporation may cancel and terminate

the appointment by written notice to SPL for, among other reasons, "[t]he filing of any legal

action other than for collection on account against SLUSH PUPPIE, its representatives,

distributors, customers, manufacturers, or suppliers . . . ." *Id.* at ¶ 8.D.

Pursuant to the 1996 Manufacturing Appointment, SPL's predecessor agreed, upon

termination of the agreement, to:

> …immediately cease using said SLUSH PUPPIE trademarks or designs, . . . or
> other marks used in connection with SLUSH PUPPIE, in any manner whatsoever
> . . . immediately cease and desist from further use of any SLUSH PUPPIE
> trademarks, names, logos or references and any formerly approved business name
> of Manufacturer shall be immediately changed to delete any reference to SLUSH
> PUPPIE products.

*Id.* at ¶ 11.

On or about December 23, 1999, Slush Puppie Corporation entered into an International Independent Area Distributor License Agreement ("1999 Distributor Agreement") that granted SPL a limited license to distribute certain SLUSH PUPPIE® "Products" as therein defined, within the United Kingdom and Ireland.  Counterclaims at Ex. B (Doc. 29-2), 1999 Distributor Agreement at ¶¶ 1 ("Definitions"), 2 ("Rights Granted"); Fachner Decl. ¶ 14. Pursuant to the 1999 Distributor Agreement, Slush Puppie Corporation has the right to immediately terminate the agreement for good cause:

> COMPANY may, for good cause, IMMEDIATELY terminate this grant of
> Independent Area Distributor License upon written notice to DISTRIBUTOR,
> without regard to the above stated cure provisions, where DISTRIBUTOR has
> committed or COMPANY reasonably anticipates that DISTRIBUTOR is about to
> commit any of the following acts: . . .  4.  The filing by DISTRIBUTOR of any
> claim or legal action against COMPANY, its representatives, DISTRIBUTORS,
> manufacturers or suppliers . . .

*Id.* at ¶ VIII.F.  SPL further agreed to the following upon termination of the 1999 Distributor Agreement:

> DISTRIBUTOR shall return to COMPANY, or effectively destroy, all literature,
> signs, advertising material, promotional matter, and other materials identifying the
> former DISTRIBUTOR with COMPANY or its PRODUCTS and shall
> immediately cease to identify itself with COMPANY or use the MARKS or any
> confusing similarity thereof, and shall discontinue or change it's [sic] company
> name if DISTRIBUTOR employed any such company name or product mark as a
> part of DISTRIBUTOR'S name, logo, or business.  It is agreed that after expiration
> (without renewal) or termination of this agreement, any use of the MARKS by
> DISTRIBUTOR will result in irreparable injury to COMPANY and
> DISTRIBUTOR hereby consents to a court order enjoining DISTRIBUTOR from
> using the MARKS in any way, notwithstanding any other enforcement remedy.

*Id.* at ¶ III.B.

> Any breach of this DISTRIBUTOR Agreement, or termination . . . shall, of necessity, require Distributor to immediately cease and desist from the further use of the Slush Puppie name and logo, and return any and all PRODUCTS, materials, signs, emblems, and the like, bearing the Slush Puppie name and logo, to COMPANY in Cincinnati, Ohio, freight prepaid.

*Id.* at ¶ VI.H.

By virtue of its purchase of certain SLUSH PUPPIE® assets from DPSU in 2006, ICEE assumed both the 1996 Manufacturing Appointment and 1999 Distributor Agreement. Counterclaims (Doc. 29) at ¶ 9; Am. Cmplnt. (Doc. 27) ¶ 39; Fachner Decl. ¶¶ 12, 13.

### C.  ICEE Terminates the 1996 and 1999 Agreements but, Based on the Forged 2000 Appointment, SPL/Frozen Brothers Willfully Infringes the SLUSH PUPPIE® Marks and Refuses to Comply with those Agreements' Termination Provisions

For eight years, between 2010 and 2018, ICEE and SPL engaged in discussions regarding the scope of SPL's right to use the SLUSH PUPPIE® Marks. Counterclaims at ¶ 46; Fachner Decl. ¶¶ 15-16.  Mark Peters wanted broad rights to use the SLUSH PUPPiE Marks that his legitimate agreements did not give the company, and that he was not able to negotiate, so he forged an exclusive license that "superseded" the 1996 and 1999 agreements.  He lied to ICEE about the forged document, and hired British and U.S. counsel to threaten ICEE based on that forgery.  When that did not work, on February 12, 2019, SPL filed a complaint based on the forged Appointment against ICEE in the Hamilton County Court of Common Pleas on February 12, 2019 (*Slush Puppie Limited v. The ICEE Company,* Case No. A1900754). *Id.* at ¶ 58. ICEE removed SPL's lawsuit to this Court. *Id.* at ¶ 60; Doc. 1.  All the claims were based on the forged 2000 Appointment of Trade Mark Licence ("the forged 2000 Appointment"), which SPL falsely alleged was the operative agreement governing the relationship between ICEE and SPL.

6

Putting aside the fact that SPL's claims were based on a forged license agreement, those meritless claims were not for collection on account. Counterclaims at ¶ 59; Doc. 1. Therefore, under the express terms of both the 1996 Manufacturing Appointment and 1999 Distributor Agreement, ICEE was entitled to terminate both agreements because of the lawsuit. Counterclaims (Doc. 29) at Ex. A, 1996 Manufacturing Appointment at ¶ 8.D; Counterclaims (Doc. 29) at Ex. B, 1999 Distributor Agreement at ¶ VIII.F; Am. Cmplnt. (Doc. 27) at Exhs. B & C. Accordingly, on June 25, 2019, ICEE sent notice to SPL that it was immediately terminating SPL's rights under the 1996 Manufacturing Appointment and 1999 Distributor Agreement based on SPL's filing of this litigation against ICEE. *Id.* at Ex. F, June 25, 2019 Termination Letter; Am. Cmplnt. (Doc. 27) ¶ 57 & Exh. L. SPL acknowledged receipt of the June 25, 2019 notice of termination, but argued that it was "ineffective." Counterclaims at Ex. G, June 28, 2019 Response Letter; Am. Cmplnt. (Doc. 27) ¶ 58.

SPL's only basis for alleging that the termination was "ineffective" is its claim that the 1996 and 1999 agreements have been superseded by the forged 2000 Appointment of Trade Mark Licence: "By letter dated June 28, 2019, from SPL's counsel to ICEE's counsel . . . SPL informed ICEE that the purported termination of the 1996 Appointment and 1999 Agreement was a nullity as each had been superseded by the [forged] 2000 Appointment." Am. Cmplnt. (Doc. 27) ¶ 58. SPL parroted this claim in its Answer to ICEE's Counterclaims. *See* Doc. 32 ¶ 39 ("Plaintiff states that the purported termination of agreements that were no longer effective is a nullity.").

SPL/Frozen Brothers' continued claim that the 1996 and 1999 agreements were "superseded" by the forged 2000 Appointment is, of course, completely inconsistent with its more recent admissions that those claims are "meritless" and based upon a fabricated agreement.

*See* SPL's Reply In Support of Motion to Amend (ECF Doc. 85) at p. 4 ("the claims premised upon the 2000 Agreement were meritless"); SPL's Memorandum In Opposition to ICEE's Motion For Sanctions (ECF Doc. 82) at p. 11 ("counsel for SPL determined that it could no longer ethically continue to prosecute claims under the 2000 Agreement"). And that position is also inconsistent with the position of certain of SPL's present and former litigation counsel they have done a "good deed" and acted "in good faith and candor" by belatedly acknowledging that the forged 2000 Appointment and other key documents in this case were forged by Mark Peters. Doc. 95 PAGEID 2448 (pp. 14-15). In short, if SPL/Frozen Brothers is now conceding that the 2000 Appointment is a forgery, then it must also concede that the June 25, 2019 termination notice was effective.

Since SPL/Frozen Brothers has no right to use the SLUSH PUPPiE marks, ICEE has sought the return of domain names and email addresses using those marks. SPL/Frozen Brothers has refused, thereby forcing ICEE's parent company, J&J Snack Foods, to initiate proceedings in various European tribunals in order to gain control of domain names using the SLUSH PUPPIE® Marks. In response to those actions, SPL/Frozen Brothers has represented to the European tribunals that the issue of whether the June 25, 2019 termination notice was effective is before this Court, and that, until that issue is resolved, SPL Frozen Brothers can continue willfully to infringe ICEE's trademarks. For example, on November 20, 2020, J&J Snack Foods filed a complaint regarding the domain <*Slushpuppie.nl*> registered by Frozen Brothers BV ("Frozen Brothers"), in an action entitled *J&J Snack Foods Corp. v. Frozen Brothers BV,* Case No. DNL2020-0054. T. Marandola Decl. at ¶ 3, Ex. 2. Rather than transferring this domain to ICEE and, ceasing its improper use of the SLUSH PUPPIE® Marks, Frozen Brothers responded to the complaint requesting that the panel  refrain from taking *any* action and place the WIPO-

proceeding on hold until the resolution in *this* action of the issue of the termination of the 1996 and 1999 agreements:

> Further: proceedings are pending in the United States between J & J's licensee ICEE and SPUK regarding, among other things, the termination of the license. In the opinion of SPUK and WIPO-Defendant Frozen Brothers BV (hereinafter: "FBBV") that license has been unlawfully terminated. The judge has yet to decide on this. So J&J is getting ahead of things in the domain name procedure. The USA-procedure can be followed here: https://www.docketbird.com/courtcases/Slush-Puppie-Limited-v-The-Icee-Company/ohsd-1:2019-cv-00189 (abbreviated url: http://bit.ly/spuk-icee). The complaint is attached (annex).
>
> […]
>
> The key point appears to be that the issues concerning the domain names on which J&J/ICEE seeks to rely are already the subject of ongoing legal proceedings in the Ohio Courts. Although J&J/ICEE note that the Respondent and the Domain Names are not the subject of those proceedings, J&J/ICEE seek to rely upon those proceedings – and in particular the alleged termination of the licence to SPL – as the basis for its allegations of lack of legitimate right or interest and bad faith. Accordingly, the certification at Section VI that there are no other legal proceedings concerning the Domain Names is (materially) incorrect because of the USA Icee vs SPUK-proceedings. This is reason enough to put the WIPO-procedure on hold.

T. Marandola Decl. at Ex. 2, ¶¶ 2, 4. Incredibly, in its attempt to excuse its continued trademark infringement, Frozen Brothers presented to WIPO *the original complaint in this case*—the same complaint that SPL/Frozen Brothers has admitted in this Court is "meritless" because it is based on a forged contract (Doc. 85 at p. 4), and the same complaint that asserts the claims that "counsel for SPL determined that it could no longer ethically continue to prosecute" (Doc. 82 at p. 11). On April 6, 2021, the WIPO panel accepted Frozen Brothers' argument that the pendency of this litigation should preclude return of the SLUSH PUPPiE domains. T. Marandola Decl. at ¶ 4, Ex. 3 at 5.

Likewise, on December 9, 2020, ICEE's parent company also filed a complaint regarding the domain <*slushpuppie.ch*> registered by Slush Ice and Drink AG ("Slush Ice"), in an action entitled *J&J Snack Foods Corp. v. Slush Ice  & Drinks AG*, Case No. DCH2020-0025. T. Marandola Decl. at ¶ 5, Ex. 4. Slush Ice refused to transfer the domain based on the same

9

arguments—even seeking a stay of the proceeding based on the supposed need to have this Court determine whether ICEE properly terminated the 1996 and 1999 agreements on June 25, 2019. T. Marandola Decl. at Ex. 5 ¶¶ 2, 4.  And yet again, on March 26, 2021, the WIPO panel in this proceeding accepted Frozen Brothers' argument that the pendency of this litigation should preclude transfer.  T. Marandola Decl. at ¶ 7, Ex. 6.

Instead of turning over the SLUSH PUPPiE domains to ICEE as it is required to do under the 1999 Distributor Agreement, SPL/Frozen Brothers has kept them and removed the content from them, thus causing visitors to receive a message that the website has "expired" or providing an error message.  For example, visiting slushpuppie.co.uk returns the following message:



T. Marandola Decl. ¶ 8.  And visiting slushpuppie.fr returns the following message:

## Error establishing a database connection

*Id.* at ¶ 9.  A domain name "WHOIS" search for slushpuppie.fr shows that it is owned by "Slush Puppie Benelux BV, which is listed as a subsidiary of Frozen Brothers on Frozen Brothers' most recent company annual report.  *Id.* at ¶ 10, Ex. 7.  Leaving these empty websites sitting, rather than turning them over to ICEE as SPL/Frozen Brothers is contractually and legally obligated to do, harms the SLUSH PUPPIE® brand.

It also appears that SPL/Frozen Brothers is continuing to service some SLUSH PUPPiE distributors in Europe, presumably supplying them with Slush Puppie-branded cups, syrups, and machines to purported "licensees"—even though SPL/Frozen Brothers has no right to have any SLUSH PUPPiE licensees or to distribute any SLUSH PUPPiE-branded materials or products to them.  And SPL/Frozen Brothers continues to operate a twitter account at https://twitter.com/slushpuppieuk?lang=en, and at least until recently had other social media accounts using the SLUSH PUPPiE® Marks.  SPL/Frozen Brothers also continues to tout its supposed connection to the SLUSH PUPPiE® brand on the Frozen Brothers website:

## OUR HERITAGE

We are **Frozen Brothers** a company created from a union of family businesses that back in 1974 introduced the United Kingdom, Europe and, Scandinavia to a frozen beverage called Slush Puppie.

*See* frozenbrothers.com (last visited April 1, 2021).

SPL also apparently is continuing to authorize Rose Marketing, a distributor of candy products, to sell products with the SLUSH PUPPiE® Marks—which SPL/Frozen Brothers never had the right to do even during the term of the 1996 and 1999 agreements, but claimed the right to do based on the forged 2000 Appointment.  Even now, months after SPL/Frozen Brothers has acknowledged that the 2000 Appointment is a fabrication and its claims thereunder are "meritless," Rose Marketing's website shows multiple SLUSH PUPPiE branded products for sale (https://www.rosemarketinguk.com/slush-puppie/).  T. Marandola Decl. ¶ 12, Ex. 9; D. Fachner Decl. ¶ 24.

On January 28, 2021, ICEE put SPL/Frozen Brothers on notice of its continuing willful infringement of the SLUSH PUPPiE trademarks.  T. Marandola Decl. at ¶ 13, Ex. 10.  ICEE reminded SPL of the June 25, 2019 termination, and demanded that SPL cease and desist from

using the SLUSH PUPPiE trademarks. *Id*. ICEE also demanded that SPL/Frozen Brothers immediately transfer all of the domain names and social media accounts using the Slush Puppie name or trademarks. SPL/Frozen Brothers never responded.

## III.    ARGUMENT

### A.    Legal Standard

In determining whether to issue preliminary injunctive relief pursuant to Fed. R. Civ. P. 65, federal courts consider four factors: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction." *Bonnell v. Lorenzo*, 241 F.3d 800, 809 (6th Cir. 2001) (quotations and citation omitted).

### B.    ICEE Is Highly Likely to Succeed on the Merits of Its Claims

ICEE's counterclaims allege breach of contract (Count II and III), trademark infringement in violation of the Lanham Act at 15 U.S.C. § 1114 (Counts IV), unfair competition and false designation of origin in violation of the Lanham Act at 15 U.S.C. § 1125(a) (Count V), and deceptive trade practices in violation of Ohio R.C. § 4165 (Count VI).

ICEE can show a strong likelihood of success on the merits. "A preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a full trial on the merits. Indeed, '[a] party . . . is not required to prove his case in full at a preliminary injunction hearing.'" *CompuServe Inc. v. Cyber Promotions, Inc*., 962 F.Supp. 1015, 1019 (S.D. Ohio 1997 ). But that aside, none of the facts relevant to this motion are in dispute.

1.    **ICEE Is Likely To Succeed On Its Lanham Act and Ohio State Law Claims**

To prevail on its claim under the Lanham Act, 15 U.S.C. § 1114, ICEE must show (1) that it owns a valid, protectable trademark, (2) that SPL used the mark without the registrant's permission, and (3) there is a likelihood of consumer confusion. *NAACP, Nat. Office v. NAACP, Cincinnati Branch*, No. 1:15-cv-00433, 2015 WL 4164696, at *3 (S.D. Ohio July 9, 2015) (citing *Too, Inc. v. TJX Companies, Inc.*, 229 F. Supp. 2d 825, 829 (S.D. Ohio 2002)).

The touchstone of a trademark claim under section 1114 is whether SPL's use of the SLUSH PUPPIE® Marks is likely to cause confusion among consumers regarding the origin of the goods offered by the parties. *Abercrombie & Fitch v. Fashion Shops of Kentucky,* 363 F. Supp. 2d 952, 959 (S.D. Ohio 2005) (citing *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Center*, 109 F.3d 275, 280 (6th Cir. 1997)).

Further, the analysis of unfair competition and Ohio's deceptive trade practice statutes is substantially the same. *See id; Abercrombie & Fitch Stores, Inc .v. Am. Eagle Outfitters, Inc.,* 280 F.3d 619 , 626 n. 2 (6th Cir. 2002) ("Both Ohio and federal courts have recognized that the same analysis applies to claims under Ohio's statutory and common law unfair competition and the Lanham Act"); *Victoria's Secret Stores v. Artco Equip. Co.,* 194 F.Supp.2d 704, 724 n. 8 (S.D. Ohio 2002) ("The Court notes the same analysis applies to [federal] trademark infringement, unfair competition, Ohio common law, and Ohio's deceptive trade practices statutes."); *Interactive Products Corp. v. a2z Mobile Office Solutions, Inc.,* 195 F.Supp.2d 1024, 1030 (S.D. Ohio 2001).

a)   **ICEE owns the SLUSH PUPPIE® Marks and SPL Has Used, and Continues to Use, the SLUSH PUPPIE® Marks Without Authorization**

There is no dispute that ICEE is the exclusive owner of the SLUSH PUPPIE® Marks. Counterclaims at Ex. C, Trademark Assignment Agreement; SPL Amended Cmplnt., Doc. 27 ¶ 39. SPL acknowledged that ICEE's predecessor in interest is the exclusive owner of the SLUSH PUPPIE® Marks in both the 1996 Manufacturing Appointment and 1999 Distribution Agreement. Counterclaims at Ex. A, 1996 Manufacturing Appointment at ¶ 11 ("It is agreed that SLUSH PUPPIE [Corp.] is the registered owner of the trademark "SLUSH PUPPIE"…"), Ex. B, 1999 Distributor Agreement at ¶ III.B ("COMPANY is the owner of any and all of the PRODUCTS MARKS."), ¶ VI ("The SLUSH PUPPIE name and logo are registered trademarks of COMPANY."). SPL also "admit[ted] that ICEE owns registered trademarks for SLUSH PUPPIE marks in the United States, the United Kingdom and the European Union." Answer to Counterclaims (ECF Doc. 32) at ¶ 79. And SPL even alleged that ICEE "acquired all right, title and interest" to the SLUSH PUPPiE marks in its amended complaint.  Doc. 27 PAGEID 357 ¶ 39. Moreover, the SLUSH PUPPIE® Marks are registered worldwide, including with the United States Patent and Trademark Office and, therefore, are presumed valid. 15 U.S.C. § 1057(b). ICEE is the registrant of the marks. D. Fachner Decl. at ¶ 9, Exhs. A and B.

Upon termination of the 1996 Manufacturing Appointment and 1999 Distribution Agreement, any right SPL had to use the SLUSH PUPPIE® Marks immediately ceased. Counterclaims at Ex. A, 1996 Manufacturing Appointment at ¶ VIII.F, Ex. B, 1999 Distributor Agreement at ¶¶ III.B, VI.H. SPL alleged that the termination was "ineffective" based on the forged 2000 Appointment, but it has now admitted that it cannot ethically prosecute claims under that forged appointment.  Accordingly, as a matter of law, the June 25, 2019 termination notice was effective.

14

Nevertheless, SPL continues to use the SLUSH PUPPIE® Marks. Most recently, SPL and its related entities have refused to cease use of and relinquish numerous domain names consisting of the SLUSH PUPPIE® Marks, and Frozen Brothers has brazenly sought to sell various SLUSH PUPPiE domains to create consumer confusion rather than to return them to their rightful owner under the 1999 Distributor Agreement.

> **b)** **SPL's Continued Use of the SLUSH PUPPIE® Marks Is Likely to Cause Confusion**

Although the Court normally will apply an eight-part test to determine whether there is a likelihood of confusion (*see e.g., Champions Gulf Club, Inc. v. Champions Golf Club,* 78 F.3d 1111, 111 (6th Cir. 1996)), it is not necessary to apply that test in the instant case. In *U.S. Structures, Inc. v. J.P. Structures. Inc.,* 130 F.3d 1185, 1190 (6th Cir. 1997), the Sixth Circuit held that the "continued, unauthorized use of an original trademark by one whose license has been terminated is sufficient to establish 'likelihood of confusion.'"

Similarly, the Sixth Circuit firmly held that a properly terminated franchisee's continued unauthorized use of licensed marks is likely to confuse the public, as the public is likely to believe from the continued use of the marks that the franchisor continues to approve of and endorse the continued operation of the business.

> Common sense compels the conclusion that a strong risk of consumer confusion arises when a terminated franchisee continues to use the former franchisor's trademarks. A patron of a restaurant adorned with the Burger King trademark undoubtedly would believe that [the franchisor, Burger King Corporation] endorses the operation of the restaurant. Consumers automatically would associate the trademark user with the registrant and assume that they are affiliated. Any shortcomings of the franchise therefore would be attributed to [the franchisor, Burger King Corporation].  Because of this risk, many courts have held that continued trademark use by one whose trademark license has been canceled satisfies the likelihood of confusion test and constitutes trademark infringement.

15

*U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1190 (6th Cir. 1997) (*quoting Burger King Corp. v. Mason*, 710 F.2d 1480, 1492-93 (11th Cir. 1983)).

Thus, the continued use of the SLUSH PUPPIE® Marks by SPL, after the termination of its limited right to use the marks pursuant to the 1996 Manufacturing Appointment and 1999 Distributor Agreement, is sufficient to establish likelihood of confusion.

### 2. ICEE Is Likely To Succeed On Its Breach of Contract Claims

In accordance with the provisions of the 1996 Manufacturing Appointment and 1999 Distributor Agreement, ICEE has the right to immediately terminate the agreements upon SPL filing a legal action "other than for collection on account" against ICEE. Counterclaims at Ex. A, 1996 Manufacturing Appointment at ¶ 8.D, Ex. B, 1999 Distributor Agreement at ¶ VIII.F.4. As such, ICEE properly terminated the agreements when it provided SPL written notice on June 25, 2019, following SPL's filing of its original complaint against ICEE in the Hamilton County, Ohio Court of Common Pleas on February 12, 2019. Counterclaims at Ex. F, Termination Letter. SPL acknowledged, in writing, receipt of ICEE's termination notice three days later on June 28, 2019. *Id.* at Ex. G, June 28, 2019 Response Letter; Am. Cmplnt. ¶¶ 57 & 58 & Exhs. L & M, Doc. 27 & 27-12 & 27-13.

Nevertheless, as noted above, SPL continues to use the SLUSH PUPPIE® Marks and withhold the SLUSH PUPPiE domains, in violation of its post-termination obligations to cease all use of the marks. Counterclaims at Ex. A, 1996 Manufacturing Appointment at ¶ VIII.F, Ex. B, 1999 Distributor Agreement at ¶¶ III.B, VI.H. Notably, SPL has refused to surrender numerous domain names incorporating the SLUSH PUPPIE® Marks and opposed ICEE's efforts to regain control of domain names despite no longer having a right to use those marks.

. SPL may argue, as it did in its June 28, 2019 letter (Exh. M to SPL's Amended

16

Complaint, Doc. 27-13) that the termination provisions in the 1996 Manufacturing Appointment and 1999 Distributor Agreement are "unconscionable" and, therefore, unenforceable. Counterclaims at Ex. G, June 28, 2019 Response Letter. This argument is baseless.

"Unconscionability is generally recognized to include an absence of meaningful choice on the part of one of the parties to a contract, combined with contract terms that are unreasonably favorable to the other party." *Collins v. Click Camera & Video, Inc.* (1993), 86 Ohio App. 3d 826, 834, 621 N.E. 2d 1294. The Sixth Circuit has established that "[o]ne of the necessary elements of unconscionability in dealer termination clauses is coercion or force to enter the contract." *Gaib Equip. Co. v. J.I. Case Co.,* 875 F.2d 863 (6th Cir. 1989)(*citing Corenswet,* 594 F.2d at 139 n. 12.) It is SPL's burden, as the party claiming unconscionability, to prove the provision at issue is unconscionable. *Oldendick v. Crocker,* 2016-Ohio-5621, ¶ 21, 70 N.E. 3d 1033, 1041. SPL cannot meet that burden. There is no evidence that SPL was coerced into entering into either the 1996 Manufacturing Appointment or 1999 Distributor Agreement. The mere fact that SPL agreed to two similar termination clauses, *three years apart,* is in and of itself indicative that these were willingly agreed-upon provisions.

Moreover, SPL received the benefits of the 1996 and 1999 agreements for decades, without ever claiming they were "unconscionable." SPL is accordingly estopped from making such a frivolous claim at this late date. Finally, if the agreements are unconscionable, then they are considered void *ab initio*, meaning that SPL certainly has no rights under those agreements. It therefore is not authorized to use the SLUSH PUPPiE marks or to license them to others.

### C. ICEE Will Suffer Irreparable Harm if a Preliminary Injunction Is not Granted

The Trademark Modernization Act of 2020 ("TMA"), signed into law on December 27, 2020, amended Section 34 of the Lanham Act (15 U.S.C. 1116) to add a presumption of

irreparable harm upon a finding of infringement, or of likely success on the merits in a preliminary injunction context.[1] ICEE has shown a likelihood of success on the merits and therefore is entitled to the benefit of the rebuttable presumption or irreparable harm.

Moreover, SPL explicitly acknowledged that any unauthorized use of the SLUSH PUPPIE® Marks after termination of the 1999 Distribution Agreement will result in irreparable harm to ICEE and, therefore, SPL consented to an order enjoining use of the marks. Counterclaims, Ex. B, 1999 Distributor Agreement at III.B ("It is agreed that after expiration (without renewal) or termination of this agreement, any use of the MARKS by DISTRIBUTOR will result in irreparable injury to COMPANY and DISTRIBUTOR hereby consents to a court order enjoining DISTRIBUTOR from using the MARKS in any way, notwithstanding any other enforcement remedy.").  SPL/Frozen Brothers will not be able to rebut the presumption of irreparable harm contained within the TMA.

### D.    The Balance of Hardships Between ICEE and SPL Tips In ICEE's Favor

In balancing the equities, the Court must weigh the harm that will be suffered by ICEE if SPL is not enjoined with the harm, if any, caused by enjoining SPL. When doing so, it is significant that the proposed injunction merely prevents SPL from misappropriating the intellectual property owned by ICEE, which SPL now has no rights. *See Little Caesar Enters., Inc. v. R-J-L Foods, Inc.,* 796 F.Supp. 1026, 1035-36 (E.D. Mich. 1992)

---

[1]  15 U.S.C. § 1116(a): "A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection in the case of a motion for a permanent injunction or upon a finding of likelihood of success on the merits for a violation identified in this subsection in the case of a motion for a preliminary injunction or temporary restraining order."

ICEE's consumers also are currently being harmed insofar as they are wrongly being led to believe that they are purchasing products from an authorized SLUSH PUPPIE distributor. Furthermore, any arguable harm that SPL may claim it would suffer from an injunction is self-inflicted and therefore does not weigh in favor of denying ICEE's motion. See *Dunkin' Donuts Franchising LLC v. Oza Bros., Inc.,* 10-cv-13606, 2012 WL 4498118, at *9 (E.D. Mich. Sept. 28, 2012) ("Although Defendants will lose their business, it is Defendants' own wrongdoing that brought them before this Court.").

### E. The Public Interest Favors the Entry of a Preliminary Injunction

The Lanham Act is primarily designed to protect the public from confusion in the marketplace. *Abercrombie*, 363 F. Supp. 2d at 968. The Sixth Circuit and courts in this district have held that avoiding confusion in the marketplace by issuing an injunction is in the public interest. *Id*.; *Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc*., 453 F.3d 377, 383 (6th Cir. 2006)(recognizing a public interest in "preventing consumer confusion and deception in the marketplace and protecting the trademark holder's property interest in the mark.").

Further, the public interest is served when contractual commitments are honored and parties are not permitted to benefit from dishonest and unfair dealing. "The public has a strong interest in holding private parties to their agreements." *S. Glazer's Distribs. of Ohio, LLC*, 860 F.3d at 853. As set forth above, SPL has breached and continues to breach the 1996 Manufacturing Appointment and 1999 Distributor Agreement.

### IV. ICEE SHOULD NOT BE ORDERED TO PAY A BOND

While Fed. R. Civ. P. 65 generally requires a party that has been granted injunctive relief to post a bond as security, a bond is not necessary here. The Sixth Circuit has held that this requirement is committed to the sound discretion of the trial court. *See, e.g ., Roth v. Bank of the*

*Commonwealth*, 58 3 F.2d 527 , 538 -6 9 (6th Cir. 1978 ); *Urbain v. Knapp Bros. Mfg .Co,.* 217
F.2d 8 10, 8 15-16 (6th Cir. 1954). This discretion necessarily includes the authority of the trial
court to determine that the injunction may issue without any bond. *Urbain*, 217 F.2d at 815-16.

ICEE informed SPL in June of 2019 that its limited license to use the SLUSH PUPPIE®
Marks, pursuant to the 1996 Manufacturing Appointment and 1999 Distributor Agreement, was
terminated. SPL acknowledged receipt of the termination letter.  SPL's excuse for ignoring the
termination letter was the forged 2000 Appointment.  Since then, SPL has admitted that it cannot
ethically proceed to prosecute claims under the forged Appointment, yet it continues willfully to
infringe ICEE's trademarks. Any damage that SPL will suffer was done at a known risk.
Accordingly, ICEE should not be required to post a bond.

## V.    CONCLUSION

ICEE is entitled to injunctive relief to prevent irreparable harm caused by Frozen
Brothers' actions.  No harm will be caused to Frozen Brothers by requiring it to cease its
infringement and transfer its domains and social media accounts that continue illegally to use the
SLUSH PUPPiE name and marks.  The relief that ICEE seeks will place the parties in the same
positions they would have been in but for SPL's intentional decision to confuse and mislead the
public through the use of the SLUSH PUPPIE® Marks notwithstanding the termination almost
two years ago of its limited license under the 1996 Manufacturing Appointment and 1999
Distributor Agreement. Accordingly, all of the requirements for issuance of the injunctive relief
sought by ICEE in this case are met, and the Court should issue an order substantially in the form
of the accompanying proposed Order.

Dated: April 16, 2021        Respectfully submitted,

**DUANE MORRIS LLP**

BY: _/s/ David J. Wolfsohn_
David J. Wolfsohn (*admitted pro hac vice*)
Tyler R. Marandola (*admitted pro hac vice*)
30 South 17th Street
Philadelphia, PA 19103
Tel.: (215) 979-1000
Fax: (215) 979-1020
djwolfsohn@duanemorris.com
tmarandola@duanemorris.com

Kenneth M. Argentieri (Ohio Bar No. 0067493)
Trial Attorney
600 Grant St., Ste. 5010
Pittsburgh, PA 15219
Tel.: (412) 497-1000
Fax: (412) 497-1001
kmargentieri@duanemorris.com

*Attorneys for Defendant/Counterclaim Plaintiff,*
*The ICEE Company*

21