# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| SLUSH PUPPIE LIMITED,<br><br>   Plaintiff/ Counterclaim Defendant,<br><br>   v.<br><br>THE ICEE COMPANY,<br><br>   Defendant/ Counterclaim Plaintiff. | CASE NO. 1:19-cv-00189-MRB<br><br>Judge Michael R. Barrett |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT THE ICEE COMPANY'S
MOTION FOR PRELIMINARY INJUNCTION**

I.      **INTRODUCTION**

SPL/Frozen Brothers' opposition brief concedes probability of success on the merits—to wit, that ICEE properly terminated the 1996 Manufacturing Appointment and 1999 Distributor Agreement almost 2 years ago and that SPL/Frozen Brothers therefore have no rights to use the SLUSH PUPPIE marks or sell any Slush Puppie products anywhere in the world.  SPL Br. at 1 ("the Court need not address the underlying merits.").  This is nothing short of astonishing because SPL/Frozen Brothers has been repeatedly arguing in the European tribunals that those agreements were *not* properly terminated and that it is *only* this Court—and *not* the European tribunals—that must rule on that very issue. Incredibly, SPL's brief does not even mention the 1996 and 199 agreements *at all*.  Nor does SPL argue that it has some other rightful basis to continue to use the SLUSH PUPPIE® trademarks, devalue the brand by holding onto domain names using the mark, and maintain a presence on social media as "Slush Puppie."  Instead, SPL/Frozen Brothers (hereinafter, "SPL") makes the following frivolous arguments: (1) that this Court lacks jurisdiction to tell SPL to stop using the SLUSH PUPPIE® marks; (2) that it has already stopped using the SLUSH PUPPIE® marks, or soon will; (3) that ICEE cannot show irreparable harm; and (4) that ICEE failed to "plead a count for injunctive relief" and so cannot seek an injunction.

SPL's jurisdictional argument is the height of hypocrisy.  It was SPL that filed this case and asked *this* Court to decide the parties' respective rights to the SLUSH PUPPIE® trademarks in Europe.  And it was SPL that asked *this* Court to issue declarations and injunctions relating to the use of the SLUSH PUPPIE trademarks and the conduct of third parties in Europe. *See, e.g.,* Amended Complaint Doc. 27 at p. 34 (asking the Court to enter an order "enjoining Defendant ICEE to instruct all third parties to whom ICEE has granted the right to manufacture and sell

1

SLUSH PUPPIE neutral base and syrups in the 1996 Territory that such use is contrary to ICEE's obligations to SPL and contrary to law and that said third parties must cease and desist from further manufacture and sale of SLUSH PUPPIE neutral base and syrups in the 1996 Territory"; p. 35 (same as to 1999 Distributor Agreement). The 1996 Appointment and the 1999 Agreement are both governed by Ohio law, and both require explicitly that SPL cease all use of the SLUSH PUPPIE® trademarks upon termination—the precise obligations ICEE is seeking to enforce. Moreover, SPL is judicially estopped from making its extraterritoriality argument because—as ICEE set forth in its opening brief—SPL/Frozen Brothers repeatedly told foreign tribunals that *this Court* was the one to decide whether SPL has rights to the SLUSH PUPPIE® trademark in Europe. SPL prevailed on that argument, and thus it must get what it asked for—a decision from this Court that the license agreements have been properly terminated and that SPL has no basis for using the SLUSH PUPPIE® trademarks in Europe. And, of course, as noted, SPL has conceded this very point—making no argument that the license agreements were not properly terminated, and making no argument that it has any rights at all to the SLUSH PUPPIE trademarks. SPL's cynical misuse of the justice system must be stopped.

Moreover, SPL *has not* stopped using the SLUSH PUPPIE® trademarks, and *has not* carried out its obligations under the 1996 Appointment and 1999 Agreement to stop infringing and to return to ICEE the SLUSH PUPPIE® branded materials—such as the domain names—in its possession. While SPL's declarant Laura Peters claims that "[o]n November 17, 2020, SPL formerly [*sic*] changed its name and brand from Slush Puppie to Frozen Brother Limited," in fact on the very same day Ms. Peters signed a filing changing the name of an existing company from "Frozen Brothers Limited" to "Slush Puppie Limited." *See* Ex. A (Name Change documents). Put simply, SPL, no doubt at the behest of Mark Peters, appears to be playing a crude shell game

2

by changing the name of the litigant in this case only to resume using the Slush Puppie name under a nominally distinct company. Frozen Brothers continues to misuse the SLUSH PUPPIE trademarks, and it has admitted it has no right to do so. The Court must therefore put an end to SPL's game-playing and enter a preliminary injunction.

SPL's "irreparable harm" arguments fare no better. As an initial matter, trademark law *presumes* irreparable harm; it is not ICEE's burden to demonstrate it here. And just as fundamentally, SPL's ongoing infringement does cause ICEE irreparable harm. SPL and its principal Mark Peters have forged documents and committed perjury repeatedly during the course of this case. Having the SLUSH PUPPIE® brand associated with persons and companies of such character threatens to irreparably damage the brand in the eyes of the public. And it deprives ICEE of control over the brand in Europe—a classic form of irreparable harm in the trademark context.

Finally, SPL's claim that ICEE cannot seek an injunction because it has not "pled a count" for an injunction is bizarre. As countless courts have recognized, an injunction is a remedy, and not a "count" or "claim" unto itself. *See, e.g.*, *Mills v. Deutsche Bank Nat'l Trust Co.*, 2014 WL 130548, at *5 (S.D. Ohio Jan. 12, 2014) ("[A]n injunction is a remedy, not a claim for relief unto itself."). Thus, pleading it as Frozen Brothers argues would have been improper. ICEE's Amended Counterclaims properly and expressly seek injunctive relief as part of each count and as part of the separate prayer for relief.

Put simply, SPL fails to address that ICEE properly terminated the 1996 Appointment and 1996 Agreement and effectively concedes ICEE's likelihood of success on the merits. And the arguments SPL does raise, including telling the Court that it has no power to address SPL's infringement after successfully convincing foreign tribunals that the issue is properly before this

3

Court, are meritless, misleading, and frivolous. A preliminary injunction is necessary and justified at this time. As the history of this case and SPL's continued infringement demonstrate, SPL cannot operate on the "honor" system. The Court should enter an order (i) declaring that SPL's rights under the 1996 Appointment and 1999 Agreement have been validly terminated; (ii) declaring that SPL has no right to use the SLUSH PUPPIE® trademarks; and (3) preliminarily enjoining ICEE from further use of the SLUSH PUPPIE® trademarks, effective immediately, as set forth in ICEE's proposed order.

## II. ARGUMENT

### A. SPL is Estopped from Denying This Court's Jurisdiction

SPL's claim that the Court lacks jurisdiction to enjoin its conduct in Europe is cynical even by the low standards of its behavior in this case. After all, it was SPL that filed this case and asked the Court to enjoin *ICEE* from using the SLUSH PUPPIE® trademarks in Europe! ECF No. 1-1, at PAGEID 29. Now that SPL's fraud has been exposed, it apparently has a much more limited view of the Court's power. That will not wash. The 1996 Appointment and 1999 Agreement are both governed by Ohio law and require the parties to submit to jurisdiction in Ohio, which SPL did by choosing to file its case here. SPL does not argue that the Court lacks jurisdiction to issue an order based on ICEE's contractual claims ruling that: (1) ICEE validly terminated the 1996 Appointment and 1999 Agreement and (2) SPL has no right to use the SLUSH PUPPIE® trademarks. That is precisely what ICEE's motion asks the Court to do.

Just as fundamentally, with respect to the Lanham Act, SPL is judicially estopped from denying the Court's power to decide the termination of the licenses and its right to use the SLUSH PUPPIE® trademarks. Judicial estoppel provides that "where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter,

4

simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). The doctrine thus "protects the integrity of the judicial process by preventing a party from taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding." *Reynolds v. Comm'r of Internal Revenue*, 861 F.2d 469, 472 (6th Cir. 1988).

That is precisely what SPL has done here. In two administrative proceedings over the slushpuppie.nl and slushpuppie.ch domain names, SPL unequivocally took the position that the tribunal of the World Intellectual Property Organization should not order the transfer of the domain names to ICEE's parent company precisely because SPL was arguing to this Court that the "license has been unlawfully terminated." ECF No. 103-4, at ¶¶ 3, 6. Indeed, SPL's subsidiary (the domain name registrant) relied on the fact that the "judge [meaning this Court] has yet to decide on this." *Id.* In both instances, the WIPO panel accepted SPL's argument and declined to rule on the domain name issue **until this Court had a chance to decide the issue.** *Id.* at ¶¶ 4, 7. Thus, in both instances, SPL argued that this Court had the exclusive jurisdiction to decide who had the right to use the SLUSH PUPPIE® trademarks in Europe, and the foreign tribunals accepted these arguments in ruling in SPL's favor. That is all that judicial estoppel requires.

Indeed, this case presents an even stronger case for judicial estoppel than *Rapture Shipping, Ltd. v. Allround Fuel Trading B.V.*, 350 F. Supp. 2d 369 (S.D.N.Y. 2004), which is factually analogous. There, a party (Rapture) argued in a Netherlands court that it had a contract with the defendant for the delivery of fuel and that it was entitled to damages because the fuel was defective. *Id.* at 372. The Netherlands court accepted the premise that a contract existed and

5

dismissed the case for improper forum, holding that an arbitration clause applied. *Id.* Rapture then refiled in the Southern District of New York and argued that it should not be bound by the arbitration clause because it was not the actual signatory to the contract, and thus no contractual relationship existed. *Id.* at 374. The court held that, because the Netherlands court had adopted Rapture's argument that a contract ***did*** exist as a premise of its decision, it was judicially estopped from arguing otherwise in the later action. *Id.*

The rationale is even stronger for estopping SPL here, because SPL's argument was not only a premise of the WIPO panels' decisions, but the argument on which SPL prevailed. Simply put, having told WIPO that this Court should decide the issue of license termination (and, accordingly, use of the SLUSH PUPPIE® trademarks and domain names), and having prevailed on that issue, SPL cannot now be heard to argue that the Court has no power to make such a decision. To accept SPL's argument would essentially mean that no tribunal will address these issues—a result that is untenable and that would enable SPL to continue its improper conduct for the foreseeable future.

**B.    SPL Has a Contractual Duty to Cease Use of the SLUSH PUPPIE® Trademarks, but It Nonetheless Continues to Infringe**

The core of SPL's opposition is its claim that there is nothing left to enjoin because SPL is in the process of ceasing its infringement of the SLUSH PUPPIE® trademarks and no longer holds itself out as a licensee or owner of the SLUSH PUPPIE® trademarks. ECF No. 105-1 (Laura Peters Decl.) ¶¶ 3-9, 11. As an initial matter, even if it were true that SPL has stopped or is in the process of stopping its infringing conduct (and it is not), that does not mean injunctive relief is inappropriate. The Court "has discretion to grant injunctive relief even after there has

6

been cessation of the complained-of-conduct."[1] *State Farm Mut. Auto Ins. Co. v. Sharon Woods Collision Center, Inc.*, 2007 WL 4207158, at *11 n.5 (S.D. Ohio Nov. 26, 2007) (Barrett, J.). That is especially appropriate here where SPL concedes that the 1996 Appointment and 1999 Agreement were properly terminated. Moreover, as set forth in ICEE's opening brief, ICEE needs an injunction to assure foreign tribunals that it has validly terminated SPL's rights. SPL has repeatedly (and successfully) told those tribunals to not rule in ICEE's favor ***until*** this Court decides the issue of the validity of the termination of SPL's license, and thus of its right to use the SLUSH PUPPIE® trademarks. ECF No. 103-4, at ¶¶ 3-7. ICEE therefore needs an order from this Court ruling that the license has been validly terminated to continue to pursue SPL's infringements abroad.

In any event, SPL ***has not*** stopped infringing, and SPL's suggestion that this Court simply trust it to clean up its own act is laughable in light of SPL's conduct in this case. SPL has finally discarded admitted forger Mark Peters as a declarant, substituting in his niece, Laura Peters. Ms. Peters declares that "[o]n November 17, 2020, SPL formerly [*sic*] changed its name and brand from Slush Puppie Limited to Frozen Brother Limited."[2] ECF No. 105-1. But what

---

[1] SPL cites *Mrs. United States National Pageant, Inc. v. Williams*, 353 F. Supp. 3d 213, 218-19 (W.D.N.Y. Feb. 14, 2019). But the court's decision there simply found that the defendant's continued control of content-less websites was not causing irreparable harm, not that it was not an infringement. Here, as set forth below, ICEE is entitled to a statutory presumption of irreparable harm, which SPL has not tried to rebut. Moreover, SPL's years of use of the websites under the license has necessarily imbued them with the ICEE's goodwill, and removal of content from them—implying ICEE is abandoning the European market—will necessarily harm the value of the marks and ICEE's standing with potential distributors and customers.

[2] Mark Peters is, however, still the eye of the storm for SPL's infringing chicanery. For example, Mark Peters sought as an individual a registration for the trademark FROZEN BROTHERS in Canada, implying that SPL may be considering expanding its infringement to countries outside of Europe. *See* https://www.trademarkelite.com/canada/trademark/trademark-detail/1855672/FROZEN-BROTHERS, last accessed May 19, 2021.

7

Ms. Peters and SPL hide from the Court is that SPL merely shifted the SLUSH PUPPIE® name to a different company. Prior to the name change, Mark Peters already controlled a dormant UK company called Frozen Brothers Limited, which was incorporated in 2017. *See* Ex. B (Certificate of Incorporation); Ex. C (December 31, 2019 statement of "dormant accounts" showing company with 1£ in assets). But on November 17, 2020, that company sprung to life, changing its name to "Slush Puppie Limited." Ex. A (Name Change Resolution and Certificate of Incorporation on Change of Name dated Nov. 17, 2020). Put simply, while SPL was changing the name of Slush Puppie Limited—the litigant here—to Frozen Brothers Limited, it was simultaneously changing a related company's name back to Slush Puppie Limited to carry on its infringing activities and continue to associate itself with the Slush Puppie brand. Laura Peters not only knew about the name change—she **signed the name change documents**. *See* Ex. A. Yet more reason that the Court should not take SPL's word for it that it will stop its infringement without a court order.

Moreover, despite having removed the bulk of the content, SPL continues to hold hostage domain names using the SLUSH PUPPIE® trademarks in a variety of countries: slushpuppie.co.uk, slushpuppie.fr, slushpuppie.de, slushpuppie.nl and slushpuppie.ch in particular. SPL's "defense" is that it has stripped those websites of their content so that they now display as broken links or blank voids where SPL's use of the SLUSH PUPPIE® trademarks used to be. As such, SPL claims it is no longer "using" the domains. SPL's argument misses the point. First, the 1999 Agreement *requires* SPL to return to ICEE any "literature, signs, advertising material, promotional matter, and other materials identifying the former DISTRIBUTOR with COMPANY or its PRODUCTS." ECF No. 29-2, at III.B. Second, the fact that a former licensee is holding on to domain names with ICEE's trademarks and has

8

stripped them of their content rather than turning them over to ICEE *is the harm*. Consumers who visit those domains will invariably be confused about whether ICEE has a SLUSH PUPPIE® operation in Europe, or frustrated that they cannot use the domain to find ICEE's genuine SLUSH PUPPIE® web presence, as courts have recognized: "Prospective users of plaintiff's services who mistakenly access defendant's website may fail to continue to search for plaintiff's own home page, due to anger, frustration, or the belief that plaintiff's home page does not exist." *Planned Parenthood Fed. of Am. v. Bucci*, 1997 WL 133313, at *4 (S.D.N.Y. Mar. 24, 1997), *aff'd* 152 F.3d 920 (2d Cir. 1998). This type of confusion has long been actionable in this circuit. *See PACCAR Inc. v. TeleScan Technologies, LLC*, 319 F.3d 243, 253 (6th Cir. 2003) ("An infringing domain name has the potential to misdirect consumers as they search for web sites associated with the owner of a trademark."), *abrogated on other grounds*, *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111 (2004).

SPL's authorities are not to the contrary, because they stand only for the bland proposition that "mere reservation of a domain name"—without actually using it—is not always an infringement.[3] ECF No. 105, at 8. But that is not what is going on here. SPL has used the domain names for years to sell SLUSH PUPPIE® branded products. That use, both under the 1999 Agreement and under trademark law, inured to the benefit of ICEE (the trademark owner). ECF No. 29-2, at VI.D; *F.D.I.C. v. Homestead Mortg. Co.*, 2010 WL 5420279, at *9 (E.D. Mich.

---

[3] SPL's cases are not factually on-point in any event. *Bird v. Parsons*, 289 F.3d 865, 877-78 (6th Cir. 2002) dealt with whether a ***registrar***, i.e., an issuer of domain names, could be held liable for issuing an infringing domain. The Sixth Circuit recognized that the ***registrant***, the one who owns the domain, "can then use its domain name to infringe on the rights of a registered trademark owner." *Id.* at 878. And in *555-1212.com, Inc. v. Communication House Int'l, Inc.*, 157 F. Supp. 2d 1084, 1092 (N.D. Cal. 2001), there was "no evidence" that "defendant [has] done anything more than merely reserve the domain name." In contrast, SPL spent years as a licensee using the domain name to market ICEE's SLUSH PUPPIE® branded products.

Dec. 27, 2010) ("A licensee's use inures to the benefit of the licensor-owner of the mark and the licensee acquires no ownership rights in the mark itself."). Now, having used the domains to sell SLUSH PUPPIE® branded products, SPL spitefully seeks to destroy ICEE's goodwill by maintaining shoddy, contentless websites that will frustrate, confuse, and mislead consumers about ICEE's presence in Europe. That bad faith conduct is worlds removed from mere "reservation" of a domain name, and should be enjoined by requiring SPL to transfer the domain names to ICEE.

Finally, SPL does not contest the evidence ICEE submitted that SPL continues to thwart ICEE's efforts to set up an authorized distribution network in Europe. SPL's infringing products still appear on the Rose Marketing website (including some with "Coming Soon" messages. SPL could solve that problem with a single phone call, but refuses to do so. Nor does SPL contest Mr. Fachner's testimony that SPL has sought to frustrate ICEE's efforts to appoint new distributors in Europe by insisting that it is the exclusive distributor of SLUSH PUPPIE® products. ECF No. 130-1, at ¶¶ 19-23. SPL's continued infringement must be enjoined.

   **C. ICEE Has Established Irreparable Harm**

SPL ignores the most compelling facts supporting irreparable harm here. The 1999 Agreement, which contains the trademark license that has now been validly terminated, acknowledges that "after . . . termination of this agreement, any use of the MARKS by DISTRIBUTOR will result in irreparable injury to" the licensor—here ICEE. ECF No. 29-2, Ex. B to Amended Counterclaims, at III.B. Indeed, in signing the agreement, SPL "consent[ed] to a court order enjoining DISTRIBUTOR from using the MARKS in any way, notwithstanding any other enforcement remedy." *Id.* While the Sixth Circuit has not yet decided whether such a clause is sufficient by itself to justify a finding of irreparable harm, the law is clear that they

serve as "evidence in support of a finding of irreparable harm." *York Risk Servs. Grp, Inc. v. Couture*, 787 Fed. Appx. 301, 308 (6th Cir. 2019); *N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 49 (2d Cir. 1999).

And there is additional evidence here. First, as a legal matter, SPL does not address, much less attempt to rebut, the statutory presumption of irreparable harm. 15 U.S.C. § 1116(a). Second, Mr. Fachner's declaration, which SPL also does not address, explains that SPL's continued "refusal to surrender the 'slushpuppie' domains to ICEE, and its refusal to acknowledge that it no longer is an authorized manufacturer or distributor," is harming ICEE's ability to license others in Europe to use the SLUSH PUPPIE® trademarks. ECF No. 103-1, at ¶¶ 21-22. This "loss of control of reputation, loss of trade, and loss of good will" among potential distributors in Europe is a classic example of irreparable harm in the context of an infringer's unauthorized use of trademarks. *State Farm Mut. Auto Ins. Co. v. Sharon Woods Collision Center, Inc.*, 2007 WL 4207158, at *11 (S.D. Ohio Nov. 26, 2007) (Barrett, J.); *see also CFE Racing Prods., Inc. v. BMF Wheels, Inc.*, 793 F.3d 571, 596 (6th Cir. 2015) (stating that "loss of control over one's reputation is neither 'calculable nor precisely compensable'" and thus constitutes irreparable harm). Therefore, ICEE is entitled to a presumption of irreparable harm and has shown irreparable harm as a factual matter. SPL has not carried its burden to rebut the presumption, and has not challenged ICEE's evidence as a factual matter.

**D.    ICEE's Amended Counterclaims Properly Seek Injunctive Relief**

ICEE's counterclaims allege breach of the 1996 Appointment and 1999 Agreement (Count II and III), trademark infringement in violation of the Lanham Act at 15 U.S.C. § 1114 (Counts IV), unfair competition and false designation of origin in violation of the Lanham Act at 15 U.S.C. § 1125(a) (Count V), and deceptive trade practices in violation of Ohio R.C. § 4165

11

(Count VI). In each of these counts, ICEE requested injunctive relief prohibiting SPL from continuing to use the SLUSH PUPPIE® trademarks. *See* ECF No. 29, at ¶¶ 93, 121, 139-41, 148-50, 157-59. ICEE further specifically requested injunctive relief in its Prayer for Relief. *Id.* at ¶¶ 164-68. ICEE's Amended Counterclaims therefore put SPL on more than adequate notice that it would seek injunctive relief—and indeed SPL does not argue otherwise.

Instead, SPL argues that ICEE cannot seek injunctive relief because it did not include a separate "count" for injunctive relief. That argument is frivolous. It is well settled that an "injunction is a remedy, not a claim." *E.g., Madej v. Maiden*, 951 F.3d 364, 369 (6th Cir. 2020); *Mills*, 2014 WL 130548, at *5. Therefore, courts not only do not require a separate count for injunctive relief, they dismiss them. *See Reem Props., LLC v. City of Sterling Heights, MI*, 2016 WL 805753, at *4 (E.D. Mich. Feb. 29, 2016) ("Plaintiffs numbered counts in Count IV, Injunction (Count VII) and Costs of Litigation in Count VIII) do not state causes of action or claims, only statements or remedies."); *Mills*, 2014 WL 130548, at *5; *Stroh Props., Inc. v. City of Detroit*, 2013 WL 626478, at *3 (E.D. Mich. Feb. 20, 2013) ("It is well settled that an injunction is an equitable remedy, not an independent cause of action."). The only case cited by SPL on this point involved a situation where the plaintiff failed to request injunctive relief ***at all***. *See Elliot v. Snyder*, 2020 WL 5351084, at *6 (W.D. Mich. May 13, 2020) (pleading contained no "request for injunctive relief or any description of what the injunctive relief might entail"). ICEE's Amended Counterclaims seek injunctive relief.

### E. SPL Acknowledges That No Bond is Necessary

As ICEE highlighted in its opening brief, no bond is necessary here because any harm SPL may incur was the result of its taking the known risk of breaching its limited licenses for the SLUSH PUPPIE® trademarks when it pursued this fraudulent litigation against ICEE. In

response, SPL does not argue that it would suffer harm from an injunction, and therefore the Court should not require a bond.

### III. CONCLUSION

SPL's fraudulent campaign of litigation has cost ICEE years of time and hundreds of thousands of dollars in attorney's fees to unwind. In order to continue the work of reasserting its control over its valuable SLUSH PUPPIE® trademarks, ICEE requires a Court order stating what even SPL itself does not deny: that ICEE validly terminated the 1996 Agreement and 1999 Appointment and that SPL has no right to use the SLUSH PUPPIE® trademarks in Europe. ICEE respectfully requests that the Court grant its motion for a preliminary injunction and enjoin SPL from making further use of the SLUSH PUPPIE® trademarks.

Dated:  May 20, 2021                        Respectfully submitted,

                                                                       **DUANE MORRIS LLP**

BY: _/s/ David J. Wolfsohn_
David J. Wolfsohn (*admitted pro hac vice*)
Tyler R. Marandola (*admitted pro hac vice*)
30 South 17th Street
Philadelphia, PA 19103
Tel.: (215) 979-1000
Fax: (215) 979-1020
djwolfsohn@duanemorris.com
tmarandola@duanemorris.com

Kenneth M. Argentieri (Ohio Bar No. 0067493)
Trial Attorney
600 Grant St., Ste. 5010
Pittsburgh, PA 15219
Tel.: (412) 497-1000
Fax: (412) 497-1001
kmargentieri@duanemorris.com


*Attorneys for Defendant/Counterclaim Plaintiff,
The ICEE Company*

14

## CERTIFICATE OF SERVICE

I hereby certify that on May 20, 2021 I served the foregoing document on counsel of record by CM/ECF.

                                               BY: */s/ Tyler Marandola*
                                                       Tyler Marandola