## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| SLUSH PUPPIE LIMITED, | ) | |
| | ) | |
| Plaintiff, | ) | Case No: 1:19-cv-00189-MRB |
| | ) | |
| v. | ) | JUDGE MICHAEL R. BARRETT |
| | ) | |
| THE ICEE COMPANY, | ) | MAGISTRATE JUDGE BOWMAN |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF SLUSH PUPPIE LIMITED'S NOTICE
## OF FILING DEPOSITION OF DANIEL FACHNER

Plaintiff Slush Puppie Limited, by and through counsel, hereby gives notice of filing the

deposition transcript of Daniel Fachner taken on August 26, 2021.

Respectfully submitted,

BENESCH, FRIEDLANDER,
 COPLAN & ARONOFF LLP


/s/ *Eric Larson Zalud*
Eric Larson Zalud (0038959)
Laura E. Kogan (0087453) (*pro hac vice*)

200 Public Square, Suite 2300
Cleveland, OH  44114
(216) 363-4500 - Telephone
(216) 363-4588 - Facsimile
ezalud@beneschlaw.com
lkogan@beneschlaw.com

Ronald L. House (0036752)
Jennifer M. Turk (0073781)
41 South High Street, Suite 2600
Columbus, OH 43215
(614) 223-9300 – Telephone
(614) 223-9330 – Facsimile
rhouse@beneschlaw.com
jturk@beneschlaw.com
*Attorneys for Plaintiff Slush Puppie Limited*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was electronically filed on this 30th day of August 2021.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Eric Larson Zalud
Eric Larson Zalud
*Attorney for Plaintiff Slush Puppie Limited*

# Slush Puppie Limited,

# vs.

# The Icee Company,

In The United States District Court
Southern District of Ohio
Western Division
Case no. 1:19-CV-00189-MRB

## Daniel Fachner

Taken on August 26, 2021

Reporters: A. David Tackla and Christine Schirripa





Court Reporting & Videotaping
www.tacklacourtreporting.com
216-241-3918   fax: 216-241-3935

1020 Ohio Savings Plaza
1801 East 9th Street
Cleveland, OH 44114

1          UNITED STATES DISTRICT COURT

2            SOUTHERN DISTRICT OF OHIO

3

4    SLUSH PUPPIE LIMITED,                    )

5                 Plaintiff,                  )

6            -vs-                             ) Case No.

7    THE ICEE COMPANY,                        )1:19-cv-0189-MRB

8                 Defendant.                  )

9        Deposition of DANIEL FACHNER, a Defendant herein,

10   being called by the Plaintiff as if upon

11   cross-examination under the statute, and taken before A.

12   David Tackla and Christine Schirripa, Notaries Public

13   within and for the State of Ohio, pursuant to the

14   agreement of counsel, and pursuant to the further

15   stipulations of counsel herein contained, on Thursday,

16   the 26th day of August, 2021, at 2:00 p.m., via Zoom

17   Videoconference, at Tackla Court Reporting, 1801 E. 9th

18   Street, Suite 1020, City of Cleveland, County of Cuyahoga

19   and the State of Ohio.

20            - - - o0o - - -

21

22

23

24

25

Deposition of Daniel Fachner                                    Slush Puppie Limited, vs. The Icee Company,

```
1    APPEARANCES:

2          On behalf of the Plaintiff:

3          Benesch, Friedlander, Coplan & Aronoff, by:

4          Eric Larson Zalud, Esq.

5          Laura E. Kogan, Esq.

6          200 Public Square, Suite 2300

7          Cleveland, Ohio 44114

8          (216) 363-4500

9          ezalud@beneschlaw.com

10          lkogan@beneschlaw.com

11

12          On behalf of the Defendant:

13          David Wolfsohn, Esq.

14          Tyler R. Marandola, Esq.

15          30 South 17th Street

16          Philadelphia, PA 19103

17          (215) 979-1000

18          djwolfsohn@duanemorris.com

19          tmarandola@duanemorris.com

20

21              COMPUTER-AIDED TRANSCRIPTION

22                 TACKLA & ASSOCIATES

23              1020 Ohio Savings Plaza

24                 1801 E. 9th Street

25              Cleveland, Ohio  44114
```

Deposition of Daniel Fachner                                    Slush Puppie Limited, vs. The Icee Company,

```
 1                      EXHIBIT LOG

 2     EXHIBIT NO.      PAGE      LINE     DESCRIPTION

 3     #1              21        17       4/6/12 E-mail

 4     #2              22        15       1/19/16 E-mail

 5     #3              23         2       12/22/15 E-mail

 6     #4              24         6       2/23/09 E-mail

 7     #5              25         1       12/12/08 E-mail

 8     #6              25        22        3/12/09 E-mail

 9     #7              27         3       12/3/13 E-mail

10     #8              27        23       12/14/15 E-mail

11     #9              28        18        9/29/08 E-mail

12     #10             30         2       12/31/08 E-mail

13     #11             30        15        3/12/09 E-mail

14     #12             32         1        6/23/09 E-mail

15     #13             33        11        12/15 12 E-mail

16     #14             34         7        Contract

17     #15             62         5        Agreement

18     #16             68        16        Declaration

19     #17             72        15        Second Declaration

20     #18             74         5        Interrogatories

21     #19             85        10       08-24-21 E-mail

22     #21             88         5        Projected License Fees

23     #22             90        20        Slush Puppie29 Results

24     #23             92        18       07-26-21 E-mail

25     #24             95         3       02-11-21 E-mail
```

Deposition of Daniel Fachner                                    Slush Puppie Limited, vs. The Icee Company,

| 1 | #25 | 101 | 23 | Picture |
| 2 | #26 | 102 | 10 | 03-11-21 E-mail |
| 3 | #27 | 105 | 10 | 06-18-21 E-mail |
| 4 | #28 | 106 | 18 | 06-14-21 E-mail |
| 5 | #32 | 112 | 13 | Motion for Preliminary |
| 6 | | | | Injunction |

Deposition of Daniel Fachner                                      Slush Puppie Limited, vs. The Icee Company,

```
 1                 P-R-O-C-E-E-D-I-N-G-S

 2        DANIEL FACHNER, of lawful age, a Defendant herein,

 3   having been first duly sworn as hereinafter certified,

 4   deposes and says as follows:

 5

 6        CROSS-EXAMINATION OF DANIEL FACHNER

 7   BY MR. ZALUD:

 8        Q.   This is the deposition of Dan Fachner,

 9   taken in the case captioned Slush Puppie versus

10   ICEE, et al, pending in the Southern District of

11   Ohio.  The deposition is being taken by agreement

12   and subsequent notice as to time and place.

13             Mr. Fachner, we met briefly off the

14   record, I will introduce myself to you on the

15   record.  I represent the plaintiff in this case,

16   Frozen Brothers, and a few ground rules.  You have

17   just taken an oath.  I know you've had your

18   deposition taken before.  You realize and appreciate

19   it carries with it all of the obligations of telling

20   the truth as if we were at trial?

21        A.   I do.

22        Q.   I'm going to be asking you a series of

23   questions.  I don't think it's going to be too long.

24   But if you don't understand or hear a question, let

25   me know, and I will either speak up or clarify,
```

1   otherwise, I will presume you heard and understood

2   the question and will proceed, all right?

3              MR. WOLFSOHN:  Object, I mean he

4   can't make any assumptions about what is in your

5   head or what you're presuming.

6       Q.   Okay.  If you think of something later

7   that relates to a question I asked before, you can

8   feel free to raise it.  Mr. Fachner, if you want to

9   take a break at any time, let me know.  We just

10  can't take a break while the question is pending.

11  All right?

12             MR. WOLFSOHN:  Unless it's a

13  privileged matter.

14             MR. ZALUD:    Okay.

15      Q.   I didn't hear your answer though, your

16  counsel interjected there.

17      A.   I understand.

18      Q.   Okay.  Thank you.  Are you taking any

19  medications that would impact your ability to

20  testify competently and truthfully today?

21      A.   I'm not.

22      Q.   How is your hearing, can you hear me okay?

23      A.   I can hear you fine.

24      Q.   Your memory, normal memory?

25      A.   I'm not sure I understand your question,

Deposition of Daniel Fachner                                    Slush Puppie Limited, vs. The Icee Company,

```
 1   but to the best of my knowledge, my memory is

 2   normal, yes.

 3        Q.   Okay.  I mean you don't have any medical

 4   issues with memory problems, right?

 5        A.   No, I don't.

 6        Q.   And we're taking this deposition remotely,

 7   by-the-way, I would have come to you, but, that

 8   wasn't to be.  Are you -- where are you?  Are you in

 9   your office; home; a room?

10        A.   I am in my office in La Vergne, Tennessee.

11        Q.   And alone in the office?

12        A.   Yes.

13        Q.   And do you have any electronic devices,

14   other than this one on at the time?

15        A.   I have a cell phone that's on a charger,

16   yes.

17        Q.   All right.  Your counsel said to me you

18   got to get out of here, what does that mean?  What

19   does that mean, you got to get out of here?

20        A.   Well, I can't speak for David, but, you

21   know, the time is important, and so, you know, as we

22   could do this in the most timely fashion, that would

23   be wonderful.

24        Q.   Good.  Well, that's my goal also.  And I'm

25   going to ask you a few background questions, but I
```

Deposition of Daniel Fachner                          Slush Puppie Limited, vs. The Icee Company,

1   understand you have already had your deposition

2   taken, so I'm not going to go too deep into anything

3   and then we'll get to the topics related to the

4   hearing on Monday, all right?

5        A.   That sounds great.

6             MR. WOLFSOHN:  Actually, you agreed

7   to limit it to the topics of the hearing.  His

8   deposition's been taken twice by two partners of

9   your firm.  So, please, go to the issues on the

10  hearing which is the purpose of this and what you

11  represented to the court.

12       Q.   Could you give me your full name, please?

13       A.   Daniel John Fachner.

14       Q.   And where do you work, sir?

15       A.   J & J Snack Foods.

16       Q.   And what is your position there today?

17       A.   President and CEO.

18       Q.   As I understand it from, I think it was

19  some discovery responses or maybe something else,

20  that is a position that you acceded to in October of

21  2020; is that right?

22       A.   Yes.

23       Q.   Okay.

24       A.   Yeah, the CEO position was in October.  I

25  took over the president of that company in April,

Deposition of Daniel Fachner                    Slush Puppie Limited, vs. The Icee Company,

```
 1    2020.

 2          Q.    So you're the CEO now?

 3          A.    I am.

 4          Q.    And tell me what your duties involve as

 5    CEO?

 6          A.    To oversee the J & J Snack Foods Company,

 7    to properly manage it for today and for the future.

 8          Q.    And what were they as -- what were your

 9    duties as president when you became president in

10    April of 2020?

11          A.    Almost the same duties with a few extra

12    responsibilities to the Board and some outside

13    investors.

14          Q.    And, you know, I agree with your counsel

15    to an extent, I'm not going to dig too much into

16    background, but just in general, how long have you

17    been at that company?

18          A.    I have been with the ICEE Company, which

19    is a subsidiary of J & J, since 1979.

20          Q.    And the ICEE Company at some point, I

21    forget the exact year, was acquired by J & J Snack

22    Foods?

23          A.    Yes, it was.

24          Q.    I think I'm going to try during the course

25    of this deposition just to refer to the corporate
```

Deposition of Daniel Fachner                          Slush Puppie Limited, vs. The Icee Company,

1    **entity with which you're affiliated as ICEE just for**

2    **ease of our communication, if that's okay with you?**

3                MR. WOLFSOHN:  Objection.  I mean

4    it's depending on the context, that may or may not

5    be misleading.

6        **Q.   Yes, you can always clarify, but it seems**

7    **to me like a lot of the events we're talking about**

8    **happened while the corporate name was ICEE, so can I**

9    **just call it ICEE or is that --**

10               MR. WOLFSOHN:  The corporate name has

11   not changed.  I don't know what you're talking

12   about.  If you have questions, just please proceed.

13               MR. ZALUD:    I'm not asking you,

14   David.  It ain't a question for you.  Can I --

15               MR. WOLFSOHN:  I appreciate the

16   common touch of the use of the word "ain't."

17               MR. ZALUD:    You're building a

18   wonderful record for yourself, as usual.

19       **Q.   Mr. Fachner --**

20               MR. WOLFSOHN:  As usual, what does

21   that mean?

22               MR. ZALUD:    I'm --

23               MR. WOLFSOHN:  You just presented a

24   perjurious witness and another declaration that he

25   admitted was completely false.

Deposition of Daniel Fachner                                    Slush Puppie Limited, vs. The Icee Company,

```
 1        Q.   So, any way --
 2             MR. WOLFSOHN:  Or maybe Miss Kogan
 3   didn't tell you about it, because you didn't bother
 4   to attend.  Anyway, the name ICEE has not changed.
 5   I don't know where you're getting this from.  If you
 6   have a question about a corporate entity, ask about
 7   the corporation entity.
 8        Q.   How about if I call it -- thank you,
 9   David.  How about if I call it J & J/ICEE, do you
10   know what I'm talking about, Mr. Fachner?
11             MR. WOLFSOHN:  Objection.  I will
12   object to everything.  You can't name the proper
13   entity?
14             MR. ZALUD:    I'm just asking the
15   question to the witness.  Are you instructing him
16   not to answer?
17             MR. WOLFSOHN:  Dan, don't agree to
18   bizarre, vague instructions about what Mr. Zalud is
19   going to assume.
20        Q.   So, go ahead, Mr. Fachner.  I don't want
21   to fight about everything but your lawyer --
22             MR. WOLFSOHN:  There's no question
23   pending.
24        Q.   Can we just call the corporate entity with
25   whom you've been affiliated for 20 years for
```

Deposition of Daniel Fachner                                    Slush Puppie Limited, vs. The Icee Company,

```
 1    purposes of this deposition only, so it goes

 2    shorter, ICEE?

 3         A.   Yes, we can do that, and if I need to

 4    clarify it, I will.

 5         Q.   Thank you.  I mean it's quite easy.  I

 6    know you've had your deposition taken in this case

 7    twice, and I have been reminded of that thrice now

 8    within the first 10 minutes, but have you had your

 9    deposition taken in any other cases before?

10         A.   I have.

11         Q.   And about how many times has your

12    deposition been taken?

13              MR. WOLFSOHN:  I instruct you not to

14    answer.  This has already been covered in deposition

15    one.  If you're finished, let us know, so we can

16    call it a day.  Don't answer unless you've had

17    you're deposition taken between October of 2020 and

18    now.

19    BY MR. ZALUD:

20         Q.   It sounds like, if I can wade all through

21    all that, it sounds like your lawyer is instructing

22    you not to answer, Mr. Fachner.  So, you know, I

23    don't know what I can do about that.  I will ask you

24    one more time:  How many times have you had your

25    deposition taken?
```

```
 1              MR. WOLFSOHN:  You can ask him

 2   whether he's had his deposition taken between

 3   October 13th of 2020 and present.

 4              MR. ZALUD:    Well, that's not what

 5   I am asking.

 6        Q.   So, how many times have you had your

 7   deposition taken?  I'm going to ask you this on

 8   Monday.  Go ahead.

 9              MR. WOLFSOHN:  I instruct you not to

10   answer.

11        Q.   Let me ask you this:  Do you know how many

12   times you've had your deposition taken in the past?

13              MR. WOLFSOHN:  You can answer yes or

14   no.

15              THE WITNESS:   It would be a

16   guesstimate, Eric.

17        Q.   Okay.

18        A.   A few different times.  I guess.

19        Q.   All right, that's fine.  What did you do

20   to get ready for this deposition?  And I don't want

21   to hear about any conversations with Mr. Wolfsohn or

22   Mr. Marandola, but tell me, in general, what you did

23   to get ready for this deposition?

24              MR. WOLFSOHN:  You can answer at a

25   high level, Dan.
```

Deposition of Daniel Fachner                                          Slush Puppie Limited, vs. The Icee Company,

```
 1                    THE WITNESS:  I did my best to
 2    refresh myself with this case, because it's been so
 3    long from start 'til now, and had some conversations
 4    with our attorneys.
 5         Q.   Did you talk to anyone else other than
 6    ICEE's counsel about this deposition?
 7         A.   No, I haven't.
 8         Q.   Did you look at any paperwork or documents
 9    relating to this lawsuit to prepare for the
10    deposition?
11         A.   I --
12                    MR. WOLFSOHN:  Answer yes or no.
13                    THE WITNESS:  Yes.
14         Q.   Okay.  And what did you look at?
15                    MR. WOLFSOHN:  I instruct you not to
16    answer on the ground of work product.  Don't answer,
17    Dan.
18         Q.   What kind of documents did you look at?
19                    MR. WOLFSOHN:  Objection.  Vague.
20    But you can say what kind of documents.
21                    THE WITNESS:  Documents surrounding
22    the case that we're discussing.
23         Q.   Did you look at some e-mails?
24         A.   I believe that I did look at an e-mail.
25         Q.   Did you look at the contracts that
```

Deposition of Daniel Fachner                                    Slush Puppie Limited, vs. The Icee Company,

```
 1   underlie the lawsuit?

 2                  MR. WOLFSOHN:  I instruct you not to

 3   answer.  Work product.  Don't answer.

 4        Q.   You're familiar with the contracts that

 5   underlie the lawsuit, right?

 6                  MR. WOLFSOHN:  Objection.  Vague.

 7   Are you referring to the forged one or the real

 8   ones?

 9        Q.   You're familiar with the contracts that

10   underlie the lawsuit, right, Mr. Fachner?

11                  MR. WOLFSOHN:  Objection.  Vague as

12   to whether you're referring to the one your clients

13   forged or the real contract.

14        Q.   If he doesn't instruct you not to answer,

15   you can just answer, so go ahead.

16        A.   Could you be specific with the contracts

17   you're referring to?

18        Q.   Yes.  There's one in 1996 and one in 1999.

19        A.   Yes, I have.

20        Q.   When did you see them last?

21        A.   A day ago, yesterday.

22        Q.   Do you have any other, you know, personal

23   notes or files of your own about this case, you

24   know, we have received over the years a lot of

25   documents in discovery, do you have any others that
```

Deposition of Daniel Fachner                                    Slush Puppie Limited, vs. The Icee Company,

1    you have kept?

2              MR. WOLFSOHN:  I instruct you not to

3    answer beyond the scope.  You already answered.

4              THE WITNESS:  No.

5         Q.   Calendars, do you have any calendars to

6    reflect meetings with anyone from Slush Puppie or

7    Frozen Brothers?

8              MR. WOLFSOHN:  I instruct you not to

9    answer.  This is not a discovery deposition.

10             MR. ZALUD:    It's not a discovery

11   deposition?  What is it then?  Are you instructing

12   yourself not to answer that, David?

13             MR. WOLFSOHN:  I don't need to be

14   rude, but I'm not going to answer your questions

15   unless they deserve a response.

16             MR. ZALUD:    You don't mean to be

17   rude?  Really?   Interesting.

18             MR. WOLFSOHN:  If you have any

19   questions that actually bear on what you told Judge

20   Barrett you were going to be asking about, go ahead.

21   If you're finished, let me know.

22             MR. ZALUD:    Isn't that the judge's

23   decision, not yours.  You ain't the judge, right?

24             MR. WOLFSOHN:  You don't need to

25   answer.

Deposition of Daniel Fachner                                    Slush Puppie Limited, vs. The Icee Company,

1      Q.   Yes, you don't need to answer.  What
2    business overall is ICEE in?
3      A.   Frozen and unfrozen carbonated beverage
4    business, as well as the service business.
5      Q.   And in how many countries in the world
6    does ICEE operate?
7      A.   Approximately, ICEE, meaning ICEE and
8    Slush Puppie combined as a brand underneath the ICEE
9    Company, approximately 15.
10     Q.   Okay.  And good clarification, that's an
11   excellent definition of what I mean.  I mean let's
12   call it ICEE going forward in this deposition, okay?
13            MR. WOLFSOHN:  Objection.  Vague.
14   What are you talking about?
15     Q.   Is that okay, Mr. Fachner?
16     A.   I will clarify as I said earlier when I
17   believe it needs that clarification.
18     Q.   Okay, thank you.  And what are those
19   countries?
20     A.   Oh, boy, I believe that I have listed them
21   before.  I'm not sure that I'm going to be able to
22   sit here and do that appropriately.
23     Q.   Okay.  I mean Great Britain, Ireland,
24   Switzerland, Finland, Norway, Denmark, Spain,
25   Portugal, Gibraltar, Malta, Greece, that's 11.

Deposition of Daniel Fachner                       Slush Puppie Limited, vs. The Icee Company,

```
 1   Germany, 12.  Netherlands, Belgium, that's 13.  A

 2   couple more, are those all accurate though, the ones

 3   I listed?

 4        A.   Those are accurate, yes, and more.

 5        Q.   And at least two more?

 6        A.   At least two more with what you rattled

 7   off, maybe more than two more, yes.

 8        Q.   All right.  And are they primarily in

 9   Europe then?

10        A.   No, the ICEE Company operates outside of

11   Europe as well, we operate in Asia and the Middle

12   East.

13        Q.   And are there, do you know some countries

14   where ICEE operates in Asia and the Middle East?

15        A.   China, Dubai, Saudi Arabia, to name a few.

16        Q.   And I understand that may not be all of

17   them, right?

18        A.   No, it is not all of them.

19        Q.   I'm pausing, I'm trying to limit my

20   questions to make it shorter for all of us.  When

21   was your most recent discussion you've had with

22   anyone from Slush Puppie or Frozen Brothers?

23             MR. WOLFSOHN:  Objection.  Vague.

24   What do you mean Slush Puppie?

25        Q.   Yes, a good point.
```

Deposition of Daniel Fachner                                    Slush Puppie Limited, vs. The Icee Company,

```
 1              MR. WOLFSOHN:   Do you mean Frozen

 2   Brothers?

 3        Q.   Well, let me just to make it easier for

 4   both of us --

 5              MR. WOLFSOHN:   There are names of

 6   entities, is there a problem with just naming the

 7   actual entity?  So your client in this case is

 8   called Slush Puppie Limited, okay?  So, if you're

 9   talking about that entity, is there a problem

10   referring to that entity?  Or would the name change

11   Frozen Brothers Limited, or Ralph Peters & Sons

12   Limited?  So, Slush Puppie is a brand that my client

13   owns.  So, I don't know why you are wasting time.  I

14   think you're a smart enough person to actually know

15   about legal entities.  And I think you're smart

16   enough to know what the relevant legal entities are

17   in this case, so, please, if you're talking about a

18   legal entity, use that name.

19        Q.   I'm the one wasting time, I see.  So, yes,

20   let's call it Slush Puppie LLC or Frozen Brothers.

21   When was the last time you had a discussion with

22   anyone from those companies?

23              MR. WOLFSOHN:  Objection.  Vague.

24   Answer if you can, Dan.

25              THE WITNESS:   It's been over two
```

Deposition of Daniel Fachner                                    Slush Puppie Limited, vs. The Icee Company,

```
 1    years ago.

 2          Q.    So approximately, I won't hold you to it,

 3    but 2019, sometime?

 4          A.    Yes, it could be even be longer than that,

 5    but, yes.

 6          Q.    And I'm not going to go into the history

 7    of the relationship, I'm familiar with it and so are

 8    you, I'm sure.  But when -- well, let me ask you

 9    this first:  Has the business relationship between

10    ICEE and Slush Puppie LLC/Frozen Brothers ended?

11                     MR. WOLFSOHN:  Objection.  Vague.

12                     THE WITNESS:  Eric, I might need you

13    to repeat that one more time, I'm not sure I know

14    how to answer your question.

15          Q.    Sure.  There was a business relationship

16    between what we're calling ICEE and Slush Puppie

17    LLC, now Frozen Brothers for many decades, and is

18    that relationship over in your mind?

19                     MR. WOLFSOHN:  Objection.  Vague.

20                     THE WITNESS:  We terminated our

21    agreement in June of 2019.

22          Q.    So, in your view, that's -- in your view

23    and ICEE's view, that relationship is over now,

24    that's all I'm asking.

25                     MR. WOLFSOHN:  Objection.  Vague.
```

Deposition of Daniel Fachner                                    Slush Puppie Limited, vs. The Icee Company,

```
 1              THE WITNESS:   That terminated our
 2   agreement.  You and I are having a discussion today
 3   so I still feel like there's some pieces of Slush
 4   Puppie U.K. and Frozen Brothers that is still
 5   prevalent in our conversation.
 6        Q.   Understood.  And like I said, I'm not
 7   going to go into the history, but how long -- when
 8   did that relationship, as you recall, start between
 9   the two entities?
10        A.   I don't recall the exact date, but,
11   roughly 12, 13, 14 years prior when we bought the
12   Slush Puppy rights from Dr. Pepper.
13        Q.   Dave, I'm ready for some exhibits.  Can
14   you do that?  Okay.  Mr. Fachner, this is Exhibit
15   No. 1.  If you could take a look at that and tell me
16   what that is?
17              (At this time, Plaintiff's Exhibit 1 was
18   marked for identification purposes.)
19        A.   Unfortunately, I no longer can see the top
20   of this page to understand where it came from.  I
21   can begin to read it from the -- thank you.  There
22   we go.
23        Q.   There we go.  And thank you for that.  If
24   you ever are having problems seeing something, it's
25   just a matter of us adjusting it here.
```

Deposition of Daniel Fachner                                    Slush Puppie Limited, vs. The Icee Company,

```
 1        A.   This looks like an e-mail from Steve Every

 2   to Mark Peters.

 3        Q.   And he says, "Thank you," it looks like he

 4   is forwarding an inquiry from someone in Cyprus, is

 5   that accurate?

 6        A.   That's what it looks like he's referring

 7   to.

 8        Q.   Okay.  So, Steve Every is an ICEE employee

 9   at the time?

10        A.   He is.

11        Q.   And he's sending a lead in Cyprus to Mark

12   Peters?

13        A.   Yes, in 2012.

14        Q.   Got it.  The next exhibit, Dave.

15             (At this time, Plaintiff's Exhibit 2 was

16   marked for identification purposes.)

17        Q.   Exhibit 2, Mr. Fachner, if you take a look

18   at that and tell me what that is?

19        A.   This is a letter from Steve Every to Mark

20   Peters asking if he would have an interest in

21   representing the ICEE brand and product in Spain.

22        Q.   So ICEE is sending a lead in Spain to Mark

23   Peters, right?

24        A.   For clarification, this is around an FCB

25   program with the ICEE brand, yes.
```

Deposition of Daniel Fachner                              Slush Puppie Limited, vs. The Icee Company,

1    Q.   Got it.  The next exhibit, please, Dave.

2         (At this time, Plaintiff's Exhibit 3 was

3    marked for identification purposes.)

4    Q.   And then is he able to scroll down to see

5    other pages of it?  Okay.  You want to go back to

6    the first page?

7    A.   Yes.

8    Q.   Sure.  There we go.

9    A.   And the question?

10   Q.   What is this?

11   A.   This is an e-mail from Steve Every to Mark

12   Peters regarding a license for the Japan area.

13   Q.   And it looks like you're copied on this

14   one, right?

15   A.   I am copied, I have not read past this

16   cover page though.

17   Q.   Is it accurate to say that ICEE is

18   proposing a deal with Slush Puppy Ltd. for some

19   opportunity in Japan?

20   A.   As my memory serves me, Mark Peters asked

21   for some opportunity to do something in Japan and

22   this is a response from Steve Every to Mark Peters'

23   request.

24   Q.   And is Japan, getting back to the scope of

25   operations, is Japan one of the countries in Asia in

Deposition of Daniel Fachner                                     Slush Puppie Limited, vs. The Icee Company,

1    which ICEE operates today?

2         A.   We have licenses on our products in Japan,

3    yes.

4         Q.   Okay.  Next exhibit, please, Dave.  This

5    is Exhibit 4.

6              (At this time, Plaintiff's Exhibit 4 was

7    marked for identification purposes.)

8         Q.   Exhibit 4, Mr. Fachner, if you can take a

9    look at that, and again, tell me what that is?

10        A.   It looks like somebody is inquiring about

11   a location or the opportunity for a location in

12   Spain.  And it looks like this was forwarded to Rod

13   Sexton, and then Rod Sexton is forwarding it to Mark

14   Peters with a question mark that says, "Sounds like

15   a good location perhaps."

16        Q.   So ICEE is sending another lead in Spain

17   to Mark Peters, right?

18        A.   Not the way that I read it.

19        Q.   Okay.  An opportunity, sending Mark Peters

20   a potential opportunity in Spain?

21        A.   It looks like a communication off of

22   something that came into an e-mail address to Mark

23   Peters, asking him if this is a good location.

24        Q.   All right.  We can go to the next one,

25   Dave.

Deposition of Daniel Fachner                                    Slush Puppie Limited, vs. The Icee Company,

1              (At this time, Plaintiff's Exhibit 5 was

2     marked for identification purposes.)

3          Q.    Exhibit 5, Mr. Fachner, would you take a

4     look at that one and tell me what that is?

5          A.    This is an e-mail from Rod Sexton to Mark

6     Peters asking him if he's operating in Greece.

7          Q.    So, Rod Sexton of ICEE is sending Mark

8     Peters a potential lead for a distributor in Greece?

9          A.    Well, I don't see the potential lead, I

10    see where he's asking him if he has a distributor in

11    Greece.

12         Q.    This doesn't look like a business

13    opportunity to you?

14              MR. WOLFSOHN:   Objection.   Lack of

15    foundation.

16         Q.    You can answer.

17         A.    I think I have answered it, but it feels

18    like a question from Rod Sexton to Mark Peters on

19    whether he operates in Greece.

20         Q.    Let's go onto the next one, Dave.   This

21    the Exhibit 6.

22              (At this time, Plaintiff's Exhibit 6 was

23    marked for identification purposes.)

24         Q.    Take a look at Exhibit 6, Mr. Fachner, and

25    tell me what that is?

Deposition of Daniel Fachner                                    Slush Puppie Limited, vs. The Icee Company,

```
1        A.   This is an e-mail from Rod Sexton dated

2   3-12-2009, asking Mark if he operates or is

3   interested in operating in a customer that we have

4   here in the states, and Auntie Annes is the customer

5   in the U.K, and then asking the same question of

6   whether he operates in Greece or in Switzerland.

7        Q.   And it looks like in addition to the

8   opportunity presented in Greece that is a lead in

9   Switzerland that he's sending to Mark Peters, right?

10  He calls it a customer lead, right?

11                MR. WOLFSOHN:  Objection.  Lack of

12  foundation.

13                THE WITNESS:   As it's related to the

14  U.K., yes.

15        Q.   Well, he says "On another note, we have a

16  customer lead in Switzerland and I think you do

17  business in parts of Europe.  Do you want this

18  lead?"  How was that not him sending Mark Peters a

19  lead for an opportunity in Switzerland?

20                MR. WOLFSOHN:  Objection.  Lack of

21  foundation.  Asked and answered.

22  BY MR. ZALUD:

23        Q.   You can answer.

24        A.   The same as I answered before, he's asking

25  the question whether he operates in Greece and in
```

Deposition of Daniel Fachner                                    Slush Puppie Limited, vs. The Icee Company,

```
 1   Switzerland.

 2        Q.   I'm ready for the next one, Dave.   No. 7.

 3             (At this time, Plaintiff's Exhibit 7 was

 4   marked for identification purposes.)

 5        Q.   This is Exhibit 7, Mr. Fachner, if you

 6   take a look at that and tell me what that is?

 7        A.   This is an e-mail from Steve Every to Mark

 8   Peters regarding some information that we got from

 9   one of our shows and passing those onto Mark Peters.

10        Q.   So it looks like ICEE is sending Mark

11   Peters leads and he calls them leads, leads in

12   Norway, the Netherlands and Germany, right?

13             MR. WOLFSOHN:   Objection.   Lack of

14   foundation.   You can answer.

15             THE WITNESS:   That is where these

16   leads are from based off this e-mail.

17        Q.   Norway, the Netherlands and Germany,

18   right?

19        A.   Yes, that is where these are from, based

20   off the of the e-mail.

21        Q.   All right.   The next one, Dave.   This is

22   8.

23             (At this time, Plaintiff's Exhibit 8 was

24   marked for identification purposes.)

25        Q.   Mr. Fachner, take a look at this and tell
```

Deposition of Daniel Fachner                         Slush Puppie Limited, vs. The Icee Company,

```
 1    the me what this one is, Exhibit 8.
 2         A.   This is an e-mail from Steve Every to Mark
 3    Peters talking about, um, discussions around the
 4    opportunity for him to operate in Japan.
 5         Q.   So you and Mark Peters are having,
 6    quote/unquote "top levels discussions" about this
 7    opportunity in Japan?
 8         A.   Mark Peters and I had conversations about
 9    that, yes.
10         Q.   And you kept Steve Every in the loop on
11    those top level discussions, right?
12         A.   As Steve became involved in the
13    international opportunities, yes.
14         Q.   And did that Japanese venture ever come to
15    any fruition?
16         A.   No, it didn't.
17         Q.   No. 9.
18              (At this time, Plaintiff's Exhibit 9 was
19    marked for identification purposes.)
20         Q.   Mr. Fachner, if you can take a look at
21    this Exhibit 9 and tell me what that is.  And it's
22    two pages, so I don't know if you're able to scroll
23    yourself or you need us to do it?
24         A.   I can try.
25         Q.   Our reporter says we'll need to scroll for
```

Deposition of Daniel Fachner                                    Slush Puppie Limited, vs. The Icee Company,

1    you, so tell me when you're done with that page and

2    we'll scroll to page two.

3        A.   Well, I think actually you have to go

4    backwards up for me to understand what this is.

5        Q.   Right, so we'll go to page two at the

6    beginning of the string.  And Mr. Fachner, let me

7    know when you're done with this page.  I will ask a

8    question about this page and then we'll go to the

9    next page, okay?

10        A.   I'm ready for the question.

11        Q.   And in the e-mail, September 23, 2008 is

12    from you, right, to Mark Peters with some CC'd

13    people, right?

14        A.   Yes, it is.

15        Q.   And you're presenting Mark Peters with a

16    possible business opportunity in Belgium?

17        A.   For the ICEE branded product, yes.

18        Q.   And then let's go to the next, page, Dave.

19    And this as just a continuation of that string,

20    right, Mr. Fachner?

21        A.   Yes, it is.

22        Q.   And the last e-mail from you on the

23    string, November 9th, 2008, you're telling him that

24    the venture has "everyone's excitement?"

25        A.   Yes, that's what it's saying.

Deposition of Daniel Fachner                                    Slush Puppie Limited, vs. The Icee Company,

```
 1        Q.   Exhibit 10.
 2             (At this time, Plaintiff's Exhibit 10 was
 3   marked for identification purposes.)
 4        Q.   So, Mr. Fachner, this is Exhibit 10, if
 5   you can take a look at that and tell me what that
 6   is?
 7        A.   An e-mail from Rod to a potential customer
 8   in Greece and then an e-mail from Rod to Mark
 9   Peters.
10        Q.   So it looks like Rod Sexton of ICEE is
11   sending Mark Peters another lead or another
12   opportunity in Greece, right?
13        A.   Yes.
14        Q.   No. 11, Dave.
15             (At this time, Plaintiff's Exhibit 11 was
16   marked for identification purposes.)
17        Q.   So Mr. Fachner, if you take a look at this
18   exhibit and tell me what it is?
19        A.   A communication with Rod or with Mark
20   Sexton and an interested party in Switzerland and
21   then a forward from Rod Sexton to Mark Peters.
22        Q.   So, Rod Sexton forwarding Mark Peters
23   another possible lead in Switzerland?
24        A.   Yes.
25        Q.   And Rod says to Michelle in the e-mail he
```

Deposition of Daniel Fachner          Slush Puppie Limited, vs. The Icee Company,

1   forwards to Mark Peters, "I have found out that our

2   ICEE/SLUSH PUPPIE licensee in the UK does have

3   representation in Switzerland, so it may be very

4   likely we can accommodate your needs."

5      A.    It looks like, against our contract, Rod

6   is discovered that Slush Puppie U.K. is doing

7   business in Switzerland.

8      Q.    That's not what he says in the e-mail,

9   right?   Right?

10      A.    That's not what he says in the e-mail?

11   I'm not sure I understand your question, Eric.

12      Q.    That's all I'm saying, he says, quote, "I

13   have found out that our ICEE/SLUSH PUPPIE licensee

14   in the UK does have representation in Switzerland,

15   so it may be very likely we can accommodate your

16   needs."   So, that's what he's telling this lead in

17   Switzerland, right?

18              MR. WOLFSOHN:   Objection.   Lack of

19   foundation.   You haven't established that he's seen

20   this e-mail before, and it's from 2009.   I fail to

21   see the relevance for the hearing.

22      Q.    You can answer.

23      A.    Yes, that's what Rod found out is that he

24   has representation in Switzerland.

25      Q.    No. 12.

```
 1              (At this time, Plaintiff's Exhibit 12 was

 2     marked for identification purposes.)

 3         Q.   Mr. Fachner, can you take look at this

 4     exhibit and tell me what it is?

 5                   MR. WOLFSOHN:  Objection.  Vague.

 6     You can answer.

 7                   THE WITNESS:   Go ahead and answer

 8     the question?

 9         Q.   Yes, you can go ahead and answer the

10     question unless Mr. Wolfsohn instructs you not to

11     answer.

12         A.   I'm sorry, I thought I heard David say

13     don't answer.

14                   MR. WOLFSOHN:  No, I said objection.

15     It's vague when he said what is this about?  But go

16     ahead and answer to the best of your ability,

17     Mr. Fachner.

18         Q.   Actually, let me correct that for the

19     record, I just said, what is this?  But feel free to

20     object, but Mr. Fachner, you can answer.

21         A.   This is an e-mail from a potential

22     licensee of shirts, for the -- I'm not sure I know

23     where it's for.  I'm assuming it would be for the

24     U.K.  And then an e-mail from me to Mark Peters

25     informing them of that, and suggesting an
```

Deposition of Daniel Fachner                          Slush Puppie Limited, vs. The Icee Company,

1    arrangement for the profits.

2         Q.    Suggesting that ICEE and Slush Puppie

3    Limited, splits the profits on this proposed

4    licensing deal?

5         A.    Yes, this is a person who is interested in

6    a licensee that we own for the U.K. area, and out of

7    respect for the distributor that we have there,

8    offering up a split in the licensing agreement.

9         Q.    The next exhibit, Dave, is that 12?  13?

10   Go ahead.

11              (At this time, Plaintiff's Exhibit 13 was

12   marked for identification purposes.)

13        Q.    Exhibit 13, Mr. Fachner, if you could take

14   a look at that and tell me what that is?

15        A.    Could we enlarge that just one step maybe?

16        Q.    Sure, we can.

17        A.    The bottom half of it, I can't see the top

18   now, but the bottom half of it is an e-mail from

19   Steve Every to Mark Peters, sharing some leads that

20   we got from an IAPPA show in Orlando.

21        Q.    And that's a trade show, right?

22        A.    It is.

23        Q.    And these are leads that Steve Every is

24   sending to Mark Peters for opportunities in Germany,

25   Denmark and Finland?

Deposition of Daniel Fachner                                    Slush Puppie Limited, vs. The Icee Company,

1              MR. WOLFSOHN:  Objection.  Objection.

2    Hey, Dan, just let me, just try to pause so I can

3    get my objections in.  Objection.  Lack of

4    foundation.

5         **Q.   All right, you answered, so let's move**

6    **onto the next exhibit.**

7              (At this time, Plaintiff's Exhibit 14 was

8    marked for identification purposes.)

9         **Q.   All right, Mr. Fachner, this is**

10   **Exhibit 14, and if you take a look at that, and we**

11   **can go through the pages for you, and we will, but,**

12   **and you just tell me what that document is?**

13        A.   This is a syrup manufacturing agreement

14   with Slush Puppie Corporation.

15        **Q.   And it's from 1996, right?**

16        A.   Yes, it's dated here January 1st, 1996.

17   Executed February 5th, 1996.

18        **Q.   I want to get some clarity on the**

19   **contracting parties names, okay?  It's my**

20   **understanding that the Slush Puppie reference in**

21   **this document is the predecessor to ICEE, is that**

22   **your understanding?**

23        A.   Yes.

24        **Q.   And that the Able Foods entity listed here**

25   **is the predecessor to Slush Puppie Limited; is that**

```
 1   your understanding also?

 2        A.   Yes.

 3        Q.   Okay.  And what was the -- and I'm sorry,

 4   you're familiar with this contract, right,

 5   Mr. Fachner?

 6        A.   I am.

 7        Q.   I'm going to call it the 1996 contract, is

 8   that okay?

 9        A.   Yes.

10        Q.   What was the geographic territory of this

11   1996 contract?

12        A.   You're asking me to read the countries

13   listed there.

14        Q.   You don't need to read all of them, but

15   that's the territory, right, the countries that are

16   listed on the first page of the 1996 contract,

17   right?

18        A.   Yes, as it reads, the areas shall include

19   the following geographical entities.

20        Q.   And we don't need, you're right, we don't

21   need to read them all.  And let me ask you, you

22   know, we talked about some of the European countries

23   in which ICEE operates.  Does ICEE operate in all of

24   these European countries that are listed in this

25   1996 agreement today?
```

Deposition of Daniel Fachner                                    Slush Puppie Limited, vs. The Icee Company,

1      A.   I don't know if I can adequately answer

2  that question.

3      Q.   Okay.  That's okay.  Is it your belief,

4  Mr. Fachner, that Able Foods, later known as Slush

5  Puppie Limited has violated some provision of this

6  contract?

7      A.   This contract is a syrup manufacturing

8  contract for them to be able to sell syrups to

9  distributors in those territories and to my

10 knowledge, they haven't violated that portion.

11     Q.   And when you say "that portion," I want to

12 just make sure I understand you.  Does that mean

13 that you believe that Able Foods, later known as

14 Slush Puppie Limited has not violated a provision of

15 this contract?

16          MR. WOLFSOHN:  Dan, make sure you

17 read the whole thing.  Have you read it?  Are you

18 able to review the contract?  He's asking you, yes,

19 he's asking you about the entire agreement.

20 BY MR. ZALUD:

21     Q.   But let me ask you this, and by-the-way,

22 we can definitely review it, but, you looked at this

23 yesterday and you're the CEO of the company involved

24 in this lawsuit.  In your mind, right now,

25 Mr. Fachner, do you believe that Able Foods/Slush

Deposition of Daniel Fachner                    Slush Puppie Limited, vs. The Icee Company,

```
1   Puppie has violated any clause in this contract?

2   Just in your mind right now?

3               MR. WOLFSOHN:  Take your time and

4   review the contract, Dan, it's a long contract.

5       Q.   But I'm asking you, I mean do you think

6   that ICEE -- do you think Slush Puppie/Able Foods

7   has violated any of the clauses of this contract?

8               MR. WOLFSOHN:  Take your time and

9   read it, Dan.  Are you referring to after

10  termination or before termination, sir?

11      Q.   I'm not specifying.  I just want to know

12  if the CEO of the movement for a preliminary

13  injunction believes any of the clauses in this

14  contract were violated?

15              MR. WOLFSOHN:  Well, he will go

16  through it and let you know what's been violated.

17      Q.   And Mr. Fachner, in spite of what your

18  lawyer just said, I don't want you to presume there

19  has been a violation, I want to know if you think

20  there has been, all right?  Okay?

21      A.   Eric, you have asked the same question

22  three different ways, I think, but I would like to

23  do is make sure that I have read this all of the way

24  through.  My quick answer would be, absolutely, they

25  have sold syrups around these particular territories
```

Deposition of Daniel Fachner                    Slush Puppie Limited, vs. The Icee Company,

```
 1    and into other spots.
 2        Q.   Okay.
 3        A.   So that would be a violation of this
 4    agreement.
 5        Q.   Understood.  And thank you for that.  So
 6    are you done with page one?
 7        A.   No.
 8        Q.   Okay.  Like Mr. Wolfsohn said, I mean take
 9    the time you need to read it.  That's fine.
10        A.   Okay.
11        Q.   Go ahead to page two, yes.  And, while
12    you're reading, Mr. Fachner, any underlines on this
13    are mine, so --
14        A.   Okay.  Page three.
15        Q.   Page three, we'll move, and before you
16    start, Mr. Fachner, before I forget, just a
17    follow-up question on something you said before you
18    started reading the document.  You said that you
19    believe that Able Foods/Slush Puppie Limited has
20    violated this agreement by selling syrup, is that
21    what you said?
22        A.   Could we have the court reporter just
23    repeat that?
24        Q.   Repeat what?
25        A.   Well, I'm not sure I even understand your
```

Deposition of Daniel Fachner                                      Slush Puppie Limited, vs. The Icee Company,

```
 1   question, Eric.
 2        Q.   Well, I asked you, we don't need to repeat
 3   it yet, I mean I remember it.
 4        A.   Well, then just repeat the question.
 5        Q.   Sure.  My question was:  Do you believe
 6   before looking at it, you know, in your mind whether
 7   there's been any violation by Able Foods/Slush
 8   Puppie of this contract?  And your answer, and I'm
 9   paraphrasing was, well, I haven't read it yet, but
10   off the top of my head, I think that they have sold,
11   manufactured and sold syrups in violation of this
12   agreement?
13        A.   Slush Puppie's syrups outside of those
14   territories listed on page one.
15        Q.   Okay.  And tell me more about that.
16             MR. WOLFSOHN:  Objection.  Vague.
17   But you can answer.
18             THE WITNESS:  I don't know if
19   there's a lot more to tell other than selling Slush
20   Puppie syrups with the Slush Puppie label outside of
21   those countries listed.
22        Q.   And like where would that be?
23        A.   Can you go back to the list?
24        Q.   Yes, page one, please.
25        A.   I don't know which territories those would
```

Deposition of Daniel Fachner                          Slush Puppie Limited, vs. The Icee Company,

1   be off the top of my head today.

2       Q.   Okay.  So you don't know which territories

3   outside of the list of territories is the 1996

4   contract there are in which Slush Puppie/Able Foods,

5   may have sold syrup, is that an accurate

6   characterization?

7       A.   I'm not sure which territories those would

8   be today as we sit here, I'd have to get some advice

9   from those people that manage that territory for us.

10      Q.   Manage which territory?

11      A.   International Slush Puppie business for

12  the ICEE Company.

13      Q.   And the information you would be getting

14  from them would be what?  What would you be asking

15  them for?

16      A.   The territories where this has been

17  violated.

18      Q.   I didn't catch the last word, we had a

19  technological glitch there.

20      A.   No, the territories where this would have

21  been violated.

22      Q.   Are you, Mr. Fachner, going to know some

23  of those territories you think were violated between

24  now and Monday?

25      A.   I will ask that question, yes.

Deposition of Daniel Fachner                                    Slush Puppie Limited, vs. The Icee Company,

```
 1        Q.   Could I ask you that if you get any
 2   concrete information on that, you convey it to your
 3   counsel, and he can decide whether he sends it along
 4   to us, but can I ask you that if you look and find
 5   something, can you send it to Mr. Wolfsohn?
 6        A.   Yes, you could ask me.
 7        Q.   Thank you.
 8             MR. ZALUD:  And David, if he sends
 9   something to you between now and Monday, we'd like
10   to request it.  You don't need to answer that
11   request, I'm just making it.
12        Q.   Page three, let's go back to page three
13   now, Dave.
14        A.   Okay, page four.  Okay, can you go back
15   one page, please?  Okay, all right.  Okay.
16        Q.   By-the-way were you writing something down
17   there, Mr. Fachner?
18        A.   I was.
19        Q.   And what were you writing down?
20        A.   A number 17, on page four, I believe it
21   is, I don't know, I asked you to go back to that
22   page, so --
23        Q.   Okay.  And why is 17 of importance to you?
24        A.   I believe it links the two agreements
25   together.
```

Deposition of Daniel Fachner                    Slush Puppie Limited, vs. The Icee Company,

```
 1        Q.   And by the two agreements, do you mean the
 2   1996 agreement and the one that came after this, the
 3   1999 agreement?
 4        A.   That is what I meant, yes.
 5        Q.   Okay.  So let me go back to the question I
 6   asked before you reviewed the document, do you
 7   believe that Able Foods, later known as Slush Puppie
 8   Limited, has violated a specific provision of this
 9   contract?
10        A.   I believe this contract gives them the
11   rights to sell syrups in territories listed on the
12   page one, and I believe that they have sold syrups
13   outside of those territories.
14        Q.   But you don't know where?
15        A.   Not today sitting here, no.
16        Q.   Any other violations that you believe were
17   committed by Able Foods, later known as Slush Puppie
18   Limited of this 1996 contract?
19        A.   From this contract only gives them the
20   rights to sell the syrups in those territories.
21        Q.   So that I understand, so that would be the
22   only violation of this contract you believe that
23   you're aware of, right?
24             MR. WOLFSOHN:  Objection.
25   Mischaracterizes his testimony.
```

Deposition of Daniel Fachner                        Slush Puppie Limited, vs. The Icee Company,

```
 1        Q.   That's why I'm asking, so you can correct
 2   me, Mr. Fachner, but go ahead.
 3              MR. WOLFSOHN:   Including post
 4   termination, Eric?
 5              MR. ZALUD:     Any time.
 6              MR. WOLFSOHN:  Okay, thank you.
 7        Q.   Should I repeat it?
 8        A.   Yes.
 9        Q.   Okay, no problem.  You know, we're on
10   video, but I can see a furrowed brow there.  So,
11   that would be the sole violation you see now of this
12   1996 contract, and that would be your belief that
13   Slush Puppie/Able Foods sold syrups outside of the
14   geographic territories listed on page one of this
15   contract?
16              MR. WOLFSOHN:  Objection.  Compound.
17   You can answer.
18              THE WITNESS:   That is what I said,
19   yes.
20        Q.   All right.
21        A.   I believe it.
22        Q.   Okay, let me ask you about something I
23   underlined, page two, now you see I underlined there
24   under three it says, "Slush Puppie," and by-the-way,
25   Slush Puppie would be ICEE as we have established,
```

Deposition of Daniel Fachner                                    Slush Puppie Limited, vs. The Icee Company,

```
 1    "may cancel and terminate this appointment by

 2    written notice to Manufacturer, Able Foods, for any

 3    one of the following reasons."  Do you see that?

 4         A.   I do.

 5         Q.   And then it lists some reasons, let's go

 6    to the next page, Dave.  And one of the reasons for

 7    which Slush Puppie, now ICEE, can terminate this

 8    1996 contract is if Able Foods, later known

 9    differently, would file any lawsuit against what was

10    then Slush Puppie and what is now ICEE, right?

11         A.   Correct.

12         Q.   So, if I understand that, if ICEE, then

13    known as Slush Puppie, would have breached this

14    agreement and Able Foods would have sued ICEE, then

15    known as Slush Puppie, for that breach, then ICEE

16    could have terminated this contract; is that right?

17         A.   Can you repeat the question?

18         Q.   Sure.  I'm just going to call -- I'm going

19    to say ICEE and Slush Puppie, ICEE being the

20    corporation here and Able Foods being the

21    manufacturer as defined in the agreement.  If my

22    understanding of this provision of the contract is

23    that if ICEE were to breach this contract and Able

24    Foods would sue ICEE for that breach, than ICEE

25    could terminate the contract?
```

Deposition of Daniel Fachner                                    Slush Puppie Limited, vs. The Icee Company,

```
 1              MR. WOLFSOHN:  Objection.
 2   Mischaracterizes the document.
 3       Q.   Well, it's a question, so put a question
 4   mark on the end, I'm just asking you that, Mr.
 5   Fachner.
 6       A.   You can read the document as well as I
 7   can, Eric.
 8       Q.   I know.
 9       A.   I'm getting a little confused with the way
10   you're supplementing ICEE and Slush Puppie and Able
11   Foods, because, we're Slush Puppie and they are
12   Slush Puppie, so I'm getting a little confused of
13   that, here's what I read, "The voluntary and
14   involuntary petition of Manufacturer seeking relief
15   under any provision of any receivership or
16   bankruptcy law or other law for relief debtors, by
17   Distributor.  The filing of any legal action other
18   than for collection on account against SLUSH PUPPIE,
19   its representatives, distributors, customers
20   manufacturers, or supplies."
21       Q.   Let me do this, I understand what you mean
22   by confusion.  I'll use the names of the companies
23   in this document, all right?  All right?
24       A.   Okay.
25       Q.   So, if Slush Puppie were to breach this
```

Deposition of Daniel Fachner                                    Slush Puppie Limited, vs. The Icee Company,

```
 1   contract --
 2        A.   Slush Puppie Corporation?
 3        Q.   Yes, Slush Puppie Corporation, thank you.
 4   If Slush Puppie Corporation --
 5        A.   Is Slush Puppie Corporation in your mind
 6   us?
 7        Q.   Yes, because I'm using the definitions in
 8   the document.  So, if Slush Puppie Corporation were
 9   to breach this contract and Able Foods were to sue
10   Slush Puppie Corporation for that breach, than Slush
11   Puppie Corporation could terminate this contract,
12   right?
13             MR. WOLFSOHN:  Objection.  Dan, if
14   you have -- if this is not something that you have
15   thought about, because this is not an issue that was
16   ever raised by Slush Puppie U.K., Slush Puppie
17   Limited or Frozen Brothers Limited, if you don't
18   know, feel free to say, you don't know.
19             MR. ZALUD:     Well, it's in the
20   briefing and --
21             MR. WOLFSOHN:  No, it isn't, where?
22             MR. ZALUD:     Yes, it's in one of
23   your briefs, but --
24             MR. WOLFSOHN:  Find our brief, don't
25   make misrepresentations.
```

Deposition of Daniel Fachner                        Slush Puppie Limited, vs. The Icee Company,

```
1                  MR. ZALUD:     You neither.

2                  MR. WOLFSOHN:  It's not in our

3    briefs.

4                  MR. ZALUD:     It is.  Any way --

5                  MR. WOLFSOHN:  Dan, you don't have to

6    answer the question if this is something you haven't

7    thought about.  You're not an attorney.  We're not

8    making any representations of your interpretation of

9    this section of the contract.

10                 MR. ZALUD:     I'm not sure I even

11   understand that.

12        Q.   I mean I'm asking you as CEO of the

13   company what you think of a contract that your

14   company signed and --

15                 MR. WOLFSOHN:  His company didn't

16   sign it.  He didn't negotiate it.  His company

17   didn't sign it.  So, there you go again,

18   misrepresenting things.

19                 MR. ZALUD:     Um --

20                 MR. WOLFSOHN:  I don't know what's

21   funny about that.  Where do you see his signature on

22   this or any of his designees?  They didn't acquire

23   the company until 2006.

24                 MR. ZALUD:     Right, but I mean are

25   you saying that your client right now, David, and I
```

1    hate to debate this, but it is not a party to this

2    contract?

3                    MR. WOLFSOHN:  No, that's not what

4    I'm saying.

5                    MR. ZALUD:     Okay.  Well, I think

6    so.

7                    MR. WOLFSOHN:  But he doesn't -- we

8    are not -- we are not putting Mr. Fachner on the

9    stand to interpret an agreement.  That is not the

10   purpose of what's happening on Monday.

11                   MR. ZALUD:     Do you believe -- let

12   me ask you this.

13                   MR. WOLFSOHN:  Yes.

14                   MR. ZALUD:     Do you plan on

15   introducing this document as an exhibit in your case

16   in chief?

17                   MR. WOLFSOHN:  Yes, absolutely.

18                   MR. ZALUD:     Okay.  Well, then, I

19   should be able to ask about it.

20                   MR. WOLFSOHN:  Not his subjective

21   uncommunicated belief about a provision that is not

22   even at issue or a hypothetical that is not at

23   issue.  It's not relevant.  I mean you can ask him,

24   I'm not instructing him not to answer, but I'm

25   cautioning him not to reveal attorney advice and not

```
 1   to speculate about some legal conclusion that he has

 2   no independent thought about.  Nor would -- I mean

 3   he may have thought about it, he may not have.

 4   Let's see what he says.  But he didn't negotiate

 5   this agreement, and we have never taken the position

 6   that he negotiated the agreement and we have never

 7   taken the position that we signed it.  Is it

 8   binding?  Yeah, absolutely.  You admitted that.

 9              MR. ZALUD:     There you go.

10              MR. WOLFSOHN:  Yes.

11       Q.   Any way, it looks like, I mean you've been

12   in this business for a quarter century, I mean it

13   looks to me like if Mark Peters' company thinks your

14   company breached this agreement, and files a lawsuit

15   on it, than your company can terminate this

16   contract, is that what you think?

17              MR. WOLFSOHN:  And, Dan, just to the

18   extent that your understanding is based on

19   discussions with counsel, I would instruct you not

20   to answer on the grounds of attorney/client --

21   attorney/client privilege and work product doctrine.

22       Q.   I just want to know what you think, you're

23   the CEO of the company that owns this contract, so,

24   I just want to know what you think?

25              MR. WOLFSOHN:  Again, to the -- this
```

1   is a contract that's in litigation, and has been in

2   litigation and discussions before that involving

3   lawyers.  So, Dan, do not reveal any attorney/client

4   advice or attorney/client work product opinion type

5   information.

6               MR. ZALUD:    Yes, and I agree with

7   that.  I don't want you to tell me anything

8   Mr. Wolfsohn or Mr. Marandola told you or discussed

9   with you, but it's your company's contract, I just

10  want to know, you know, it's 20 words, I just want

11  to know what they mean to you?

12              MR. WOLFSOHN:  Well, what they mean

13  to him is not relevant to the case.

14              MR. ZALUD:    It is, he's a

15  litigating party to the case.

16              MR. WOLFSOHN:  We're not putting him

17  on to interpret it, there's been no issue about

18  ambiguity.

19       Q.   Go ahead, Mr. Fachner.

20              MR. WOLFSOHN:  Dan, is there anything

21  you can say that wouldn't just be attorney opinion?

22              MR. ZALUD:    You don't need to lead

23  him around like that, you can just object.

24       Q.   Go ahead, Mr. Fachner.

25       A.   I don't think I would have anything to add

```
1   to this that I haven't discussed with our attorneys,

2   and feel like that would be attorney/client

3   privilege.

4         Q.   Do you understand the two sentences that I

5   have underlined?

6         A.   Where are you?  I only see one underlined

7   sentence.

8         Q.   Right, go to the prior page, please.

9              MR. WOLFSOHN:  "Should this

10  appointment be terminated, Manufacturer shall

11  immediately cease using SLUSH PUPPIE trademarks."

12        Q.   Okay.  Do you understand this sentence,

13  "SLUSH PUPPIE may cancel and terminate this

14  appointment by written notice to Manufacturer for

15  any one of the following reasons."  Do you see that

16  Mr. Fachner?

17        A.   I do.

18        Q.   And you understand that, right?

19        A.   I understand that "SLUSH PUPPIE may cancel

20  and terminate this appointment by written notice to

21  Manufacturer for any one of the following reasons."

22        Q.   Next page, Dave.  And do you understand

23  that one of those reasons is "The filing of any

24  legal action other than for collection on account

25  against SLUSH PUPPIE, its representatives,
```

Deposition of Daniel Fachner                          Slush Puppie Limited, vs. The Icee Company,

```
 1    distributors," et cetera, you understand that

 2    sentence, right?

 3         A.   I do.

 4         Q.   And you understand that as being one of

 5    the ways that Slush Puppie Corporation can terminate

 6    this agreement, right?

 7         A.   Again, I would want to talk to our

 8    attorney to make sure I understand it and not rely

 9    on my representation of it, but I do understand that

10    as being one of those reasons.

11         Q.   Does that seem fair to you?

12         A.   It's the contract as it is written, so it

13    is fair.

14         Q.   That by breaching the contract, Slush

15    Puppie Corporation can then terminate it; is that

16    fair?

17              MR. WOLFSOHN:  Objection.  That's not

18    what the contract says.  I mean if you're asking him

19    is it fair for us to be able to terminate a contract

20    where Slush Puppie Limited sues on a forged

21    document?  Obstructs justice -- obstructs justice,

22    and it and its attorneys engage in criminal conduct,

23    why don't you ask him that question.

24              MR. ZALUD     Well, that's not the

25    question I'm asking.
```

Deposition of Daniel Fachner                    Slush Puppie Limited, vs. The Icee Company,

```
 1                    MR. WOLFSOHN:  Well, that's the

 2    question you should be asking, and move on.  Do you

 3    have any questions that aren't attorney/client

 4    privilege or from 2009 or 2010?

 5        Q.   That wasn't attorney/client privilege.

 6    All I asked is if you think it's fair?

 7                    MR. WOLFSOHN:  And he said he thinks

 8    it's fair.

 9        Q.   I didn't hear that.  Do you think it's

10    fair, Mr. Fachner?

11        A.   What I said is that's the contract, which

12    makes it fair.  Did I not say that?

13        Q.   If you did, I apologize, but you said it

14    now, so --

15                    MR. WOLFSOHN:   He said it twice.

16        Q.   After a lot of prompting.  But let's move

17    on to the next -- oh, no, hold on.  Let me ask you

18    something more about this contract.  You just read

19    the whole thing, right?

20        A.   In a short order, yes.

21        Q.   Does anything in this contract require

22    Able Foods to turn over Web sites to Slush Puppie

23    Corporation?

24        A.   Well, we may have to go through this one

25    more time for me to find that.  I did see a
```

Deposition of Daniel Fachner                                Slush Puppie Limited, vs. The Icee Company,

1   provision of things that they would have to turn

2   over, but I'd have to go back and look again.

3       Q.   All right.  Do you want to start at the

4   first page or you tell me, we can adjust.

5       A.   Start from where we're at.

6       Q.   Okay.

7       A.   No. 11 talks about things that they would

8   have to stop using immediately.

9       Q.   Do you want to keep looking?  Do you want

10  to go to a different page or --

11      A.   I'm just highlighting 11.

12      Q.   So, all right.  I'm reading it, to me it

13  doesn't say that Able Foods is required to turn over

14  Web sites to ICEE?

15      A.   Well --

16           MR. WOLFSOHN:  Are you testifying?

17      Q.   Do you see that there, Mr. Fachner?

18           MR. WOLFSOHN:  He just said they have

19  to cease using the trademark.

20           MR. ZALUD:    Are you testifying?

21      Q.   Do you see anywhere in that sentence you

22  just read, Mr. Fachner, any contractural verbiage

23  that requires Able Foods to turn over Web sites to

24  Slush Puppie Corporation?

25           MR. WOLFSOHN:  Asked and answered.

Deposition of Daniel Fachner                                    Slush Puppie Limited, vs. The Icee Company,

```
 1    You can answer again, Dan.
 2                   THE WITNESS:   Well, I did answer, in
 3    No. 11 it talks about trademarks.  And what they
 4    would need to turn over.  If you're asking in here
 5    does it say Web site?  It does not say Web site, but
 6    I think that is part of what this would be used for.
 7         Q.   And just so that we're clear, that
 8    sentence -- where does it say you have to turn over,
 9    I don't see that anywhere, is that in there?
10         A.   It does not say it like that, no.
11         Q.   Do you want to look through other pages?
12         A.   Sure.  Let's go back to one.
13         Q.   Okay.  You don't have to.
14         A.   No, no, let's do it.
15         Q.   Okay, that is fine.  Oh, I've got an idea,
16    while you're looking, could you tell me if there's
17    anywhere in this contract that requires Able Foods
18    to inform customers that it has no right to use the
19    Slush Puppie trademark?
20         A.   All right, we can go to page two.  All
21    right, page three.  I got a fly that wants to -- I
22    feel like you hired a fly.
23         Q.   I'm great at killing them, but I'm not
24    there.
25         A.   "Upon termination, Manufacturer shall
```

Deposition of Daniel Fachner                                    Slush Puppie Limited, vs. The Icee Company,

```
 1   immediately cease using SLUSH PUPPIE trademarks or

 2   designs, copyrights, patents, tradenames, signs

 3   emblems, insignias, symbols, tokens or other marks

 4   used in connection with SLUSH PUPPIE in any manner

 5   whatsoever."

 6        Q.   That sounds familiar to me, can you direct

 7   me to where you're reading?

 8        A.   No. 11 again.

 9        Q.   Okay.

10        A.   We referenced it before, we just didn't

11   discuss it.

12        Q.   All right.

13        A.   "Upon termination, Manufacturer shall

14   immediately cease and desist from further use of any

15   SLUSH PUPPIE trademarks, names, logos, or references

16   in any formally approved business name of

17   Manufacturer shall immediately be changed to delete

18   any reference to the SLUSH PUPPIE products."

19        Q.   And I see it there, and I did not

20   underline it so you wouldn't see it, I see it there,

21   but what is the significance of that sentence to

22   you?

23        A.   I think you asked under termination what

24   that meant and I think this clearly defines what

25   that means.
```

Deposition of Daniel Fachner                                    Slush Puppie Limited, vs. The Icee Company,

1      Q.   And it doesn't say that Able Foods has to

2  turn anything over to Slush Puppie Corporation,

3  right?

4      A.   They have to cease using it.

5      Q.   Right.  Let me know when you want to go to

6  the next page.

7      A.   Just to highlight in 12 it says

8  "Manufacturer shall not during the term of this

9  agreement, or for two years after conduct any

10  business which would directly or indirectly aid in

11  the production, distribution or sale of SLUSH PUPPIE

12  brand syrups, neutral base or flavors."

13      Q.   And in the next sentence permits the

14  manufacturer to do some other things though, right?

15            MR. WOLFSOHN:  Unrelated to the Slush

16  Puppie brand.

17            MR. ZALUD:    Is that testimony?  I

18  mean could we just have the witness answer?

19            MR. WOLFSOHN:  You're really wasting

20  time, so --

21            MR. ZALUD:    Me?

22            MR. WOLFSOHN:  Yes, the agreement,

23  you know, we're not offering him.  We're not

24  offering him to talk about the negotiations that led

25  to this agreement.  And Mark Peters has no

Deposition of Daniel Fachner                                    Slush Puppie Limited, vs. The Icee Company,

1   recollection of any such negotiations, so --

2                MR. ZALUD:     If want to withdraw

3   this as an exhibit to your case in chief, he's your

4   only witness.

5                MR. WOLFSOHN:  You seem to be not

6   understanding the law of contract interpretation and

7   I'm not going to give you advice.

8                MR. ZALUD:     You don't need to.

9   Please, do not.

10               MR. WOLFSOHN:  I obviously do,

11  because you don't seem to understand the difference

12  between being able to enforce a contract as opposed

13  to having somebody stand up and interpret the words

14  in a contract.  So those are two different things.

15  Sometimes the negotiating history is relevant,

16  sometimes there's an ambiguity under the Parol of

17  evidence rule or other exceptions, but this is not

18  that case.  But, obviously, there's no rule that

19  says that because you don't have a witness who was

20  around at the time of the negotiation, that means

21  you can't enforce a contract.  So, no, we're not

22  withdrawing this.  Yes, we are claiming there's

23  violations of --

24               MR. ZALUD:     I don't want your

25  testimony on that -- stop.  Stop.

Deposition of Daniel Fachner                                    Slush Puppie Limited, vs. The Icee Company,

```
 1                    MR. WOLFSOHN:  Okay.

 2                    MR. ZALUD:     You stop testifying.

 3                    MR. WOLFSOHN:  You go ask some

 4    questions that are actually about facts.

 5                    MR. ZALUD:     You don't determine

 6    those.

 7                    MR. WOLFSOHN:  Yes, I do.

 8                    MR. ZALUD:     No, you're not the

 9    judge.  You are not the judge.

10                    MR. WOLFSOHN:  I will shut it down.

11    So you have got -- you have got 26 minutes, the same

12    amount I of time you gave me for Mr. Samoren.

13                    MR. ZALUD:     I'm going to ask

14    questions for as long as I have.  You're slowing it

15    down, really.  Could we stop fighting?  Let me just

16    ask a question.  You're slowing it down.

17         Q.   Let's go to the next page.  Are you done

18    with that page, Mr. Fachner?

19         A.   I am.

20         Q.   Dave, the next page.  Oh, I'm sorry, one

21    more question about that sentence you read about the

22    two years after.  Go back to it, please, Dave.  You

23    remember this sentence you read, it's in the

24    brackets there, Mr. Fachner, you remember that?

25         A.   I do.
```

Deposition of Daniel Fachner                                    Slush Puppie Limited, vs. The Icee Company,

```
 1        Q.   Do you believe that Able Foods violated

 2    that provision?

 3                 MR. WOLFSOHN:  Dan, you can answer to

 4    the extent it is not attorney/client privilege or

 5    attorney work product.

 6                 THE WITNESS:  Well, it is

 7    attorney/client privilege information.

 8                 MR. WOLFSOHN:  Then don't answer.

 9        Q.   Do you know any facts, you, Dan Fachner,

10    without talking to your lawyers that would lead you

11    to conclude that Able Foods violated this provision?

12                 MR. WOLFSOHN:  When he says "Able

13    Foods", I think he means Slush Puppie Limited or

14    Frozen Brothers Limited or its subsidiaries wholly

15    owned by Ralph Peters & Sons and controlled by Mark

16    Peters.

17        Q.   I don't mean all of that, but I mean the

18    contracting party, Able Foods, but thank you for

19    pointing out the Able Foods.

20        A.   And your question, Eric?

21        Q.   Do you, without any kind of attorney

22    advice, do you believe there are facts in your mind,

23    that would lead you to conclude that Able Foods

24    violated this clause?

25        A.   I have seen pictures of equipment in the
```

Deposition of Daniel Fachner                           Slush Puppie Limited, vs. The Icee Company,

```
 1   field that still have the Slush Puppie name on the

 2   piece of equipment, that would be confusing for

 3   sure.

 4        Q.   And which pictures?  What pictures have

 5   you seen?

 6        A.   We have provided pictures of a piece of

 7   equipment that still has the Slush Puppie name on it

 8   for service.

 9        Q.   And that would be the machine in Cardiff,

10   right?

11        A.   I'm not sure where that was.

12        Q.   Okay.  So, sorry, let's go onto the next

13   page then, Mr. Fachner?

14        A.   Is there a question about this page?

15        Q.   Well, you were reading the contract again,

16   yes, the pending question was for each of these

17   pages, does it say anywhere in this contract that

18   there's a requirement for Able Foods to inform

19   customers that it has no right to use the Slush

20   Puppie trademark?  I think that's why you were

21   reviewing it in light of that question.

22        A.   The next page.  And then again, Eric, your

23   question now.

24        Q.   Sure.  Does it say anywhere in that 1996

25   contract that's there's a requirement for Able Foods
```

 1  to inform customers that it has no right to use the

 2  Slush Puppie trademark?

 3      A.   I don't see that in here.

 4      Q.   Let's go onto the next exhibit, Exhibit 15

 5           (At this time, Plaintiff's Exhibit 15 was

 6  marked for identification purposes.)

 7           (At this time, another court reporter

 8  entered the proceedings until completion.)

 9      Q.   (BY MR. ZALUD)  Mr. Fachner, this is

10  Exhibit 15.  Could you take a look at that and tell

11  me what it is?

12      A.   It's really poorly copied here, but --

13  that did not make it much better -- but distributor

14  agreement, a 1999 distributor agreement.

15      Q.   Yeah.  Maybe there's a clearer copy

16  somewhere.  This was the clearest one I could find,

17  but I think the subsequent pages are clearer.

18      A.   Okay.

19      Q.   And to clarify the parties here, this is a

20  contract between Slush Puppie Corporation, which

21  later became ICEE; right?

22      A.   Correct.

23      Q.   And Slush Puppie Limited, the company

24  affiliated with Mark Peters.  So I'm just going to

25  use the names in the contract for questions about

Deposition of Daniel Fachner                                    Slush Puppie Limited, vs. The Icee Company,

1   this contract.  All right?

2        A.   Okay.

3        Q.   First question is, what is the territory

4   encompassed by this contract?  If you know it,

5   that's fine.  If not, we can move to the page.

6        A.   Well, we should move to the page to be

7   accurate.

8        Q.   Okay.  It's the last page then.

9        A.   Territory described, the United Kingdom

10  and Ireland.

11       Q.   So this contract encompasses activities

12  within those territories, the UK and Ireland?

13       A.   Correct.

14       Q.   I'm going to try to find a way for us all

15  to be more efficient with this one, everyone, so let

16  me ask you this.  Before you look through it, do you

17  believe that Slush Puppie Limited has violated this

18  contract?

19       A.   Yes.

20       Q.   And, you know, we can look through it, and

21  we will, Mr. Fachner, but tell me in what way you

22  believe Slush Puppie Limited has violated this

23  contract?

24       A.   They signed distributor agreements for the

25  Slush Puppie brand in areas outside of the United

1   Kingdom and Ireland.  They signed licenses

2   agreements around the brand that they did not have

3   the rights to do in places in the UK and Ireland and

4   outside of those areas for products beyond the scope

5   of this agreement.

6       Q.   And what license agreements were those?

7       A.   Agreements to sell T-shirts and other

8   types of products that is beyond what the scope of

9   this agreement is.

10      Q.   And do you have any of those?

11      A.   You mean do I own some of those?

12      Q.   I mean, have you seen any of those?

13      A.   Yes, I have.

14      Q.   Do you have them in your corporate

15  possession right now?

16      A.   I believe that we do.  I've seen them over

17  the years.  We've provided that information over the

18  years.  We've asked them to stop over the years.  If

19  it's been sitting here in our archives, I'm not

20  sure.

21      Q.   And if you -- let me ask you this:  If you

22  had those, and it sounds like you were saying you

23  do, those would have been produced in discovery in

24  this case; right?

25      A.   Yes, they would have.

```
 1        Q.   All right.  I'm going to have a couple of

 2   questions, very similar to my other ones, about this

 3   contract.  Do you want to look through it before I

 4   ask you them?

 5        A.   Why don't you ask the question, and then

 6   I'll let you know whether I feel like I need to look

 7   through it.

 8        Q.   A fair point.  Does this contract, the

 9   1999 contract, require Slush Puppie Limited to turn

10   over websites to Slush Puppie Corporation?

11        A.   Then we'll need to read through the

12   contract.

13        Q.   All right.  Are you ready for -- should we

14   go back to -- you read page 1; right?

15        A.   We should start at 1.

16        Q.   All right.  That's fine.

17        A.   Okay.  I read 1.

18        Q.   Go ahead.  Go ahead.  And, Mr. Fachner,

19   maybe another way to save time is I'm going to have

20   that -- the other question too, is there anything in

21   this contract that requires Slush Puppie Limited to

22   inform customers that it has no right to use the

23   Slush Puppie trademark, so --

24        A.   This is really a poor display.

25        Q.   Could we enlarge it a little bit more?
```

1          A.    You can give it a shot.

2          Q.    **Let's give it a shot and see what happens.**

3    **That seems better.  We'll have to scroll for you.**

4          A.    You know what?  It was easier for me to

5    read it a little smaller than it is right now.  If

6    we could do that.

7          Q.    **Sure.**

8          A.    Thank you.  Rights Reserved under number 3

9    says, Upon any termination of this agreement,

10   distributor shall return to company or effectively

11   destroy all literature, signs, advertising

12   materials, promotional matters, I believe that says,

13   and other materials identifying the former

14   distributor with company or its products and shall

15   immediately cease to identify itself with company or

16   use the marks or any confusing similarity thereof,

17   and shall discontinue -- I'm sorry.  Some of this is

18   hard to read -- or change --

19         Q.    **-- discontinue or change its company name**

20   **--**

21         A.    -- if distributor employed any such

22   company name or product mark as a part of the

23   distributor's name, logo, or business.

24         Q.    **And I think I know the answer, but why is**

25   **that important, in your mind?**

Deposition of Daniel Fachner                    Slush Puppie Limited, vs. The Icee Company,

1      A.   You asked if they were to return, and it

2   says, distributor shall return to company.

3      Q.   **Return the items listed in that sentence;**

4   **right?**

5               MR. WOLFSOHN:  Objection; asked and

6   answered.

7      Q.   **(BY MR. ZALUD)  You can answer.**

8      A.   Yes.

9      Q.   **We're near the bottom, so go ahead and let**

10  **us know.**

11     A.   You can go to the next page.  I really

12  can't read this.  It must be easier on your side

13  than it is mine, but this just --

14     Q.   **Yeah.  I mean, the hard copy is easier,**

15  **but you're right, that's --**

16              MR. WOLFSOHN:  Dan, do you have a

17  printer there?

18              THE WITNESS:  I have a printer in my

19  office, yes.

20              MR. WOLFSOHN:  Why don't we just have

21  him print out a copy of the agreement?

22              MR. ZALUD:    That's fine with me.

23              MR. WOLFSOHN:  So that's something

24  that you could do, Dan?

25              THE WITNESS:  I think so, yeah.  Do

Deposition of Daniel Fachner                                    Slush Puppie Limited, vs. The Icee Company,

```
 1   you want to send that to me?  I guess I've got to

 2   figure out how to do that from one computer to the

 3   next here real quick.  Somebody want to send me what

 4   they're using, or do you want me to search for that

 5   --

 6            MR. WOLFSOHN:  I mean, don't you have

 7   it, the '99 agreement?

 8            THE WITNESS:  I do, David.

 9            MR. ZALUD:  You know, David -- let's

10   go off the record for a minute.

11                    - - -

12            (Whereupon, a discussion was held off the

13   record.) - - -

14       Q.   (BY MR. ZALUD)  That's better; right?

15       A.   Yes, it is.

16            (At this time, Plaintiff's Exhibit 16 was

17   marked for identification purposes.)

18       Q.   Okay.  This is Exhibit 16, Mr. Fachner.

19   Could you take a look at that and tell me what that

20   is?

21       A.   A declaration page from me.

22       Q.   And that was submitted in support of

23   ICEE's motion for preliminary injunction in this

24   case?

25       A.   It was.
```

Deposition of Daniel Fachner                                    Slush Puppie Limited, vs. The Icee Company,

```
 1        Q.   Okay.  I'm not going to ask you a question
 2    about every line.  I've underlined where I'm going
 3    to ask you questions to save some time.  Number 9,
 4    next page, Dave -- I think we've already covered 9;
 5    right?  You've listed the countries you were able to
 6    recall where the ICEE -- the Slush Puppie trademark
 7    is registered by ICEE; right?
 8        A.   Yes.
 9        Q.   I mean, I understand you might not know
10    all of them off the top of your head, but -- then
11    let's go to number 15, so page 4.  So I've
12    underlined a portion of 15 there, and you're
13    declaring that specifically Slush Puppie Limited
14    wanted a significantly broader geographic territory
15    for distribution than the 1999 agreement allowed
16    for; right?
17        A.   Yes.
18        Q.   That we've seen that during this era, ICEE
19    was providing Mark Peters with leads and business
20    opportunities in Cypress, Greece, Spain,
21    Switzerland, Norway, Belgium, the Netherlands,
22    Japan, Denmark, Germany, and Finland; right?
23              MR. WOLFSOHN:  Objection;
24    mischaracterizes the testimony and the documents.
25        Q.   (BY MR. ZALUD)  You can answer.
```

Deposition of Daniel Fachner                                    Slush Puppie Limited, vs. The Icee Company,

```
 1              MR. WOLFSOHN:  You can answer.

 2         A.   Guess while in good faith trying to make

 3    sure his agreement lined up with his actions, we fed

 4    them some leads for territories that we discovered

 5    they were operating in.

 6         Q.   (BY MR. ZALUD)  Number 19, so next page,

 7    please.  So it -- thank you -- it says, To protect

 8    ICEE's in December of 2019, The ICEE Company sent

 9    letters to companies in the UK and Europe that we,

10    meaning ICEE, believed had agreements with Slush

11    Puppie Limited for the distribution of Slush Puppie

12    branded products.  Do you see that?

13         A.   I do.

14         Q.   And which companies, Mr. Fachner, did ICEE

15    send these letters to?

16         A.   I don't have the list of companies handy,

17    but they were companies that were either using the

18    Slush Puppie mark in conjunction with frozen

19    beverage equipment or companies that were signed up

20    to licensed products, confectionary licenses, shirt

21    licenses, things like that.

22         Q.   And you said there's a list of those

23    companies; right?

24         A.   There was a list of those companies that

25    we sent the letter to.
```

```
 1        Q.   Okay.  Do you still have that list?
 2              MR. WOLFSOHN:  Counsel, we gave you
 3   all those letters, so move on.
 4              MR. ZALUD:  I'll move on after I hear
 5   an answer to this question.
 6              MR. WOLFSOHN:  We gave you the
 7   letters.  Why are you wasting his time?
 8              MR. ZALUD:  I would like to know if
 9   he still has the list.
10        A.   Yes, we do.
11        Q.   (BY MR. ZALUD)  Moving on to 22, you see I
12   -- that's my writing there.  I labeled 22A, and 22B.
13   Well, we may have already talked about this.  Never
14   mind.  We already discussed this in the context of
15   the contract, so we can skip that.  I'm busy trying
16   to save everyone's time.
17              Number 25.
18              MR. ZALUD:  And let's show the start
19   of 25, Dave.  I'm sorry, 24.
20        Q.   (BY MR. ZALUD)  And it talks about Rose
21   Marketing there.  I understand that Rose Marketing
22   Company, a company that sells candy, is still
23   displaying Slush Puppie products on its website.
24   Rose Marketing is not an authorized licensee of
25   ICEE, but instead appears to have been illegally
```

1   authorized by SPL.  Do you see that?

2        A.   I do.

3        Q.   What does that mean, appears to have been

4   illegally authorized by SPL?

5        A.   That at one point, Rose Marketing had an

6   agreement with Slush Puppie Limited to sell products

7   that Slush Puppie Limited didn't have the rights to

8   give them.

9        Q.   And you submitted a second declaration.

10  Really it looks like it was specifically relating to

11  Rose Marketing; right?

12       A.   We did.

13       Q.   All right.  Let's move on from this

14  exhibit and go to the next exhibit, please.

15            (At this time, Plaintiff's Exhibit 17 was

16  marked for identification purposes.)

17       Q.   Do you want to read this, Mr. Fachner?  I

18  mean, we -- you are perfectly willing -- you know,

19  you're perfectly fine with doing it.  You know, it's

20  your declaration, but --

21       A.   Well, let's hear the question and --

22       Q.   Sure.  Yeah.  I get it.

23       A.   If you could go back and read it again.

24       Q.   I get it.  My interpretation of this

25  declaration, tell me if I'm right or wrong, is that

Deposition of Daniel Fachner                                    Slush Puppie Limited, vs. The Icee Company,

1   **as of the date of this second declaration, ICEE has**

2   **no complaint now against Frozen Brothers relating to**

3   **Rose Marketing in these preliminary injunction**

4   **proceedings; is that accurate?**

5         A.   I had my dates wrong in the original

6   declaration.  We had sent out these letters that you

7   referenced earlier, and then we signed a legal

8   license agreement with them, and I believe that was

9   in October or so, and when I wrote the declaration,

10  we had already done that, and so I'm correcting my

11  dates on this.

12        **Q.   Understood.  And so, I mean, for purposes**

13  **of our hearing Monday, you have no complaint right**

14  **now about ongoing activities of Frozen Brothers**

15  **related to Rose Marketing; is that accurate?**

16             MR. WOLFSOHN:  Objection; asked and

17  answered.  Mischaracterizing his testimony.

18             MR. ZALUD:  That's why I wanted to

19  clear that up.

20        **Q.   (BY MR. ZALUD)  You can go ahead.**

21             MR. WOLFSOHN:  You can answer the

22  question.

23        A.   We do not have any claims upon them.

24  That's been cleared up.

25        **Q.   (BY MR. ZALUD)  Thank you.  And were any**

```
1   other statements in your first

2          Declaration wrong also?

3       A.   Certainly not that I'm aware of.

4       Q.   All right.  I appreciate the correction of

5   the second declaration.  Thank you.

6            Let's go to the next exhibit.

7            (At this time, Plaintiff's Exhibit 18 was

8   marked for identification purposes.)

9       Q.   So, Mr. Fachner, these are the

10  interrogatory responses submitted by your counsel on

11  behalf of ICEE, specifically with regard to the

12  preliminary injunction hearing.  I'm going to go

13  through them, and if I pause, it's just because we

14  may have already covered things and I won't need to

15  ask you questions.

16           MR. ZALUD:  Let's go to the next

17  page, Dave.

18       Q.   (BY MR. ZALUD)  So number -- interrogatory

19  number 42 -- yeah.  I'm going to go to your answer,

20  which is -- I think is on the next page, so go

21  ahead.

22           THE WITNESS:  Whoever is blowing that

23  up, it can stay the size that it is for me.  It

24  would be better than the expanded size.

25       Q.   (BY MR. ZALUD)  Got it.  And that
```

Deposition of Daniel Fachner                                    Slush Puppie Limited, vs. The Icee Company,

1    sentence, it starts on the prior page, it says, Mr.

2    Fachner will testify about the irreparable harm that

3    ICEE has suffered and will suffer if the requested

4    injunction is not entered, including lost sales

5    opportunities, lost retailer/customer relationships,

6    and the loss of control over the Slush Puppie brand

7    in Europe and the UK.  Do you see that?

8         A.   Yes, I do.

9         Q.   So what lost sales opportunities are you

10   referencing there?

11        A.   The opportunity to be able to sell Slush

12   Puppie in those territories, and not to have it

13   confused by it being retired or put out to pasture

14   or misrepresented.

15        Q.   And just so I'm clear, ICEE is operating

16   in those territories; right?

17        A.   We have now signed an agreement, a new

18   agreement, with somebody to operate in those

19   territories.

20        Q.   And is there any specific sales

21   opportunities that you can identify that ICEE has

22   lost?

23        A.   I would identify every retailer that had

24   the Slush Puppies brand on it that has been told

25   that it has been retired or put out the pasture is a

Deposition of Daniel Fachner                                    Slush Puppie Limited, vs. The Icee Company,

1    lost opportunity.

2        Q.   Do you have any specific names?

3        A.   We have had specific questions, that we've

4    provided emails from customers who are interested in

5    the Slush Puppie brand that were confused by the way

6    that it had been handled.

7        Q.   Okay.  So I'll have a couple question

8    about those.  And then maybe you already answered

9    this too, but it says you're going to testify that

10   ICEE has lost retailer customer relationships.  Is

11   that the same thing as the lost sales opportunities

12   we just discussed?

13       A.   Where are you highlighting that?

14       Q.   It's -- I was about to point to it on my

15   point screen.  It's in that underlined portion.

16       A.   It's the same sentence.  I see it.  Failed

17   opportunity, loss of retail customer relationships.

18   That absolutely is the same point as I have already

19   made.  When those customer -- retail customer

20   relations have been misled, that certainly requires

21   us to go back out there and undo those false

22   accusations that it's been retired, that it's been

23   put out to pasture.

24       Q.   And those specific retailers are going to

25   be in the emails that were produced; right?

1    A.   Again, I would argue every customer.

2    Q.   And then it says you'll testify about --

3  and I'm still on that same underline -- the loss of

4  control over the Slush Puppie brand in Europe and

5  the UK.  I just want to understand what you mean by

6  that.

7    A.   Well, I would refer to those domains that

8  haven't been turned over to us, and/or go to a

9  domain, it's a dead end.  And so as you go to a dead

10 end, a person would naturally assume that this brand

11 no longer exists.

12   Q.   Got it.  I underlined 44, but we can skip

13 that.

14        MR. ZALUD:  So, Dave, next page, and

15 let's move on to page 6.

16   Q.   (BY MR. ZALUD)  And that is -- that's

17 number 45.  And, Mr. Fachner, if it's okay, I'll

18 just read you what that interrogatory is and ask you

19 about a portion of your answer.  Want to try that?

20   A.   Sure.

21   Q.   Okay.  With respect to ICEE's allegations

22 that Slush Puppie devalued ICEE's brand by holding

23 onto domain names using the name Slush Puppie, state

24 a detailed description of all facts that support

25 that allegation, persons with knowledge of it, and

Deposition of Daniel Fachner                                    Slush Puppie Limited, vs. The Icee Company,

1    documents that support it.  So that's the question.

2    And I just had a question for you about a part of

3    that answer.  And I underlined it.

4           The answer of ICEE to that is, in part,

5    SPL, however, is attempting to thwart those efforts

6    by informing retailers that Slush Puppies products

7    are no longer available in the UK, Ireland, and

8    Europe, and instead attempting to convince retailers

9    to switch to SPL's new Slushy Jack product.  Do you

10   see that?

11        A.   I do.

12        Q.   The first part of that that's not

13   underlined, what -- which retailers are you aware of

14   that SPL informed that Slush Puppie products are no

15   longer available in the UK, Ireland, and Europe?

16        A.   Well, they sent a letter out to all of

17   their customers.

18        Q.   Okay.  So the letter is what you're

19   referring in this part of the sentence; right?

20        A.   Absolutely part of what we're referencing,

21   sure.

22        Q.   Okay.  And then you said that, Instead --

23   and this is the part I underlined, Slush Puppie --

24   SPL is attempting to convince retailers to switch to

25   SPL's new Slushy Jack product.  Do you see that?

Deposition of Daniel Fachner                                  Slush Puppie Limited, vs. The Icee Company,

```
 1        A.   I do.  I do.
 2        Q.   No.  I heard you.  I mean, isn't that just
 3   -- isn't that part of it, just competition in the
 4   marketplace?
 5        A.   I don't know if that was a question or a
 6   statement.
 7        Q.   I'm asking you, isn't attempting to
 8   convince --
 9             MR. WOLFSOHN:  He's asking -- he's
10   trying to convince you they are forgeries, they're
11   blatant illegal conduct, they're a violation of the
12   contracts, they're a willful violation of trademark
13   law, their defamation of your company is okay.  So
14   that's the question on the table.  Isn't that just
15   normal competition?  Yeah.  The same way when you
16   guys supporting perjury and litigating a case that
17   you know contains fraudulent documents, that's just
18   practicing law.
19             MR. ZALUD:  Tremendous speech, David.
20        Q.   (BY MR. ZALUD)  Anyway, that wasn't my
21   question.  Your lawyer doesn't know my question.
22        My question is:  Isn't attempting to
23   convince retailers to switch to SPL's to a new
24   Slushy Jack product, isn't that part of just
25   competition in the marketplace?
```

Deposition of Daniel Fachner                    Slush Puppie Limited, vs. The Icee Company,

```
 1                    MR. WOLFSOHN:  Are you going to send
 2    us those communications, Counselor?  You haven't
 3    sent us any other than two from Ms. Peters.  Are you
 4    going to send us the emails?
 5         Q.   (BY MR. ZALUD)  You can answer.
 6                    MR. WOLFSOHN:  Are you going to send
 7    it to us?  You going to produce it?
 8         Q.   (BY MR. ZALUD)  You can answer, Mr.
 9    Fachner.
10         A.   Not in the fashion in which they have done
11    it, no.
12         Q.   But you recognize -- you've been in the
13    business for a long time.  I mean, beverage
14    manufacturers can and do compete with one another;
15    right?
16         A.   I've never had a distributor so blatantly
17    abuse a court system in the way that this
18    distributor has.  And so, no, I've never faced
19    competition of a fashion where they have held at bay
20    in a court system a brand while they were able to
21    convince customers to put in a different brand by
22    blatantly saying this brand is old and tired -- is
23    going to be retired.  Not that I don't own it
24    anymore, not that I can't provide it for you any
25    longer, but that it's retired and put out to pasture
```

Deposition of Daniel Fachner                    Slush Puppie Limited, vs. The Icee Company,

```
 1   while we provide in the court system a legal

 2   document that was forged.  No, that is not the kind

 3   of competition, Eric, that I have ever faced.

 4        Q.   Got it.

 5        A.   And I have faced a lot of great

 6   competitors to date.  None of them have ever lied to

 7   the court system while they run out and put up the

 8   different brand on equipment and call it fair

 9   competition.

10        Q.   Understood.

11        A.   I don't know.  I don't know if you do by

12   the question that you asked me.

13             MR. WOLFSOHN:  He does not understand

14   it.  He thinks what he's doing is fine.

15             MR. ZALUD:  Yeah.  Asking questions

16   is fine.

17             MR. WOLFSOHN:  Supporting perjury,

18   aiding and abetting, obstruction of justice, you

19   think that's fine?  Apparently, you do, because you

20   did it again this morning.  After all we've been

21   through, you did it again this morning.

22   Unbelievable.  And having an associate go and

23   represent the guy because you knew he was going to

24   lie and he had sworn out a false affidavit, you, as

25   a partner, sending that associate.  Shame on you.
```

Deposition of Daniel Fachner                                    Slush Puppie Limited, vs. The Icee Company,

1    Shame on you.

2              MR. ZALUD:  Well, let me know when

3    you're done.

4              MR. WOLFSOHN:  I'm done.

5              MR. ZALUD:  Thank you.

6         Q.   (BY MR. ZALUD)  Let me ask you this, Mr.

7    Fachner:  Aren't they supposed to change the brand?

8    I mean, isn't that what they're supposed to do?

9    They're supposed to stop using the Slush Puppie

10   brand; right?

11        A.   Yes, they are supposed to stop using the

12   Slush Puppie brand.

13        Q.   Okay.  Let's go to --

14        A.   Not partially, entirely.  Not when they

15   choose to, everywhere.  Not in bits and pieces, but

16   everything.  Not some ways, but always.  Not where

17   convenient.

18        Q.   And do you believe they're still using the

19   brand somewhere today as you and I talk?

20        A.   You didn't see the picture we talked about

21   earlier where there was Slush Puppie in some way, in

22   any way on that machine?  Did you see that?

23        Q.   I saw the picture.  It was on some

24   nameplate in the back, but it was there.  I agree.

25        A.   It was on a nameplate just for

Deposition of Daniel Fachner                                    Slush Puppie Limited, vs. The Icee Company,

1    clarification, on a nameplate, on a piece of

2    equipment that had Slushy Jack all over it.  That's

3    not confusing?

4         Q.   I saw it.  So anyway, let's move to page

5    8, which is -- there we go.  I bracketed that

6    because it's too long to read.  SPL's continued

7    Slush Puppie presence on social media is unlicensed

8    and unauthorized by ICEE -- and I'm not going to

9    read the rest of it.  I mean, my only question to

10   you there is, what did you mean by SPL's continued

11   Slush Puppie presence on social media?  What do you

12   mean by that?

13        A.   Excuse me.  I have gotten something caught

14   in my throat all of a sudden.

15        Q.   No problem.

16        A.   Their use of the websites and not turning

17   over the domains of those.

18        Q.   So that's what you mean by social media in

19   this phrase?

20        A.   Yes.

21        Q.   By the way, if you need to get a drink of

22   water just -- oh, got it.  Good.

23             Let's go to page 10.  So we were talking

24   about -- I think this is the machine we were talking

25   about.  Is that right, Mr. Fachner?

1     A.   Yes.  Although, again, there is a picture.

2  It's hard for me to see, but we'll see what your

3  question reads.

4     Q.   That was -- that was my only question on

5  that.  And then the next page has, I think, what you

6  were referring to.

7            MR. ZALUD:  So, Dave, go ahead.

8     A.   Okay.

9     Q.   (BY MR. ZALUD)  And so is that what you

10  were referencing, where it's got the reference to

11  Slush Puppie 300 milliliters there?

12     A.   Yes.

13     Q.   So as part of the relief that ICEE is

14  seeking for this preliminary injunction, you would

15  want that portion of what's labeled on this machine

16  to be either removed or painted over or in some

17  fashion where the Slush Puppie name would not be

18  visible to people in the store; is that accurate?

19     A.   Well, it's part of the contract that we

20  went through during this deposition that said that

21  all of that would have to be turned over and

22  released.  Absolutely I would not want Slush Puppie

23  confused with Slushy Jack.  I would not want someone

24  to have the authority to water down our name while

25  they're out there presenting their own.

Deposition of Daniel Fachner                                    Slush Puppie Limited, vs. The Icee Company,

1          Q.    So turned over or returned or destroyed;

2     right?

3          A.    Yes.

4          Q.    Okay.

5          A.    However it was described in that

6     paragraph.

7          Q.    We're done with that exhibit, but hold on.

8     Let me -- let's go to the next exhibit.  This is

9     Exhibit 19.

10               (At this time, Plaintiff's Exhibit 19 was

11     marked for identification purposes.)

12          Q.    Mr. Fachner, you haven't seen this, but

13     you can take a look at it and then I'll have a

14     couple of questions to you about it.

15          A.    Could I see who it's from and to?

16          Q.    Sorry.  Just scroll down a little bit.  We

17     see the top on the screen, but not the from.

18                    MR. WOLFSOHN:  What's the date?

19                    MR. ZALUD:  August 24th, 2021.

20          Q.    (BY MR. ZALUD)  So I don't know what we

21     can do here.  I mean, it -- the one line you're not

22     seeing is the sent -- the date above this Jonathan

23     Perry line, August 24, 2021, and the from, Kevin

24     Scoles at Frozen Brothers, so we can't get it on the

25     screen.  I could ask you a couple of questions, but

Deposition of Daniel Fachner                                      Slush Puppie Limited, vs. The Icee Company,

1   if you're not comfortable with that, I won't.

2        A.   Let's try them and I'll tell you if I'm

3   comfortable.

4        Q.   Okay.

5             MR. WOLFSOHN:  Well, you know, I

6   mean, this is some email that you haven't produced

7   to us, so I'm instructing him not to answer.  You

8   can't manufacture this thing, after Laura Peters'

9   deposition, send out this note, and then spring it

10  on us at a deposition when you haven't produced it.

11  So he's not answering any questions about this.

12            MR. ZALUD:  You didn't have any

13  discovery requests.

14            MR. WOLFSOHN:  I don't care.

15            MR. ZALUD:  I know you don't.

16            MR. WOLFSOHN:  We have all kinds of

17  discovery requests.  We absolutely do.

18            MR. ZALUD:  Yeah, but not related to

19  the preliminary injunction hearing.

20            MR. WOLFSOHN:  Well, I'm not -- I

21  stand by my instruction.  I'm not going to argue

22  with you.

23       Q.   (BY MR. ZALUD)  Okay.  Let me ask you

24  this, Mr. Fachner:  Hypothetically, if someone were

25  to peel off that Slush Puppie sticker from that

Deposition of Daniel Fachner                          Slush Puppie Limited, vs. The Icee Company,

1  machine, would that alleviate your concerns about

2  that particular machine?

3              MR. WOLFSOHN:  Objection; vague.

4        Q.   (BY MR. ZALUD)  You can answer.

5        A.   I'd answer it completely different, Eric.

6  I would never expect that somebody would put a

7  different name and my name on one machine, and at

8  that point, it's unacceptable to me because that

9  creates confusion in the marketplace and is unfair

10 competition while destroying the Slush Puppie brand.

11       Q.   Understood.  Are you saying there would be

12 no way to -- how would you correct that?

13       A.   I wouldn't have done it to begin with.  I

14 wouldn't use those kind of tactics.  And I've been

15 in business, as you said, for a long time, and I've

16 never had anybody do that before.

17       Q.   So in your view, that -- having that

18 sticker on there is not correctable, it's not

19 correctable by taking the sticker off?

20       A.   In my view, it's done damage to the Slush

21 Puppie brand.

22       Q.   Let's skip the next one.

23              MR. ZALUD:  I'm saving us time, Dave.

24              THE VIDEOGRAPHER:  We're going to 21?

25              MR. ZALUD:  Yeah.  Oh, they're

Deposition of Daniel Fachner                                    Slush Puppie Limited, vs. The Icee Company,

```
 1   already labeled?
 2              THE VIDEOGRAPHER:  They've been
 3   labeled on this.
 4              MR. ZALUD:  Got it.
 5              (At this time, Plaintiff's Exhibit 21
 6   was marked for identification purposes.)
 7       Q.  (BY MR. ZALUD)  Mr. Fachner, this is -- I
 8   believe this is a chart that you compiled and
 9   produced in this case.  Is this what it is?
10              MR. WOLFSOHN:  Yeah.  And he was
11   already examined on this, so do you have anything
12   that wasn't gone over in the second deposition on
13   this?
14       Q.  (BY MR. ZALUD)  Aren't these your damages
15   for the actions of Slush Puppie Limited?
16              MR. WOLFSOHN:  I instruct you not to
17   answer.  Just because you're the new kid on the
18   block, although you weren't the original lawyer on
19   this case, doesn't give you the right to take up a
20   CEO's time asking questions about a document that
21   was already marked at his deposition in October.  So
22   you can read that transcript.  You also have -- I
23   assume Mr. House is still at your firm.  You can
24   call him up and talk to him.
25              MR. ZALUD:  I hope you get paid by
```

Deposition of Daniel Fachner                Slush Puppie Limited, vs. The Icee Company,

```
 1   the word.
 2        Q.   (BY MR. ZALUD)  Are these the damage
 3   categories that you're --
 4             MR. WOLFSOHN:  I know you get paid by
 5   the forged word and the perjurious word.
 6        Q.   (BY MR. ZALUD)  Are you -- I could answer
 7   all of these, but I'm not.  Are you, Mr. Fachner,
 8   claiming damages other than these that you already
 9   laid out in this hearing on Monday?
10             MR. WOLFSOHN:  Those damages are not
11   for this hearing.
12             MR. ZALUD:  I'm just asking the
13   witness, not you.
14             MR. WOLFSOHN:  Objection.  The
15   question makes no sense.  Damages are not for a
16   preliminary injunction hearing.
17        Q.   (BY MR. ZALUD)  Go ahead.  You can answer.
18        A.   You want to ask the question again?
19        Q.   Aren't these the categories of damages
20   you're claiming in your preliminary injunction
21   motion?
22             MR. WOLFSOHN:  I don't know what
23   you're talking about.  These are damages.  You
24   already asked him about this.
25        Q.   (BY MR. ZALUD)  Don't these represent lost
```

Deposition of Daniel Fachner                                             Slush Puppie Limited, vs. The Icee Company,

```
 1   sales and lost customers, these numbers you got
 2   here, Mr. Fachner?
 3        A.   They do.  I'm not saying this is inclusive
 4   of all damages.
 5        Q.   Understood.  Let me ask you this before we
 6   go to the next one.  Maybe we can save some time.
 7   We can agree, you tell me, that there's lots of
 8   third-party marketplaces and services out there
 9   selling products that have the Slush Puppie logo on
10   them; right?  Like Amazon, eBay, Red Bubble, others
11   like that?
12                MR. WOLFSOHN:  Objection; vague.
13        A.   I'm not really sure how to answer the
14   question you just asked.  Are there other places in
15   this world selling things that have the Slush Puppie
16   logo on it?  Authorized licenses?  Yes.
17        Q.   (BY MR. ZALUD)  All right.  Let's go to
18   the next exhibit.  Exhibit --
19                THE VIDEOGRAPHER:  22.
20                (At this time, Plaintiff's Exhibit 22
21   was marked for identification purposes.)
22        Q.   (BY MR. ZALUD)  So this is an example of
23   something I'm talking about, Mr. Fachner.  I don't
24   want -- you know, there are a lot of pages here.  I
25   don't want to go through all of it, but it's a
```

Deposition of Daniel Fachner          Slush Puppie Limited, vs. The Icee Company,

1   company called Argos.  I mean, we can agree that

2   there is third-party companies like this selling

3   Slush Puppie -- they look like branded products.

4   Can we agree on that?

5            MR. WOLFSOHN:  Objection.  The

6   document hasn't been produced.  I don't know what it

7   is.

8      Q.   (BY MR. ZALUD)  Go ahead.

9      A.   We have licensed authorized partners

10   selling Slush Puppie products, yes.

11      Q.   Is Argos one of those?

12      A.   I assume they are.

13      Q.   How about eBay?

14      A.   EBay branded products?

15      Q.   No.  EBay selling Slush Puppie branded

16   products.

17      A.   Do you have something you want to show me?

18            MR. ZALUD:  Yeah.  Skip the next page

19   and go to the third page.

20      Q.   (BY MR. ZALUD)  So does ICEE have a

21   license agreement with eBay?

22      A.   We do not have a license agreement with

23   eBay.  We might have a license agreement with who

24   eBay is buying this from.

25      Q.   And that would -- that could apply to

Deposition of Daniel Fachner                                    Slush Puppie Limited, vs. The Icee Company,

```
 1   Amazon also; correct?
 2        A.   Well, again, both eBay and Amazon, they'll
 3   produce or manufacture the products in which they
 4   sell.  So absolutely could something that we have an
 5   authorized license with be selling through eBay or
 6   Amazon?  Yes.
 7        Q.   How about someone you don't have an
 8   authorized license with?
 9        A.   Whenever we discover somebody that we
10   don't have one, we write them a cease and desist
11   letter, and if they cease and desist, then we move
12   on, if not, then we carry it further.  Any great
13   brands have people who try to knock them off and you
14   are constantly having to put back those brands.
15        Q.   Thank you.
16             MR. ZALUD:  And we'll go to the next
17   exhibit, Dave.
18             (At this time, Plaintiff's Exhibit 23
19   was marked for identification purposes.)
20        Q.   (BY MR. ZALUD)  So these next few are
21   emails that you referenced earlier that were
22   produced in discovery for this preliminary
23   injunction hearing.  We served discovery requests.
24   So let's -- I think this is three pages, Mr.
25   Fachner.  We'll go from the -- is it easier for you
```

Deposition of Daniel Fachner                                    Slush Puppie Limited, vs. The Icee Company,

1   if we start at the last page, which is the first in

2   the chronology and go forward?

3       A.   Yes.

4       Q.   Okay.

5            MR. ZALUD:  Let's do that, Dave.

6       Q.   (BY MR. ZALUD)  So that's the -- that's

7   the last page.  Are you ready for us to move to the

8   next page?

9       A.   I am.

10           THE VIDEOGRAPHER:  Okay.  Okay.

11      Q.   (BY MR. ZALUD)  Okay.  So what does this

12  email string represent?

13      A.   I'm assuming that this was from a customer

14  who was interested in a machine, that's why we

15  presented a picture to it, and then forwarded it

16  over, ultimately, to our new licensee.

17      Q.   And are you saying this exhibit somewhat

18  demonstrates confusion between ICEE and Frozen

19  Brothers?

20      A.   In this particular email you're asking me,

21  again, if I see -- if I'm saying what?

22      Q.   I want to understand if you -- this was

23  produced in -- for this preliminary injunction, so

24  I'm just asking you if you believe that this email

25  string demonstrates some type of confusion between

Deposition of Daniel Fachner                                    Slush Puppie Limited, vs. The Icee Company,

```
 1   ICEE and Frozen Brothers?
 2        A.   I don't know if I have the full context of
 3   this email.
 4        Q.   You see any evidence of confusion in this
 5   exhibit that was produced, though; right?
 6        A.   I see a picture previously of a Slush
 7   Puppie machine.
 8        Q.   But do you see any evidence of confusion
 9   by this potential customer between ICEE and Frozen
10   Brothers from this exhibit here?
11        A.   Go back to the previous page.  Doesn't say
12   much either.
13        Q.   Right.  I mean, there's no evidence of
14   confusion from the four corners of this exhibit, is
15   there?
16        A.   As you are showing me this exhibit, I
17   don't see the correlation there.
18        Q.   It's also from the Maldives; right?
19        A.   Yes, it is.
20        Q.   And accurate to say the Maldives -- some
21   say Maldives are not in the territory of either the
22   1996 contract or the 1999 contract?
23        A.   Correct.
24        Q.   And does ICEE even have the mark
25   registered in the Maldives?
```

Deposition of Daniel Fachner                                    Slush Puppie Limited, vs. The Icee Company,

```
 1        A.   I don't know that today.
 2        Q.   Okay.  Let's go to the next exhibit.
 3             (At this time, Plaintiff's Exhibit 24
 4    was marked for identification purposes.)
 5        Q.   And again, Mr. Fachner, this is -- it's a
 6    string, so I'm presuming, like the others, it would
 7    be easier for you if we start at the last page and
 8    you read and we go chronologically through the
 9    string.  Is that okay?
10        A.   Yes.
11        Q.   Okay.  Good.
12             MR. ZALUD:  So go to the last page.
13             THE VIDEOGRAPHER:  Okay.
14        Q.   (BY MR. ZALUD)  We can blow that up, if
15    you want.
16        A.   Sure.  Why don't you do that.  Okay.
17    Okay.
18        Q.   Were you shaking your head a little bit?
19    I thought I saw you shaking your head when you were
20    reading it.
21        A.   I might have been.
22        Q.   And why was that?
23        A.   Maybe I was chasing the fly around the
24    room.  I'm not sure.  I'm not watching myself read.
25    I was watching the page.
```

Deposition of Daniel Fachner                                    Slush Puppie Limited, vs. The Icee Company,

```
 1        Q.   No problem.  I can't fault concentration.
 2   I just have a few questions about this.  In general,
 3   Mr. Fachner, could you tell me what it is?
 4        A.   It's a trial, so do you want to go back to
 5   the beginning then?
 6        Q.   Yeah.  Sure.  I mean, you know, if that's
 7   your easier -- easier way to explain it, go right
 8   ahead.
 9              MR. WOLFSOHN:  Counsel, are you
10   marking these exhibits?  And are you -- are you
11   going to give us copies of them?
12              MR. ZALUD:  We're marking them and
13   we're going to give them copies; right?
14              THE VIDEOGRAPHER:  All these are
15   numbered.
16              MR. ZALUD:  Yeah.
17              THE VIDEOGRAPHER:  And we can block
18   them further, but they've all been numbered by your
19   office prior to.
20              MR. ZALUD:  Do you hear -- let's go
21   -- we're off the record.
22                    -  -  -
23         (Whereupon, a discussion was held off the
24   record.) - - -
25        Q.   (BY MR. ZALUD)  Why don't I just ask you a
```

Deposition of Daniel Fachner                                Slush Puppie Limited, vs. The Icee Company,

```
 1   couple of questions about it.  First of all, it's
 2   dated -- the page we're looking at is dated February
 3   11, 2021; right?
 4        A.   Yes.
 5        Q.   So about six months or so ago; right?
 6        A.   Yes.
 7        Q.   Okay.  And it looks to me, and you tell
 8   me, it looks like Frozen Brother is telling this
 9   Maltese Company that it is rebranding?
10        A.   It does look that way.  Maybe you can go
11   back to that page if you're going to ask about that
12   page.
13        Q.   Yeah.  Don't hesitate to call that out.
14             MR. ZALUD:  So, Dave, the second
15   page, please?
16        Q.   (BY MR. ZALUD)  Is that the page, Mr.
17   Fachner?  It's probably the second and the third
18   page.
19        A.   Yes.  It look likes this is from some
20   Rodrigo at Frozen Brothers to an illegally licensed
21   distributor in a particular territory --
22        Q.   And --
23        A.   -- falsely describing that they have to
24   change from Slush Puppie to be able to use a
25   different kind of product.  Like three kinds of
```

 1   wrong in this.

 2        Q.   And can you see this page?

 3             MR. ZALUD:  Could we blow this up for

 4   Mr. Fachner, the one that's on there?  Let's scroll

 5   up somehow.

 6        Q.   (BY MR. ZALUD)  It looks like Frozen

 7   Brothers tell this Maldives Company that they've got

 8   to change all their Slush Puppie branding on

 9   everything; right?

10        A.   Yes, including websites here even.  So

11   they do recognize that websites need to be turned

12   over and changed.  It's interesting.

13        Q.   Business cards, emails, machines,

14   vehicles, social media, websites; right?

15        A.   Websites, social media even.  Yes.

16        Q.   So in other words, isn't this what they're

17   supposed to be doing in your view or no?

18        A.   They weren't supposed to be operating in

19   that territory.

20        Q.   But is this what they're supposed to be

21   doing now?  Isn't this what they're supposed to be

22   doing, is saying exactly what you've asked, if

23   they're not associated, they got to rebrand --

24             MR. WOLFSOHN:  Are you giving us the

25   websites?  The website that Peter Splat, who's on

Deposition of Daniel Fachner                                    Slush Puppie Limited, vs. The Icee Company,

```
 1   this email, has custody of?  Are you going to give

 2   it to us?

 3              MR. ZALUD:  I'm just asking --

 4              MR. WOLFSOHN:  It's outrageous.

 5              MR. ZALUD:  I'm just asking the

 6   question.

 7              MR. WOLFSOHN:  It's outrageous.  It

 8   is beyond despicable.  This is Peter Splat, who you

 9   say you don't know who he is, who has the website

10   that we've been trying to get.  So give it to us.

11   Why don't you give us the websites?  Why don't you

12   give us the Twitter account that Mark Peters was

13   posting to a year and a half ago, and that then you

14   had this poor Abi Sononum (phonetic) lie about it in

15   declaration submitted in federal court.  It's

16   beneath contempt.

17        Q.   (BY MR. ZALUD)  Anyway --

18              MR. WOLFSOHN:  Also we permeated on

19   June 25th of 2019, two years and two months ago.  So

20   you're saying that this email, which you never even

21   produced to us, until Laura Peters' deposition, that

22   this is okay?

23              MR. ZALUD:  You produced this to us.

24              MR. WOLFSOHN:  She produced the one

25   that actually went out in the UK.
```

Deposition of Daniel Fachner                                     Slush Puppie Limited, vs. The Icee Company,

```
 1        Q.   (BY MR. ZALUD)  Anyway, Mr. Fachner, none
 2   of that was what I was asking.  I'm just asking
 3   isn't this what you would want to be done?  You
 4   know, regardless of any proceed wrongs that got us
 5   to this place --
 6        A.   I would want them not to license a
 7   distributor in a territory that they don't have
 8   clearly defined in this deposition that you forced
 9   me to read.  I would want that not to have happened.
10   I would want this to be done.  Not written to and
11   asked, but done.  They no longer own it.  I wouldn't
12   want the letter not to falsify information that
13   they're doing this so that they could use a
14   different kind of product, as opposed to we no
15   longer own the Slush Puppie brand, and so we will be
16   bringing something different to you in a territory
17   that I didn't have the rights to give to you to
18   begin with.  That's what I would have wanted.  And
19   to ask me to sit here and be pleased with this after
20   they've done three wrongs and answer whether I'm
21   happy with it is amazing to me, Eric.  It's amazing.
22   I know it is to you too.
23        Q.   Okay.  I mean, I'm just asking you about
24   -- you know, we're having a hearing Monday on things
25   that ICEE wants to get done and I'm just -- and you
```

Deposition of Daniel Fachner                                    Slush Puppie Limited, vs. The Icee Company,

1   don't have to answer.  I'm just asking --

2        A.   In February of this year, as you presented

3   to me, they were told to turn over the websites and

4   the social media.  Earlier in the day today, in this

5   four-hour deposition, you wanted to force me to not

6   find websites somehow in a contract that was written

7   back in 1996, but in February, they realized they

8   can't do it and still haven't done it.  And you want

9   me to pat them on the back because they sent out a

10  letter.

11       Q.   I'm not -- we don't need to -- I'm not

12  asking to pat them on the back.  I'm just trying to

13  understand independently of past alleged wrongs.

14       A.   Stop abusing our name.  Stop using it

15  illegally.  Don't find ways now to correct it.

16  Correct it.  Don't ask a customer to correct it.  Go

17  out and correct it.  Don't drag out the court system

18  while you abuse our brand and tear it down.  That's

19  what I'm asking for.

20       Q.   All right.  Let's go to --

21       A.   If that's your question, that's my answer.

22       Q.   I got it.  Let's go to the next one.

23            (At this time, Plaintiff's Exhibit 25 was

24  marked for identification purposes.)

25       Q.   This is all I have.  This was produced.

 1    We served discovery requests for this hearing and

 2    this was produced.  Maybe it was attached to

 3    something else.  I don't know.  Do you have any idea

 4    why this was produced in response to requests for

 5    this hearing?

 6         A.   I do not on its own.

 7         Q.   It might have been attached to something

 8    else.  I didn't think you would.  Let's move on to

 9    the next one.

10              (At this time, Plaintiff's Exhibit 26 was

11    marked for identification purposes.)

12         Q.   So, Mr. Fachner, take a look at this

13    Exhibit 26 and tell me what that is.  And, again,

14    it's three pages so should we start with the last

15    page for you?

16         A.   Yes.

17         Q.   All right.  We will.

18         A.   Unfortunately, we can't see the top of

19    this.

20              MR. WOLFSOHN:  I object to the whole

21    way you've been showing the exhibits.  You can't see

22    the number, you can't see the full exhibit.  I don't

23    know why you can't use any of the solutions that are

24    out there for showing exhibits to witnesses that

25    actually let the witness control the screen and see

Deposition of Daniel Fachner                                    Slush Puppie Limited, vs. The Icee Company,

```
 1   the document.  But I object to this entire

 2   examination to the extent you've been showing the

 3   witness the exhibits where the witness can't see

 4   them, can't read them, can't see the number, I can't

 5   see what number they're marked on, can't see the

 6   top, can't see the dates.  It's not professional,

 7   and it's inappropriate.

 8              MR. ZALUD:  In other words, we should

 9   have done this live like I wanted to.

10              MR. WOLFSOHN:  No.  We've used, to

11   very good effect, with your witnesses, the actual

12   law application.  There are other similar

13   applications, but I guess Mr. Peters doesn't want to

14   pay your firm to use them or whatever.  I don't know

15   what the reason is, but it is not professional and

16   it's inappropriate.

17        Q.   (BY MR. ZALUD)  So, Mr. Fachner, are you

18   --

19              MR. WOLFSOHN:  And by the way, Eric.

20   You made a long speech to Judge Barrett about how

21   the only way that the judge and you could evaluate

22   someone's testimony for them to be in the courtroom.

23   So is Laura Peters coming on Monday?

24              MR. ZALUD:  I mean, she's not.  She

25   can't get in the country.
```

```
 1                    THE COURT:  Okay.  You didn't tell
 2   Judge Barrett that, though.
 3                    MR. ZALUD:  Yes, I did.
 4                    MR. WOLFSOHN:  You said Laura Peters
 5   was not coming?
 6                    MR. ZALUD:  Yeah.  I told the Judge
 7   she's going to be on Zoom.
 8                    MR. WOLFSOHN:  All right.  So how are
 9   we supposed to evaluate her testimony since she
10   won't be in the courtroom?
11                    MR. ZALUD:  It's harder.  You're
12   right.
13                    MR. WOLFSOHN:  Uh-huh.
14                    MR. ZALUD:  I mean, I agree.
15        Q.   (BY MR. ZALUD)  Anyway, back to the
16   substance of the deposition.  Mr. Fachner, so are
17   you not comfortable testifying about this because we
18   can't see the top?  If you're not comfortable,
19   that's fine, we'll skip it.
20        A.   These are all really hard to read.  And
21   when you can't see the top of it, it makes you
22   wonder what is on the top of it, right?  I mean, you
23   would do the same thing that I'm doing because I
24   can't see the top of it.  So I'm testifying on
25   something I can't see entirely.
```

Deposition of Daniel Fachner                                    Slush Puppie Limited, vs. The Icee Company,

```
 1        Q.   No.  I understand.
 2        A.   That make me feel uncomfortable.
 3        Q.   Yeah.  That is the top line, but it's
 4   partially cut off.  I understand.
 5        A.   So you can try your question and I can try
 6   to answer, but --
 7        Q.   Let me see what I was going to ask and --
 8   you know, I don't want to do that to you.  So let's
 9   just move on.  I understand your concern there.
10             (At this time, Plaintiff's Exhibit 27 was
11   marked for identification purposes.)
12        Q.   Let's go to the next one.  This is Exhibit
13   27, and, again, it was produced in response to our
14   discovery requests.  And if you could take a look at
15   that, and it's two pages.  We'll show you the second
16   page first.  That's all that's on the second page.
17        A.   Okay.
18        Q.   All right.  Go to the first page.
19        A.   I think I've read it.
20        Q.   Okay.  And by the way, who is Brian
21   Rogers?
22        A.   He manages the international piece of
23   business for us with Slush Puppie.
24        Q.   All right.  And how does this -- do you
25   believe this email evidenced some confusion between
```

Deposition of Daniel Fachner                                    Slush Puppie Limited, vs. The Icee Company,

1    Frozen Brothers and ICEE?

2         A.   I think this is a customer asking about

3    how to sell Slush Puppie because they're not

4    interested in Slushy Jack.

5         Q.   So it sounds like they know the difference

6    between Slush Puppie and Slushy Jack; right?

7         A.   I think that would be a stretch for me to

8    come a conclusion based off of this.  I think

9    they're asking about where can I find Slush Puppie

10   and not Slushy Jack.  That's what it says.  We

11   prefer Slush Puppie.

12        Q.   Got it.  So we really can't either way

13   from this; right?

14        A.   Well, again, I think they're confused on

15   where to get Slush Puppies because somebody's told

16   them our supplier has stopped.

17        Q.   Thank you, Mr. Fachner.

18             (At this time, Plaintiff's Exhibit 28 was

19   marked for identification purposes.)

20        Q.   Let's move on to the next exhibit, 28.  So

21   these are a series of similar documents.  Let's just

22   take a look at the first couple ones.  So they're

23   each on one page.  There's an exchange of

24   information on one page.  What is this first

25   document 7374?  I'm using the ICEE Bates number at

Deposition of Daniel Fachner                    Slush Puppie Limited, vs. The Icee Company,

```
1    the bottom.

2         A.   So it's one document?  This is one

3    document on this page, is what you're saying?

4         Q.   That's what I'm saying, yes.  I have a few

5    of them consecutively so they'll be the same

6    exhibit.  So this is one document.

7         A.   Okay.  And then your question was?

8         Q.   What is this document?

9         A.   It looks like a lead that must have come

10   in to the ICEE company.

11        Q.   And it's from a potential customer of

12   ICEE?

13        A.   Well, actually it looks like it is a

14   customer of ICEEs.  It's not real well written, but

15   it says, Sent details to Derek at Vimto sell ICEE in

16   my store company.

17        Q.   Got it.  Yes.  Right.  Is there any

18   evidence of confusion here on this one-page document

19   between ICEE and Frozen Brothers?

20        A.   As this document sits right here, I'm not

21   seeing the confusion.

22        Q.   Let's go to the next page, Dave.

23        A.   Was this part of the same trail or is this

24   --

25        Q.   No.  I'm sorry.  Good question.  It's a
```

 1   different -- completely, it's a separate document

 2   that was produced.  It's not an email string.  But

 3   it is similar in format to the one before.  So if

 4   you could take a look at that, Mr. Fachner, and tell

 5   me what that is.

 6        A.   A request for a Slush Puppie machine.

 7        Q.   I don't see any evidence in this one

 8   either of confusion between Frozen Brothers and

 9   ICEE; right?

10        A.   As I'm reading this document here today, I

11   don't see that.

12        Q.   Okay.  There's a few of these.  Let's just

13   look at two more.

14             MR. ZALUD:  Let's go to the next

15   page, Dave.

16        Q.   (BY MR. ZALUD)  Similar formated document

17   to the two we previously looked at, Mr. Fachner?

18        A.   Yes, it is similar.

19        Q.   And, again, is there -- do you see any

20   evidence of confusion from this one page email

21   exchange between Frozen Brothers and ICEE?

22        A.   I don't.

23        Q.   This will be the last one.

24             MR. ZALUD:  Next page, Dave.

25        Q.   (BY MR. ZALUD)  Similar type of document,

Deposition of Daniel Fachner                                    Slush Puppie Limited, vs. The Icee Company,

1    Mr. Fachner?

2         A.   This is different.

3         Q.   **Tell me what it is and how it's different.**

4         A.   This is referencing an Internet page that

5    they cannot find, that is no longer there.

6         Q.   **So different in that sense, but is it a**

7    **customer or prospective customer?  Is that --**

8         A.   This, I probably start to believe was

9    confusion.  Again, because we don't own the domain

10   rights or the websites that we were able to convert

11   over so had he been able to go to those and be led

12   to the right spot, he wouldn't be confused.  So this

13   one I do see a confusion on, yes.

14        Q.   **Okay.  Let's do one last one.**

15             MR. ZALUD:  Next page, Dave.

16        Q.   **(BY MR. ZALUD)  And similar questions, Mr.**

17   **Fachner, I could ask them or feel free to just**

18   **respond.**

19        A.   I don't see the confusion on this one

20   page.

21        Q.   **That might be all the exhibits I'm going**

22   **to have.  We've talked about these websites and**

23   **domain names kind of tangentally during the**

24   **deposition, but let me ask you this:  Do you have**

25   **any evidence that any domain name owned by Frozen**

Deposition of Daniel Fachner                                   Slush Puppie Limited, vs. The Icee Company,

1    Brothers is used or displayed in the sale or

2    advertising of services that are rendered in

3    commerce using the Slush Puppie trademark?

4         A.   If I understood your question -- that's

5    really broad.  I mean anywhere, at any spot in the

6    U.S.?  I mean maybe you have to answer that question

7    -- or ask that question one more time.  I'm not sure

8    I understood it correctly.

9         Q.   I'll pare it down then.  Do you have any

10   evidence that Frozen Brothers is on some domain name

11   it's using -- it owns right now marketing Slush

12   Puppie branded products or services in commerce?

13        A.   No, but I have evidence where you can go

14   to a domain name and it's a dead end, which would

15   imply there's no longer that brand.

16        Q.   And how about this:  Do you have any

17   evidence that currently in the present day, Frozen

18   Brothers is placing the Slush Puppie mark on goods

19   or containers or displays that are then sold in

20   commerce?

21             MR. WOLFSOHN:  If you can testify to

22   it, go ahead.

23        A.   We looked at a picture earlier.

24        Q.   (BY MR. ZALUD)  And that was the one of --

25   there were two photos.  One of the front of the

Deposition of Daniel Fachner                                        Slush Puppie Limited, vs. The Icee Company,

1    machine and one of the -- some other part of the

2    machine.  Is that the one you're talking about?

3        A.   Yes, but the front of the machine isn't

4    always facing the customers.  It could have been the

5    back of the machine that's facing the customer.

6        Q.   I understand that.  I just meant --

7        A.   You're distinguishing the two as if you

8    think that means that it's behind the counter.  And

9    most of our locations, the machine sits on the front

10   counter and the back is facing the customer.

11       Q.   I understand what you're saying.  I was

12   just distinguishing them as different parts of the

13   machine.

14       A.   Yeah.  Very confusing, you're right.

15       Q.   Wait.  I'm right about what?

16       A.   How confusing it is to have two different

17   brand names on one machine.

18       Q.   Any other examples like that that you're

19   aware of?

20       A.   Not off the top of my head.

21       Q.   Okay.  Let me think here.

22            MR. ZALUD:  Not the next one.  We

23   don't need -- we already covered that.

24            THE WITNESS:  How long are we

25   scheduled for today?

```
 1              MR. WOLFSOHN:  5:00.  He's only got
 2   one minute.
 3              MR. ZALUD:  I only have one more
 4   question and I really mean that, so perfect timing.
 5              Skip the one after that.
 6       A.   My timing is around a bio break.  So if we
 7   had one question, that's sounds great.  If you have
 8   two questions, it doesn't sound so good.
 9       Q.   (BY MR. ZALUD)  Lawyers -- I'm not
10   exaggerating.  It's one question.
11              MR. ZALUD:  Not the next one, so it's
12   the second last --
13              (At this time, Plaintiff's Exhibit 32
14   was marked for identification purposes.)
15       Q.   (BY MR. ZALUD)  Last exhibit, last
16   question.  This is Exhibit 32, and I'll tell you
17   what it is.  It's the -- you may have seen it.  It's
18   ICEE's brief in support of its motion for
19   preliminary injunction.  Have you seen this before?
20       A.   I have.
21       Q.   No detailed for questions for you.  Let's
22   just go to the next page.  So the part I bracketed,
23   it says, Our heritage:  We are Frozen Brothers, a
24   company created from a union of family businesses,
25   that back in 1974 introduced the United Kingdom,
```

Deposition of Daniel Fachner                                      Slush Puppie Limited, vs. The Icee Company,

1    Europe, and Scandinavia to a frozen beverage called

2    Slush Puppie.  Do you see that?

3        A.   I do.

4        Q.   Based on your history in the industry and

5    your relationship over the years with Slush Puppie

6    Limited, is this statement factually true?

7        A.   Well, I certainly was not around this

8    business in 1974, so I don't know that I can

9    accurately determine whether this is accurate or

10   not.

11       Q.   All right.  So you don't know whether it's

12   accurate or inaccurate based on the fact you weren't

13   in the business in 1964 or in this part of the

14   business?

15       A.   We were not in this part of the business

16   in 1974.

17       Q.   All right?  I wasn't kidding, Mr. Fachner.

18   I have no further questions for you.

19       A.   Okay.  Thank you.

20       Q.   Thank you.  I'm done.  I appreciate your

21   time.  We'll see you Monday.

22            - - -

23            (Deposition concluded at 5:02 p.m.) - - -

24

25

1  THE STATE OF OHIO, ) ) SS:

2  NOTARY CERTIFICATE

3  COUNTY OF MEDINA. ) I, Dave Tackla,

4  Christine A. Schirripa, a Reporting Instructor, and

5  Notaries Public within and qualified, do hereby

6  certify that the within-named to testify the truth,

7  the whole truth and nothing testimony then given by

8  him was by me reduced to afterwards prepared and

9  produced by means of is a true and correct

10  transcript of the testimony

11  I do further certify that this deposition

12  was caption specified, and was completed without

13  I do further certify that I am not a

14  counsel, or otherwise financially interested in

15  I do further certify that I am not, nor is

16  affiliated, under a contract as defined in Civil

17  IN WITNESS WHEREOF, I have hereunto set my

18  Ohio, on this 27th day of August, 2021.

19  _A. David Tackla_

20  A. David Tackla

21  My Commission Expires: 08-12-24

22

23  Christine Schirripa

24  _Christine Schirripa_

25  My Commission Expires 11-26-21

Case: 1:19-cv-00189-MRB Doc #: 113 Filed: 08/30/21 Page: 118 of 129 PAGEID #: 3260

Deposition of Daniel Fachner        Slush Puppie Limited, vs. The Icee Company,

## WORD INDEX

**< 0 >**
**02-11-21** 3:*25*
**03-11-21** 4:*2*
**06-14-21** 4:*4*
**06-18-21** 4:*3*
**07-26-21** 3:*24*
**08-12-24** 114:*21*
**08-24-21** 3:*21*

**< 1 >**
**1** 3:*3, 7, 14* 21:*15, 17*
65:*14, 15, 17*
**1/19/16** 3:*4*
**1:19-cv-0189-MRB** 1:*7*
**10** 3:*12, 21* 4:*2, 3* 12:*8*
30:*1, 2, 4* 83:*23*
**101** 4:*1*
**102** 4:*2*
**1020** 1:*18* 2:*23*
**105** 4:*3*
**106** 4:*4*
**11** 3:*13, 15* 17:*25* 30:*14,*
*15* 54:*7, 11* 55:*3* 56:*8*
97:*3*
**112** 4:*5*
**11-26-21** 114:*25*
**12** 3:*14, 15* 18:*1* 21:*11*
31:*25* 32:*1* 33:*9* 57:*7*
**12/12/08** 3:*7*
**12/14/15** 3:*10*
**12/15** 3:*15*
**12/22/15** 3:*5*
**12/3/13** 3:*9*
**12/31/08** 3:*12*
**13** 3:*15* 4:*5* 18:*1* 21:*11*
33:*9, 11, 13*
**13th** 13:*3*
**14** 3:*16* 21:*11* 34:*7, 10*
**15** 3:*4, 13, 17, 19* 17:*9*
62:*4, 5, 10* 69:*11, 12*
**16** 3:*18* 68:*16, 18*
**17** 3:*3, 19* 41:*20, 23*
72:*15*
**17th** 2:*15*
**18** 3:*11, 20, 24* 4:*4* 74:*7*
**1801** 1:*17* 2:*24*
**19** 3:*21* 70:*6* 85:*9, 10*
**19103** 2:*16*
**1964** 113:*13*
**1974** 112:*25* 113:*8, 16*
**1979** 9:*19*
**1996** 15:*18* 34:*15, 16, 17*
35:*7, 11, 16, 25* 40:*3* 42:*2,*
*18* 43:*12* 44:*8* 61:*24*
94:*22* 101:*7*
**1999** 15:*18* 42:*3* 62:*14*
65:*9* 69:*15* 94:*22*

**1st** 34:*16*

**< 2 >**
**2** 3:*4, 5, 12* 22:*15, 17*
**2/23/09** 3:*6*
**2:00** 1:*16*
**20** 3:*23* 11:*25* 50:*10*
**200** 2:*6*
**2006** 47:*23*
**2008** 29:*11, 23*
**2009** 31:*20* 53:*4*
**2010** 53:*4*
**2012** 22:*13*
**2019** 20:*3, 21* 70:*8* 99:*19*
**2020** 8:*21* 9:*1, 10* 12:*17*
13:*3*
**2021** 1:*16* 85:*19, 23* 97:*3*
114:*18*
**21** 3:*3, 22* 87:*24* 88:*5*
**215** 2:*17*
**216** 2:*8*
**22** 3:*4, 8, 23* 71:*11* 90:*19,*
*20*
**22A** 71:*12*
**22B** 71:*12*
**23** 3:*5, 10, 24* 4:*1* 29:*11*
92:*18*
**2300** 2:*6*
**24** 3:*6, 25* 71:*19* 85:*23*
95:*3*
**24th** 85:*19*
**25** 3:*7, 8* 4:*1* 71:*17, 19*
101:*23*
**25th** 99:*19*
**26** 4:*2* 59:*11* 102:*10, 13*
**26th** 1:*16*
**27** 3:*9, 10* 4:*3* 105:*10, 13*
**27th** 114:*18*
**28** 3:*11* 4:*4* 106:*18, 20*

**< 3 >**
**3** 3:*5, 9, 25* 23:*2* 66:*8*
**3/12/09** 3:*8, 13*
**30** 2:*15* 3:*12, 13*
**300** 84:*11*
**3-12-2009** 26:*2*
**32** 3:*14* 4:*5* 112:*13, 16*
**33** 3:*15*
**34** 3:*16*
**363-4500** 2:*8*

**< 4 >**
**4** 3:*6* 24:*5, 6, 8* 69:*11*
**4/6/12** 3:*3*
**42** 74:*19*
**44** 77:*12*
**44114** 2:*7, 25*
**45** 77:*17*

**< 5 >**
**5** 3:*7, 17, 20, 22* 25:*1, 3*
**5:00** 112:*1*
**5:02** 113:*23*
**5th** 34:*17*

**< 6 >**
**6** 3:*6, 8* 25:*21, 22, 24*
77:*15*
**6/23/09** 3:*14*
**62** 3:*17*
**68** 3:*18*

**< 7 >**
**7** 3:*9, 16* 27:*2, 3, 5*
**72** 3:*19*
**7374** 106:*25*
**74** 3:*20*

**< 8 >**
**8** 3:*10* 27:*22, 23* 28:*1*
83:*5*
**85** 3:*21*
**88** 3:*22*

**< 9 >**
**9** 3:*11* 28:*17, 18, 21* 69:*3,*
*4*
**9/29/08** 3:*11*
**90** 3:*23*
**92** 3:*24*
**95** 3:*25*
**979-1000** 2:*17*
**99** 68:*7*
**9th** 1:*17* 2:*24* 29:*23*

**< A >**
**abetting** 81:*18*
**Abi** 99:*14*
**ability** 6:*19* 32:*16*
**able** 17:*21* 23:*4* 28:*22*
34:*24* 36:*4, 8, 13, 18, 25*
38:*19* 39:*7* 42:*7, 17* 44:*2,*
*8, 14, 20, 23* 45:*10* 46:*9*
48:*19* 52:*19* 53:*22* 54:*13,*
*23* 55:*17* 57:*1* 58:*12*
60:*1, 11, 12, 18, 19, 23*
61:*18, 25* 69:*5* 75:*11*
80:*20* 97:*24* 109:*10, 11*
**absolutely** 37:*24* 48:*17*
49:*8* 76:*18* 78:*20* 84:*22*
86:*17* 92:*4*
**abuse** 80:*17* 101:*18*
**abusing** 101:*14*
**acceded** 8:*20*
**accommodate** 31:*4, 15*
**account** 45:*18* 51:*24*
99:*12*

**accurate** 18:*2, 4* 22:*5*
23:*17* 40:*5* 63:*7* 73:*4, 15*
84:*18* 94:*20* 113:*9, 12*
**accurately** 113:*9*
**accusations** 76:*22*
**acquire** 47:*22*
**acquired** 9:*21*
**action** 45:*17* 51:*24*
**actions** 70:*3* 88:*15*
**activities** 63:*11* 73:*14*
**actual** 19:*7* 103:*11*
**add** 50:*25*
**addition** 26:*7*
**address** 24:*22*
**adequately** 36:*1*
**adjust** 54:*4*
**adjusting** 21:*25*
**admitted** 10:*25* 49:*8*
**advertising** 66:*11* 110:*2*
**advice** 40:*8* 48:*25* 50:*4*
58:*7* 60:*22*
**affidavit** 81:*24*
**affiliated** 10:*1* 11:*25*
62:*24* 114:*16*
**age** 5:*2*
**ago** 15:*21* 20:*1* 97:*5*
99:*13, 19*
**agree** 9:*14* 11:*17* 50:*6*
82:*24* 90:*7* 91:*1, 4*
104:*14*
**agreed** 8:*6*
**agreement** 1:*14* 3:*17*
5:*11* 20:*21* 21:*2* 33:*8*
34:*13* 35:*25* 36:*19* 38:*4,*
*20* 39:*12* 42:*2, 3* 44:*14,*
*21* 48:*9* 49:*5, 6, 14* 52:*6*
57:*9, 22, 25* 62:*14* 64:*5, 9*
66:*9* 67:*21* 68:*7* 69:*15*
70:*3* 72:*6* 73:*8* 75:*17, 18*
91:*21, 22, 23*
**agreements** 41:*24* 42:*1*
63:*24* 64:*2, 6, 7* 70:*10*
**ahead** 11:*20* 13:*8* 15:*15*
16:*20* 32:*7, 9, 16* 33:*10*
38:*11* 43:*2* 50:*19, 24*
65:*18* 67:*9* 73:*20* 74:*21*
84:*7* 89:*17* 91:*8* 96:*8*
110:*22*
**aid** 57:*10*
**aiding** 81:*18*
**ain't** 10:*14, 16* 16:*23*
**al** 5:*10*
**allegation** 77:*25*
**allegations** 77:*21*
**alleged** 101:*13*
**alleviate** 8:*1*
**allowed** 69:*15*
**amazing** 100:*21*
**Amazon** 90:*10* 92:*1, 2, 6*

ambiguity 50:*18* 58:*16*
amount 59:*12*
and/or 77:*8*
Annes 26:*4*
answer 6:*15* 11:*16* 12:*14*, *16*, *22* 13:*10*, *13*, *24* 14:*12*, *16* 15:*3*, *14*, *15* 16:*3*, *9*, *12*, *14*, *25* 17:*1* 19:*24* 20:*14* 25:*16* 26:*23* 27:*14* 31:*22* 32:*6*, *7*, *9*, *11*, *13*, *16*, *20* 36:*1* 37:*24* 39:*8*, *17* 41:*10* 43:*17* 47:*6* 48:*24* 49:*20* 55:*1*, *2*, 57:*18* 60:*3*, *8* 66:*24* 67:*7* 69:*25* 70:*1* 71:*5* 73:*21* 74:*19* 77:*19* 78:*3*, *4* 80:*5*, *8* 86:*7* 87:*4*, *5* 88:*17* 89:*6*, *17* 90:*13* 100:*20* 101:*1*, *21* 105:*6* 110:*6*
answered 16:*3* 25:*17* 26:*21*, *24* 34:*5* 54:*25* 67:*6* 73:*17* 76:*8*
answering 86:*11*
anybody 87:*16*
anymore 80:*24*
Anyway 11:*4* 79:*20* 83:*4* 99:*17* 100:*1* 104:*15*
apologize 53:*13*
Apparently 81:*19*
APPEARANCES 2:*1*
appears 71:*25* 72:*3*
application 103:*12*
applications 103:*13*
apply 91:*25*
appointment 44:*1* 51:*10*, *14*, *20*
appreciate 5:*18* 10:*15* 74:*4* 113:*20*
appropriately 17:*22*
approved 56:*16*
Approximately 17:*7*, *9* 20:*2*
April 8:*25* 9:*10*
Arabia 18:*15*
archives 64:*19*
area 23:*12* 33:*6*
areas 35:*18* 63:*25* 64:*4*
Argos 91:*1*, *11*
argue 77:*1* 86:*21*
Aronoff 2:*3*
arrangement 33:*1*
Asia 18:*11*, *14* 23:*25*
asked 6:*7* 23:*20* 26:*21* 37:*21* 39:*2* 41:*21* 42:*6* 53:*6* 54:*25* 56:*23* 64:*18* 67:*1*, *5* 73:*16* 81:*12* 89:*24* 90:*14* 98:*22* 100:*11*
asking 5:*22* 10:*13* 11:*14* 13:*5* 16:*20* 20:*24* 22:*20*

24:*23* 25:*6*, *10* 26:*2*, *5*, *24* 35:*12* 36:*18*, *19* 37:*5* 40:*14* 43:*1* 45:*4* 47:*12* 52:*18*, *25* 53:*2* 55:*4* 79:*7*, *9* 81:*15* 88:*20* 89:*12* 93:*20*, *24* 99:*3*, *5* 100:*2*, *23* 101:*1*, *12*, *19* 106:*2*, *9*
associate 81:*22*, *25*
associated 98:*23*
ASSOCIATES 2:*22*
assume 11:*19* 77:*10* 88:*23* 91:*12*
assuming 32:*23* 93:*13*
assumptions 6:*4*
attached 102:*2*, *7*
attempting 78:*5*, *8*, *24* 79:*7*, *22*
attend 11:*4*
attorney 47:*7* 48:*25* 50:*21* 52:*8* 60:*5*, *21*
attorney/client 49:*20*, *21* 50:*3*, *4* 51:*2* 53:*3*, *5* 60:*4*, *7*
attorneys 14:*4* 51:*1* 52:*22*
August 1:*16* 85:*19*, *23* 114:*18*
Auntie 26:*4*
authority 84:*24*
authorized 71:*24* 72:*1*, *4* 90:*16* 91:*9* 92:*5*, *8*
available 78:*7*, *15*
aware 42:*23* 74:*3* 78:*13* 111:*19*

< B >
back 23:*5*, *24* 39:*23* 41:*12*, *14*, *21* 42:*5* 54:*2* 55:*12* 59:*22* 65:*14* 72:*23* 76:*21* 82:*24* 92:*14* 94:*11* 96:*4* 97:*11* 101:*7*, *9*, *12* 104:*15* 111:*5*, *10* 112:*25*
background 7:*25* 9:*16*
backwards 29:*4*
bankruptcy 45:*16*
Barrett 16:*20* 103:*20* 104:*2*
base 57:*12*
based 27:*16*, *19* 49:*18* 106:*8* 113:*4*, *12*
Bates 106:*25*
bay 80:*19*
bear 16:*19*
beginning 29:*6* 96:*5*
behalf 2:*2*, *12* 74:*11*
Belgium 18:*1* 29:*16* 69:*21*
belief 36:*3* 43:*12* 48:*21*
believe 14:*24* 17:*17*, *20* 36:*13*, *25* 38:*19* 39:*5*

41:*20*, *24* 42:*7*, *10*, *12*, *16*, *22* 43:*21* 48:*11* 60:*1*, *22* 63:*17*, *22* 64:*16* 66:*12* 73:*8* 82:*18* 88:*8* 93:*24* 105:*25* 109:*8*
believed 70:*10*
believes 37:*13*
beneath 99:*16*
Benesch 2:*3*
best 7:*1* 14:*1* 32:*16*
better 62:*13* 66:*3* 68:*14* 74:*24*
beverage 17:*3* 70:*19* 80:*13* 113:*1*
beyond 16:*3* 64:*4*, *8* 99:*8*
binding 49:*8*
bio 112:*6*
bit 65:*25* 85:*16* 95:*18*
bits 82:*15*
bizarre 11:*18*
blatant 79:*11*
blatantly 80:*16*, *22*
block 88:*18* 96:*17*
blow 95:*14* 98:*3*
blowing 74:*22*
Board 9:*12*
bother 11:*3*
bottom 33:*17*, *18* 67:*9* 107:*1*
bought 21:*11*
boy 17:*20*
bracketed 83:*5* 112:*22*
brackets 59:*24*
brand 17:*8* 19:*12* 22:*21*, *25* 57:*12*, *16* 63:*25* 64:*2* 75:*6*, *24* 76:*5* 77:*4*, *10*, *22* 80:*20*, *21*, *22* 81:*8* 82:*7*, *10*, *12*, *19* 87:*10*, *21* 100:*15* 101:*18* 110:*15* 111:*17*
branded 29:*17* 70:*12* 91:*3*, *14*, *15* 110:*12*
branding 98:*8*
brands 92:*13*, *14*
breach 44:*15*, *23*, *24* 45:*25* 46:*9*, *10*
breached 44:*13* 49:*14*
breaching 52:*14*
break 6:*9*, *10* 112:*6*
Brian 105:*20*
brief 46:*24* 112:*18*
briefing 46:*20*
briefly 5:*13*
briefs 46:*23* 47:*3*
bringing 100:*16*
Britain 17:*23*
broad 110:*5*
broader 69:*14*
Brother 97:*8*

Brothers 5:*16* 16:*7* 18:*22* 19:*2*, *11*, *20* 20:*10*, *17* 21:*4* 46:*17* 60:*14* 73:*2*, *14* 85:*24* 93:*19* 94:*1*, *10* 97:*20* 98:*7* 106:*1* 107:*19* 108:*8*, *21* 110:*1*, *10*, *18* 112:*23*
brow 43:*10*
Bubble 90:*10*
building 10:*17*
business 17:*2*, *4* 20:*9*, *15* 25:*12* 26:*17* 29:*16* 31:*7* 40:*11* 49:*12* 56:*16* 57:*10* 66:*23* 69:*19* 80:*13* 87:*15* 98:*13* 105:*23* 113:*8*, *13*, *14*, *15*
businesses 112:*24*
busy 71:*15*
buying 91:*24*
by-the-way 7:*7* 36:*21* 41:*16* 43:*24*

< C >
Calendars 16:*5*
call 10:*9* 11:*8*, *9*, *24* 12:*16* 17:*12* 19:*20* 35:*7* 44:*18* 81:*8* 88:*24* 97:*13*
called 1:*10* 19:*8* 91:*1* 113:*1*
calling 20:*16*
calls 26:*10* 27:*11*
cancel 44:*1* 51:*13*, *19*
candy 71:*22*
caption 114:*12*
captioned 5:*9*
carbonated 17:*3*
Cardiff 61:*9*
cards 98:*13*
care 86:*14*
carries 5:*19*
carry 92:*12*
Case 1:*6* 5:*9*, *15* 12:*6* 14:*2*, *22* 15:*23* 19:*7*, *17* 48:*15* 50:*13*, *15* 58:*3*, *18* 64:*24* 68:*24* 79:*16* 88:*9*, *19*
cases 12:*9*
catch 40:*18*
categories 89:*3*, *19*
caught 83:*13*
cautioning 48:*25*
CC'd 29:*12*
cease 51:*11* 54:*19* 56:*1*, *14* 57:*4* 66:*15* 92:*10*, *11*
cell 7:*15*
century 49:*12*
CEO 8:*17*, *24* 9:*2*, *5* 36:*23* 37:*12* 47:*12* 49:*23*
CEO's 88:*20*

Certainly 74:3 76:20
113:7
CERTIFICATE 114:2
certified 5:3
certify 114:6, 11, 13, 15
cetera 52:1
change 19:10 66:18, 19
82:7 97:24 98:8
changed 10:11 11:4
56:17 98:12
characterization 40:6
charger 7:15
chart 88:8
chasing 95:23
chief 48:16 58:3
China 18:15
choose 82:15
Christine 1:12 114:4, 23
chronologically 95:8
chronology 93:2
City 1:18
Civil 114:16
claiming 58:22 89:8, 20
claims 73:23
clarification 17:10, 17
22:24 83:1
clarify 5:25 10:6 12:4
17:16 62:19
clarity 34:18
clause 37:1 60:24
clauses 37:7, 13
clear 55:7 73:19 75:15
cleared 73:24
clearer 62:15, 17
clearest 62:16
clearly 56:24 100:8
Cleveland 1:18 2:7, 25
client 19:7, 12 47:25
clients 15:12
collection 45:18 51:24
combined 17:8
come 7:7 28:14 106:8
107:9
comfortable 86:1, 3
104:17, 18
coming 103:23 104:5
commerce 110:3, 12, 20
Commission 114:21, 25
committed 42:17
common 10:16
communication 10:2
24:21 30:19
communications 80:2
companies 19:22 45:22
70:9, 14, 16, 17, 19, 23, 24
91:2
COMPANY 1:7 8:25
9:6, 17, 18, 20 17:9 18:10
36:23 40:12 47:13, 14, 15,
16, 23 49:13, 14, 15, 23

62:23 66:10, 14, 15, 19, 22
67:2 70:8 71:22 79:13
91:1 97:9 98:7 107:10,
16 112:24
company's 50:9
compete 80:14
competently 6:20
competition 79:3, 15, 25
80:9 81:3, 9 87:10
competitors 81:6
compiled 88:8
complaint 73:2, 13
completed 114:12
completely 10:25 87:5
108:1
completion 62:8
Compound 43:16
computer 68:2
COMPUTER-AIDED
2:21
concentration 96:1
concern 105:9
concerns 87:1
conclude 60:11, 23
concluded 113:23
conclusion 49:1 106:8
concrete 41:2
conduct 52:22 57:9
79:11
confectionary 70:20
confused 49:9, 12 75:13
76:5 84:23 106:14
109:12
confusing 61:2 66:16
83:3 111:14, 16
confusion 45:22 87:9
93:18, 25 94:4, 8, 14
105:25 107:18, 21 108:8,
20 109:9, 13, 19
conjunction 70:18
connection 56:4
consecutively 107:5
constantly 92:14
contained 1:15
containers 110:19
contains 79:17
contempt 99:16
context 10:4 71:14 94:2
continuation 29:19
continued 83:6, 10
Contract 3:16 15:13
31:5 35:4, 7, 11, 16 36:6,
7, 8, 15, 18 37:1, 4, 7, 14
39:8 40:4 42:9, 10, 18, 19,
22 43:12, 15 44:8, 16, 22,
23, 25 46:1, 9, 11 47:9, 13
48:2 49:16, 23 50:1, 9
52:12, 14, 18, 19 53:11, 18,
21 55:17 58:6, 12, 14, 21
61:15, 17, 25 62:20, 25

63:1, 4, 11, 18, 23 65:3, 8,
9, 12, 21 71:15 84:19
94:22 101:6 114:16
contracting 34:19 60:18
contracts 14:25 15:4, 9,
16 79:12
contractural 54:22
control 75:6 77:4 102:25
controlled 60:15
convenient 82:17
conversation 21:5
conversations 13:21 14:3
28:8
convert 109:10
convey 41:2
convince 78:8, 24 79:8,
10, 23 80:21
copied 23:13, 15 62:12
copies 96:11, 13
Coplan 2:3
copy 62:15 67:14, 21
copyrights 56:2
corners 94:14
corporate 9:25 10:8, 10
11:6, 24 64:14
corporation 11:7 34:14
44:20 46:2, 3, 4, 5, 8, 10,
11 52:5, 15 53:23 54:24
57:2 62:20 65:10
correct 32:18 43:1 44:11
62:22 63:13 87:12 92:1
94:23 101:15, 16, 17
114:9
correctable 87:18, 19
correcting 73:10
correction 74:4
correctly 110:8
correlation 94:17
counsel 1:14, 15 6:16
7:17 9:14 14:6 41:3
49:19 71:2 74:10 96:9
114:14
Counselor 80:2
counter 111:8, 10
countries 17:5, 19 18:13
23:25 35:12, 15, 22, 24
39:21 69:5
country 103:25
County 1:18 114:3
couple 18:2 65:1 76:7
85:14, 25 97:1 106:22
course 9:24
COURT 1:1, 17 8:11
38:22 62:7 80:17, 20
81:1, 7 99:15 101:17
104:1
courtroom 103:22 104:10
cover 23:16
covered 12:14 69:4

74:14 111:23
created 112:24
creates 87:9
criminal 52:22
cross-examination 1:11
5:6
currently 110:17
custody 99:1
customer 26:3, 4, 10, 16
30:7 76:10, 17, 19 77:1
93:13 94:9 101:16 106:2
107:11, 14 109:7 111:5,
10
customers 45:19 55:18
61:19 62:1 65:22 76:4
78:17 80:21 90:1 111:4
cut 105:4
Cuyahoga 1:18
Cypress 69:20
Cyprus 22:4, 11

< D >
damage 87:20 89:2
damages 88:14 89:8, 10,
15, 19, 23 90:4
Dan 5:8 11:7 13:25
14:17 19:24 34:2 36:16
37:4, 9 46:13 47:5 49:17
50:3, 20 55:1 60:3, 9
67:16, 24
DANIEL 1:9 5:2, 6 8:13
date 21:10 73:1 81:6
85:18, 22
dated 26:1 34:16 97:2
dates 73:5, 11 103:6
Dave 21:13 22:14 23:1
24:4, 25 25:20 27:2, 21
29:18 30:14 33:9 41:13
44:6 51:22 59:20, 22
69:4 71:19 74:17 77:14
84:7 87:23 92:17 93:5
97:14 107:22 108:15, 24
109:15 114:3
David 1:12 2:13 7:20
10:14 11:9 16:12 32:12
41:8 47:25 68:8, 9 79:19
114:20
day 1:16 12:16 15:21
101:4 110:17 114:18
dead 77:9 110:14
deal 23:18 33:4
debate 48:1
debtors 45:16
decades 20:17
December 70:8
decide 41:3
decision 16:23
Declaration 3:18, 19
10:24 68:21 72:9, 20, 25

73:*1, 6, 9* 74:*2, 5* 99:*15*
**declaring** 69:*13*
**deep** 8:*2*
**defamation** 79:*13*
**Defendant** 1:*8, 9* 2:*12*
5:*2*
**defined** 44:*21* 100:*8*
114:*16*
**defines** 56:*24*
**definitely** 36:*22*
**definition** 17:*11*
**definitions** 46:*7*
**delete** 56:*17*
**demonstrates** 93:*18, 25*
**Denmark** 17:*24* 33:*25*
69:*22*
**depending** 10:*4*
**deposes** 5:*4*
**Deposition** 1:*9* 5:*8, 11, 18*
7:*6* 8:*1* 9:*25* 12:*1, 6, 9,*
*12, 14, 17, 25* 13:*2, 7, 12,*
*20, 23* 14:*6, 10* 16:*9, 11*
17:*12* 84:*20* 86:*9, 10*
88:*12, 21* 99:*21* 100:*8*
101:*5* 104:*16* 109:*24*
113:*23* 114:*11*
**deposition's** 8:*8*
**Derek** 107:*15*
**described** 63:*9* 85:*5*
**describing** 97:*23*
**DESCRIPTION** 3:*2*
77:*24*
**deserve** 16:*15*
**designees** 47:*22*
**designs** 56:*2*
**desist** 56:*14* 92:*10, 11*
**despicable** 99:*8*
**destroy** 66:*11*
**destroyed** 85:*1*
**destroying** 87:*10*
**detailed** 77:*24* 112:*21*
**details** 107:*15*
**determine** 59:*5* 113:*9*
**devalued** 77:*22*
**devices** 7:*13*
**difference** 58:*11* 106:*5*
**different** 13:*18* 37:*22*
54:*10* 58:*14* 80:*21* 81:*8*
87:*5, 7* 97:*25* 100:*14, 16*
108:*1* 109:*2, 3, 6* 111:*12,*
*16*
**differently** 44:*9*
**dig** 9:*15*
**direct** 56:*6*
**directly** 57:*10*
**discontinue** 66:*17, 19*
**discover** 92:*9*
**discovered** 31:*6* 70:*4*

**discovery** 8:*19* 15:*25*
16:*9, 10* 64:*23* 86:*13, 17*
92:*22, 23* 102:*1* 105:*14*
**discuss** 56:*11*
**discussed** 50:*8* 51:*1*
71:*14* 76:*12*
**discussing** 14:*22*
**discussion** 18:*21* 19:*21*
21:*2* 68:*12* 96:*23*
**discussions** 28:*3, 6, 11*
49:*19* 50:*2*
**display** 65:*24*
**displayed** 110:*1*
**displaying** 71:*23*
**displays** 110:*19*
**distinguishing** 111:*7, 12*
**distribution** 57:*11* 69:*15*
70:*11*
**distributor** 25:8, *10* 33:*7*
45:*17* 62:*13, 14* 63:*24*
66:*10, 14, 21* 67:*2* 80:*16,*
*18* 97:*21* 100:*7*
**distributors** 36:*9* 45:*19*
52:*1*
**distributor's** 66:*23*
**DISTRICT** 1:*1, 2* 5:*10*
**djwolfsohn@duanemorris.c**
**om** 2:*18*
**doctrine** 49:*21*
**document** 34:*12, 21*
38:*18* 42:*6* 45:*2, 6, 23*
46:*8* 48:*15* 52:*21* 81:*2*
88:*20* 91:*6* 103:*1* 106:*25*
107:*2, 3, 6, 8, 18, 20* 108:*1,*
*10, 16, 25*
**documents** 14:*8, 18, 20, 21*
15:*25* 69:*24* 78:*1* 79:*17*
106:*21*
**doing** 31:*6* 72:*19* 81:*14*
98:*17, 21, 22* 100:*13*
104:*23*
**domain** 77:*9, 23* 109:*9,*
*23, 25* 110:*10, 14*
**domains** 77:*7* 83:*17*
**Dr** 21:*12*
**drag** 101:*17*
**drink** 83:*21*
**Dubai** 18:*15*
**duly** 5:*3*
**duties** 9:*4, 9, 11*

< E >

**earlier** 17:*16* 73:*7* 82:*21*
92:*21* 101:*4* 110:*23*
**ease** 10:*2*
**easier** 19:*3* 66:*4* 67:*12,*
*14* 92:*25* 95:*7* 96:*7*
**East** 18:*12, 14*
**easy** 12:*5*

**eBay** 90:*10* 91:*13, 14, 15,*
*21, 23, 24* 92:*2, 5*
**effect** 103:*11*
**effectively** 66:*10*
**efficient** 63:*15*
**efforts** 78:*5*
**either** 5:*25* 70:*17* 84:*16*
94:*12, 21* 106:*12* 108:*8*
**electronic** 7:*13*
**email** 86:*6* 93:*12, 20, 24*
94:*3* 99:*1, 20* 105:*25*
108:*2, 20*
**E-mail** 3:*3, 4, 5, 6, 7, 8, 9,*
*10, 11, 12, 13, 14, 15, 21, 24,*
*25* 4:*2, 3, 4* 14:*24* 22:*1*
23:*11* 24:*22* 25:*5* 26:*1*
27:*7, 16, 20* 28:*2* 29:*11,*
*22* 30:*7, 8, 25* 31:*8, 10, 20*
32:*21, 24* 33:*18*
**emails** 76:*4, 25* 80:*4*
92:*21* 98:*13*
**e-mails** 14:*23*
**emblems** 56:*3*
**employed** 66:*21*
**employee** 22:*8*
**encompassed** 63:*4*
**encompasses** 63:*11*
**ended** 20:*10*
**enforce** 58:*12, 21*
**engage** 52:*22*
**enlarge** 33:*15* 65:*25*
**entered** 62:*8* 75:*4*
**entire** 36:*19* 103:*1*
**entirely** 82:*14* 104:*25*
**entities** 19:*6, 15, 16* 21:*9*
35:*19*
**entity** 10:*1* 11:*6, 7, 13, 24*
19:*7, 9, 10, 18* 34:*24*
**equipment** 60:*25* 61:*2, 7*
70:*19* 81:*8* 83:*2*
**era** 69:*18*
**Eric** 2:*4* 13:*16* 20:*12*
31:*11* 37:*21* 39:*1* 43:*4*
45:*7* 60:*20* 61:*22* 81:*3*
87:*5* 100:*21* 103:*19*
**Esq** 2:*4, 5, 13, 14*
**established** 31:*19* 43:*25*
et 5:*10* 52:*1*
**Europe** 18:*9, 11* 26:*17*
70:*9* 75:*7* 77:*4* 78:*8, 15*
113:*1*
**European** 35:*22, 24*
**evaluate** 103:*21* 104:*9*
**events** 10:*7*
**everyone's** 29:*24* 71:*16*
**evidence** 58:*17* 94:*4, 8,*
*13* 107:*18* 108:*7, 20*
109:*25* 110:*10, 13, 17*
**evidenced** 105:*25*

**exact** 9:*21* 21:*10*
**exactly** 98:*22*
**exaggerating** 112:*10*
**examination** 103:*2*
**examined** 88:*11*
**example** 90:*22*
**examples** 111:*18*
**excellent** 17:*11*
**exceptions** 58:*17*
**exchange** 106:*23* 108:*21*
**excitement** 29:*24*
**Excuse** 83:*13*
**Executed** 34:*17*
**EXHIBIT** 3:*1, 2* 21:*14,*
*17* 22:*14, 15* 23:*1, 2*
24:*4, 5, 6, 8* 25:*1, 3, 21, 22,*
*24* 27:*3, 5, 23* 28:*1, 18, 21*
30:*1, 2, 4, 15, 18* 32:*1, 4*
33:*9, 11, 13* 34:*6, 7, 10*
48:*15* 58:*3* 62:*4, 5, 10*
68:*16, 18* 72:*14, 15* 74:*6,*
*7* 85:*7, 8, 9, 10* 88:*5*
90:*18, 20* 92:*17, 18* 93:*17*
94:*5, 10, 14, 16* 95:*2, 3*
101:*23* 102:*10, 13, 22*
105:*10, 12* 106:*18, 20*
107:*6* 112:*13, 15, 16*
**exhibits** 21:*13* 96:*10*
102:*21, 24* 103:*3* 109:*21*
**exists** 77:*11*
**expanded** 74:*24*
**expect** 87:*6*
**Expires** 114:*21, 25*
**explain** 96:*7*
**extent** 9:*15* 49:*18* 60:*4*
103:*2*
**extra** 9:*11*
**ezalud@beneschlaw.com**
2:*9*

< F >

**faced** 80:*18* 81:*3, 5*
**FACHNER** 1:*9* 5:*2, 6, 8,*
*13* 6:*8* 8:*13* 10:*19* 11:*10,*
*20* 12:*22* 15:*10* 17:*15*
21:*14* 22:*17* 24:*8* 25:*3,*
*24* 27:*5, 25* 28:*20* 29:*6,*
*20* 30:*4, 17* 32:*3, 17, 20*
33:*13* 34:*9* 35:*5* 36:*4, 25*
37:*17* 38:*12, 16* 40:*22*
41:*17* 43:*2* 45:*5* 48:*8*
50:*19, 24* 51:*16* 53:*10*
54:*17, 22* 59:*18, 24* 60:*9*
61:*13* 62:*9* 63:*21* 65:*18*
68:*18* 70:*14* 72:*17* 74:*9*
75:*2* 77:*17* 80:*9* 82:*7*
83:*25* 85:*12* 86:*24* 88:*7*
89:*7* 90:*2, 23* 92:*25* 95:*5*
96:*3* 97:*17* 98:*4* 100:*1*
102:*12* 103:*17* 104:*16*

106:*17* 108:*4, 17* 109:*1,*
*17* 113:*17*
**facing** 111:*4, 5, 10*
**fact** 113:*12*
**facts** 59:*4* 60:*9, 22* 77:*24*
**factually** 113:*6*
**fail** 31:*20*
**Failed** 76:*16*
**fair** 52:*11, 13, 16, 19* 53:*6,*
*8, 10, 12* 65:*8* 81:*8*
**faith** 70:*2*
**false** 10:*25* 76:*21* 81:*24*
**falsely** 97:*23*
**falsify** 100:*12*
**familiar** 15:*4, 9* 20:*7*
35:*4* 56:*6*
**family** 112:*24*
**fashion** 7:*22* 80:*10, 19*
84:*17*
**fault** 96:*1*
**FCB** 22:*24*
**February** 34:*17* 97:*2*
101:*2, 7*
**fed** 70:*3*
**federal** 99:*15*
**feel** 6:*8* 21:*3* 32:*19*
46:*18* 51:*2* 55:*22* 65:*6*
105:*2* 109:*17*
**feels** 25:*17*
**Fees** 3:*22*
**field** 61:*1*
**fight** 11:*21*
**fighting** 59:*15*
**figure** 68:*2*
**file** 44:*9*
**files** 15:*23* 49:*14*
**filing** 45:*17* 51:*23*
**financially** 114:*14*
**find** 41:*4* 46:*24* 53:*25*
62:*16* 63:*14* 101:*6, 15*
106:*9* 109:*5*
**fine** 6:*23* 13:*19* 38:*9*
55:*15* 63:*5* 65:*16* 67:*22*
72:*19* 81:*14, 16, 19*
104:*19*
**finished** 12:*15* 16:*21*
**Finland** 17:*24* 33:*25*
69:*22*
**firm** 8:*9* 88:*23* 103:*14*
**first** 5:*3* 12:*8* 20:*9* 23:*6*
35:*16* 54:*4* 63:*3* 74:*1*
78:*12* 93:*1* 97:*1* 105:*16,*
*18* 106:*22, 24*
**flavors** 57:*12*
**fly** 55:*21, 22* 95:*23*
**following** 35:*19* 44:*3*
51:*15, 21*
**follows** 5:*4*
**follow-up** 38:*17*

**Foods** 8:*15* 9:*6, 22* 34:*24*
36:*4, 13* 37:*6* 40:*4* 42:*7,*
*17* 43:*13* 44:*2, 8, 14, 20,*
*24* 45:*11* 46:*9* 53:*22*
54:*13, 23* 55:*17* 57:*1*
60:*1, 11, 13, 18, 19, 23*
61:*18, 25*
**Foods/Slush** 36:*25* 38:*19*
39:*7*
**force** 101:*5*
**forced** 100:*8*
**forged** 15:*7, 13* 52:*20*
81:*2* 89:*5*
**forgeries** 79:*10*
**forget** 9:*21* 38:*16*
**formally** 56:*16*
**format** 108:*3*
**formated** 108:*16*
**former** 66:*13*
**forward** 17:*12* 30:*21*
93:*2*
**forwarded** 24:*12* 93:*15*
**forwarding** 22:*4* 24:*13*
30:*22*
**forwards** 31:*1*
**found** 31:*1, 13, 23*
**foundation** 25:*15* 26:*12,*
*21* 27:*14* 31:*19* 34:*4*
**four** 41:*14, 20* 94:*14*
**four-hour** 101:*5*
**fraudulent** 79:*17*
**free** 6:*8* 32:*19* 46:*18*
109:*17*
**Friedlander** 2:*3*
**front** 110:*25* 111:*3, 9*
**Frozen** 5:*16* 16:*7* 17:*3*
18:*22* 19:*1, 11, 20* 20:*17*
21:*4* 46:*17* 60:*14* 70:*18*
73:*2, 14* 85:*24* 93:*18*
94:*1, 9* 97:*8, 20* 98:*6*
106:*1* 107:*19* 108:*8, 21*
109:*25* 110:*10, 17* 112:*23*
113:*1*
**fruition** 28:*15*
**full** 8:*12* 94:*2* 102:*22*
**funny** 47:*21*
**furrowed** 43:*10*
**further** 1:*14* 56:*14*
92:*12* 96:*18* 113:*18*
114:*11, 13, 15*
**future** 9:*7*

**< G >**
**general** 9:*16* 13:*22* 96:*2*
**geographic** 35:*10* 43:*14*
69:*14*
**geographical** 35:*19*
**Germany** 18:*1* 27:*12, 17*
33:*24* 69:*22*

**getting** 11:*5* 23:*24* 40:*13*
45:*9, 12*
**Gibraltar** 17:*25*
**give** 8:*12* 58:*7* 66:*1, 2*
72:*8* 88:*19* 96:*11, 13*
99:*1, 10, 11, 12* 100:*17*
**given** 114:*7*
**gives** 42:*10, 19*
**giving** 98:*24*
**glitch** 40:*19*
**go** 8:*2, 9* 11:*20* 13:*8*
15:*15* 16:*20* 20:*6* 21:*7,*
*22, 23* 23:*5, 8* 24:*24*
25:*20* 29:*3, 5, 8, 18* 32:*7,*
*9, 15* 33:*10* 34:*11* 37:*15*
38:*11* 39:*23* 41:*12, 14, 21*
42:*5* 43:*2* 44:*5* 47:*17*
49:*9* 50:*19, 24* 51:*8*
53:*24* 54:*2, 10* 55:*12, 20*
57:*5* 59:*3, 17, 22* 61:*12*
62:*4* 65:*14, 18* 67:*9, 11*
68:*10* 69:*11* 72:*14, 23*
73:*20* 74:*6, 12, 16, 19, 20*
76:*21* 77:*8, 9* 81:*22*
82:*13* 83:*5, 23* 84:*7* 85:*8*
89:*17* 90:*6, 17, 25* 91:*8,*
*19* 92:*16, 25* 93:*2* 94:*11*
95:*2, 8, 12* 96:*4, 7, 20*
97:*10* 101:*16, 20, 22*
105:*12, 18* 107:*22* 108:*14*
109:*11* 110:*13, 22* 112:*22*
**goal** 7:*24*
**goes** 12:*1*
**going** 5:*22, 23* 7:*25* 8:*2*
9:*15, 24* 11:*19* 13:*7*
16:*14, 20* 17:*12, 21* 20:*6*
21:*7* 35:*7* 40:*22* 44:*18*
58:*7* 59:*13* 62:*24* 63:*14*
65:*1, 19* 69:*1, 2* 74:*12, 19*
76:*9, 24* 80:*1, 4, 6, 7, 23*
81:*23* 83:*8* 86:*21* 87:*24*
96:*11, 13* 97:*11* 99:*1*
104:*7* 105:*7* 109:*21*
**Good** 7:*24* 17:*10* 18:*25*
24:*15, 23* 70:*2* 83:*22*
95:*11* 103:*11* 107:*25*
112:*8*
**goods** 110:*18*
**gotten** 83:*13*
**great** 8:*5* 17:*23* 55:*23*
81:*5* 92:*12* 112:*7*
**Greece** 17:*25* 25:*6, 8, 11,*
*19* 26:*6, 8, 25* 30:*8, 12*
69:*20*
**ground** 5:*16* 14:*16*
**grounds** 49:*20*
**guess** 13:*18* 68:*1* 70:*2*
103:*13*
**guesstimate** 13:*16*

**guy** 81:*23*
**guys** 79:*16*

**< H >**
**half** 33:*17, 18* 99:*13*
**handled** 76:*6*
**handy** 70:*16*
**happened** 10:*8* 100:*9*
**happening** 48:*10*
**happens** 66:*2*
**happy** 100:*21*
**hard** 66:*18* 67:*14* 84:*2*
104:*20*
**harder** 104:*11*
**harm** 75:*2*
**hate** 48:*1*
**head** 6:*5* 39:*10* 40:*1*
69:*10* 95:*18, 19* 111:*20*
**hear** 5:*24* 6:*15, 22, 23*
13:*21* 53:*9* 71:*4* 72:*21*
96:*20*
**heard** 6:*1* 32:*12* 79:*2*
**hearing** 6:*22* 8:*4, 7, 10*
31:*21* 73:*13* 74:*12* 86:*19*
89:*9, 11, 16* 92:*23* 100:*24*
102:*1, 5*
**held** 68:*12* 80:*19* 96:*23*
**hereinafter** 5:*3*
**hereunto** 114:*17*
**heritage** 112:*23*
**hesitate** 97:*13*
**Hey** 34:*2*
**high** 13:*25*
**highlight** 57:*7*
**highlighting** 54:*11* 76:*13*
**hired** 55:*22*
**history** 20:*6* 21:*7* 58:*15*
113:*4*
**hold** 20:*2* 53:*17* 85:*7*
**holding** 77:*22*
**home** 7:*9*
**hope** 88:*25*
**House** 88:*23*
**hypothetical** 48:*22*
**Hypothetically** 86:*24*

**< I >**
**IAPPA** 33:*20*
**ICEE** 1:*7* 5:*10* 9:*18, 20*
10:*1, 8, 9* 11:*4* 12:*2* 17:*2,*
*6, 7, 8, 12* 18:*10, 14* 20:*10,*
*16* 22:*8, 21, 22, 25* 23:*17*
24:*1, 16* 25:*7* 27:*10*
29:*17* 30:*10* 33:*2* 34:*21*
35:*23* 37:*6* 40:*12* 43:*25*
44:*7, 10, 12, 14, 15, 19, 23,*
*24* 45:*10* 54:*14* 62:*21*
69:*6, 7, 18* 70:*8, 10, 14*
71:*25* 73:*1* 74:*11* 75:*3,*
*15, 21* 76:*10* 78:*4* 83:*8*

84:*13* 91:*20* 93:*18* 94:*1, 9, 24* 100:*25* 106:*1, 25* 107:*10, 12, 15, 19* 108:*9, 21*
**ICEE/SLUSH** 31:*2, 13*
**ICEEs** 107:*14*
**ICEE's** 14:*6* 20:*23* 68:*23* 70:*8* 77:*21, 22* 112:*18*
**idea** 55:*15* 102:*3*
**identification** 21:*18* 22:*16* 23:*3* 24:*7* 25:*2, 23* 27:*4, 24* 28:*19* 30:*3, 16* 32:*2* 33:*12* 34:*8* 62:*6* 68:*17* 72:*16* 74:*8* 85:*11* 88:*6* 90:*21* 92:*19* 95:*4* 101:*24* 102:*11* 105:*11* 106:*19* 112:*14*
**identify** 66:*15* 75:*21, 23*
**identifying** 66:*13*
**illegal** 79:*11*
**illegally** 71:*25* 72:*4* 97:*20* 101:*15*
**immediately** 51:*11* 54:*8* 56:*1, 14, 17* 66:*15*
**impact** 6:*19*
**imply** 110:*15*
**importance** 41:*23*
**important** 7:*21* 66:*25*
**inaccurate** 113:*12*
**inappropriate** 103:*7, 16*
**include** 35:*18*
**Including** 43:*3* 75:*4* 98:*10*
**inclusive** 90:*3*
**independent** 49:*2*
**independently** 101:*13*
**indirectly** 57:*10*
**industry** 113:*4*
**inform** 55:*18* 61:*18* 62:*1* 65:*22*
**information** 27:*8* 40:*13* 41:*2* 50:*5* 60:*7* 64:*17* 100:*12* 106:*24*
**informed** 78:*14*
**informing** 32:*25* 78:*6*
**Injunction** 4:*6* 37:*13* 68:*23* 73:*3* 74:*12* 75:*4* 84:*14* 86:*19* 89:*16, 20* 92:*23* 93:*23* 112:*19*
**inquiring** 24:*10*
**inquiry** 22:*4*
**insignias** 56:*3*
**instruct** 12:*13* 13:*9* 14:*15* 15:*2, 14* 16:*2, 8* 49:*19* 88:*16*
**instructing** 11:*15* 12:*21* 16:*11* 48:*24* 86:*7*
**instruction** 86:*21*

**instructions** 11:*18*
**Instructor** 114:*4*
**instructs** 32:*10*
**interest** 22:*20*
**interested** 26:*3* 30:*20* 33:*5* 76:*4* 93:*14* 106:*4* 114:*14*
**Interesting** 16:*17* 98:*12*
**interjected** 6:*16*
**international** 28:*13* 40:*11* 105:*22*
**Internet** 109:*4*
**interpret** 48:*9* 50:*17* 58:*13*
**interpretation** 47:*8* 58:*6* 72:*24*
**Interrogatories** 3:*20*
**interrogatory** 74:*10, 18* 77:*18*
**introduce** 5:*14*
**introduced** 112:*25*
**introducing** 48:*15*
**investors** 9:*13*
**involuntary** 45:*14*
**involve** 9:*4*
**involved** 28:*12* 36:*23*
**involving** 50:*2*
**Ireland** 17:*23* 63:*10, 12* 64:*1, 3* 78:*7, 15*
**irreparable** 75:*2*
**issue** 46:*15* 48:*22, 23* 50:*17*
**issues** 7:*4* 8:*9*
**items** 67:*3*
**its** 45:*19* 51:*25* 52:*22* 60:*14* 66:*14, 19* 71:*23* 102:*6* 112:*18*

**< J >**
**J/ICEE** 11:*9*
**Jack** 78:*9, 25* 79:*24* 83:*2* 84:*23* 106:*4, 6, 10*
**January** 34:*16*
**Japan** 23:*12, 19, 21, 24, 25* 24:*2* 28:*4, 7* 69:*22*
**Japanese** 28:*14*
**John** 8:*13*
**Jonathan** 85:*22*
**Judge** 16:*19, 23* 59:*9* 103:*20, 21* 104:*2, 6*
**judge's** 16:*22*
**June** 20:*21* 99:*19*
**justice** 52:*21* 81:*18*

**< K >**
**keep** 54:*9*
**kept** 16:*1* 28:*10*
**Kevin** 85:*23*
**kid** 88:*17*

**kidding** 113:*17*
**killing** 55:*23*
**kind** 14:*18, 20* 60:*21* 81:*2* 87:*14* 97:*25* 100:*14* 109:*23*
**kinds** 86:*16* 97:*25*
**Kingdom** 63:*9* 64:*1* 112:*25*
**knew** 81:*23*
**knock** 92:*13*
**know** 5:*17, 25* 6:*9* 7:*21* 9:*14* 10:*11* 11:*5, 10* 12:*6, 15, 22, 23* 13:*11* 15:*22, 24* 16:*21* 18:*13* 19:*13, 14, 16* 20:*13* 28:*22* 29:*7* 32:*22* 35:*22* 36:*1* 37:*11, 16, 19* 39:*6, 18, 25* 40:*2, 22* 41:*21* 42:*14* 43:*9* 45:*8* 46:*18* 47:*20* 49:*22, 24* 50:*10, 11* 57:*5, 23* 60:*9* 63:*4, 20* 65:*6* 66:*4, 24* 67:*10* 68:*9* 69:*9* 71:*8* 72:*18, 19* 79:*5, 17, 21* 81:*11* 82:*2* 85:*20* 86:*5, 15* 89:*4, 22* 90:*24* 91:*6* 94:*2* 95:*1* 96:*6* 99:*9* 100:*4, 22, 24* 102:*3, 23* 103:*14* 105:*8* 106:*5* 113:*8, 11*
**knowledge** 7:*1* 36:*10* 77:*25*
**known** 36:*4, 13* 42:*7, 17* 44:*8, 13, 15*
**Kogan** 2:*5* 11:*2*

**< L >**
**La** 7:*10*
**label** 39:*20*
**labeled** 71:*12* 84:*15* 88:*1, 3*
**Lack** 25:*14* 26:*11, 20* 27:*13* 31:*18* 34:*3*
**laid** 89:*9*
**Larson** 2:*4*
**Laura** 2:*5* 86:*8* 99:*21* 103:*23* 104:*4*
**law** 45:*16* 58:*6* 79:*13, 18* 103:*12*
**lawful** 5:*2*
**lawsuit** 14:*9* 15:*1, 5, 10* 36:*24* 44:*9* 49:*14*
**lawyer** 11:*21* 12:*21* 37:*18* 79:*21* 88:*18*
**lawyers** 50:*3* 60:*10* 112:*9*
**lead** 22:*11, 22* 24:*16* 25:*8, 9* 26:*8, 10, 16, 18, 19* 30:*11, 23* 31:*16* 50:*22* 60:*10, 23* 107:*9*
**leads** 27:*11, 16* 33:*19, 23*

69:*19* 70:*4*
**led** 57:*24* 109:*11*
**legal** 19:*15, 16, 18* 45:*17* 49:*1* 51:*24* 73:*7* 81:*1*
**letter** 22:*19* 70:*25* 78:*16, 18* 92:*11* 100:*12* 101:*10*
**letters** 70:*9, 15* 71:*3, 7* 73:*6*
**level** 13:*25* 28:*11*
**levels** 28:*6*
**License** 3:*22* 23:*12* 64:*6* 73:*8* 91:*21, 22, 23* 92:*5, 8* 100:*6*
**licensed** 70:*20* 91:*9* 97:*20*
**licensee** 31:*2, 13* 32:*22* 33:*6* 71:*24* 93:*16*
**licenses** 24:*2* 64:*1* 70:*20, 21* 90:*16*
**licensing** 33:*4, 8*
**lie** 81:*24* 99:*14*
**lied** 81:*6*
**light** 61:*21*
**likes** 97:*19*
**limit** 8:*7* 18:*19*
**LIMITED** 1:*4* 19:*8, 11, 12* 33:*3* 34:*25* 36:*5, 14* 38:*19* 42:*8, 18* 46:*17* 52:*20* 60:*13, 14* 62:*23* 63:*17, 22* 65:*9, 21* 69:*13* 70:*11* 72:*6, 7* 88:*15* 113:*6*
**LINE** 3:*2* 69:*2* 85:*21, 23* 105:*3*
**lined** 70:*3*
**links** 41:*24*
**list** 39:*23* 40:*3* 70:*16, 22, 24* 71:*1, 9*
**listed** 17:*20* 18:*3* 34:*24* 35:*13, 16, 24* 39:*14, 21* 42:*11* 43:*14* 67:*3* 69:*5*
**lists** 44:*5*
**literature** 66:*11*
**litigating** 50:*15* 79:*16*
**litigation** 50:*1, 2*
**little** 45:*9, 12* 65:*25* 66:*5* 85:*16* 95:*18*
**live** 103:*9*
**lkogan@beneschlaw.com** 2:*10*
**LLC** 19:*20* 20:*17*
**LLC/Frozen** 20:*10*
**location** 24:*11, 15, 23*
**locations** 111:*9*
**LOG** 3:*1*
**logo** 66:*23* 90:*9, 16*
**logos** 56:*15*
**long** 5:*23* 9:*16* 14:*3* 21:*7* 37:*4* 59:*14* 80:*13*

Deposition of Daniel Fachner                                          Slush Puppie Limited, vs. The Icee Company,

*83*:6  *87*:15  *103*:20
*111*:24
**longer**  20:4  21:*19*  77:*11*
78:7, *15*  80:25  100:*11*, *15*
109:5  110:*15*
**look**  14:8, *14, 18, 23, 24,
25*  21:15  22:17  24:9
25:4, *12, 24*  27:6, *25*
28:20  30:5, *17*  32:3
33:*14*  34:*10*  41:4  54:2
55:*11*  62:10  63:*16, 20*
65:3, 6  68:*19*  85:*13*  91:3
97:*10, 19*  102:*12*  105:*14*
106:22  108:4, *13*
**looked**  36:22  108:*17*
110:23
**looking**  39:6  54:9  55:*16*
97:2
**looks**  22:*1, 3, 6*  23:13
24:*10, 12, 21*  26:7  27:*10*
30:*10*  31:5  49:*11, 13*
72:10  97:7, 8  98:6  107:*9,
13*
**loop**  28:*10*
**loss**  75:6  76:17  77:3
**lost**  75:4, 5, 9, 22  76:*1, 10,
11*  89:25  90:*1*
**lot**  10:7  15:24  39:*19*
53:*16*  81:9  90:24
**lots**  90:7

**< M >**
**machine**  61:*9*  82:22
83:*24*  84:*15*  87:*1, 2, 7*
93:*14*  94:7  108:6  111:*1,
2, 3, 5, 9, 13, 17*
**machines**  98:*13*
**making**  41:*11*  47:8
**Maldives**  94:*18, 20, 21, 25*
98:7
**Malta**  17:25
**Maltese**  97:9
**manage**  9:7  40:*9, 10*
**manages**  105:22
**manner**  56:4
**manufacture**  86:8  92:3
**manufactured**  39:*11*
**Manufacturer**  44:*2, 21*
45:*14*  51:*10, 14, 21*  55:25
56:*13, 17*  57:8, *14*
**manufacturers**  45:20
80:*14*
**manufacturing**  34:*13*
36:7
**Marandola**  2:*14*  13:22
50:8
**Mark**  22:*2, 11, 19, 22*
23:*11, 20, 22*  24:*13, 14, 17,
19, 22*  25:5, 7, *18*  26:2, *9,
18*  27:7, *9, 10*  28:2, 5, 8

29:*12, 15*  30:8, *11, 19, 21,
22*  31:*1*  32:24  33:*19, 24*
45:4  49:*13*  57:25  60:*15*
62:24  66:22  69:*19*  70:*18*
94:24  99:*12*  110:*18*
**marked**  21:*18*  22:*16*
23:3  24:7  25:2, *23*  27:4,
24  28:*19*  30:3, *16*  32:2
33:*12*  34:8  62:6  68:*17*
72:16  74:8  85:*11*  88:6,
21  90:21  92:*19*  95:4
101:24  102:*11*  103:5
105:*11*  106:*19*  112:*14*
**Marketing**  71:*21, 24*  72:5,
11  73:3, *15*  111:*1*
**marketplace**  79:*4, 25*  87:9
**marketplaces**  90:8
**marking**  96:*10, 12*
**marks**  56:3  66:*16*
**materials**  66:*12, 13*
**matter**  6:*13*  21:25
**matters**  66:*12*
**mean**  6:3  7:3, *18, 19*
10:3, *21*  12:5  16:*16*
17:*11, 23*  18:24  19:*1*
36:*12*  37:5  38:8  39:3
42:*1*  45:21  47:*12, 24*
48:23  49:*2, 11, 12*  50:*11,
12*  52:*18*  57:*18*  60:*17*
64:*11, 12*  67:*14*  68:6
69:*9*  72:3, *18*  73:*12*  77:5
79:2  80:*13*  82:8  83:9, *10,
12, 18*  85:21  86:6  91:*1*
94:*13*  96:6  100:23
103:24  104:*14, 22*  110:5,
6  112:4
**meaning**  17:7  70:*10*
**means**  56:25  58:20
60:*13*  111:8  114:9
**meant**  42:4  56:24  111:6
**media**  83:7, *11, 18*  98:*14,
15*  101:4
**medical**  7:3
**medications**  6:*19*
**MEDINA**  114:3
**meetings**  16:6
**memory**  6:24  7:1, 4
23:20
**met**  5:*13*
**Michelle**  30:25
**Middle**  18:*11, 14*
**milliliters**  84:*11*
**mind**  20:*18*  36:24  37:2
39:6  46:5  60:22  66:25
71:*14*
**mine**  38:*13*  67:*13*
**minute**  68:*10*  112:2
**minutes**  12:8  59:*11*
**Mischaracterizes**  42:25

45:2  69:24
**Mischaracterizing**  73:*17*
**misleading**  10:5
**misled**  76:20
**misrepresentations**  46:25
**misrepresented**  75:*14*
**misrepresenting**  47:*18*
**Monday**  8:4  13:8  40:24
41:9  48:*10*  73:*13*  89:9
100:24  103:23  113:*21*
**months**  97:5  99:*19*
**morning**  81:20, *21*
**Motion**  4:5  68:23  89:*21*
112:*18*
**move**  34:5  38:*15*  53:*2,
16*  63:5, 6  71:3, 4  72:*13*
77:*15*  83:4  92:*11*  93:7
102:8  105:9  106:20
**movement**  37:*12*
**Moving**  71:*11*

**< N >**
**name**  8:*12*  10:8, *10*  11:4,
12  18:*15*  19:*10, 18*  56:*16*
61:*1, 7*  66:*19, 22, 23*
77:23  84:*17, 24*  87:7
101:*14*  109:25  110:*10, 14*
**nameplate**  82:24, *25*  83:*1*
**names**  19:5  34:*19*  45:22
56:*15*  62:25  76:2  77:23
109:23  111:*17*
**naming**  19:6
**naturally**  77:*10*
**near**  67:9
**need**  12:3  16:*13, 24*  17:*1*
20:*12*  28:23, *25*  35:*14, 20,
21*  38:9  39:2  41:*10*
50:22  55:4  58:8  65:6, *11*
74:*14*  83:21  98:*11*
101:*11*  111:*23*
**needs**  17:*17*  31:4, *16*
**negotiate**  47:*16*  49:4
**negotiated**  49:6
**negotiating**  58:*15*
**negotiation**  58:20
**negotiations**  57:24  58:*1*
**neither**  47:*1*
**Netherlands**  18:*1*  27:*12,
17*  69:21
**neutral**  57:*12*
**never**  49:5, 6  71:*13*
80:*16, 18*  87:6, *16*  99:20
79:23  88:*17*  93:*16*
**normal**  6:24  7:2  79:*15*
**Norway**  17:24  27:*12, 17*
69:21
**Notaries**  1:*12*  114:5
**NOTARY**  114:2

**note**  26:*15*  86:9
**notes**  15:23
**notice**  5:*12*  44:2  51:*14,
20*
**November**  29:23
**number**  41:20  66:8  69:3,
11  70:6  71:*17*  74:*18, 19*
77:*17*  102:22  103:4, 5
106:25
**numbered**  96:*15, 18*
**numbers**  90:*1*

**< O >**
**o0o**  1:20
**oath**  5:*17*
**Object**  6:3  11:*12*  32:20
50:23  102:20  103:*1*
**Objection**  10:3  11:*11*
14:*19*  15:6, *11*  17:*13*
18:23  19:23  20:*11, 19, 25*
25:*14*  26:*11, 20*  27:*13*
31:*18*  32:5, *14*  34:*1, 3*
39:*16*  42:24  43:*16*  45:*1*
46:*13*  52:*17*  67:5  69:23
73:*16*  87:3  89:*14*  90:*12*
91:5
**objections**  34:3
**obligations**  5:*19*
**obstruction**  81:*18*
**Obstructs**  52:21
**obviously**  58:*10, 18*
**October**  8:20, *24*  12:*17*
13:3  73:9  88:21
**offering**  33:8  57:23, *24*
**office**  7:9, *10, 11*  67:*19*
96:*19*
**Oh**  17:20  53:*17*  55:*17*
59:20  83:22  87:25
**OHIO**  1:2, *13, 19*  2:7, *23,
25*  5:*11*  114:*1, 9*
**Okay**  6:6, *14, 18, 22*  7:3
8:23  10:2  13:*17*  14:*14*
17:*10, 12, 15, 18, 23*  19:8
21:*14*  22:8  23:5  24:4, *19*
29:9  34:*19*  35:3, 8  36:3
37:20  38:2, 8, *10, 14*
39:*15*  40:2  41:*14, 15, 23*
42:5  43:6, *9, 22*  45:24
48:5, *18*  51:*12*  54:6
55:*13, 15*  56:9  59:*1*
61:*12*  62:18  63:2, 8
65:*17*  68:*18*  69:*1*  71:*1*
76:7  77:*17, 21*  78:*18, 22*
79:*13*  82:*13*  84:8  85:4
86:4, *23*  93:4, *10, 11*  95:2,
9, *11, 13, 16, 17*  97:7
99:22  100:23  104:*1*
105:*17, 20*  107:7  108:*12*
109:*14*  111:*21*  113:*19*

**old** 80:*22*
**one-page** 107:*18*
**ones** 15:*8* 18:*2* 65:*2*
106:*22*
**ongoing** 73:*14*
**operate** 17:*6* 18:*11* 28:*4*
35:*23* 75:*18*
**operates** 18:*10, 14* 24:*1*
25:*19* 26:*2, 6, 25* 35:*23*
**operating** 25:*6* 26:*3*
70:*5* 75:*15* 98:*18*
**operations** 23:*25*
**opinion** 50:*4, 21*
**opportunities** 28:*13*
33:*24* 69:*20* 75:*19, 21*
76:*11*
**opportunity** 23:*19, 21*
24:*11, 19, 20* 25:*13* 26:*8,
19* 28:*4, 7* 29:*16* 30:*12*
75:*11* 76:*1, 17*
**opposed** 58:*12* 100:*14*
**order** 53:*20*
**original** 73:*5* 88:*18*
**Orlando** 33:*20*
**outrageous** 99:*4, 7*
**outside** 9:*12* 18:*10* 39:*13,
20* 40:*3* 42:*13* 43:*13*
63:*25* 64:*4*
**overall** 17:*2*
**oversee** 9:*6*
**owned** 60:*15* 109:*25*
**owns** 19:*13* 49:*23* 110:*11*

**< P >**
**p.m** 1:*16* 113:*23*
**PA** 2:*16*
**PAGE** 3:*2* 21:*20* 23:*6,
16* 29:*1, 2, 5, 7, 8, 9, 18*
35:*16* 38:*6, 11, 14, 15*
39:*14, 24* 41:*12, 14, 15, 20,
22* 42:*12* 43:*14, 23* 44:*6*
51:*8, 22* 54:*4, 10* 55:*20,
21* 57:*6* 59:*17, 18, 20*
61:*13, 14, 22* 63:*5, 6, 8*
65:*14* 67:*11* 68:*21* 69:*4,
11* 70:*6* 74:*17, 20* 75:*1*
77:*14, 15* 83:*4, 23* 84:*5*
91:*18, 19* 93:*1, 7, 8* 94:*11*
95:*7, 12, 25* 97:*2, 11, 12,
15, 16, 18* 98:*2* 102:*15*
105:*16, 18* 106:*23, 24*
107:*3, 22* 108:*15, 20, 24*
109:*4, 15, 20* 112:*22*
**pages** 23:*5* 28:*22* 34:*11*
55:*11* 61:*17* 62:*17* 90:*24*
92:*24* 102:*14* 105:*15*
**paid** 88:*25* 89:*4*
**painted** 84:*16*
**paperwork** 14:*8*

**paragraph** 85:*6*
**paraphrasing** 39:*9*
**pare** 110:*9*
**Parol** 58:*16*
**part** 55:*6* 66:*22* 78:*2, 4,
12, 19, 20, 23* 79:*3, 24*
84:*13, 19* 107:*23* 111:*1*
112:*22* 113:*13, 15*
**partially** 82:*14* 105:*4*
**particular** 37:*25* 87:*2*
93:*20* 97:*21*
**parties** 34:*19* 62:*19*
**partner** 81:*25*
**partners** 8:*8* 91:*9*
**parts** 26:*17* 111:*12*
**party** 40:*20* 48:*1* 50:*15*
60:*18*
**passing** 27:*9*
**pasture** 75:*13, 25* 76:*23*
80:*25*
**pat** 101:*9, 12*
**patents** 56:*2*
**pause** 34:*2* 74:*13*
**pausing** 18:*19*
**pay** 103:*14*
**peel** 86:*25*
**pending** 5:*10* 6:*10* 11:*23*
61:*16*
**people** 29:*13* 40:*9* 84:*18*
92:*13*
**Pepper** 21:*12*
**perfect** 112:*4*
**perfectly** 72:*18, 19*
**perjurious** 10:*24* 89:*5*
**perjury** 79:*16* 81:*17*
**permeated** 99:*18*
**permits** 57:*13*
**Perry** 85:*23*
**person** 19:*14* 33:*5* 77:*10*
**personal** 15:*22*
**persons** 77:*25*
**Peter** 98:*25* 99:*8*
**Peters** 19:*11* 22:*2, 12, 20,
23* 23:*12, 20, 22* 24:*14, 17,
19, 23* 25:*6, 8, 18* 26:*9, 18*
27:*8, 9, 11* 28:*3, 5, 8*
29:*12, 15* 30:*9, 11, 21, 22*
31:*1* 32:*24* 33:*19, 24*
49:*13* 57:*25* 60:*15, 16*
62:*24* 69:*19* 80:*3* 86:*8*
99:*12, 21* 103:*13, 23*
104:*4*
**petition** 45:*14*
**Philadelphia** 2:*16*
**phone** 7:*15*
**phonetic** 99:*14*
**photos** 110:*25*
**phrase** 83:*19*
**Picture** 4:*1* 82:*20, 23*

84:*1* 93:*15* 94:*6* 110:*23*
**pictures** 60:*25* 61:*4, 6*
**piece** 61:*2, 6* 83:*1* 105:*22*
**pieces** 21:*3* 82:*15*
**place** 5:*12* 100:*5*
**places** 64:*3* 90:*14*
**placing** 110:*18*
**Plaintiff** 1:*5, 10* 2:*2* 5:*15*
**Plaintiff's** 21:*17* 22:*15*
23:*2* 24:*6* 25:*1, 22* 27:*3,
23* 28:*18* 30:*2, 15* 32:*1*
33:*11* 34:*7* 62:*5* 68:*16*
72:*15* 74:*7* 85:*10* 88:*5*
90:*20* 92:*18* 95:*3* 101:*23*
102:*10* 105:*10* 106:*18*
112:*13*
**plan** 48:*14*
**Plaza** 2:*23*
**please** 8:*9, 12* 10:*12*
19:*17* 23:*1* 24:*4* 39:*24*
41:*15* 51:*8* 58:*9* 59:*22*
70:*7* 72:*14* 97:*15*
**pleased** 100:*19*
**point** 9:*20* 18:*25* 65:*8*
72:*5* 76:*14, 15, 18* 87:*8*
**pointing** 60:*19*
**poor** 65:*24* 99:*14*
**poorly** 62:*12*
**portion** 36:*10, 11* 69:*12*
76:*15* 77:*19* 84:*15*
**Portugal** 17:*25*
**position** 8:*16, 20, 24* 49:*5,
7*
**possession** 64:*15*
**possible** 29:*16* 30:*23*
**post** 43:*3*
**posting** 99:*13*
**potential** 24:*20* 25:*8, 9*
30:*7* 32:*21* 94:*9* 107:*11*
**practicing** 79:*18*
**predecessor** 34:*21, 25*
**prefer** 106:*11*
**Preliminary** 4:*5* 37:*12*
68:*23* 73:*3* 74:*12* 84:*14*
86:*19* 89:*16, 20* 92:*22*
93:*23* 112:*19*
**prepare** 14:*9*
**prepared** 91:*24*
**presence** 83:*7, 11*
**present** 13:*3* 110:*17*
**presented** 10:*23* 26:*8*
93:*15* 101:*2*
**presenting** 29:*15* 84:*25*
**President** 8:*17, 25* 9:*9*
**presume** 6:*1* 37:*18*
**presuming** 6:*5* 95:*6*
**prevalent** 21:*5*
**previous** 94:*11*
**previously** 94:*6* 108:*17*

**primarily** 18:*8*
**print** 67:*21*
**printer** 67:*17, 18*
**prior** 21:*11* 51:*8* 75:*1*
96:*19*
**privilege** 42:*9, 17* 51:*3*
53:*4, 5* 60:*4, 7*
**privileged** 6:*13*
**probably** 97:*17* 109:*8*
**problem** 19:*6, 9* 43:*9*
83:*15* 96:*1*
**problems** 7:*4* 21:*24*
**proceed** 6:*2* 10:*12* 100:*4*
**proceedings** 62:*8* 73:*4*
**P-R-O-C-E-E-D-I-N-G-S**
5:*1*
**produce** 80:*7* 92:*3*
**produced** 64:*23* 76:*25*
86:*6, 10* 88:*9* 91:*6* 92:*22*
93:*23* 94:*5* 99:*21, 23, 24*
101:*25* 102:*2, 4* 105:*13*
108:*2* 114:*9*
**product** 14:*16* 15:*3*
22:*21* 29:*17* 49:*21* 50:*4*
60:*5* 66:*22* 78:*9, 25*
79:*24* 97:*25* 100:*14*
**production** 57:*11*
**products** 24:*2* 56:*18*
64:*4, 8* 66:*14* 70:*12, 20*
71:*23* 72:*6* 78:*6, 14* 90:*9*
91:*3, 10, 14, 16* 92:*3*
110:*12*
**professional** 103:*6, 15*
**profits** 33:*1, 3*
**program** 22:*25*
**Projected** 3:*22*
**promotional** 66:*12*
**prompting** 53:*16*
**proper** 11:*12*
**properly** 9:*7*
**proposed** 33:*3*
**proposing** 23:*18*
**prospective** 109:*7*
**protect** 70:*7*
**provide** 80:*24* 81:*1*
**provided** 61:*6* 64:*17*
76:*4*
**providing** 69:*19*
**provision** 36:*5, 14* 42:*8*
44:*22* 45:*15* 48:*21* 54:*1*
60:*2, 11*
**Public** 1:*12* 2:*6* 114:*5*
**PUPPIE** 1:*4* 5:*9* 16:*6*
17:*8* 18:*22, 24* 19:*8, 12,
20* 20:*10, 16* 21:*4* 31:*2, 6,
13* 33:*4* 34:*14, 20, 25*
36:*5, 14* 37:*1* 38:*19* 39:*8,
20* 40:*11* 42:*7, 17* 43:*24,
25* 44:*7, 10, 13, 15, 19*
45:*10, 11, 12, 18, 25* 46:*2,*

*3*, *4*, *5*, *8*, *10*, *11*, *16* 51:*11*, *13*, *19*, *25* 52:*5*, *15*, *20* 53:*22* 54:*24* 55:*19* 56:*1*, *4*, *15*, *18* 57:*2*, *11*, *16* 60:*13* 61:*1*, *7*, *20* 62:*2*, *20*, *23* 63:*17*, *22*, *25* 65:*9*, *10*, *21*, *23* 69:*6*, *13* 70:*11*, *18* 71:*23* 72:*6*, *7* 75:*6*, *12* 76:*5* 77:*4*, *22*, *23* 78:*14*, *23* 82:*9*, *12*, *21* 83:*7*, *11* 84:*11*, *17*, *22* 86:*25* 87:*10*, *21* 88:*15* 90:*9*, *15* 91:*3*, *10*, *15* 94:*7* 97:*24* 98:*8* 100:*15* 105:*23* 106:*3*, *6*, *9*, *11* 108:*6* 110:*3*, *12*, *18* 113:*2*, *5*
**Puppie/Able** 37:*6* 40:*4* 43:*13*
**Puppie29** 3:*23*
**Puppies** 75:*24* 78:*6* 106:*15*
**Puppie's** 39:*13*
**Puppy** 21:*12* 23:*18*
**purpose** 8:*10* 48:*10*
**purposes** 12:*1* 21:*18* 22:*16* 23:*3* 24:*7* 25:*2*, *23* 27:*4*, *24* 28:*19* 30:*3*, *16* 32:*2* 33:*12* 34:*8* 62:*6* 68:*17* 72:*16* 73:*12* 74:*8* 85:*11* 88:*6* 90:*21* 92:*19* 95:*4* 101:*24* 102:*11* 105:*11* 106:*19* 112:*14*
**pursuant** 1:*13*, *14*
**put** 45:*3* 75:*13*, *25* 76:*23* 80:*21*, *25* 81:*7* 87:*6* 92:*14*
**putting** 48:*8* 50:*16*

**< Q >**
**qualified** 114:*5*
**quarter** 49:*12*
**question** 5:*24* 6:*2*, *7*, *10*, *25* 10:*14* 11:*6*, *15*, *22* 20:*14* 23:*9* 24:*14* 25:*18* 26:*5*, *25* 29:*8*, *10* 31:*11* 32:*8*, *10* 36:*2* 37:*21* 38:*17* 39:*1*, *4*, *5* 40:*25* 42:*5* 44:*17* 45:*3* 47:*6* 52:*23*, *25* 53:*2* 59:*16*, *21* 60:*20* 61:*14*, *16*, *21*, *23* 63:*3* 65:*5*, *20* 69:*1* 71:*5* 72:*21* 73:*12* 76:*7* 78:*1*, *2* 79:*5*, *14*, *21*, *22* 81:*12* 83:*9* 84:*3*, *4* 89:*15*, *18* 90:*14* 99:*6* 101:*21* 105:*5* 107:*7*, *25* 110:*4*, *6*, *7* 112:*4*, *7*, *10*, *16*
**questions** 5:*23* 7:*25* 10:*12* 16:*14*, *19* 18:*20* 53:*3* 59:*4*, *14* 62:*25* 65:*2*

69:*3* 74:*15* 76:*3* 81:*15* 85:*14*, *25* 86:*11* 88:*20* 96:*2* 97:*1* 109:*16* 112:*8*, *21* 113:*18*
**quick** 37:*24* 68:*3*
**quite** 12:*5*
**quote** 31:*12*
**quote/unquote** 28:*6*

**< R >**
**raise** 6:*8*
**raised** 46:*16*
**Ralph** 19:*11* 60:*15*
**rattled** 18:*6*
**read** 21:*21* 23:*15* 24:*18* 35:*12*, *14*, *21* 36:*17* 37:*9*, *23* 38:*9* 39:*9* 45:*6*, *13* 53:*18* 54:*22* 59:*21*, *23* 65:*11*, *14*, *17* 66:*5*, *18* 67:*12* 72:*17*, *23* 77:*18* 83:*6*, *9* 88:*22* 95:*8*, *24* 100:*9* 103:*4* 104:*20* 105:*19*
**reading** 38:*12*, *18* 54:*12* 56:*7* 61:*15* 95:*20* 108:*10*
**reads** 35:*18* 84:*3*
**ready** 13:*20*, *23* 21:*13* 27:*2* 29:*10* 65:*13* 93:*7*
**real** 15:*7*, *13* 68:*3* 107:*14*
**realize** 5:*18*
**realized** 101:*7*
**Really** 16:*17* 57:*19* 59:*15* 62:*12* 65:*24* 67:*11* 72:*10* 90:*13* 104:*20* 106:*12* 110:*5* 112:*4*
**reason** 103:*15*
**reasons** 44:*3*, *5*, *6* 51:*15*, *21*, *23* 52:*10*
**rebrand** 98:*23*
**rebranding** 97:*9*
**recall** 21:*8*, *10* 69:*6*
**received** 15:*24*
**receivership** 45:*15*
**recognize** 80:*12* 98:*11*
**recollection** 58:*1*
**record** 5:*14*, *15* 10:*18* 32:*19* 68:*10*, *13* 96:*21*, *24*
**Red** 90:*10*
**reduced** 114:*8*
**refer** 9:*25* 77:*7*
**reference** 34:*20* 56:*18* 84:*10*
**referenced** 56:*10* 73:*7* 92:*21*
**references** 56:*15*
**referencing** 75:*10* 78:*20* 84:*10* 109:*4*
**referring** 15:*7*, *12*, *17* 19:*10* 22:*6* 37:*9* 78:*19*

84:*6*
**reflect** 16:*6*
**refresh** 14:*2*
**regard** 74:*11*
**regarding** 23:*12* 27:*8*
**regardless** 100:*4*
**registered** 69:*7* 94:*25*
**related** 8:*3* 26:*13* 73:*15* 86:*18*
**relates** 6:*7*
**relating** 14:*9* 72:*10* 73:*2*
**relations** 76:*20*
**relationship** 20:*7*, *9*, *15*, *18*, *23* 21:*8* 113:*5*
**relationships** 75:*5* 76:*10*, *17*
**released** 84:*22*
**relevance** 31:*21*
**relevant** 19:*16* 48:*23* 50:*13* 58:*15*
**relief** 45:*14*, *16* 84:*13*
**rely** 52:*8*
**remember** 39:*3* 59:*23*, *24*
**reminded** 12:*7*
**remotely** 7:*6*
**removed** 84:*16*
**rendered** 110:*2*
**repeat** 20:*13* 38:*23*, *24* 39:*2*, *4* 43:*7* 44:*17*
**reporter** 28:*25* 38:*22* 62:*7*
**Reporting** 1:*17* 114:*4*
**represent** 5:*15* 81:*23* 89:*25* 93:*12*
**representation** 31:*3*, *14*, *24* 52:*9*
**representations** 47:*8*
**representatives** 45:*19* 51:*25*
**represented** 8:*11*
**representing** 22:*21*
**request** 23:*23* 41:*10*, *11* 108:*6*
**requested** 75:*3*
**requests** 86:*13*, *17* 92:*23* 102:*1*, *4* 105:*14*
**require** 53:*21* 65:*9*
**required** 54:*13*
**requirement** 61:*18*, *25*
**requires** 54:*23* 55:*17* 65:*21* 76:*20*
**Reserved** 66:*8*
**respect** 33:*7* 77:*21*
**respond** 109:*18*
**response** 16:*15* 23:*22* 102:*4* 105:*13*
**responses** 8:*19* 74:*10*
**responsibilities** 9:*12*
**rest** 83:*9*

**Results** 3:*23*
**retail** 76:*17*, *19*
**retailer** 75:*23* 76:*10*
**retailer/customer** 75:*5*
**retailers** 76:*24* 78:*6*, *8*, *13*, *24* 79:*23*
**retired** 75:*13*, *25* 76:*22* 80:*23*, *25*
**return** 66:*10* 67:*1*, *2*, *3*
**returned** 85:*1*
**reveal** 48:*25* 50:*3*
**review** 36:*18*, *22* 37:*4*
**reviewed** 42:*6*
**reviewing** 61:*21*
**right** 6:*2*, *11* 7:*4*, *17* 8:*4*, *21* 13:*19* 15:*5*, *10* 16:*23* 18:*8*, *17* 22:*23* 23:*14* 24:*17*, *24* 26:*9*, *10* 27:*12*, *18*, *21* 28:*11* 29:*5*, *12*, *13*, *20* 30:*12* 31:*9*, *17* 33:*21* 34:*5*, *9*, *15* 35:*4*, *15*, *17*, *20* 36:*24* 37:*2*, *20* 41:*15* 42:*23* 43:*20* 44:*10*, *16* 45:*23* 46:*12* 47:*24*, *25* 51:*8*, *18* 52:*2*, *6* 53:*19* 54:*3*, *12* 55:*18*, *20*, *21* 56:*12* 57:*3*, *5*, *14* 61:*10*, *19* 62:*1*, *21* 63:*1* 64:*15*, *24* 65:*1*, *13*, *14*, *16*, *22* 66:*5* 67:*4*, *15* 68:*14* 69:*5*, *7*, *16*, *22* 70:*23* 72:*11*, *13*, *25* 73:*13* 74:*4* 75:*16* 76:*25* 78:*19* 80:*15* 82:*10* 83:*25* 85:*2* 88:*19* 90:*10*, *17* 94:*5*, *13*, *18* 96:*7*, *13* 97:*3*, *5* 98:*9*, *14* 101:*20* 102:*17* 104:*8*, *12*, *22* 105:*18*, *24* 106:*6*, *13* 107:*17*, *20* 108:*9* 109:*12* 110:*11* 111:*14*, *15* 113:*11*, *17*
**rights** 21:*12* 42:*11*, *20* 64:*3* 66:*8* 72:*7* 100:*17* 109:*10*
**Rod** 24:*12*, *13* 25:*5*, *7*, *18* 26:*1* 30:*7*, *8*, *10*, *19*, *21*, *22*, *25* 31:*5*, *23*
**Rodrigo** 97:*20*
**Rogers** 105:*21*
**room** 7:*9* 95:*24*
**Rose** 71:*20*, *21*, *24* 72:*5*, *11* 73:*3*, *15*
**roughly** 21:*11*
**rude** 16:*14*, *17*
**rule** 58:*17*, *18*
**rules** 5:*16*
**run** 81:*7*

**< S >**
**sale** 57:*11* 110:*1*

Case: 1:19-cv-00189-MRB  Doc #: 113  Filed: 08/30/21  Page: 127 of 129  PAGEID #: 3269

Deposition of Daniel Fachner                                    Slush Puppie Limited, vs. The Icee Company,

sales 75:4, 9, 20  76:11 90:1
Samoren 59:12
Saudi 18:15
save 65:19  69:3  71:16 90:6
saving 87:23
Savings 2:23
saw 82:23  83:4  95:19
saying 29:25  31:12 47:25  48:4  64:22  80:22 87:11  90:3  93:17, 21 98:22  99:20  107:3, 4 111:11
says 5:4  22:3  24:14 26:15  28:25  30:25  31:8, 10, 12  43:24  49:4  52:18 57:7  58:19  60:12  66:9, 12  67:2  70:7  75:1  76:9 77:2  106:10  107:15 112:23
Scandinavia 113:1
scheduled 111:25
Schirripa 1:12  114:4, 23
Scoles 85:24
scope 16:3  23:24  64:4, 8
screen 76:15  85:17, 25 102:25
scroll 23:4  28:22, 25 29:2  66:3  85:16  98:4
search 68:4
Second 3:19  72:9  73:1 74:5  88:12  97:14, 17 105:15, 16  112:12
section 47:9
see 15:20  19:19  21:19 23:4  25:9, 10  31:21 33:17  43:10, 11, 23  44:3 47:21  49:4  51:6, 15 53:25  54:17, 21  55:9 56:19, 20  62:3  66:2 70:12  71:11  72:1  75:7 76:16  78:10, 25  82:20, 22 84:2  85:15, 17  93:21 94:4, 6, 8, 17  98:2  102:18, 21, 22, 25  103:3, 4, 5, 6 104:18, 21, 24, 25  105:7 108:7, 11, 19  109:13, 19 113:2, 21
seeing 21:24  85:22 107:21
seeking 45:14  84:14
seen 31:19  60:25  61:5 64:12, 16  69:18  85:12 112:17, 19
sell 36:8  42:11, 20  64:7 72:6  75:11  92:4  106:3 107:15
selling 38:20  39:19  90:9,

15  91:2, 10, 15  92:5
sells 71:22
send 41:5  68:1, 3  70:15 80:1, 4, 6  86:9
sending 22:11, 22  24:16, 19  25:7  26:9, 18  27:10 30:11  33:24  81:25
sends 41:3, 8
sense 89:15  109:6
sent 70:8, 25  73:6  78:16 80:3  85:22  101:9  107:15
sentence 51:7, 12  52:2 54:21  55:8  56:21  57:13 59:21, 23  67:3  75:1 76:16  78:19
sentences 51:4
separate 108:1
September 29:11
series 5:22  106:21
served 92:23  102:1
serves 23:20
service 17:4  61:8
services 90:8  110:2, 12
set 114:17
Sexton 24:13  25:5, 7, 18 26:1  30:10, 20, 21, 22
shaking 95:18, 19
Shame 81:25  82:1
sharing 33:19
shirt 70:20
shirts 32:22
short 53:20
shorter 12:2  18:20
shot 66:1, 2
show 33:20, 21  71:18 91:17  105:15
showing 94:16  102:21, 24 103:2
shows 27:9
shut 59:10
side 67:12
sign 47:16, 17
signature 47:21
signed 47:14  49:7  63:24 64:1  70:19  73:7  75:17
significance 56:21
significantly 69:14
signs 56:2  66:11
similar 65:2  103:12 106:21  108:3, 16, 18, 25 109:16
similarity 66:16
sir 8:14  37:10
sit 17:22  40:8  100:19
site 55:5
sites 53:22  54:14, 23
sits 107:20  111:9
sitting 42:15  64:19
six 97:5
size 74:23, 24

skip 71:15  77:12  87:22 91:18  104:19  112:5
slowing 59:14, 16
SLUSH 1:4  3:23  5:9 16:6  17:8  18:22, 24  19:8, 12, 20  20:10, 16  21:3, 12 23:18  31:6  33:2  34:14, 20, 25  36:4, 14  37:6 39:13, 19, 20  40:4, 11 42:7, 17  43:13, 24, 25 44:7, 10, 13, 15, 19  45:10, 11, 12, 18, 25  46:2, 3, 4, 5, 8, 10, 16  51:11, 13, 19, 25 52:5, 14, 20  53:22  54:24 55:19  56:1, 4, 15, 18  57:2, 11, 15  60:13  61:1, 7, 19 62:2, 20, 23  63:17, 22, 25 65:9, 10, 21, 23  69:6, 13 70:10, 11, 18  71:23  72:6, 7  75:6, 11, 24  76:5  77:4, 22, 23  78:6, 14, 23  82:9, 12, 21  83:7, 11  84:11, 17, 22  86:25  87:10, 20  88:15 90:9, 15  91:3, 10, 15  94:6 97:24  98:8  100:15 105:23  106:3, 6, 9, 11, 15 108:6  110:3, 11, 18  113:2, 5
Slushy 78:9, 25  79:24 83:2  84:23  106:4, 6, 10
smaller 66:5
smart 19:14, 15
Snack 8:15  9:6, 21
social 83:7, 11, 18  98:14, 15  101:4
sold 37:25  39:10, 11 40:5  42:12  43:13  110:19
sole 43:11
solutions 102:23
somebody 24:10  58:13 68:3  75:18  87:6  92:9
somebody's 106:15
someone's 103:22
somewhat 93:17
Sononum 99:14
Sons 19:11  60:15
sorry 32:12  35:3  59:20 61:12  66:17  71:19  85:16 107:25
sound 112:8
sounds 8:5  12:20, 21 24:14  56:6  64:22  106:5 112:7
South 2:15
SOUTHERN 1:2  5:10
Spain 17:24  22:21, 22 24:12, 16, 20  69:20
speak 5:25  7:20
specific 15:16  42:8 75:20  76:2, 3, 24

specifically 69:13  72:10 74:11
specified 114:12
specifying 37:11
speculate 49:1
speech 79:19  103:20
spite 37:17
SPL 72:1, 4  78:5, 14, 24
Splat 98:25  99:8
split 33:8
splits 33:3
SPL's 78:9, 25  79:23 83:6, 10
spot 109:12  110:5
spots 38:1
spring 86:9
Square 2:6
SS 114:1
stand 48:9  58:13  86:21
start 14:3  21:8  38:16 54:3, 5  65:15  71:18  93:1 95:7  102:14  109:8
started 38:18
starts 75:1
State 1:13, 19  77:23 114:1
statement 79:6  113:6
statements 74:1
STATES 1:1  26:4
statute 1:11
stay 74:23
step 33:15
Steve 22:1, 8, 19  23:11, 22  27:7  28:2, 10, 12 33:19, 23
sticker 86:25  87:18, 19
stipulations 1:15
stop 54:8  58:25  59:2, 15 64:18  82:9, 11  101:14
stopped 106:16
store 84:18  107:16
Street 1:18  2:15, 24
stretch 106:7
string 29:6, 19, 23  93:12, 25  95:6, 9  108:22
subjective 48:20
submitted 68:22  72:9 74:10  99:15
subsequent 5:12  62:17
subsidiaries 60:14
subsidiary 9:19
substance 104:16
sudden 83:14
sue 44:24  46:9
sued 44:14
sues 52:20
suffer 75:3
suffered 75:3
suggesting 32:25  33:2

**Suite** 1:*18* 2:*6*
**supplementing** 45:*19*
**supplier** 106:*16*
**supplies** 45:*20*
**support** 68:*22* 77:*24*
78:*1* 112:*18*
**supporting** 79:*16* 81:*17*
**supposed** 82:*7, 8, 9, 11*
98:*17, 18, 20, 21* 104:*9*
**sure** 6:*25* 17:*21* 20:*8, 13,*
*15* 23:*8* 31:*11* 32:*22*
33:*16* 36:*12, 16* 37:*23*
38:*25* 39:*5* 40:*7* 44:*18*
47:*10* 52:*8* 55:*12* 61:*3,*
*11, 24* 64:*20* 66:*7* 70:*3*
72:*22* 77:*20* 78:*21* 90:*13*
95:*16, 24* 96:*6* 110:*7*
**surrounding** 14:*21*
**switch** 78:*9, 24* 79:*23*
**Switzerland** 17:*24* 26:*6,*
*9, 16, 19* 27:*1* 30:*20, 23*
31:*3, 7, 14, 17, 24* 69:*21*
**sworn** 5:*3* 81:*24*
**symbols** 56:*3*
**syrup** 34:*13* 36:*7* 38:*20*
40:*5*
**syrups** 36:*8* 37:*25* 39:*11,*
*13, 20* 42:*11, 12, 20* 43:*13*
57:*12*
**system** 80:*17, 20* 81:*1, 7*
101:*17*

**< T >**
**table** 79:*14*
**Tackla** 1:*12, 17* 2:*22*
114:*3, 20*
**tactics** 87:*14*
**take** 6:*9, 10* 21:*15* 22:*17*
24:*8* 25:*3, 24* 27:*6, 25*
28:*20* 30:*5, 17* 32:*3*
33:*13* 34:*10* 37:*3, 8* 38:*8*
62:*10* 68:*19* 85:*13* 88:*19*
102:*12* 105:*14* 106:*22*
108:*4*
**taken** 1:*11* 5:*9, 11, 17, 18*
8:*2, 8* 12:*6, 9, 12, 17, 25*
13:*2, 7, 12* 49:*5, 7*
**talk** 14:*5* 52:*7* 57:*24*
82:*19* 88:*24*
**talked** 35:*22* 71:*13*
82:*20* 109:*22*
**talking** 10:*7, 11* 11:*10*
17:*14* 19:*9, 17* 28:*3*
60:*10* 83:*23, 24* 89:*23*
90:*23* 111:*2*
**talks** 54:*7* 55:*3* 71:*20*
**tangentally** 109:*23*
**tear** 101:*18*
**technological** 40:*19*

**tell** 9:*4* 11:*3* 13:*22*
21:*15* 22:*18* 24:*9* 25:*4,*
*25* 27:*6, 25* 28:*21* 29:*1*
30:*5, 18* 32:*4* 33:*14*
34:*12* 39:*15, 19* 50:*7*
54:*4* 55:*16* 62:*10* 63:*21*
68:*19* 72:*25* 86:*2* 90:*7*
96:*3* 97:*7* 98:*7* 102:*13*
104:*1* 108:*4* 109:*3*
112:*16*
**telling** 5:*19* 29:*23* 31:*16*
97:*8*
**Tennessee** 7:*10*
**term** 57:*8*
**terminate** 44:*1, 7, 25*
46:*11* 49:*15* 51:*13, 20*
52:*5, 15, 19*
**terminated** 20:*20* 21:*1*
44:*16* 51:*10*
**termination** 37:*10* 43:*4*
55:*25* 56:*13, 23* 66:*9*
**territories** 36:*9* 37:*25*
39:*14, 25* 40:*2, 3, 7, 16, 20,*
*23* 42:*11, 13, 20* 43:*14*
63:*12* 70:*4* 75:*12, 16, 19*
**territory** 35:*10, 15* 40:*9,*
*10* 63:*3, 9* 69:*14* 94:*21*
97:*21* 98:*19* 100:*7, 16*
**testify** 6:*20* 75:*2* 76:*9*
77:*2* 110:*21* 114:*6*
**testifying** 54:*16, 20* 59:*2*
104:*17, 24*
**testimony** 42:*25* 57:*17*
58:*25* 69:*24* 73:*17*
103:*22* 104:*9* 114:*7, 10*
**Thank** 6:*18* 11:*8* 12:*5*
17:*18* 21:*21, 23* 22:*3*
38:*5* 41:*7* 43:*6* 46:*3*
60:*18* 66:*8* 70:*7* 73:*25*
74:*5* 82:*5* 92:*15* 106:*17*
113:*19, 20*
**thereof** 66:*16*
**thing** 36:*17* 53:*19* 76:*11*
86:*8* 104:*23*
**things** 47:*18* 54:*1, 7*
57:*14* 58:*14* 70:*21* 74:*14*
90:*15* 100:*24*
**think** 5:*23* 6:*6* 8:*18*
9:*24* 19:*14, 15* 25:*17*
26:*16* 29:*3* 37:*5, 6, 19, 22*
39:*10* 40:*23* 47:*13* 48:*5*
49:*16, 22, 24* 50:*25* 53:*6,*
*9* 55:*6* 56:*23, 24* 60:*13*
61:*20* 62:*17* 66:*24* 67:*25*
69:*4* 74:*20* 81:*19* 83:*24*
84:*5* 92:*24* 102:*8* 105:*19*
106:*2, 7, 8, 14* 111:*8, 21*
**thinks** 49:*13* 53:*7* 81:*14*
**third** 91:*19* 97:*17*
**third-party** 90:*8* 91:*2*

**thought** 32:*12* 46:*15*
47:*7* 49:*2, 3* 95:*19*
**three** 37:*22* 38:*14, 15*
41:*12* 43:*24* 55:*21* 92:*24*
97:*25* 100:*20* 102:*14*
**thrice** 12:*7*
**throat** 83:*14*
**Thursday** 1:*15*
**thwart** 78:*5*
**time** 5:*12* 6:*9* 7:*14, 21*
12:*24* 19:*13, 19, 21* 20:*13*
21:*17* 22:*9, 15* 23:*2* 24:*6*
25:*1, 22* 27:*3, 23* 28:*18*
30:*2, 15* 32:*1* 33:*11* 34:*7*
37:*3, 8* 38:*9* 43:*5* 53:*25*
57:*20* 58:*20* 59:*12* 62:*5,*
*7* 65:*19* 68:*16* 69:*3* 71:*7,*
*16* 72:*15* 74:*7* 80:*13*
85:*10* 87:*15, 23* 88:*5, 20*
90:*6, 20* 92:*18* 95:*3*
101:*23* 102:*10* 105:*10*
106:*18* 110:*7* 112:*13*
113:*21*
**timely** 7:*22*
**times** 12:*11, 24* 13:*6, 12,*
*18*
**timing** 112:*4, 6*
**tired** 80:*22*
**tmarandola@duanemorris.**
**com** 2:*19*
**today** 6:*20* 8:*16* 9:*7*
21:*2* 24:*1* 35:*25* 40:*1, 8*
42:*15* 82:*19* 95:*1* 101:*4*
108:*10* 111:*25*
**tokens** 56:*3*
**told** 16:*19* 50:*8* 75:*24*
101:*3* 104:*6* 106:*15*
**top** 21:*19* 28:*6, 11* 33:*17*
39:*10* 40:*1* 69:*10* 85:*17*
102:*18* 103:*6* 104:*18, 21,*
*22, 24* 105:*3* 111:*20*
**topics** 8:*3, 7*
**touch** 10:*16*
**trade** 33:*21*
**trademark** 54:*19* 55:*19*
61:*20* 62:*2* 65:*23* 69:*6*
79:*12* 110:*3*
**trademarks** 51:*11* 55:*3*
56:*1, 15*
**tradenames** 56:*2*
**trail** 107:*23*
**transcript** 88:*22* 114:*10*
**TRANSCRIPTION** 2:*21*
**Tremendous** 79:*19*
**trial** 5:*20* 96:*4*
**true** 113:*6* 114:*9*
**truth** 5:*20* 114:*6, 7*
**truthfully** 6:*20*

**try** 9:*24* 28:*24* 34:*2*
63:*14* 77:*19* 86:*2* 92:*13*
105:*5*
**trying** 18:*19* 70:*2* 71:*15*
79:*10* 99:*10* 101:*12*
**T-shirts** 64:*7*
**turn** 53:*22* 54:*1, 13, 23*
55:*4, 8* 57:*2* 65:*9* 101:*3*
**turned** 77:*8* 84:*21* 85:*1*
98:*11*
**turning** 83:*16*
**twice** 8:*12* 12:*7* 53:*15*
**Twitter** 99:*12*
**two** 8:*8* 18:*5, 6, 7* 19:*25*
21:*9* 28:*22* 29:*2, 5* 38:*11*
41:*24* 42:*1* 43:*23* 51:*4*
55:*20* 57:*9* 58:*14* 59:*22*
80:*3* 99:*19* 105:*15*
108:*13, 17* 110:*25* 111:*7,*
*16* 112:*8*
**Tyler** 2:*14*
**type** 50:*4* 93:*25* 108:*25*
**types** 64:*8*

**< U >**
**U.K** 21:*4* 26:*5, 14* 31:*6*
32:*24* 33:*6* 46:*16*
**U.S** 110:*6*
**Uh-huh** 104:*13*
**UK** 31:*2, 14* 63:*12* 64:*3*
70:*9* 75:*7* 77:*5* 78:*7, 15*
99:*25*
**ultimately** 93:*16*
**um** 28:*3* 47:*19*
**unacceptable** 87:*8*
**unauthorized** 83:*8*
**Unbelievable** 81:*22*
**uncomfortable** 105:*2*
**uncommunicated** 48:*21*
**underlie** 15:*1, 5, 10*
**underline** 56:*20* 77:*3*
**underlined** 43:*23* 51:*5, 6*
69:*2, 12* 76:*15* 77:*12*
78:*3, 13, 23*
**underlines** 38:*12*
**underneath** 17:*8*
**understand** 5:*24* 6:*17, 25*
8:*1, 18* 18:*16* 21:*20* 29:*4*
31:*11* 36:*12* 38:*25* 42:*21*
44:*12* 45:*21* 47:*11* 51:*4,*
*12, 18, 19, 22* 52:*1, 4, 8, 9*
58:*11* 69:*9* 71:*21* 77:*5*
81:*13* 93:*22* 101:*13*
105:*1, 4, 9* 111:*6, 11*
**understanding** 34:*20, 22*
35:*1* 44:*22* 49:*18* 58:*6*
**understood** 6:*1* 21:*6*
38:*5* 73:*12* 81:*10* 87:*11*
90:*5* 110:*4, 8*

Deposition of Daniel Fachner          Slush Puppie Limited, vs. The Icee Company,

**undo** 76:*21*
**unfair** 87:*9*
**Unfortunately** 21:*19* 102:*18*
**unfrozen** 17:*3*
**union** 112:*24*
**UNITED** 1:*1* 63:*9, 25* 112:*25*
**unlicensed** 83:*7*
**Unrelated** 57:*15*
**use** 10:*16* 19:*18* 45:*22* 55:*18* 56:*14* 61:*19* 62:*1, 25* 65:*22* 66:*16* 83:*16* 87:*14* 97:*24* 100:*13* 102:*23* 103:*14*
**usual** 10:*18, 20*

**< V >**
**vague** 11:*18* 14:*19* 15:*6, 11* 17:*13* 18:*23* 19:*23* 20:*11, 19, 25* 32:*5, 15* 39:*16* 87:*3* 90:*12*
**vehicles** 98:*14*
**venture** 28:*14* 29:*24*
**verbiage** 54:*22*
**Vergne** 7:*10*
**versus** 5:*9*
**video** 43:*10*
**Videoconference** 1:*17*
**VIDEOGRAPHER** 87:*24* 88:*2* 90:*19* 93:*10* 95:*13* 96:*14, 17*
**view** 20:*22, 23* 87:*17, 20* 98:*17*
**Vimto** 107:*15*
**violated** 36:*5, 10, 14* 37:*1, 7, 14, 16* 38:*20* 40:*17, 21, 23* 42:*8* 60:*1, 11, 24* 63:*17, 22*
**violation** 37:*19* 38:*3* 39:*7, 11* 42:*22* 43:*11* 79:*11, 12*
**violations** 42:*16* 58:*23*
**visible** 84:*18*
**voluntary** 45:*13*
**vs** 1:*6*

**< W >**
**wade** 12:*20*
**Wait** 111:*15*
**want** 6:*8* 11:*20* 13:*20* 23:*5* 26:*17* 34:*18* 36:*11* 37:*11, 18, 19* 49:*22, 24* 50:*7, 10* 52:*7* 54:*3, 9* 55:*11* 57:*5* 58:*2, 24* 65:*3* 68:*1, 3, 4* 72:*17* 77:*5, 19* 84:*15, 22, 23* 89:*18* 90:*24, 25* 91:*17* 93:*22* 95:*15* 96:*4* 100:*3, 6, 9, 10, 12* 101:*8* 103:*13* 105:*8*

**wanted** 69:*14* 73:*18* 100:*18* 101:*5* 103:*9*
**wants** 55:*21* 100:*25*
**wasting** 19:*13, 19* 57:*19* 71:*7*
**watching** 95:*24, 25*
**water** 83:*22* 84:*24*
**way** 11:*1* 24:*18* 37:*23* 45:*9* 47:*4* 49:*11* 63:*14, 21* 65:*19* 76:*5* 79:*15* 80:*17* 82:*21, 22* 83:*21* 87:*12* 96:*7* 97:*10* 102:*21* 103:*19, 21* 105:*20* 106:*12*
**ways** 37:*22* 52:*5* 82:*16* 101:*15*
**Web** 53:*22* 54:*14, 23* 55:*5*
**website** 71:*23* 98:*25* 99:*9*
**websites** 65:*10* 83:*16* 98:*10, 11, 14, 15, 25* 99:*11* 101:*3, 6* 109:*10, 22*
**Well** 7:*20, 24* 13:*4* 17:*4* 18:*11* 19:*3* 20:*8* 25:*9* 26:*15* 29:*3* 37:*15* 38:*25* 39:*2, 4, 9* 45:*3, 6* 46:*19* 48:*5, 18* 50:*12* 52:*24* 53:*1, 24* 54:*15* 55:*2* 60:*6* 61:*15* 63:*6* 71:*13* 72:*21* 77:*7* 78:*16* 82:*2* 84:*19* 86:*5, 20* 92:*2* 106:*14* 107:*13, 14* 113:*7*
**went** 84:*20* 99:*25*
**we're** 7:*6* 10:*7* 14:*22* 20:*16* 43:*9* 45:*11* 47:*7* 50:*16* 54:*5* 55:*7* 57:*23* 58:*21* 67:*9* 78:*20* 85:*7* 87:*24* 96:*12, 13, 21* 97:*2* 100:*24*
**We've** 64:*17, 18* 69:*4, 18* 76:*3* 81:*20* 99:*10* 103:*10* 109:*22*
**whatsoever** 56:*5*
**WHEREOF** 114:*17*
**wholly** 60:*14*
**willful** 79:*12*
**willing** 72:*18*
**withdraw** 58:*2*
**withdrawing** 58:*22*
**within-named** 114:*6*
**witness** 10:*24* 11:*15* 13:*15* 14:*1, 13, 21* 16:*4* 19:*25* 20:*12, 20* 21:*1* 26:*13* 27:*15* 32:*7* 39:*18* 43:*18* 55:*2* 57:*18* 58:*4, 19* 60:*6* 67:*18, 25* 68:*8* 74:*22* 89:*13* 102:*25* 103:*3* 111:*24* 114:*17*
**witnesses** 102:*24* 103:*11*
**Wolfsohn** 2:*13* 6:*3, 12* 8:*6* 10:*3, 10, 15, 20, 23*

11:*2, 11, 17, 22* 12:*13* 13:*1, 9, 13, 21, 24* 14:*12, 15, 19* 15:*2, 6, 11* 16:*2, 8, 13, 18, 24* 17:*13* 18:*23* 19:*1, 5, 23* 20:*11, 19, 25* 25:*14* 26:*11, 20* 27:*13* 31:*18* 32:*5, 10, 14* 34:*1* 36:*16* 37:*3, 8, 15* 38:*8* 39:*16* 41:*5* 42:*24* 43:*3, 6, 16* 45:*1* 46:*13, 21, 24* 47:*2, 5, 15, 20* 48:*3, 7, 13, 17, 20* 49:*10, 17, 25* 50:*8, 12, 16, 20* 51:*9* 52:*17* 53:*1, 7, 15* 54:*16, 18, 25* 57:*15, 19, 22* 58:*5, 10* 59:*1, 3, 7, 10* 60:*3, 8, 12* 67:*5, 16, 20, 23* 68:*6* 69:*23* 70:*1* 71:*2, 6* 73:*16, 21* 79:*9* 80:*1, 6* 81:*13, 17* 82:*4* 85:*18* 86:*5, 14, 16, 20* 87:*3* 88:*10, 16* 89:*4, 10, 14, 22* 90:*12* 91:*5* 96:*9* 98:*24* 99:*4, 7, 18, 24* 102:*20* 103:*10, 19* 104:*4, 8, 13* 110:*21* 112:*1*
**wonder** 104:*22*
**wonderful** 7:*23* 10:*18*
**word** 10:*16* 40:*18* 89:*1, 5*
**words** 50:*10* 58:*13* 98:*16* 103:*8*
**work** 8:*14* 14:*16* 15:*3* 49:*21* 50:*4* 60:*5*
**world** 17:*5* 90:*15*
**write** 92:*10*
**writing** 41:*16, 19* 71:*12*
**written** 44:*2* 51:*14, 20* 52:*12* 100:*10* 101:*6* 107:*14*
**wrong** 72:*25* 73:*5* 74:*2* 98:*1*
**wrongs** 100:*4, 20* 101:*13*
**wrote** 73:*9*

**< Y >**
**Yeah** 8:*24* 49:*8* 62:*15* 67:*14, 25* 72:*22* 74:*19* 79:*15* 81:*15* 86:*18* 87:*25* 88:*10* 91:*8* 96:*6, 16* 97:*13* 104:*6* 105:*3* 111:*14*
**year** 9:*21* 99:*13* 101:*2*
**years** 11:*25* 15:*24* 20:*1* 21:*11* 57:*9* 59:*22* 64:*17, 18* 99:*19* 113:*5*
**yesterday** 15:*21* 36:*23*

**< Z >**
**Zalud** 2:*4* 5:*7* 6:*14* 10:*13, 17, 22* 11:*14, 18* 12:*19* 13:*4* 16:*10, 16, 22*

26:*22* 36:*20* 41:*8* 43:*5* 46:*19, 22* 47:*1, 4, 10, 19, 24* 48:*5, 11, 14, 18* 49:*9* 50:*6, 14, 22* 52:*24* 54:*20* 57:*17, 21* 58:*2, 8, 24* 59:*2, 5, 8, 13* 62:*9* 67:*7, 22* 68:*9, 14* 69:*25* 70:*6* 71:*4, 8, 11, 18, 20* 73:*18, 20, 25* 74:*16, 18, 25* 77:*14, 16* 79:*19, 20* 80:*5, 8* 81:*15* 82:*2, 5, 6* 84:*7, 9* 85:*19, 20* 86:*12, 15, 18, 23* 87:*4, 23, 25* 88:*4, 7, 14, 25* 89:*2, 6, 12, 17, 25* 90:*17, 22* 91:*8, 18, 20* 92:*16, 20* 93:*5, 6, 11* 95:*12, 14* 96:*12, 16, 20, 25* 97:*14, 16* 98:*3, 6* 99:*3, 5, 17, 23* 100:*1* 103:*8, 17, 24* 104:*3, 6, 11, 14, 15* 108:*14, 16, 24, 25* 109:*15, 16* 110:*24* 111:*22* 112:*3, 9, 11, 15*
**Zoom** 1:*16* 104:*7*