# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

SLUSH PUPPIE LIMITED,

      Plaintiff/Counterclaim/Defendant

      v.

THE ICEE COMPANY,

             Defendant/Counterclaim
Plaintiff

CASE NO. 1:19-cv-00189-MRB

**DEFENDANT/COUNTERCLAIM PLAINTIFF THE ICEE COMPANY'S ANSWER TO PLAINTIFF'S ~~SO-CALLED~~ "AMENDED AND SUPPLEMENTAL COMPLAINT" AND <u>AMENDED</u> COUNTERCLAIMS**

Defendant/Counterclaim Plaintiff The ICEE Company, responds to the ~~so-called~~

Amended and Supplemental Complaint ("Amended Complaint") of Plaintiff/Counterclaim

Defendant Slush Puppie Limited ("SPL"), as follows:

**PARTIES AND JURISDICTION**

1.      Admitted.

2.      It is admitted that ICEE is a corporation organized under the laws of the State of

Delaware.  The remaining allegations of this paragraph are denied.

3.      Denied as stated.  ICEE is unclear what SPL means by "the contracts that are at

issue in this matter" and therefore denies the allegations of this paragraph.  By way of further

answer, ICEE admits that what Plaintiff refers to as the 1996 Appointment, attached as Exhibit B

to the Amended Complaint, contains the following two clauses related to choice of law and

venue:

> (16) It is understood and agreed that it is the intention of the parties
> that this agreement comply with all applicable statutes, or rules and
> regulations of any states, the United States of America, or any

foreign nation, state, province, or county that may have jurisdiction over the execution, enforcement, or performance of this agreement. The parties agree that in all matters pertaining to this agreement, the laws of the State of Ohio, USA, shall be applicable and controlling and the exclusive venue for any litigation arising from or in any way connected with this agreement shall rest exclusively in the Court of Common Pleas of Hamilton County, Ohio, USA.

(24) This appointment and all of its terms and conditions shall be governed by and interpreted under the laws of the State of Ohio and that the exclusive venue for any litigation arising from or in any way connected with this agreement shall lie exclusively in the Court of Common Pleas of Hamilton County, Ohio, USA but this provision shall not preclude SLUSH PUPPIE from instituting legal proceedings in any other country having or claiming jurisdiction in respect thereof. This agreement is not valid until approved and executed at the general offices of SLUSH PUPPIE Corporation in Cincinnati, OH, USA.

ICEE further admits that what Plaintiff refers to as the 1999 Agreement, attached as

Exhibit C to the Amended Complaint, contains the following clause related to choice of

law and venue:

XVI. <u>Governing Law</u>

It is understood and agreed that it is the intention of the parties that this Agreement comply with all applicable statutes, rules and regulations of any and all states of the United States of America, or any nation, state, province, or county that may have jurisdiction over the execution, enforcement, or any performance of this Agreement. The parties agree that in all matters pertaining to this Agreement, the laws of the State of Ohio, USA shall be applicable and controlling. The exclusive venue for any litigation arising from, or in any way connected with, this Agreement shall rest exclusively in the Court of Common Pleas of Hamilton County, Ohio, USA.

ICEE denies that what Plaintiff characterizes as the "2000 Agreement," (the "Purported

2000 Agreement") attached as Exhibit D to the Amended Complaint, was ever entered

into by Slush Puppie Corporation, denies that what plaintiff has attached to the Amended

Complaint as Exhibit D is a "true and correct" copy of any such agreement, asserts that

the document is a forgery, and denies that any such purported "agreement" would be or is

2

binding on ICEE. By way of further answer, the document attached to the Amended

Complaint as Exhibit D contains the following two clauses related to choice of law and

venue:

> 17)     It is understood and agreed that it is the intent of the parties that this Agreement comply with all applicable statutes, or rules and regulations of any states, the United States of America, the United Kingdom, and/or any foreign nation, state, province, or county that ®may have jurisdiction over the execution, enforcement, or performance of this Agreement. The parties agree that in all matters pertaining to this Agreement, the laws of the State of Ohio, USA shall be applicable and controlling and the exclusive venue for any litigation arising from or in any way connected with this agreement shall rest exclusively in a court of competent jurisdiction located in Ohio County, USA.
>
> …
>
> 24) This Agreement and all of its terms and conditions shall be governed by and interpreted under the laws of the State of Ohio and that the exclusive venue for any litigation arising from or in any way connected with this Agreement shall lie exclusively in Ohio County, USA.

ICEE denies the remaining allegations in paragraph 3 of the Amended Complaint.

4.      Admitted.

5.      ICEE admits only that, for certain time periods, SPL was authorized by now-

terminated agreements with ICEE to manufacture and distribute certain products bearing ICEE's

SLUSH PUPPIE® trademarks. ICEE further admits that the Amended Complaint purports to

seek declaratory and injunctive relief, but ICEE denies that SPL is entitled to any such relief or

any relief whatsoever. ICEE denies the remaining allegations in paragraph 5 of the Amended

Complaint, including but not limited to the allegation that Plaintiff has "exclusive" rights to the

SLUSH PUPPIE® trademarks in any territory, that any goodwill from the use of the SLUSH

PUPPIE® trademarks has inured to the benefit of Plaintiff, or that SPL has any rights whatsoever

with respect to the SLUSH PUPPIE® trademarks.

6.      ICEE admits that Slush Puppie Corporation ("SPC") was once an Ohio Corporation.  ICEE further admits that, from at least 1978 to approximately the beginning of 2001, SPC owned various SLUSH PUPPIE® trademarks used in connection with slush-type drinks and products and services associated with those drinks, including syrups and other "preparations for making slush-type beverages."  ICEE denies the remaining allegations in paragraph 6 of the Amended Complaint.

### A.      The 1978 Appointment.

7.      ICEE lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 7 of the Amended Complaint, and therefore denies them.

8.      ICEE lacks knowledge or information sufficient to form a belief about the truth of the averments of this paragraph and they are therefore denied.

9.      ICEE lacks knowledge or information sufficient to form a belief about the truth of the averments of this paragraph and they are therefore denied.

10.      ICEE lacks knowledge or information sufficient to form a belief about the truth of the averments of this paragraph and they are therefore denied.

11.      ICEE lacks knowledge or information sufficient to form a belief about the truth of the averments of this paragraph and they are therefore denied.

### B.      The 1996 Appointment.

12.      ICEE admits that SPC entered into the agreement with Able Foods, a copy of which is attached to the Amended Complaint as Exhibit B.  ICEE refers SPL to that document for the agreement's terms.  The remaining allegations of this paragraph are denied.  By way of further answer, ICEE properly terminated the 1996 Appointment on or about June 25, 2019.

13.     Defendant refers SPL to Exhibit B for the terms of the 1996 Appointment.  The remaining allegations of this paragraph are denied.  By way of further answer, ICEE properly terminated the 1996 Appointment on or about June 25, 2019.

14.     Defendant refers SPL to Exhibit B for the terms of the 1996 Appointment.  The remaining allegations of this paragraph are denied.  By way of further answer, ICEE properly terminated the 1996 Appointment on or about June 25, 2019.

15.     ICEE refers SPL to Exhibit B for the terms of the 1996 Appointment.  The remaining allegations of this paragraph are denied.  By way of further answer, ICEE properly terminated the 1996 Appointment on or about June 25, 2019.

16.     ICEE refers SPL to Exhibit B for the terms of the 1996 Appointment.  The remaining allegations of this paragraph are denied.  By way of further answer, ICEE properly terminated the 1996 Appointment on or about June 25, 2019.

17.     ICEE refers SPL to Exhibit B for the terms of the 1996 Appointment.  The remaining allegations of this paragraph are denied.   By way of further answer, ICEE properly terminated the 1996 Appointment on or about June 25, 2019.

18.     ICEE refers SPL to Exhibit B for the terms of the 1996 Appointment.  The remaining allegations of this paragraph are denied. By way of further answer, ICEE properly terminated the 1996 Appointment on or about June 25, 2019.

19.     It is admitted only that after 1996 but before 1999, Able Foods changed its name to Slush Puppie Limited, and that Slush Puppie Limited is a plaintiff and counterclaim defendant in this action.  It is admitted further that, until properly terminated by ICEE on or about June 25, 2019, SPL was a party to the 1996 Appointment.

**C.     The 1999 Agreement.**

20.     ICEE admits that Slush Puppie Corporation entered into an agreement with SPL, a copy of which is attached to the Amended Complaint as Exhibit C.  ICEE refers SPL to that document for the agreement's terms.  The remaining allegations of this paragraph are denied.  By way of further answer, ICEE properly terminated the 1999 Agreement on or about June 25, 2019.

21.     ICEE refers SPL to Exhibit C for the terms of the 1999 Appointment.  The remaining allegations of this paragraph are denied. By way of further answer, ICEE properly terminated the 1999 Agreement on or about June 25, 2019.

22.     ICEE refers SPL to Exhibit C for the terms of the 1999 Appointment.  The remaining allegations of this paragraph are denied. By way of further answer, ICEE properly terminated the 1999 Agreement on or about June 25, 2019.

23.     ICEE refers SPL to Exhibit C for the terms of the 1999 Appointment.  The remaining allegations of this paragraph are denied. By way of further answer, ICEE properly terminated the 1999 Agreement on or about June 25, 2019.

### D.     The [Purported] 2000 Appointment.

24.     Denied. It is specifically denied that a true and correct copy of any agreement has been attached to the complaint as Exhibit D.  By way of further answer, SPL's counsel has refused to produce any such document for inspection, and SPL has destroyed evidence relating to this document.  The document is a forgery.

25.     It is admitted that the document that SPL has attached to the Amended Complaint as Exhibit D contains the quoted language.  It is denied that Slush Puppie Corporation entered into any such agreement.  By way of further answer, the document is a forgery.

26.     Denied.

27.     Denied.

28.     Denied.

29.     Denied.

30.     Denied. .

31.     Denied.

32.     It is admitted that ICEE has accepted payments of 2.5%; it is denied that such payments were based on sales "in the 2000 Territory." By way of further answer, the Purported 2000 Appointment is a forgery. The remaining allegations of this paragraph are denied.

33.     Denied.

**E.      Compliance with the [Purported] 2000 Appointment.**

34.     ICEE admits that in or around January 2001, Dr. Pepper/Seven Up ("DPSU") purchased the SLUSH PUPPIE® trademarks and business from SPC. ICEE denies the remaining allegations in paragraph 34.

35.      ICEE admits that, following DPSU's acquisition of the SLUSH PUPPIE® trademarks and business, all trademarks relating to the SLUSH PUPPIE® business were assigned to DPSU. ICEE further admits that a true and correct copy of the SPC Trademark Assignment Agreement is attached to the Amended Complaint at Exhibit F. To the extent there are any other factual allegations in paragraph 35 of the Amended Complaint, ICEE denies them.

36.     Denied.

37.     Denied.

38.     ICEE admits that in or around 2006, ICEE purchased from DPSU the SLUSH PUPPIE® trademarks and business. ICEE denies the remaining allegations in paragraph 38.

39.     ICEE admits that, following its acquisition of the SLUSH PUPPIE® trademarks and business, all trademarks relating to the SLUSH PUPPIE® business were assigned to ICEE. ICEE further admits that a true and correct copy of the DPSU Trademark Assignment Agreement

is attached to the Amended Complaint as Exhibit H.  To the extent there are any other factual allegations in paragraph 39 of the Amended Complaint, ICEE denies them.

40.     It is admitted that ICEE has accepted payments of 2.5%; it is denied that such payments were based on sales "in the 2000 Territory as required thereunder"; it is further denied that ICEE's acceptance of payments of 2.5% was pursuant to the Purported 2000 Appointment. By way of further answer, the Purported 2000 Appointment is a forgery.  The remaining allegations of this paragraph are denied.

41.     It is admitted that ICEE has accepted payments of 2.5%; it is denied that such payments by SPL were "consistent with its obligations under the [purported] 2000 Appointment"; it is further denied that ICEE's acceptance of payments of 2.5% was pursuant to the Purported 2000 Appointment.  By way of further answer, the Purported 2000 Appointment is a forgery.  The remaining allegations of this paragraph are denied.

**F.     Defendant ICEE's Breach of the [Purported] 2000 Appointment.**

42.     Denied.

43.     Denied.

44.     Denied.

45.     Denied.

46.     Denied.

47.     ICEE lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 47 of the Amended Complaint, and therefore denies them.

48.     Denied.

49.     Denied.

50.     Denied.

51.     Denied.

52.     Denied.

53.     Denied.

54.     Denied.

55.     ICEE admits that it received a copy of the letter dated August 17, 2018 that is attached as Exhibit K to the Amended Complaint.  ICEE denies any remaining factual allegations in paragraph 55 of the Amended Complaint.

56.     Denied.

57.     ICEE admits that it terminated SPL's rights under the 1996 Appointment and 1999 Agreement, and that ICEE, through its counsel, sent the letter attached as Exhibit J to the Amended Complaint to notify SPL of the termination.  ICEE denies any remaining factual allegations in paragraph 57 of the Amended Complaint.

58.     ICEE admits that it received a copy of the letter dated August 17, 2018 that is attached as Exhibit M to the Amended Complaint.  ICEE denies any remaining factual allegations in paragraph 58 of the Amended Complaint.

## FIRST CLAIM FOR RELIEF
(Breach of Contract – Declaratory Judgment)

59.     ICEE incorporates by reference its responses to paragraphs 1-58 of the Amended Complaint.

60.     ICEE admits that it is not contending that the Court lacks subject matter jurisdiction over this lawsuit.  ICEE admits that an actual and substantial controversy exists between ICEE and SPL and that speedy relief is necessary to preserve ICEE's rights in the

SLUSH PUPPIE ® trademarks because of SPL's illegal use of those marks in contravention of

ICEE's trademark rights. ICEE denies the remaining allegations in paragraph 60 of the Amended Complaint.

61.     Denied.

62.     Denied.

63.     ICEE admits that it accepted the payment of royalties by SPL of 2.5% since 2006, but denies that such acceptance was pursuant to the Purported 2000 Appointment. ICEE admits that it has informed SPL that the document SPL calls the "2000 Appointment" is a forgery and does not govern the parties' relationship. ICEE admits further that it terminated the 1996 and 1999 Agreements on or about June 25, 2019. ICEE further admits that it is authorized to allow use of the SLUSH PUPPIE® trademarks by persons and entities other than SPL. The remaining allegations of this paragraph are denied.

64.     ICEE admits that SPL has improperly demanded that SPL cease and desist from allowing use of SLUSH PUPPIE® trademarks in certain territories, but denies that SPL has any right to make such a demand. To the contrary, the purported 2000 Agreement is a forgery, the 1996 and 1999 Agreements have been properly terminated, and SPL's continued use of the SLUSH PUPPIE® trademarks is illegal and actionable. The remaining allegations of this paragraph are denied.

65.     Denied.

## SECOND CLAIM FOR RELIEF
(Injunctive Relief)

66.     ICEE incorporates by reference its responses to paragraphs 1-65 of the Amended Complaint.

67.     Denied.

68.     Denied.

69. Denied.

70. Denied.

71. Denied.

72. Denied.

73. Denied.

**THIRD CLAIM FOR RELIEF**
(Violation of Ohio's Deceptive Practices Act, R.C. 4165.01, *et seq.*)

74. ICEE incorporates by reference its responses to paragraphs 1-73 of the Amended Complaint.

75. Denied.

76. Denied.

77. Denied.

78. Denied.

79. Denied.

80. Denied.

81. Denied.

**FOURTH CLAIM FOR RELIEF**
(Breach of Contract – Damages)

82. ICEE incorporates by reference its responses to paragraphs 1-81 of the Amended Complaint.

83. Denied.

84. Denied.

85. Denied.

86. Denied.

87.     Denied.

88.     Denied.

89.     Denied.

## FIFTH CLAIM FOR RELIEF ("In The Alternative")
(Breach of Contract – Declaratory Judgment)

90.     ICEE incorporates by reference its responses to paragraphs 1-89 of the Amended

Complaint.

91.     This paragraph describes SPL's pleading as "in the alternative" and does not

contain any factual allegations to which a response is required under the Federal Rules of Civil

Procedure.  To the extent paragraph 91 contains any factual allegations, ICEE denies them.

92.      ICEE admits that in or around 2006, ICEE purchased from DPSU the SLUSH

PUPPIE® trademarks and business, and inherited DPSU's rights and obligations under the 1996

Appointment.  ICEE denies the remaining allegations in paragraph 92.

93.      ICEE admits that an actual and substantial controversy exists between SPL and

ICEE as to their respective legal duties, the controversy is justiciable in character, and speedy

relief is necessary to preserve the rights of the parties because SPL has continued illegally to

manufacture syrups and to license the SLUSH PUPPIE trademarks notwithstanding ICEE's

termination of the 1996 and 1999 Agreements.  The remaining allegations of this paragraph are

denied.

94.      Denied.  By way of further answer, ICEE properly terminated the 1996

Appointment on or around June 25, 2019.  Defendant refers plaintiff to Exhibit B for the terms of

the now-terminated 1996 Appointment.

95.      Denied.

96.     This paragraph describes SPL's interpretation of the parties' legal positions in this proceeding, and therefore does not contain any factual allegations to which a response is required under the Federal Rules of Civil Procedure.  To the extent paragraph 96 contains any factual allegations, ICEE denies them.

97.     Denied.

## SIXTH CLAIM FOR RELIEF ("In The Alternative")
(Breach of Contract – Declaratory Judgment)

98.     ICEE incorporates by reference its responses to paragraphs 1-97 of the Amended Complaint.

99.      This paragraph describes SPL's pleading as "in the alternative" and does not contain any factual allegations to which a response is required under the Federal Rules of Civil Procedure.  To the extent paragraph 99 contains any factual allegations, ICEE denies them.

100.     ICEE admits that in or around 2006, ICEE purchased from DPSU the SLUSH PUPPIE® trademarks and business, and inherited DPSU's rights and obligations under the 1999 Agreement.  ICEE denies the remaining allegations in paragraph 100.

101.     ICEE admits that an actual and substantial controversy exists between SPL and ICEE as to their respective legal duties, the controversy is justiciable in character, and speedy relief is necessary to preserve the rights of the parties because of SPL's continued illegal use of the SLUSH PUPPIE® trademarks.  The remaining allegations of this paragraph are denied.

102.     Denied.  By way of further answer, ICEE properly terminated the 1999 Agreement on or around June 25, 2019.  Defendant refers plaintiff to Exhibit C for the terms of the terminated 1999 Agreement.

103.     Denied.

104.    This paragraph describes SPL's interpretation of the parties' legal positions in this proceeding, and therefore does not contain any factual allegations to which a response is required under the Federal Rules of Civil Procedure.  To the extent paragraph 104 contains any factual allegations, ICEE denies them.

105.    Denied.

## SEVENTH CLAIM FOR RELIEF ("In The Alternative")
### (Injunctive Relief)

106.    ICEE incorporates by reference its responses to paragraphs 1-105 of the Amended Complaint.

107.    This paragraph describes SPL's pleading as "in the alternative" and does not contain any factual allegations to which a response is required under the Federal Rules of Civil Procedure.  To the extent paragraph 107 contains any factual allegations, ICEE denies them.

108.    Denied.

109.    Denied.

110.    Denied.

111.    Denied.

112.    Denied.

113.    Denied.

114.    Denied.

## EIGHTH CLAIM FOR RELIEF ("In The Alternative")
### (Injunctive Relief)

115.    ICEE incorporates by reference its responses to paragraphs 1-114 of the Amended Complaint.

116.    This paragraph describes SPL's pleading as "in the alternative" and does not contain any factual allegations to which a response is required under the Federal Rules of Civil Procedure.  To the extent paragraph 116 contains any factual allegations, ICEE denies them.

117.    Denied.

118.    Denied.

119.    Denied.

120.    Denied.

121.    Denied.

122.    Denied.

123.    Denied.

### NINTH CLAIM FOR RELIEF ("In The Alternative")
(Violation of Ohio's Deceptive Practices Act, R.C. 4165.01, *et seq.*)

124.    ICEE incorporates by reference its responses to paragraphs 1-123 of the Amended Complaint.

125.    This paragraph describes SPL's pleading as "in the alternative" and does not contain any factual allegations to which a response is required under the Federal Rules of Civil Procedure.  To the extent paragraph 125 contains any factual allegations, ICEE denies them.

126.    Denied.

127.    Denied.

128.    Denied.

129.    Denied.

130.    Denied.

131.    Denied.

132.    Denied.

## TENTH CLAIM FOR RELIEF ("In The Alternative")
(Breach of Contract - Damages)

133.     ICEE incorporates by reference its responses to paragraphs 1-132 of the Amended Complaint.

134.     This paragraph describes SPL's pleading as "in the alternative" and does not contain any factual allegations to which a response is required under the Federal Rules of Civil Procedure.  To the extent paragraph 134 contains any factual allegations, ICEE denies them.

135.     Denied.

136.     Denied.

137.     Denied.

138.     Denied.

139.     Denied.

140.     Denied.

141.     Denied.

## ELEVENTH CLAIM FOR RELIEF ("In The Alternative")
(Breach of Contract - Damages)

142.     ICEE incorporates by reference its responses to paragraphs 1-141 of the Amended Complaint.

143.     This paragraph describes SPL's pleading as "in the alternative" and does not contain any factual allegations to which a response is required under the Federal Rules of Civil Procedure.  To the extent paragraph 143 contains any factual allegations, ICEE denies them.

144.     Denied.

145.     Denied.

146.     Denied.

16

147.    Denied.

148.    Denied.

149.    Denied.

150.    Denied.

## <u>TWELFTH CLAIM FOR RELIEF ("In The Alternative")</u>
### (Declaratory Relief)

151.    ICEE incorporates by reference its responses to paragraphs 1-150 of the Amended

Complaint.

152.    This paragraph describes SPL's pleading as "in the alternative" and does not

contain any factual allegations to which a response is required under the Federal Rules of Civil

Procedure.  To the extent paragraph 152 contains any factual allegations, ICEE denies them.

153.    Denied.

154.    Admitted.

155.    ICEE admits that it disputes the authenticity of the purported 2000 Appointment,

which is a forgery.  ICEE further admits that it has properly terminated the 1996 Appointment

and the 1999 Agreement on or around June 25, 2019.  ICEE denies the remaining allegations of

this paragraph.

156.    Denied.

157.    Denied.

158.    Denied.


## PRAYER FOR RELIEF

ICEE denies that Plaintiff is entitled to any of the relief it seeks.  ICEE requests a

judgment dismissing the claims in Plaintiff's Amended Complaint with prejudice, its costs and

reasonable attorney's fees, sanctions against SPL and its counsel pursuant to 28 U.S.C. § 1927, along with any other relief the Court deems just and proper.

## JURY DEMAND

ICEE demands a jury trial on all issues so triable.

## AFFIRMATIVE DEFENSES

159.    The Amended Complaint fails to state a claim upon which relief can be granted.

160.    Plaintiff's claims are barred by estoppel and/or waiver.

161.    Plaintiff's claims are barred by its fraud.

162.    Plaintiff's claims are barred by its spoliation of evidence.

163.    Plaintiff's claims are barred by its and its counsel's litigation misconduct.

164.    Plaintiff is not entitled to injunctive or other equitable relief on account of laches or other delay in seeking relief.

165.    Plaintiff is not entitled to injunctive or other equitable relief on account of its unclean hands, spoliation of evidence, and litigation misconduct.

## DEFENDANT THE ICEE COMPANY'S
## AMENDED COUNTERCLAIMS TO THE AMENDED COMPLAINT

For its counterclaims against Slush Puppie Limited ("SPL"), The ICEE Company ("ICEE") pleads as follows:

## PARTIES AND JURISDICTION

1.    On information and belief, counterclaim defendant Slush Puppie Limited is a company organized under the laws of the United Kingdom, with its principal place of business at Coronation Road, Cressex Business Park, High Wycombe, Buckinghamshire, HP12 3TA.  On information and belief, Slush Puppie Limited has changed its name to Frozen Brothers Limited.

2.      Counterclaim Plaintiff The ICEE Company is a corporation organized under the laws of the State of Delaware, with its principal place of business at 265 Mason Road La Vergne, TN 37086.

3.      This Court has subject matter jurisdiction over these counterclaims based on diversity of citizenship 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1338(a) and (b) (trademarks and unfair competition), 15 U.S.C. § 1121 (Lanham Act), 28 U.S.C. § 1332(a)(2) (diversity of citizenship), and 28 U.S.C. § 1367 (supplemental jurisdiction).

4.      This Court has personal jurisdiction over SPL because SPL has consented to personal jurisdiction by filing its Complaint and Amended Complaint, and these counterclaims arise from the same nucleus of operative facts.

## FACTS

## THE SLUSH PUPPIE® BUSINESS AND MARKS

5.      The SLUSH PUPPIE® frozen drink business was started by Willard ("Will") Radcliff, who founded the Slush Puppie Corporation in Cincinnati, Ohio and built it into a successful international business.

6.      From around 1978 until early 2001, Slush Puppie Corporation owned the trademarks for SLUSH PUPPIE® along with various logos and designs used in connection with Slush Puppie Corporation's goods and services (collectively, the "SLUSH PUPPIE® Marks").

7.      The SLUSH PUPPIE® Marks and various logos and designs are registered trademarks in the United States, the United Kingdom, and the European Union, among other places.  Among other marks, the SLUSH PUPPIE® Marks include:

   a.  U.S. Trademark Registration No. 1,665,188 covering "nonalcoholic slush type beverages, syrups, and preparations for making slush type beverages,"

b.  U.S. Trademark Registration No. 3,132,350 covering "clothing, namely tops, t-shirts, pants and loungewear, headwear, jackets and footwear."

8.      Since 2006, ICEE has been the owner of the Slush Puppie business and of the SLUSH PUPPIE® Marks, which it bought from Dr. Pepper/Seven Up, Inc. ("DPSU") pursuant to an asset purchase agreement.  DPSU, in turn, had purchased the business from Slush Puppie Corporation in a 2001 asset purchase agreement.

9.      By virtue of its purchase of certain SLUSH PUPPIE® assets from DPSU, ICEE assumed two contracts with SPL relating to SPL's rights to certain limited use of certain SLUSH PUPPIE® Marks: a 1996 Appointment of Syrup Manufacturer that had been entered into by Slush Puppie Corporation and Able Foods, Ltd. ("the 1996 Manufacturing Appointment") and a 1999 "International Independent Area Distributor License Agreement" with SPL (the "1999 Distributor Agreement").

## THE 1996 MANUFACTURING APPOINTMENT

10.     The 1996 Manufacturing Appointment was originally entered into on or about January 1, 1996, by Slush Puppie Corporation and SPL's predecessor, Able Foods, Ltd. A copy of the 1996 Manufacturing Appointment is attached hereto as Exhibit A.

11.     The 1996 Manufacturing Appointment provided SPL with a limited license to manufacture SLUSH PUPPIE syrup and neutral base for use with SLUSH PUPPIE machines and products in certain European countries and the United Kingdom.

12.     Section 3A of the 1996 Manufacturing Appointment defines the "royalty" SPL must pay as "an amount proportionately equal to 5% of the cost of SLUSH PUPPIE's products in pound sterling prices to distributors in the U.K. for the previous calendar year."

13.     The 1996 Manufacturing Appointment provides in paragraph 8.D that Slush Puppie Corporation may cancel and terminate the appointment by written notice to SPL for,

among other reasons, "[t]he filing of any legal action other than for collection on account against SLUSH PUPPIE, its representatives, distributors, customers, manufacturers, or suppliers . . . ."

14.     The 1996 Manufacturing Appointment provides that, "[u]pon any termination of this Agreement, [SPL] shall make no claim of any kind because of such termination, and [SPL] agrees to waive, and does hereby waive the right to any compensation which may be allowable or imposed for such termination as liquidated damages or other such payments, if any. The termination of this agreement, as herein provided, shall not affect [SPL's] obligation to pay any amount accruing to SLUSH PUPPIE or any of its affiliates under the provisions of the agreement while it was in effect."

15.     The 1996 Manufacturing Appointment provides that, upon termination, "Manufacturer shall immediately cease using said SLUSH PUPPIE trademarks or designs, . . . or other marks used in connection with SLUSH PUPPIE, in any manner whatsoever . . . ."

16.     The 1996 Manufacturing Appointment provides that, "[u]pon any termination, Manufacturer shall immediately cease and desist from further use of any SLUSH PUPPIE trademarks, names, logos or references and any formerly approved business name of Manufacturer shall be immediately changed to delete any reference to SLUSH PUPPIE products."

17.     Will ~~Radliff~~Radcliff executed the 1996 Manufacturing Appointment on behalf of the Slush Puppie Corporation on February 5, 1996.

18.     Diane Menzer, a vice president of the Slush Puppie Corporation, witnessed Will Radcliff's execution of the 1996 Manufacturing Appointment.

## THE 1999 DISTRIBUTOR AGREEMENT

19.     On or about December 23, 1999, Slush Puppie Corporation entered into the 1999 Distributor Agreement.  A copy of the 1999 Distributor Agreement is attached hereto as Exhibit B.

20.     The 1999 Distributor Agreement became effective on January 1, 2000.

21.     The 1999 Distributor Agreement provided SPL with a limited license to distribute certain SLUSH PUPPIE® Products as therein defined within the defined territory of the United Kingdom and Ireland.

22.     Paragraph VIII.F. of the 1999 Distributor Agreement provides, *inter alia*, that "COMPANY may, for good cause, IMMEDIATELY terminate this grant of Independent Area Distributor License upon written notice to DISTRIBUTOR, without regard to the above stated cure provisions, where DISTRIBUTOR has committed or COMPANY reasonably anticipates that DISTRIBUTOR is about to commit any of the following acts: . . .  4.  The filing by DISTRIBUTOR of any claim or legal action against COMPANY, its representatives, DISTRIBUTORS, manufacturers or suppliers . . . ."

23.     Paragraph III.B of the 1999 Distributor Agreement provides, *inter alia*, that, "[u]pon termination of this Agreement, DISTRIBUTOR shall return to COMPANY, or effectively destroy, all literature, signs, advertising material, promotional matter, and other materials identifying the former DISTRIBUTOR with COMPANY or its PRODUCTS and shall immediately cease to identify itself with COMPANY or use the MARKS or any confusing similarity thereof, and shall discontinue or change it's [sic] company name if DISTRIBUTOR employed any such company name or product mark as a part of DISTRIBUTOR'S name, logo, or business.  It is agreed that after expiration (without renewal) or termination of this agreement, any use of the MARKS by DISTRIBUTOR will result in irreparable injury to COMPANY and

DISTRIBUTOR hereby consents to a court order enjoining DISTRIBUTOR from using the MARKS in any way, notwithstanding any other enforcement remedy."

24. Paragraph VI.H of the 1999 Distributor Agreement provides, *inter alia*, that "[a]ny breach of this DISTRIBUTOR Agreement, or termination . . . shall, of necessity, require Distributor to immediately cease and desist from the further use of the Slush Puppie name and logo, and return any and all PRODUCTS, materials, signs, emblems, and the like, bearing the Slush Puppie name and logo, to COMPANY in Cincinnati, Ohio, freight prepaid."

25. The 1999 Distributor Agreement defines "COMPANY" as Slush Puppie Corporation and DISTRIBUTOR as SPL.

26. The 1999 Distributor Agreement was executed on behalf of the Slush Puppie Corporation by Diane Menzer, a vice president of the company. Tara Behanan witnessed Menzer's execution of the agreement.

### DR. PEPPER/SEVEN UP BUYS THE SLUSH PUPPIE® BUSINESS IN 2001 AND CONTINUES OPERATING UNDER THE 1996 AND 1999 AGREEMENTS

27. In or around January 2001, Dr. Pepper/Seven Up, Inc. ("DPSU") purchased the SLUSH PUPPIE® Marks and related business from Slush Puppie Corporation pursuant to an asset purchase agreement.

28. SPL alleges in this litigation that Slush Puppie Corporation and SPL entered into an "Appointment of Trade Mark Licence" on or about August 8, 2000 and that this purported agreement superseded the 1996 and 1999 agreements. SPL further alleges that a "true and correct" copy of the original 2000 "Appointment of Trade Mark Licence" is attached to SPL's amended complaint at Exhibit D.

29.     The "2000 Appointment of Trade Mark Licence" ("Purported 2000 Agreement") referred to in SPL's Amended Complaint, however, was never provided to DPSU as part of its acquisition of certain SLUSH PUPPIE® assets.

30.     Moreover, SPL never provided DPSU with a copy of the Purported 2000 Agreement at any time before or during DPSU's ownership of the SLUSH PUPPIE® business.

31.     DPSU did, however, receive copies of the 1996 Manufacturing Appointment and of the 1999 Distributor Agreement in connection with its purchase of the SLUSH PUPPIE® assets.

32.     DPSU operated pursuant to the 1996 Manufacturing Appointment and the 1999 Distributor Agreement during its ownership of the Slush Puppie business.

33.     In approximately late 2000 or early 2001, SPL and Slush Puppie Corporation agreed to lower the royalty rate to be paid under the 1996 Manufacturing Appointment to 2.5%.

34.     On February 7, 2001, Diane Menzer, a former Slush Puppie Corporation employee who worked for DPSU after its acquisition of the SLUSH PUPPIE® business, informed Kim Yee of DPSU by fax that the 1996 "manufacturing license" needed "to be adjusted to reflect the 2 ½% commission" that had been lowered by agreement from its original 5%. The fax references paragraph "(3A)," which is the section of the 1996 Manufacturing Appointment that defines the royalty payable by SPL.

35.     Menzer believed that the 1996 Manufacturing Appointment was still in effect as of February 7, 2001.

36.     Beginning at some point in 2000 or early 2001, SPL compensated Slush Puppie Corporation and its successors with royalty payments of only 2.5% of the total cost of syrups charged and sold to distributors after appropriate discounts.

24

## ICEE BUYS THE SLUSH PUPPIE® BUSINESS AND CONTINUES OPERATING UNDER THE 1996 AND 1999 AGREEMENTS

37.     In May of 2006, ICEE and Dr. Pepper/Seven Up, Inc. entered into an asset

purchase agreement relating to the SLUSH PUPPIE® business and trademarks.

38.     As a result of the asset purchase agreement with DPSU, ICEE became the owner

of the SLUSH PUPPIE® business and trademarks throughout the world.

39.     By Trademark Assignment dated May 26, 2006, ICEE acquired all right, title, and

interest of Dr. Pepper/Seven Up, Inc. with respect to the SLUSH PUPPIE® Marks in various

geographic territories throughout the world, including, without limitation, in the United States

and, for purposes of this action, specifically in the territories listed in the 1996 Manufacturing

Appointment and the 1999 Distributor Agreement.  A copy of the Trademark Assignment is

attached hereto as Exhibit C.

40.     ICEE never received a copy of the Purported 2000 Agreement as part of its

acquisition of the SLUSH PUPPIE® business from DPSU.

41.     The Purported 2000 Agreement was not listed or referenced on any of the

disclosure schedules or anywhere else in the asset purchase agreement between DPSU and ICEE.

42.     ICEE did receive copies of the 1996 Manufacturing Appointment and 1999

Distributor Agreement from DPSU in connection with ICEE's purchase of the SLUSH

PUPPIE® assets.

43.     ICEE operated pursuant to the 1996 Manufacturing Appointment and the 1999

Distributor Agreement in its relationship with SPL following the acquisition of the SLUSH

PUPPIE® business from DPSU.

44.     ICEE understood that the 1996 Manufacturing Appointment and the 1999

Distributor Agreement had not been superseded by any more recent, written agreement.

45.     ICEE accepted 2.5% as a royalty under the 1996 Appointment on the basis of the modification between the parties of the royalty rate from 5% to 2.5%, as reflected in Ms. Menzer's February 7, 2001 fax to Ms. Yee.

### SPL REPEATEDLY CONCEDES THAT THE OPERATIVE LICENSING AGREEMENTS BETWEEN THE PARTIES ARE THE 1996 MANUFACTURING AGREEMENT AND THE 1999 DISTRIBUTOR AGREEMENT

46.     Between 2010 and 2018, SPL and ICEE engaged in discussions about the scope of SPL's rights to use the SLUSH PUPPIE trademarks.

47.     In the course of the discussions of ICEE and SPL between 2010 and 2017, SPL repeatedly affirmed that the 1996 Manufacturing Appointment and the 1999 Distributor Agreement were in effect between SPL and ICEE.

48.     In the course of the discussions between ICEE and SPL between 2010 and 2017, SPL affirmed that there was no written agreement other than the 1996 and 1999 agreements that governed SPL's and ICEE's relationship.

49.     For example, on August 8, 2017, SPL's United Kingdom counsel, Josh Conroy of Weightmans LLP, sent a letter to ICEE's United Kingdom counsel.  In that letter, Mr. Conroy referred to the 1996 Manufacturing Appointment and the 1999 Distributor Agreement together as the "Existing Agreements" and wrote that "[I]t is clear that the Existing Agreements form the basis of the relationship between Slush Puppie and ICEE."  A copy of Attorney Conroy's August 8, 2017 letter is attached hereto as Exh. D.

50.     Between 2010 and February 28, 2018, SPL always referred to the 1996 Manufacturing Appointment and 1999 Distributor Agreements as the operative written agreements between the parties.

**THE PURPORTED 2000 AGREEMENT SUSPICIOUSLY TURNS UP FOR THE FIRST
TIME IN FEBRUARY 2018 AND SPL DESTROYS EVIDENCE CONCERNING IT**

51.     Until February 28, 2018, SPL never mentioned the Purported 2000 Agreement
with ICEE.

52.     Until February 28, 2018, SPL never provided ICEE with a copy of the Purported
2000 Agreement.

53.     On or about February 28, 2018, Mark Peters of SPL sent a copy of the Purported
2000 Agreement for the first time to ICEE.  A copy of Mr. Peters' February 28, 2018 email is
attached hereto as Exhibit E.

54.     SPL destroyed one or more originals of the Purported 2000 Agreement and claims
to not have an original or to know the whereabouts of the original.

55.     On information and belief, SPL willfully destroyed one or more originals of the
Purported 2000 Agreement with the intent of impeding discovery that the Purported 2000
Agreement is a forgery and a fraudulent document.

56.     The Purported 2000 Agreement was not signed by Will Radcliff in 2000.

57.     The Purported 2000 Agreement is a forgery.

**SPL FILES THIS FRIVOLOUS LAWSUIT AND ICEE ACCORDINGLY TERMINATES
THE 1996 AND 1999 AGREEMENTS PURSUANT TO THEIR UNAMBIGUOUS
PROVISIONS**

58.     On February 12, 2019, SPL filed a complaint initiating this action and asserting
various claims against ICEE in the Court of Common Pleas of Hamilton County, Ohio.

59.     The claims that SPL asserted in the initial complaint in this action are not for
collection on account.

60.     ICEE removed SPL's lawsuit to this Court on March 8, 2019.

61.     As noted above, under the 1996 Manufacturing Appointment, ICEE is entitled to terminate the appointment based on "the filing or any legal action other than for collection on account against SLUSH PUPPIE, its representatives, distributors, customers, manufacturers, or suppliers."

62.     As further noted above, under the 1999 Distributor Agreement, ICEE is entitled to terminate the agreement based on "the filing by [SPL] of any claim or legal action against COMPANY, its representatives, DISTRIBUTORS, manufacturers, or suppliers."

63.     On June 25, 2019, ICEE sent notice to SPL that it was immediately terminating SPL's rights under the 1996 Manufacturing Appointment and 1999 Distributor Agreement based on SPL's filing of this litigation against ICEE. A copy of that notice is attached hereto as Exhibit F.

64.     ICEE's terminations of the 1996 Manufacturing Appointment and 1999 Distributor Agreement were proper under the terms of those agreements.

65.     SPL received ICEE's notice of termination no later than the end of June 2019.

66.     SPL has acknowledged receipt of the June 25, 2019 notice of termination of the 1996 and 1999 agreements.

67.     As of the time that SPL received ICEE's notice of termination, SPL had no right to use, license, or sublicense any of the SLUSH PUPPIE® Marks.

### SPL FAILS AND REFUSES TO COMPLY WITH THE TERMINATION PROVISIONS OF THE 1996 AND 1999 AGREEMENTS

68.     Notwithstanding receiving notice of termination, SPL has failed and refused to comply with its various termination-related obligations under the 1996 Manufacturing Appointment and 1999 Distributor Agreement, including, but not limited to, failing to cease using the SLUSH PUPPIE® Marks, continuing to hold itself out as a licensee of the SLUSH

PUPPIE® Marks in its business and on its website, and maintaining its relationships with its current licensees for slush beverages and other products, among other breaches and infringements.

69.     SPL has even claimed without any basis that ICEE's termination of the 1996 Appointment and 1999 Agreement is "a nullity" based on its fraudulent claim that the Purported 2000 Agreement "supersedes" the 1996 and 1999 agreements.  June 28, 2019 letter from M. Gurbach to D. Wolfsohn, Exh. G.

70.     Yet, at the same time, SPL claims in its Amended Complaint that the 1996 Manufacturing Appointment and 1999 Distributorship Agreement are still in effect and that the Purported 2000 Agreement did ***not*** supersede the 1996 and 1999 agreements.

71.     SPL's argument that, on the one hand, the Purported 2000 Agreement superseded the 1996 and 1999 agreements but, on the other hand, the 1996 and 1999 agreements are somehow still in effect is nonsensical and has been made in bad faith.

## COUNT ONE
### (Declaratory Judgment)

72.     ICEE incorporates and re-alleges the foregoing paragraphs of these Counterclaims as though fully set forth herein.

73.     SPL's Amended Complaint in this action asserts rights under what it characterizes as "the 2000 Appointment" attached as Exhibit D to the Amended Complaint.

74.     Slush Puppie Corporation never agreed to the Purported 2000 Agreement and did not sign it in 2000.

75.     The document attached to SPL's Amended Complaint as Exhibit D is a forgery, and it is not a valid or enforceable agreement.

76.     Even if the Purported 2000 Agreement were not a forgery, it would not be binding or enforceable against ICEE at least for the reasons that ICEE never assumed any obligations under it, that SPL did not inform ICEE about the existence of this document until February 2018, and that SPL destroyed evidence about the circumstances surrounding this document and otherwise concealed evidence and information about this document from ICEE both before and during this litigation.

77.     There is a real and justiciable controversy with respect to the validity and enforceability of what SPL characterizes in its Amended Complaint as "the 2000 Appointment."

78.     The document attached to SPL's Amended Complaint as Exhibit D is void, unenforceable, invalid, and/or otherwise without effect at least with respect to ICEE.

## COUNT TWO
### (Breach of Contract – 1996 Manufacturing Appointment)

79.     ICEE incorporates and re-alleges the foregoing paragraphs of these Counterclaims as though fully set forth herein.

80.     ICEE is the rightful owner of all rights previously held by Slush Puppie Corporation under the 1996 Manufacturing Appointment.

81.     The 1996 Manufacturing Appointment provides that SPL "shall not manufacture, bottle, distribute, or sell director or indirectly, any other product for use in Slush machines not promoted by SLUSH PUPPIE."

82. On information and belief, SPL breached this obligation by manufacturing and distributing a competing product for use in a slush machine called "Tango Ice Blast," as shown on its website at https://www.lovetangoiceblast.com/.  Indeed, SPL's website refers to "Tango Ice Blast" as a "Sister Brand" of SLUSH PUPPIE®.  It is not.

82. ~~83.~~ The 1996 Manufacturing Appointment provides in paragraph 8.D that Slush Puppie Corporation may cancel and terminate the appointment by written notice to SPL for, among other reasons, "[t]he filing of any legal action other than for collection on account against SLUSH PUPPIE, its representatives, distributors, customers, manufacturers, or suppliers . . . ."

83. ~~84.~~ As alleged above, ICEE properly terminated the 1996 Manufacturing Appointment on June 25, 2019, and SPL has acknowledged receipt of that notice.

84. ~~85.~~ The 1996 Manufacturing Appointment provides that, "[u]pon any termination of this Agreement, [SPL] shall make no claim of any kind because of such termination, and [SPL] agrees to waive, and does hereby waive the right to any compensation which may be allowable or imposed for such termination as liquidated damages or other such payments, if any. The termination of this agreement, as herein provided, shall not affect [SPL's] obligation to pay any amount accruing to SLUSH PUPPIE or any of its affiliates under the provisions of the agreement while it was in effect."

85. ~~86.~~ SPL breached that obligation when it filed its Amended Complaint alleging claims based on ICEE's termination of the 1996 Manufacturing Appointment and continued to litigate such claims.

86. ~~87.~~ The 1996 Manufacturing Appointment provides that, upon termination, "Manufacturer shall immediately cease using said SLUSH PUPPIE trademarks or designs, . . . or other marks used in connection with SLUSH PUPPIE, in any manner whatsoever . . . ."

87. ~~88.~~ The 1996 Manufacturing Appointment provides that, "[u]pon any termination, Manufacturer shall immediately cease and desist from further use of any SLUSH PUPPIE trademarks, names, logos or references and any formerly approved business name of

Manufacturer shall be immediately changed to delete any reference to SLUSH PUPPIE products."

88. 89. SPL has breached its express obligation under the 1996 Manufacturing Appointment to immediately cease using SLUSH PUPPIE® trademarks upon termination.

89. 90. SPL has breached its express obligation under the 1996 Manufacturing Appointment to immediately change its name to delete any reference to SLUSH PUPPIE® products.

90. 91. SPL's breaches were made in bad faith.  SPL was notified of the termination of the 1996 Manufacturing Appointment, acknowledged receipt of that notice, yet it claimed that it could ignore the notice because the Purported 2000 Agreement supposedly superseded the 1996 Manufacturing Appointment.  Yet, at the same time, SPL is arguing that the Purported 2000 Agreement did *not* supersede the 1996 Manufacturing Appointment.

91. 92. SPL's breaches have caused damages to ICEE, including loss of royalty revenue, attorney's fees and costs incurred in defending SPL's claims in this litigation, and lost royalty revenue based on the volume of Tango Ice Blast sold by SPL in breach of its obligations under the 1996 Manufacturing Appointment, and lost licensing opportunities.

92. 93. Further, SPL's breaches, and its continued sales beyond the termination of the 1996 Appointment, have caused and will cause ICEE irreparable harm that cannot be remedied by money damages, and therefore SPL's conduct should be enjoined.

## COUNT THREE
### (Breach of Contract – 1999 Distributor Agreement)

93. 94. ICEE incorporates and re-alleges the foregoing paragraphs of these Counterclaims as though fully set forth herein.

94. 95. ICEE is the rightful owner of all rights of Slush Puppie Corporation under the 1999 Distributor Agreement.

95. 96. The 1999 Distributor Agreement granted SPL a limited right to distribute "PRODUCTS" defined as "Slush Puppie freezers, neutral base, flavors, cups, other related items, and other products which may be specifically approved in writing from time to time as meeting COMPANY's marketing plans and quality standards."

96. 97. SPL breached this obligation by distributing, or granting licenses to distribute, products that were not within the limited scope of the definition of "PRODUCTS" in the 1999 Distributor Agreement. SPL knew of its limited rights under the 1999 Distributor Agreement, and violated them purposely and repeatedly by selling or licensing products that are not encompassed by those agreements, and/or selling outside the territory covered by those agreements.

97. 98. For example, upon information and belief, SPL distributed, or granted licenses to distribute apparel, spray candy, and ice pops, none of which are "PRODUCTS" as defined by the 1999 Distributor Agreement.

98. 99. SPL also claims it has "been in discussions with Tesco about selling its own SLUSH PUPPIE products for resale." Such products are/would be outside the scope of the definition of PRODUCTS in the 1999 Distributor Agreement.

99. 100. Accordingly, SPL has breached the 1999 Distributor Agreement.

100. 101. On various occasions, ICEE has informed SPL that its licensees' sales are outside the scope of the 1999 Distributor Agreement and therefore illegal.

101. 102. For example, on May 21, 2019, ICEE, through its counsel, informed SPL's UK counsel that SPL licensees' sales of various products were unauthorized and illegal. May

33

21, 2019 Letter from D. Wolfsohn to J. Conroy, Esq., Exhibit H. ICEE insisted that SPL cease

and desist from engaging in such licensing and sublicensing activities, and also demanded that

SPL provide ICEE with information about its licensing activities.

102. ~~103.~~ SPL ignored ICEE's cease and desist letter.  It has failed and refused to cease

its illegal licensing activities, and failed and refused to provide ICEE with the requested

information.

103. ~~104.~~ SPL's licensing activities constitute willful violations of the 1999 Distributor

Agreement.

104. ~~105.~~ The terms of the 1999 Distributor Agreement also limited SPL's distribution

rights to the United Kingdom and Ireland.

105. ~~106.~~ Upon information and belief, SPL breached this obligation by distributing, or

granting licenses to distribute, PRODUCTS (or other SLUSH PUPPIE® branded goods) outside

of the United Kingdom and Ireland.

~~107. The terms of the 1999 Distributor Agreement also provide that, "during the term of~~
~~this Agreement, DISTRIBUTOR will not sell in the TERRITORY any items that are directly~~
~~competitive with the PRODUCTS."~~

~~108. On information and belief, SPL breached this obligation by manufacturing and~~
~~distributing a competing product called "Tango Ice Blast," as shown on its website~~
~~https://www.lovetangoiceblast.com/.  Indeed, SPL's website refers to "Tango Ice Blast" as a~~
~~"Sister Brand" of SLUSH PUPPIE®.  It is not.~~

106. ~~109.~~ Additionally, SPL knew that the 1999 Distributor Agreement had been

properly terminated by ICEE and yet it continued to engage in licensing activities using the

SLUSH PUPPIE® Marks. Indeed, SPL brazenly and without basis has claimed that its illegal

34

licensees somehow still had "the right to use the SLUSH PUPPIE trademarks and brand . . . ."
December 27, 2019 Letter from M. Gurbach to D. Wolfsohn, Exh. I.

107. 110. On information and belief, SPL has encouraged its licensees to continue to
sell SLUSH PUPPIE® products.

108. 111. On information and belief, SPL has informed its licensees that they are
permitted to continue to sell SLUSH PUPPIE® products.

109. 112. Paragraph III.B. of the 1999 Distributor Agreement provides that, upon
termination, SPL must return to ICEE or destroy all literature, signs, advertising material,
promotional matter, and other materials identifying SPL with ICEE or its SLUSH PUPPIE
"PRODUCTS," and shall immediately cease to identify itself with ICEE or use the SLUSH
PUPPIE  Marks or any confusingly similar marks, and shall discontinue or change its company
name to remove references to "SLUSH PUPPIE."

110. 113. SPL has failed and refused to return or destroy the material referenced in
Paragraph III.B, and it has continued to identify itself and hold itself out as a SLUSH PUPPIE
licensee.

111. 114. SPL has failed and refused to change its name to remove the reference to
"SLUSH PUPPIE."

112. 115. Paragraph VI.H. of the 1999 Distributor Agreement provides that, upon
termination, SPL must "immediately cease and desist from the further use of the Slush Puppie
name and logo, and return any and all PRODUCTS, materials, signs, emblems, and the like,
bearing the Slush Puppie name and logo, to" ICEE.

113. ~~116.~~ SPL has failed and refused to cease using the SLUSH PUPPIE name and logo, and has failed and refused to return all "PRODUCTS" bearing the SLUSH PUPPIE name and logo to ICEE.

114. ~~117.~~ Paragraph VIII.M of the 1999 Distributor Agreement provides that, in the event of termination, SPL will deliver to ICEE all documents supplied to SPL, its subsidiary and associated companies, and appointees/sublicensees, by and on behalf of ICEE, containing information that is the subject of the 1999 Distributor Agreement, and thereafter, neither SPL, its subsidiary, or associated companies, nor its appointees/sublicensees, shall make or sell Products, as defined therein, within or without SPL's territory for a period of five years after termination.

115. ~~118.~~ SPL has failed and refused to comply with Paragraph VIII.M of the 1999 Distributor Agreement.

116. ~~119.~~ After it received notice of termination in June 2019, not only did SPL fail to cease and desist from further using the SLUSH PUPPIE name and logo, but it has continued to license and, on information and belief, encourage its illegal licensees to manufacture, offer for sale, and/or sell unauthorized products.

117. ~~120.~~ SPL's breaches have caused damages to ICEE, including lost revenue from sales of products outside the scope of the 1999 Distributor Agreement, lost revenue from sales outside the territories covered by the 1999 Agreement, ~~lost royalty revenue based on the volume of Tango Ice Blast sold by SPL in breach of its obligations under the 1999 Appointment,~~ and lost licensing opportunities.

118. ~~121.~~ SPL's breaches have also caused irreparable harm that cannot be remedied by money damages, and therefore SPL's conduct should be enjoined, including its continued distribution of products outside the scope of the 1999 Agreement and outside the territory of the

1999 Agreement. In paragraph III.B. of the 1999 Distributor Agreement, SPL acknowledged that any use of the SLUSH PUPPIE® Marks will result in irreparable injury to ICEE, and has consented to a court order enjoining it from using the SLUSH PUPPIE® Marks in any way.

## COUNT FOUR
### (Lanham Act – Trademark Infringement under 15 U.S.C. § 1114)

119. 122. ICEE incorporates and re-alleges the foregoing paragraphs of these Counterclaims as though fully set forth herein.

120. 123. ICEE is the owner of registered trademarks for the SLUSH PUPPIE® Marks for a variety of services in the United States, the United Kingdom, and the European Union, including but not limited to federal Registration Number 1,665,188 covering "nonalcoholic slush type beverages, syrups, and preparations for making slush type beverages," and Registration Number 3,132,350 for "clothing, namely tops, t-shirts, pants and loungewear, headwear, jackets and footwear."

121. 124. The SLUSH PUPPIE® Marks are inherently distinctive and strong. The public recognizes the SLUSH PUPPIE® Marks as designating the source of ICEE's products and services.

122. 125. SPL, through the 1996 Manufacturer Appointment and the 1999 Distributor Agreement, was granted a limited right to use the SLUSH PUPPIE® Marks. Specifically, the 1999 Agreement provided SPL with the limited right to use the "name 'SLUSH PUPPIE' only for the promotion and distribution of PRODUCTS offered by" ICEE or other products "specifically approved in writing from time to time as meeting [ICEE's] marketing plans and quality standards."

123. ~~126.~~ During the period of time that the 1999 Agreement was in effect, SPL infringed the SLUSH PUPPIE® Marks by using the mark on PRODUCTS not within the scope of SPL's limited rights.

124. ~~127.~~ SPL has also infringed the SLUSH PUPPIE Marks after ICEE's proper termination of the 1996 Manufacturing Appointment and the 1999 Distributor Agreement. As alleged above, ICEE has properly terminated all of SPL's rights to use any of the SLUSH PUPPIE® Marks.

125. ~~128.~~ SPL argues that the Purported 2000 Agreement superseded the 1996 and 1999 agreements, but that document was never agreed to by Slush Puppie Corporation, is a forgery, and is unenforceable.

126. ~~129.~~ Accordingly, the Purported 2000 Agreement does not provide SPL with any right to use the SLUSH PUPPIE® Marks.

127. ~~130.~~ Since SPL's rights under the 1996 and 1999 agreements have been terminated, and since the Purported 2000 Agreement is a forgery and unenforceable, SPL's use of the SLUSH PUPPIE trademarks, including licensing and sublicensing, is therefore unlicensed, unauthorized, and unlawful and it infringes on ICEE's rights in the SLUSH PUPPIE® Marks.

128. ~~131.~~ SPL's infringement has a substantial effect on U.S. commerce, including ICEE's ability to license the SLUSH PUPPIE® Marks in the U.S. and elsewhere. By way of example, SPL operates its own website, slushpuppie.co.uk, which is available to U.S. consumers and is in English.

129. SPL also directly or indirectly owns, and has refused to turn over to ICEE, numerous domain names accessible from both the U.S. and Europe, that incorporate the name SLUSH PUPPiE.

130. ~~132.~~ Additionally, in the run-up to filing this lawsuit, SPL presented itself in English-language media, available in the United States, as the **owner** of the SLUSH PUPPIE® brand.  For example, an article in the online publication Food, Drink & Franchise quoted Mark Peters, Managing Director of "Slush Puppy Ltd., **who owns brands such as Tango Ice Blast and Slush Puppie**."  *See* Laura Mullan, *Comment: Is the Soft Drinks Industry Prepared for the UK 'Sugar Tax'?*, Food, Drink & Franchise, March 31, 2018.

131. ~~133.~~ Additionally, at least until recently, SPL's illegal licensees ~~are selling~~offered for sale infringing products in the United States.  For example, Truffle Shuffle, an SPL licensee, ~~offers~~offered SLUSH PUPPIE® branded lip balm on its website, and ~~has~~had the option to ship the product to customers in the United States.

132. ~~134.~~ SPL's infringing activities are causing and will cause ICEE irreparable harm based on SPL's presentation of itself as the owner of the brand, or as a licensed and authorized distributor of genuine SLUSH PUPPIE® drinks and products, when in fact it is unlicensed and unauthorized.

133. ~~135.~~ In addition to the illegal acts described above, on information and belief, SPL has encouraged its licensees of SLUSH PUPPIE® Marks to continue to manufacture, offer for sale, and sell unauthorized products, and to ignore ICEE's notices to SPL's licensees to cease and desist from engaging in such illegal conduct.

134. ~~136.~~ SPL knew that the 1999 Distributor Agreement had been properly terminated by ICEE and yet it continued to engage in licensing activities using the SLUSH PUPPIE® Marks. Indeed, SPL brazenly and without basis has claimed that its illegal licensees somehow still had "the right to use the SLUSH PUPPIE trademarks and brand . . . ."  December 27, 2019

Letter from M. Gurbach to D. Wolfsohn, Exh. I. On information and belief, SPL has informed its licensees that they are permitted to continue to sell SLUSH PUPPIE® products.

135. ~~137.~~ SPL's continued use, and, on information and belief, encouragement of its licensees to use, the SLUSH PUPPIE® Marks constitutes willful infringement conducted in bad faith.

136. ~~138.~~ SPL's uses of the SLUSH PUPPIE® Marks, as described above, infringe ICEE's exclusive rights in the federally registered SLUSH PUPPIE® Marks, explicitly mislead consumers as to the source or sponsorship of SPL's goods and services, and has caused and are likely to cause confusion as to the source of SPL's goods and services.

137. ~~139.~~ As a direct result of these actions, SPL has caused and, unless enjoined, will continue to cause ICEE to suffer irreparable injury.

138. ~~140.~~ ICEE has no adequate remedy at law and is therefore entitled to injunctive relief.

139. ~~141.~~ In paragraph III.B. of the 1999 Distributor Agreement, SPL acknowledged that any use of the SLUSH PUPPIE® Marks will result in irreparable injury to ICEE, and has consented to a court order enjoining it from using the SLUSH PUPPIE® Marks in any way.

140. ~~142.~~ Additionally, ICEE is entitled to recover damages for SPL's infringement, including SPL's profits.

141. ~~143.~~ SPL's infringement has been and is willful and in bad faith. First, SPL knew of its limited rights under the 1996 Manufacturer Appointment and the 1999 Distributor Agreement, and further knew that the Purported 2000 Agreement was a forgery or otherwise not a binding agreement. Second, after ICEE provided notice to SPL of its termination of the 1996 Manufacturer Appointment and 1999 Distributor Agreement, SPL was well aware that it had no

right to continue to license the sale or offer for sale of any SLUSH PUPPIE products.  Despite

this knowledge, SPL concocted a flimsy excuse for ignoring the termination—arguing that the

forged Purported 2000 Agreement superseded the 1996 and 1999 agreements.  Yet at the same

time, SPL also argued that the forged Purported 2000 Agreement did not superseded the 1996

and 1999 agreements.

142.  144. SPL has also engaged in litigation misconduct.  For example, SPL fabricated,

destroyed, and spoliated evidence in an attempt to hide its infringement.  SPL has also engaged

in dilatory practices, has lied about the status of witnesses, and has tried to conceal the fraudulent

nature of the Purported 2000 Agreement.

143.  145. For all the foregoing reasons, this is an exceptional case within the meaning

of 15 U.S.C. § 1117(a), and accordingly ICEE is entitled to recover its reasonable attorney's

fees. as well as enhanced damages of three times the amount of damages or profits awarded..

**COUNT FIVE**
**(Lanham Act – Unfair Competition and False Designation of Origin under 15 U.S.C. § 1125)**

144.  146. ICEE incorporates and re-alleges the foregoing paragraphs of these

Counterclaims as though fully set forth herein.

145.  147. Through the use of ICEE's SLUSH PUPPIE® Marks in connection with its

business, its encouragement of its licensees to engage in unauthorized and illegal manufacturing,

offering for sale, and sale of infringing SLUSH PUPPIE® branded products, SPL is knowingly

and intentionally misrepresenting and falsely designating to the general public the affiliation,

connection, association, origin, source, approval, endorsement, or sponsorship of SPL's goods

and services, so as to create a likelihood of confusion by the public.

146.  148. As a direct result of these actions, SPL has caused and, unless enjoined, will

continue to cause ICEE to suffer irreparable injury.

147. ~~149.~~ In paragraph III.B. of the 1999 Distributor Agreement, SPL acknowledged that any use of the SLUSH PUPPIE® Marks will result in irreparable injury to ICEE, and has consented to a court order enjoining it from using the SLUSH PUPPIE® Marks in any way.

148. ~~150.~~ ICEE has no adequate remedy at law and is therefore entitled to injunctive relief.

149. ~~151.~~ Additionally, ICEE is entitled to recover damages for SPL's infringement.

150. ~~152.~~ For all of the foregoing reasons, this is an exceptional case within the meaning of 15 U.S.C. § 1117(a), and accordingly ICEE is entitled to recover its reasonable attorney's fees, SPL's profits, and enhanced damages of three times the amount of damages and profits awarded.

## COUNT SIX
### (Deceptive Trade Practices – Ohio R.C. § 4165)

151. ~~153.~~ ICEE incorporates and re-alleges the foregoing paragraphs of these Counterclaims as though fully set forth herein.

152. ~~154.~~ In addition to its trademark registrations, ICEE also has common law rights in the SLUSH PUPPIE® Mark by virtue of its long and exclusive use of the mark for its products and services.

153. ~~155.~~ SPL's use of ICEE's SLUSH PUPPIE® Marks is likely to cause confusion or misunderstanding as to the source, sponsorship, or approval of SPL's goods and services, or to cause confusion as to SPL's affiliation, connection, or association with ICEE.

154. ~~156.~~ SPL's continued infringement on ICEE's rights in the SLUSH PUPPIE® Marks is willful, and SPL knows of and intends to deceive consumers.

155. ~~157.~~ As a direct result of these actions, SPL has caused and, unless enjoined, will continue to cause ICEE to suffer irreparable injury.

156.   ~~158.~~ In paragraph III.B. of the 1999 Distributor Agreement, SPL acknowledged that any use of the SLUSH PUPPIE® Marks will result in irreparable injury to ICEE, and has consented to a court order enjoining it from using the SLUSH PUPPIE® Marks in any way.

157.   ~~159.~~ ICEE has no adequate remedy at law and is therefore entitled to injunctive relief.

158.   ~~160.~~ Additionally, ICEE is entitled to recover damages for SPL's infringement.

159.   ~~161.~~ Additionally, ICEE is entitled to recover its reasonable attorney's fees and SPL's profits.

**COUNT SEVEN**
(Unjust Enrichment)

160.   ICEE incorporates and realleges paragraphs 1 through 78, 120 through 136, 141, 142, and 145 as if set forth fully herein.

161.   Since ICEE's termination of the 1996 Manufacturing Appointment and the 1999 Distribution Agreement, SPL has not been licensed to sell or otherwise profit from any Slush Puppie products or services, or to use the SLUSH PUPPiE® Trademarks for any purpose.

162.   For the first approximately sixteen months after termination of those agreements, SPL engaged in a fraudulent scheme of promoting the forged Purported 2000 Agreement as an alleged basis for claiming that SPL was party to a license of the SLUSH PUPPiE® Trademarks, notwithstanding ICEE's termination of the only legitimate agreements between the parties on June 25, 2019.  For example, SPL attorney Matthew Gurbach falsely claimed that ICEE's "purported termination of the 1996 Appointment and the 1999 Distributor Agreement are a nullity – each has been superseded by the 2000 Appointment."  Based on the forged 2000 Appointment, Attorney Gurbach asserted that SPL "intends to continue operations under the

2000 Appointment and expects ICEE to abide by the terms thereof."  *See* Exh. G.  And SPL made good on its threat.

163.    Based on the forged Purported 2000 Agreement and other forged documents, SPL held itself out to its customers and potential customers as possessing the right to sell SLUSH PUPPiE products and to associate itself with the SLUSH PUPPiE brand—even holding itself out as the owner of those marks and brand.

164.    By relying upon the Purported 2000 Agreement that it knew it had forged, SPL was able to prevent ICEE from licensing SLUSH PUPPiE® to another company in the United Kingdom and Europe.

165.    Indeed, SPL took affirmative steps to block ICEE's attempt to license the SLUSH PUPPiE brand in the United Kingdom and Europe.  For example, after SPL sent letters in December 2019 to certain of SPL's customers and distributors correctly explaining that SPL no longer had any rights to use the SLUSH PUPPiE® marks, SPL's attorney Mathew Gurbach again falsely claimed that the forged Purported 2000 Agreement was in effect, and that SPL had and would "continue operations" under the fraudulent document.  *See* Exhibit I.  Moreover, SPL falsely informed recipients of ICEE's letters that SPL held rights to the SLUSH PUPPiE brand, despite knowing that this assertion was false and while intending to have such customers rely upon such false statements in their decisions to continue to do business with SPL.

166.    In November 2021, SPL's attorneys were forced to admit that the claims they had asserted based on the forged Purported 2000 Agreement were "meritless" (Doc. 85 PAGEID 2176) and that they "could no longer ethically continue to prosecute" those claims (Doc. 82 PAGEID 2050).  Accordingly, SPL pivoted to the frivolous position that the terminated 1996 Manufacturing Appointment and the 1999 Distributor Agreement were somehow still in effect,

despite concurrently alleging that the forged Purported 2000 Agreement had "superseded" those agreements.

167.     At the same time of this pivot, SPL surreptitiously used its long history with the SLUSH PUPPiE brand to confuse retailers about who had the right to sell SLUSH PUPPiE products and support the brand in Europe.  SPL sent out thousands of communications stating that it was "retiring" the SLUSH PUPPiE brand, leaving the impression with consumers that it had the power to do so, and that the reasons were because the SLUSH PUPPiE brand was not "socially responsible" or "sustainable" and not consistent with the company's "vision and strategy."  SPL then began telling its customers and potential customers as well as consumers that it would be selling the same Slush Puppie product under a new name—Slushy Jack's.

168.     SPL was only able to use the new Slushy Jack's name for the old SLUSH PUPPiE product and to quickly launch the Slush Jack's product by illegally piggy-backing on the goodwill of ICEE's SLUSH PUPPiE brand and continuing without authorization to supply Slush Puppie product under the Slushy Jack's name, which SPL described as using "the same recipe as it has always been."

169.     Thus, for the more than two years since ICEE terminated all of SPL's rights to use the SLUSH PUPPiE® marks or to sell any SLUSH PUPPiE products, SPL has continued to sell SLUSH PUPPiE syrup and other products, and continued to sell and lease freezers used to dispense SLUSH PUPPiE to hundreds of customers and at thousands of locations throughout the United Kingdom and Europe knowing that it had no right to do so and knowing that it was thereby harming ICEE.

170.     Moreover, since approximately November 2020, SPL has generated interest in its "Slushy Jack's" product by giving customers, distributors, and consumers the false impressions

that it is authorized to sell SLUSH PUPPiE products and control the SLUSH PUPPiE brand, and that Slushy Jack's uses the "same recipe" and has "the same great taste as SLUSH PUPPiE." SPL has thereby illegally leveraged its infringement of the SLUSH PUPPiE® marks to gain crucial credibility with retailers for its sale of the same product under the otherwise completely unknown Slushy Jack's name.

171.    Without illegally leveraging SLUSH PUPPiE and the SLUSH PUPPiE customers, Slushy Jack's would be an unknown quantity, with no goodwill and no or virtually no revenue or profits.  Indeed, it was not until late 2020 that Slushy Jack's even existed as a "brand," while the SLUSH PUPPiE brand has over 50 years of history and goodwill.

172.    SPL's use and/or withholding of the forged Purported 2000 Agreement, the forged Wendsday Email (including damning metadata showing its author as markp) (Doc. 73-20 at PAGEID 1560), the forged History of Working Practise (Doc.73-12 at PAGEID 1479-1483 ), perjury (*E.g.*, Doc. 74, at 53:17-59:24, 67:4-10 (Mark Peters lying about his knowledge of the Wendsday email); 120:12-121:14 (Mark Peters lying about a package from Malaysia that supposedly contained originals of key documents), and other litigation misconduct, as well as its thousands of fraudulent letters sent to SLUSH PUPPiE customers at the same time that it knew it had no right to use the SLUSH PUPPiE trademarks to affiliate itself with the SLUSH PUPPiE brand or products, were and are part of a fraudulent scheme to illegally leverage its infringement into huge profits based on the illegal sales of SLUSH PUPPiE and Slushy Jack's products. This fraudulent scheme has been conducted in bad faith, and the forgeries and perjuries are also illegal under federal law.  *See* 18 U.S.C. § 1503 (obstruction of justice); 18 U.S.C. § 1621 (perjury). The use of this fraudulent, bad-faith, and illegal scheme makes SPL's retention of profits from SLUSH PUPPiE and Slushy Jack's products inequitable.

173.    As alleged above, SPL has therefore received a benefit from ICEE by using the SLUSH PUPPiE name, marks, and brand without authorization—i.e., after termination on June 25, 2019 by ICEE of the 1996 Manufacturing Appointment and the 1999 Distributor Agreement-- and SPL has been well aware of the benefits it has thereby illegally received.

174.    SPL has received these benefits—specifically all the profits it has received by using the SLUSH PUPPiE and Slushy Jack's marks, names, and brands in connection with SLUSH PUPPiE and Slushy Jack's products since June 25, 2019--under circumstances where it would be unjust for SPL to retain those benefits without paying them over to ICEE.

**PRAYER FOR RELIEF**

WHEREFORE, ICEE respectfully requests that the Court grant the following relief:

~~162.~~ A.  A declaration that the document SPL characterizes as "the 2000 Appointment of Trade Mark Licence," attached as Exhibit D to SPL's Amended Complaint, is invalid, void, unenforceable, and/or otherwise without effect as to ICEE;

~~163.~~ B.  A declaration that SPL has no rights under what it characterizes as "the 2000 Appointment of Trade Mark Licence";

~~164.~~ C.  A judgment that SPL has breached the 1996 Appointment, and awarding ICEE damages and injunctive relief.

~~165.~~ D.  A judgment that SPL has breached the 1999 Agreement, and awarding ICEE damages and injunctive relief.

~~166.~~ E.  A judgment that SPL's use of the SLUSH PUPPIE Mark on products outside the scope of the 1996 Appointment and 1999 Agreement, and after termination of those agreements, is willful trademark infringement under 15 U.S.C. § 1114(a), and awarding ICEE damages, injunctive relief, and attorney's fees.

167. F.  A judgment that SPL's use of the SLUSH PUPPIE Mark on products outside the scope of the 1996 Appointment and 1999 Agreement, and after termination of those agreements, amounts to willful unfair competition and false designation of origin under 15 U.S.C. § 1125(a), and awarding ICEE damages, injunctive relief, exemplary damages, disgorgement of SPL's profits, and attorney's fees.

168. G.  A judgment that SPL's use of the SLUSH PUPPIE® Marks on products outside the scope of the 1996 Manufacturer Appointment and 1999 Distributor Agreement, and on any products after termination of those agreements, amounts to deceptive trade practices under Ohio R.C. § 4165, and awarding ICEE damages, injunctive relief, costs, exemplary damages, disgorgement of SPL's profits, and attorney's fees.

H.  Disgorgement of SPL's profits made since termination on June 25, 2019 of the 1996 Manufacturing Appointment and the 1999 Distribution Agreement from its sale of Slush Puppie and Slushy Jack's products and its sale and leasing of freezers used in connection with Slush Puppie and Slushy Jack's products.

169. I.  Such other relief as the Court deems just and proper.

Dated:  ~~January 6~~February___, ~~2020~~2022          Respectfully submitted,

**DUANE MORRIS LLP**


BY:  _s/ Kenneth M. Argentieri_____
          David J. Wolfsohn (*admitted pro hac vice*)
          Tyler R. Marandola (*admitted pro hac vice*)
          30 South 17th Street
          Philadelphia, PA 19103
          Tel.: (215) 979-1000
          Fax: (215) 979-1020
          djwolfsohn@duanemorris.com
          tmarandola@duanemorris.com

          Kenneth M. Argentieri (Ohio Bar No. 0067493)
          Trial Attorney
          600 Grant St., Ste. 5010
          Pittsburgh, PA 15219
          Tel.: (412) 497-1000
          Fax: (412) 497-1001
          kmargentieri@duanemorris.com


*Attorneys for Defendant~~,~~/Counterclaim Plaintiff The ICEE Company*

49

**CERTIFICATE OF SERVICE**

I hereby certify that on ~~January 6~~February____ , ~~2020~~2022 I caused the foregoing document

to be electronically filed with the Clerk of Court using the Court's CM/ECF system, which

caused a copy to be served on all counsel of record~~, as follows:~~.

~~Ronald L. House~~
~~Benesch, Friedlander, Coplan & Aranoff~~
~~41 South High Street~~
~~Suite 2600~~
~~Columbus, Ohio  43215-6164~~
~~rhouse@beneschlaw.com~~

~~Matthew D. Gurbach~~
~~Elizabeth Emanuel~~
~~Benesch, Friedlander, Coplan & Aranoff~~
~~200 Public Square~~
~~Suite 2300~~
~~Cleveland, Ohio  44114-2378~~
~~mgurbach@beneschlaw.com~~
~~eemanuel@beneschlaw.com~~

BY:  _/s/Tyler R. Marandola_____
        Tyler R. Marandola