**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| SLUSH PUPPIE LIMITED, | ) | |
| | ) | |
| Plaintiff, | ) | Case No: 1:19-cv-00189-MRB |
| | ) | |
| v. | ) | JUDGE MICHAEL R. BARRETT |
| | ) | |
| THE ICEE COMPANY, | ) | MAGISTRATE JUDGE BOWMAN |
| | ) | |
| Defendant. | ) | |

**SLUSH PUPPIE LIMITED'S**
**FED. R. CIV. P. 12(B)(1) MOTION TO DISMISS THE ICEE COMPANY'S**
**COUNTERCLAIMS AND FIRST AMENDED COUNTERCLAIMS**

Plaintiff/Counter-Defendant Slush Puppie Limited ("SPL") respectfully moves this Court to dismiss Defendant/Counter-Plaintiff The ICEE Company's ("ICEE") First Amended Counterclaim Count Four (Lanham Act – Trademark Infringement under 15 U.S.C. § 1114) and Count Five (Lanham Act – Unfair Competition and False Designation of Origin under 15 U.S.C. § 1125) pursuant Federal Rule of Civil Procedure 12(b)(1).

As set forth in SPL's Memorandum in Support, this Court lacks subject matter jurisdiction over these Counts at a minimum because this Court cannot reach what is undisputedly extraterritorial conduct. If this Court dismisses Counts Four and Five, then this Court should also dismiss Count Six (Deceptive Trade Practice – Ohio R.C. 4165) and decline to exercise jurisdiction over Count Seven (Unjust Enrichment), as both counts are subsumed by and rely upon Counts Four and Five. Accordingly, these Counts must be dismissed.

## TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................- 1 -

II.    RELEVANT FACTS AND PROCEDURAL HISTORY .........................................- 1 -

III.   LEGAL STANDARD ...................................................................................- 4 -

    A.    Subject Matter Jurisdiction Limits the Power of Federal
         Courts. ........................................................................................- 4 -

    B.    The Limited Applicability of the Lanham Act to
         Extraterritorial Conduct ...............................................................- 5 -

IV.   ARGUMENT ............................................................................................- 6 -

    A.    ICEE Cannot Prove that this Court Possesses Federal Question
         Subject Matter Jurisdiction Over the Alleged Lanham Act
         Violations. .................................................................................- 7 -

         1.    ICEE Cannot Prove Any Substantial Effect on U.S.
              Commerce. ......................................................................- 8 -

         2.    SPL is Not a U.S. Citizen and has No Relevant Connection
              to the United States. ........................................................- 14 -

         3.    Numerous Conflicts Exist Between SPL's Foreign
              Trademark Rights and ICEE's Domestic Trademark Rights.............- 15 -

    B.    This Court Should Dismiss and Decline to Exercise
         Supplemental Subject Matter Jurisdiction Over Counts Six
         and Seven. .................................................................................- 17 -

V.    CONCLUSION .........................................................................................- 20 -

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Cases

*Aerogroup Int'l, Inc. v. Marlboro Footworks, Ltd.*,
955 F. Supp. 220 (S.D.N.Y. 1997), *aff'd*, 152 F.3d 948 (Fed. Cir. 1998) ................6, 8, 12, 15

*Akno 1010 Mkt. St. St. Louis Missouri LLC v. Pourtaghi*,
43 F.4th 624 (6th Cir. 2022) ...................................................................................................5

*Alpacific S.A. v. Diageo Latin Am. & Caribbean, Inc.*,
No. 10-CV-23822-CIV, 2012 WL 12844739 (S.D. Fla. Mar. 28, 2012) ...............................19

*Arbaugh v. Y&H Corp.*,
546 U.S. 500, 126 S. Ct. 1235, 163 L. Ed. 2d 1097 (2006).....................................................5

*Aristocrat Techs., Inc. v. High Impact Design & Entertainment*,
642 F.Supp.2d 1228 (D. Nev. 2009).....................................................................................15

*Atl. Richfield Co. v. Arco Globus Intern. Co., Inc.*,
150 F.3d 189 (2d Cir. 1998).....................................................................................6, 7, 9, 10

*Automated Marine Propulsion Sys., Inc. v. Aalborg Ciserv Int'l A/S*,
859 F. Supp. 263 (S.D. Tex. 1994) .......................................................................................13

*Bishop v. Children's Ctr. for Developmental Enrichment*,
618 F.3d 533 (6th Cir. 2010) ................................................................................................19

*Cartwright v. Garner*,
751 F.3d 752 (6th Cir. 2014) ..................................................................................................5

*Charisma World Wide Corp., S.A. v. Avon Prod. Inc.*,
243 F. Supp. 3d 450 (S.D.N.Y. 2017)...................................................................................14

*Cirasuola v. Westrin*,
124 F.3d 196 (6th Cir. 1997) ................................................................................................19

*Dismas Charities, Inc. v. U.S. Dep't of Justice*,
401 F.3d 666 (6th Cir. 2005) ..................................................................................................5

*George Basch Co. v. Blue Coral, Inc.*,
968 F.2d 1532 (2d Cir. 1992).................................................................................................19

*Guantanamera Cigar Co. v. Corporacion Habanos, S.A.*,
672 F. Supp. 2d 106 (D.D.C. 2009) ......................................................................................12

*Harper v. AutoAlliance Int'l, Inc.*,
    392 F.3d 195 (6th Cir. 2004) ..............................................................18

*Hertz Corp. v. Friend*,
    559 U.S. 77, 130 S.Ct. 1181, 175 L.Ed.2d 1029 (2010) ......................5

*Hudson v. Delta Air Lines, Inc.*,
    90 F.3d 451 (11th Cir. 1996) ..............................................................18

*IMAPizza, LLC v. At Pizza Ltd*,
    334 F. Supp. 3d 95 (D.D.C. 2018) ......................................................13

*Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*,
    456 U.S. 694, 102 S.Ct. 2099 (1982) ..............................................4, 15

*International Café, S.A.L. v. Hard Rock Café Intern. (U.S.A.), Inc.*,
    252 F.3d 1274 (11th Cir. 2001) ........................................................8, 17

*J&J Snack Foods Corp. v. Frozen Brothers BV*,
    Case No. DNL2020-0054, WIPO Administrative Panel Decision .............4

*Juicy Couture, Inc. v. Bella Int'l Ltd.*,
    930 F. Supp. 2d 489 (S.D.N.Y. 2013)..............................................12, 13

*Liberty Toy Co. v. Fred Silber Co.*,
    149 F.3d 1183 (6th Cir. 1998) ..........................................................6, 7

*McBee v. Delica Co., Ltd.*,
    417 F.3d 107 (1st Cir. 2005) ......................................................6, 7, 18

*Morrison v. Nat'l Australia Bank Ltd.*,
    561 U.S. 247 (2010)..............................................................................5

*NewMarkets Partners LLC v. Oppenheim*,
    638 F. Supp. 2d 394 (S.D.N.Y. 2009).....................................................7

*Ohio Nat. Life Ins. Co. v. United States*,
    922 F.2d 320 (6th Cir. 1990) ................................................................5

*Optima Media Group Ltd. v. Bloomberg L.P.*,
    383 F. Supp.3d 135 (S.D.N.Y 2019).............................................8, 10, 11

*Polymeric Resources Corp. v. Pounds of Plastic, LLC*,
    No. 3:20-cv-00013-GFVT-EBA, 2022 WL 5227512 (E.D. Ky. Sept. 13, 2022).....................9

*Scotch Whiskey Ass'n v. Barton Distilling Co.*,
    489 F.2d 809 (7th Cir. 1973) ................................................................6

*Southard v. Newcomb Oil Co., LLC,*
    7 F.4th 451 (6th Cir. 2021) ........................................................................19

*Southco, Inc. v. FiveTech Tech. Inc.*,
    982 F. Supp.2d 507 (E.D. Pa. 2013), *aff'd*, 611 F. App'x 681 (Fed. Cir. 2015) .........10, 12, 15

*Steele v. Bulova Watch Co.,*
    344 U.S. 280 (1952).......................................................................................6

*Sterling Drug, Inc. v. Bayer AG,*
    14 F.3d 733 (2d Cir. 1994)...........................................................................12

*Taylor v. First of America Bank-Wayne,*
    973 F.2d 1284 (6th Cir. 1992) .................................................................10, 18

*Tire Engineering and Distribution, LLC v. Shandong Lingling Rubber Co., Ltd.*,
    682 F.3d 292 (4th Cir. 2012), *cert. denied*, 133 S. Ct. 846, 184 L. Ed. 2d 655
    (2013).........................................................................................................8

*Torrance v. Rom*
    157 N.E.3d 172 (Ohio App. 8 Dist., 08-06-2020), *app. denied*, 161 Ohio St.3d
    1440, 162 N.E.3d 826 ..............................................................................19

*U.S. v. Morrison,*
    529 U.S. 598 (2000)......................................................................................6

*Ubiquiti Networks, Inc. v. Kozumi USA Corp.*,
    2012 WL 2343670 (N.D. Cal. 2012) .....................................................8, 17

*Vanity Fair Mills, Inc. v. T. Eaton Co.*,
    234 F.2d 633 (2d Cir. 1956)..................................................................6, 7, 8

**Statutes**

15 U.S.C. § 1114........................................................................................3, 4, 5

15 U.S.C. § 1125...........................................................................................5

15 U.S.C. § 1127...........................................................................................5

28 U.S.C. § 1367......................................................................................18, 19

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| SLUSH PUPPIE LIMITED, | ) | |
| | ) | |
| Plaintiff, | ) | Case No: 1:19-cv-00189-MRB |
| | ) | |
| v. | ) | JUDGE MICHAEL R. BARRETT |
| | ) | |
| THE ICEE COMPANY, | ) | MAGISTRATE JUDGE BOWMAN |
| | ) | |
| Defendant. | ) | |

**SLUSH PUPPIE LIMITED'S MEMORANDUM IN SUPPORT OF**
**FED. R. CIV. P. 12(B)(1) MOTION TO DISMISS THE ICEE COMPANY'S**
**COUNTERCLAIMS AND FIRST AMENDED COUNTERCLAIMS**

## I.      INTRODUCTION

For three years, ICEE has asserted claims of trademark infringement *all allegedly occurring abroad*.  ICEE must confront the paradox it has created: it stands before a United States Court attempting to stop conduct occurring abroad—where ICEE holds foreign trademarks, employs foreign counsel, and actively asserts foreign claims.  This paradox is fatal to the Court's subject matter jurisdiction.  Article III of the United States Constitution and ample case law provide that ICEE is not entitled to demand foreign satisfaction in this domestic court.  For these reasons, and for additional reasons set forth, ICEE's counts alleging foreign trademark infringement (Counts 4 and 5) (collectively, the "Counts") must be dismissed.  The natural result to this dismissal is that this Court should also dismiss Count Six and decline to exercise jurisdiction over Count Seven which are asserted under supplemental jurisdiction, but rely entirely on the Counts.

## II.      RELEVANT FACTS AND PROCEDURAL HISTORY

This dispute traces back to the 1990s when SPL entered into two licenses with ICEE's predecessor—the 1996 Manufacturing Appointment and the 1999 Distributor Agreement

(collectively, "the Agreements"). (Doc. 152-1, ¶¶ 10-26.)[1] The 1996 Manufacturing Appointment authorized SPL to operate as ICEE's *exclusive* foreign manufacturer under the SLUSH PUPPIE marks in various European countries including, among others, the United Kingdom, Germany, the Netherlands, and Ireland. (Doc. 152-1, ¶ 11; Doc. 152-1, Ex. B.) The 1999 Distributor Agreement authorized SPL to operate as ICEE's *exclusive* foreign distributor under the SLUSH PUPPIE marks in the United Kingdom and Ireland. (Doc. 152-1, ¶ 21; Doc. 152-1, Ex. C.)

In the operative complaint, SPL alleges that ICEE breached the Agreements by licensing the SLUSH PUPPIE marks to competing entities in SPL's exclusive territories. (Doc. 72, ¶¶ 13-103.) In retaliation for bringing this lawsuit, ICEE terminated the Agreements and levied counterclaims contending that SPL breached the Agreements by distributing products that were not within the scope of "Products" under the 1999 Distributor Agreement (Doc. 152-1, ¶ 96), distributing products outside of the United Kingdom and Ireland (Doc. 152-1, ¶ 105), filing suit against ICEE based on ICEE's termination (Doc. 152-1, ¶ 85), and failing to immediately cease use of the SLUSH PUPPIE marks upon termination (Doc. 152-1, ¶¶ 88, 89, 106, 110, 111).

Not content with its breach of contract counterclaims, ICEE also claimed that it is the "owner of registered trademarks for the SLUSH PUPPIE Marks for a variety of services in the United States, the United Kingdom, and the European Union" (Doc. 152-1, ¶¶ 7, 120) and brought counterclaims alleging Lanham Act violations for continued sale and promotion of SLUSH PUPPIE branded goods. (Doc. 152-1, Counts 4 and 5, ¶¶ 119-150.) Specifically, ICEE contends that SPL continued using the SLUSH PUPPIE marks post-termination and "encouraged its licensees of SLUSH PUPPIE Marks to continue to manufacture, offer for sale, and sell

---

[1] SPL cites to ICEE's Proposed Amended Counterclaims that this Court has granted ICEE permission to file at the February 7, 2023 Oral Argument. The Counts and Count Six have not changed in substance from ICEE's active counterclaims. (*See* Doc. 29.)

unauthorized products." (Doc. 152-1, ¶¶ 124, 127, 133.) ICEE also alleges that SPL "used the mark on PRODUCTS not within the scope of SPL's limited rights." (Doc. 152-1, ¶ 123.) Resting on these same allegations, ICEE also asserts a violation of Ohio's deceptive trade practices act. (Doc. 152-1, Count Six, ¶¶ 151-159.) Notably, however, all of SPL's alleged use of the SLUSH PUPPIE marks has been outside of the U.S.

ICEE does *not* allege that SPL has taken *any* action in the U.S. ICEE does *not* allege that SPL sells products in the U.S., that any U.S. consumers have seen or purchased SPL's products, or that any U.S. consumers are even *likely* to be confused by SPL's alleged conduct.

Instead, ICEE complains *only* of extraterritorial conduct. (*See, e.g.*, Ex. A, E. Zalud Declaration; *see also* Ex. B, ICEE Resp. to Interrog. 45 ("SPL's refusal to surrender the domain names . . . is harming . . . the SLUSH PUPPIE brand in the UK, Ireland, and Europe" and complaining of Swedish domain name); Ex. B, ICEE Resp. to Interrog. 46 ("SPL's . . . impedes . . . the SLUSH PUPPIE brand in the UK, Ireland, and Europe"); Ex. B, ICEE Resp. to Interrog. 47 (complaining of a machine in Wales); Ex. B, ICEE Resp. to Interrog. 49-50 (complaining of issues in the United Kingdom, Ireland, and Europe); Ex. B, ICEE Resp. to Interrog. 52 (complaining of alleged post-termination conduct in United Kingdom); Ex. C, ICEE Resp. to Interrog. 61 ("[P]laintiff has failed . . . to stop using the SLUSH PUPPIE mark . . . in the United Kingdom and Europe."); and Ex. D, Exhibit DF216 "European Projected Licensing Fees" to D. Fachner Oct. 30, 2020 deposition (licensing fees for conduct in Europe).)

Despite the extraterritorial nature of SPL's activities, ICEE claims that SPL's actions "infringe ICEE's exclusive rights in the federally registered SLUSH PUPPIE Marks, explicitly mislead consumers as to the source or sponsorship of SPL's goods and services, and has caused and are likely to cause confusion as to the source of SPL's goods and services" under 15 U.S.C. §

1114 of U.S. trademark law. (Doc. 152-1, ¶ 136.) Similarly, ICEE alleges that "SPL is knowingly and intentionally misrepresenting and falsely designating to the general public the affiliation, connection, association, origin, source, approval, endorsement or sponsorship of SPL's goods and services, so as to create a likelihood of confusion by the public" under 15 U.S.C. § 1125 of U.S. trademark law. (Doc. 152-1, ¶ 145.) However, neither counterclaims, nor any discovery has revealed *how* SPL's actions have caused any confusion to U.S. consumers.

Recently, ICEE also contended that, in the United Kingdom and Europe, SPL continued to use the SLUSH PUPPIE marks to block ICEE's attempted activity in those territories, and to foray the SLUSH PUPPIE brand into the Slushy Jack's brand. (Doc. 152-1, Count Seven, ¶¶ 160-174.) Again, ICEE makes exactly zero allegations of any impact on U.S. commerce.

Not only does ICEE attempt to leverage its domestic trademark rights against conduct occurring overseas, but ICEE has simultaneously litigated the *same* issues in foreign jurisdictions. For example, ICEE has asserted and attempted to enforce its foreign trademark rights to the SLUSH PUPPIE marks in a proceeding before the World Intellectual Property Organization ("WIPO") (Ex. E, *J&J Snack Foods Corp. v. Frozen Brothers BV*, Case No. DNL2020-0054, WIPO Administrative Panel Decision) and before a German court (Ex. F, German Complaint.)

## III.  LEGAL STANDARD

### A.  Subject Matter Jurisdiction Limits the Power of Federal Courts.

"Federal courts are courts of limited jurisdiction. The character of the controversies over which federal judicial authority may extend are delineated in Art. III, § 2, cl. 1." *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982). "[T]he rule, springing from the nature and limits of the judicial power of the United States is inflexible and without exception . . . ." *Id.* A federal court is not permitted to act beyond its statutory grant of

subject matter jurisdiction.  *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 501 (2006).

"The objection that a federal court lacks subject matter jurisdiction may be raised. . . at any stage in the litigation, even after trial and the entry of judgment."  Fed. R. Civ. P. 12(b)(1); *see also Arbaugh*, 546 U.S. at 507 (internal citation omitted).  District courts have "an independent obligation to determine whether subject-matter jurisdiction exists."  *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010).  If a court lacks subject matter jurisdiction, it *must* dismiss the action, regardless of the time or resources spent on it.  *See* Fed. R. Civ. P. 12(b)(1); *see also Arbaugh*, 546 U.S. at 502; *Akno 1010 Mkt. St. St. Louis Missouri LLC v. Pourtaghi*, 43 F.4th 624, 627 (6th Cir. 2022).  The party invoking subject matter jurisdiction bears the burden of establishing it exists.  *Dismas Charities, Inc. v. U.S. Dep't of Justice*, 401 F.3d 666, 671 (6th Cir. 2005).

Attacks on subject-matter jurisdiction under Rule 12(b)(1) come in two varieties: facial and factual.  *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).  Facial attacks question the sufficiency of the pleading.  *Id.*  Factual attacks challenge "the factual existence of subject matter jurisdiction."  *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014) (internal quotation omitted).  In a factual attack, the court considers "evidence outside the pleadings, and has the power to weigh the evidence and determine the effect of that evidence on the court's authority to hear the case."  *Id.*

## B.  The Limited Applicability of the Lanham Act to Extraterritorial Conduct

"When a statute gives no clear indication of an extraterritorial application, it has none."  *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 255 (2010).  The Lanham Act applies to uses "in commerce . . . ."  15 U.S.C. § 1114(1)(a)-(b); 15 U.S.C. § 1125(a)(1).  The Lanham Act defines "commerce" as "all commerce which may lawfully be regulated by Congress."  15 U.S.C. § 1127.  Congress, in turn, may regulate "those activities having a *substantial* relation to interstate

commerce, . . . *i.e.,* those activities substantially affect[ing] interstate commerce." *U.S. v. Morrison*, 529 U.S. 598, 609 (2000) (internal quotations and citation omitted) (emphasis added); *see also Steele v. Bulova Watch Co.*, 344 U.S. 280, 286–87 (1952).

"This is true because, among other reasons, principles of international comity and the general principles of tort law—which ordinarily give jurisdiction in an infringement and unfair competition case at the place where the passing off occurs—dictate that each nation grant and control the exercise of trademark rights within its own borders." *Aerogroup Int'l, Inc. v. Marlboro Footworks, Ltd.*, 955 F. Supp. 220, 225–26 (S.D.N.Y. 1997), *aff'd*, 152 F.3d 948 (Fed. Cir. 1998); *see also Atl. Richfield Co. v. Arco Globus Intern. Co., Inc.*, 150 F.3d 189, 192 (2d Cir. 1998) ("The Lanham Act may reach allegedly infringing conduct that occurs outside the United States when necessary to prevent harm to commerce in the United States.").

Courts, including the Sixth Circuit, considering the extraterritorial application of the Lanham Act treat the question as one of subject matter jurisdiction to hear the dispute. *See, e.g., Steele*, 344 U.S. at 281 ("The issue is whether [the Court] has jurisdiction to award relief."); *Vanity Fair Mills, Inc. v. T. Eaton Co.*, 234 F.2d 633, 638–39 (2d Cir. 1956) (same); *Liberty Toy Co. v. Fred Silber Co.*, 149 F.3d 1183, at *6 (6th Cir. 1998) ("[T]he district court should apply the [*Vanity Fair*] test to determine whether it has jurisdiction over Liberty Toy's Lanham Act claim."); *Scotch Whiskey Ass'n v. Barton Distilling Co.*, 489 F.2d 809, 813 (7th Cir. 1973) (casting appeal in jurisdictional terms); *McBee v. Delica Co., Ltd.,* 417 F.3d 107, 111 (1st Cir. 2005) ("[S]ubject matter jurisdiction . . . is proper only [with] a substantial effect on United States commerce").

## IV.    ARGUMENT

This Court must dismiss the Counts in their entirety because it lacks subject matter jurisdiction to adjudicate them.  ICEE has asserted federal question subject matter jurisdiction to

support the Counts; however, these counterclaims fail both facially and factually because SPL's conduct has been entirely extraterritorial, and ICEE cannot prove that this Court's reach extends across Europe, the Middle East, Africa, and elsewhere where ICEE demands relief. Because subject matter jurisdiction is lacking, the Court must dismiss the Counts. With Counterclaims 4 and 5 dismissed, this Court will lack supplemental jurisdiction over Count 6 and proposed Count 7. Thus, the Court should dismiss these counterclaims as well.

### A. ICEE Cannot Prove that this Court Possesses Federal Question Subject Matter Jurisdiction Over the Alleged Lanham Act Violations.

To establish whether circumstances call for extraterritorial application of the Lanham Act, a majority of courts, including those in the Sixth Circuit, consider whether: (1) "the defendant's conduct had a substantial effect on United States commerce"; (2) "the defendant was a United States citizen"; and (3) "there was no conflict with trade-mark rights established under the foreign law." *Vanity Fair*, 234 F.2d at 642; *Liberty Toy*, 149 F.3d 1183, at *6; *McBee*, 417 F.3d at 120.

When two out of the three of these so-called *Vanity Fair* factors are not met, courts will not apply the Lanham Act extraterritorially. *Vanity Fair*, 234 F.2d at 643 (absence of two factors was "fatal"); *see also NewMarkets Partners LLC v. Oppenheim*, 638 F. Supp. 2d 394, 406 (S.D.N.Y. 2009) (holding that at least two factors must be satisfied under *Vanity*). Indeed, even the lack of a substantial effect on U.S. commerce *alone* has been sufficient to defeat the application of the Lanham Act. *See Atl. Richfield*, 150 F. 3d at 192 n. 4 ("[W]e have never applied the Lanham Act to extraterritorial conduct absent a substantial effect on United States Commerce").

In this case, *each* of the *Vanity Fair* factors counsels against extraterritorial application of the Lanham Act, and thus, to the inevitable conclusion that this Court lacks subject matter jurisdiction to hear the Counts. SPL is not a U.S. citizen and its extraterritorial uses of the SLUSH PUPPIE marks have no substantial effect on U.S. commerce. And extraterritorial application of

the Lanham Act has profound conflicts with the laws of foreign jurisdictions. Several courts, confronted with the same and similar facts have dismissed Lanham Act claims on this basis. *See, e.g.*, *Aerogroup Int'l*, 955 F. Supp. 220; *International Café, S.A.L. v. Hard Rock Café Intern. (U.S.A.), Inc.*, 252 F.3d 1274, 1279 (11th Cir. 2001); *Optima Media Group Ltd. v. Bloomberg L.P.*, 383 F. Supp.3d 135, 147-48 (S.D.N.Y 2019); *Ubiquiti Networks, Inc. v. Kozumi USA Corp.*, No. C 12-2582 CW, 2012 WL 2343670, at *1 (N.D. Cal. June 20, 2012).

For one example, in *Aerogroup International*, Aerogroup, known for AEROSOLES, sued Bata Industries Ltd., an ex-Canadian customer, for trademark infringement of the AEROSOLES brand. 955 F. Supp. 220, 221 (S.D.N.Y. 1997). Bata, like SPL, was not incorporated in and did not have its principal place of business in the U.S. *Id.* at 224. Bata had no offices, employees, property, stores, or bank accounts in the U.S. *Id.* Bata had no sales agents in the U.S., did not solicit sales in the U.S., and earned no revenue from the U.S. *Id.* Bata purchased AEROSOLES shoes through Aerogroup's Canadian distributor until Aerogroup raised its prices, causing Bata to cancel its orders and purchase knock offs. *Id.* Bata, like SPL, never sold the allegedly infringing products in the U.S. *Id.* at 224–25. Further, Bata, like SPL, was subject to Aerogroup's trademark enforcement efforts in Canada and Bata criticized the validity of the Aerogroup's trademark assets and rights under those foreign laws. *Id.* at 225. Asserting these facts, Bata filed a motion to dismiss for subject matter jurisdiction and the court agreed—dismissing Aerogroup's Lanham Act claims against Bata for lack of subject matter jurisdiction. *Id.* at 224–29, 231.

Consequently, following these courts, this Court should dismiss the Counts.

1.  ICEE Cannot Prove Any Substantial Effect on U.S. Commerce.

To meet the "substantial effects" prong of the *Vanity Fair* test, ICEE cannot simply state that *it* is located in the U.S. and is harmed in the U.S. *Tire Eng'g and Distrib., LLC v. Shandong*

*Lingling Rubber Co., Ltd.*, 682 F.3d 292, 311 (4th Cir. 2012), *cert. denied*, 133 S. Ct. 846 (2013) ("Courts upholding liability under the Lanham Act based solely on harm to a U.S. company's income from foreign infringement have stressed that the defendants in those cases were U.S. companies that conducted substantial domestic business activity."). Rather, because SPL is a foreign company, ICEE must prove some independent substantial effect on U.S. commerce.

But SPL's activities have no effect on U.S. commerce. (Ex. G, Declaration of L. Peters.) SPL does not use the stream of commerce in the U.S. to compete with ICEE. (Ex. G, ¶¶ 9-13.) SPL does not operate in the U.S. (Ex. G, ¶¶ 9-10.) It does not sell products in the U.S. (Ex. G, ¶ 9.) It does not manufacture, process, or transport products or component parts in the U.S. (Ex. G, ¶ 10.) No—SPL *only* operated extraterritorially with any effects felt only outside the U.S. Under these circumstances, ICEE *cannot* prove any effect "substantial" enough to secure federal question subject matter jurisdiction. *See, e.g.*, *Atl. Richfield*, 150 F. 3d at 193 (denying application of the Lanham Act to a defendant who "does not physically use the stream of American commerce to compete with the trademark owner" and whose activities in the U.S. do not "materially support the foreign use of the mark."); *Polymeric Resources Corp. v. Pounds of Plastic, LLC*, No. 3:20-cv-00013-GFVT-EBA, 2022 WL 5227512, *8 (E.D. Ky. Sept. 13, 2022) (rejecting extraterritorial application of the Lanham Act where no sales took place in the U.S. and the defendant did not cause the product to be manufactured in the U.S.).

Nor has ICEE alleged (and it cannot prove) that SPL's actions have caused any actual or *likelihood* of confusion among U.S. consumers. ICEE never alleges that it received reports of U.S. consumers being exposed to SPL's products or advertising, whether online or while traveling abroad. Nor does ICEE explain how U.S. consumers would be confused about the U.S. market for these products even if they were exposed to SPL's products and/or advertising. Courts find

that these circumstances weigh heavily against extraterritorial application of the Lanham Act. *See, e.g.*, *Atl. Richfield*, 150 F. 3d at 193 (rejecting extraterritorial application of the Lanham Act where there was no evidence that the allegedly infringing activities confused customers in the U.S. or lessened the value of the marks in the U.S.); *Optima Media Group Ltd. v. Bloomberg L.P.*, 383 F. Supp.3d 135, 147-48 (S.D.N.Y 2019) (dismissing Lanham Act claims for lack of subject matter jurisdiction where no evidence of U.S. consumer effects was presented); *Southco, Inc. v. FiveTech Tech. Inc.*, 982 F. Supp.2d 507, 513 (E.D. Pa. 2013), *aff'd*, 611 F. App'x 681 (Fed. Cir. 2015) ("An American company's lost sales abroad because of trademark infringement . . . [is insufficient without] additional effects in the United States beyond the diverted sales.").

In a weak attempt to provide support for this Court's subject matter jurisdiction over the Counts, ICEE alleges the following (Doc. 152-1):

- "SPL's infringement has a substantial effect on U.S. commerce, including ICEE's ability to license the SLUSH PUPPIE Marks in the U.S. and elsewhere. By way of example, SPL operates its own website, slushpuppie.co.uk, which is available to U.S. consumers and is in English." (¶ 128.)

- "Additionally, at least until recently, SPL's illegal licensees offered for sale infringing products in the United States. For example, Truffle Shuffle, an SPL licensee offered SLUSH PUPPIE branded lip balm on its website, and had the option to ship the product to customers in the United States." Further, "SPL also directly or indirectly owns, and has refused to turn over to ICEE, numerous domain names accessible from both the U.S. and Europe, that incorporate the name SLUSH PUPPIE." (¶¶ 129, 131.)

- Additionally, in the run-up to filing this lawsuit, SPL presented itself in English-language media, available in the United States, as the *owner* of the SLUSH PUPPIE brand. For example, an article in the online publication Food, Drink & Franchise quoted Mark Peters, Managing Director of "Slush Puppy Ltd., *who owns brands such as Tango Ice Blast and Slush Puppie*." *See* Laura Mullan, *Comment: Is the Soft Drinks Industry Prepared for the UK 'Sugar Tax'?*, Food, Drink & Franchise, March 31, 2018. (¶ 130.)

Each one fails to establish any "substantial effect."

**First**: ICEE's alleged inability to license the SLUSH PUPPIE marks "in the U.S. and elsewhere" based on extraterritorial conduct is not a "substantial effect." And, in any event, it is

not true—ICEE has licensed the SLUSH PUPPIE marks around the globe—breaching SPL's exclusive territorial rights under the 1996 and 1999 licensing agreements.

As an initial matter, ICEE's allegations regarding licensing are conclusory. ICEE does not specify any potential licensees, any plans it has to seek out such licensees, the specific impairment in licensing the marks in the U.S. and elsewhere that SPL has allegedly caused, or any existing licensees who were harmed. Nor does ICEE explain how any alleged licensing impairment actually has a substantial effect on U.S. commerce.

Courts have rejected similar allegations as insufficient. For example, in *Optima Media*, in dismissing Lanham Act claims for lack of subject matter jurisdiction, the court rejected the plaintiff's allegation that foreign licensing impairment met the substantial effects test. 383 F. Supp.3d at 146–47. Bloomberg contracted with Nigerian and United Kingdom entities to distribute Africa-specific programming in Africa. When the defendants breached the contract, Bloomberg terminated the contract. *Id.* at 141. After termination, however, Optima improperly "continued to use several communication channels that included the Bloomberg name." *Id.* Bloomberg brought breach of contract, U.S. federal trademark law claims, and New York unfair competition claims for the "unauthorized post termination use of the Bloomberg brand" on the internet. *Id.* Like ICEE, Bloomberg alleged impaired ability to internationally license its marks, but the Court found that this allegation "do[es] not make out a sufficiently *substantial* effect" to establish subject matter jurisdiction. *Id.* at 146–49 (emphasis in original).

In this case, however, ICEE cannot even prove its alleged "inability" to license the SLUSH PUPPIE marks in the U.S. and elsewhere. From August 2016 to present, ICEE has maintained, at minimum, *eleven* SLUSH PUPPIE trademark licenses in the United Kingdom, Europe, the Middle East, U.S., Canada, Japan, Australia, South Africa, New Zealand, United Arab Emirates, Russia,

- 11 -

India, Ireland, Chile, Channel Islands, the E.U., and "Worldwide." (*See* Ex. H, Exemplary ICEE Trademark Licensing Agreements for SLUSH PUPPIE, at 19, 22, 63, 81, 101.)

**<u>Second</u>**: A third party website with the mere option to ship to the U.S. or a website viewable from the U.S. that contains the asserted trademark are not "substantial effects."

"Courts must be careful . . . not to find a substantial effect from relatively minor interferences with United States commerce." *Aerogroup Int'l*, 955 F. Supp. at 229. "In today's global economy, where a foreign TV advertisement might be available by satellite to U.S. households, not every activity of a foreign corporation with any tendency to create some confusion among American consumers can be prohibited by the extraterritorial reach of a District Court's injunction." *Sterling Drug, Inc. v. Bayer AG*, 14 F.3d 733, 747 (2d Cir. 1994).

Many plaintiffs have failed to establish subject matter jurisdiction under *better facts* than ICEE's. *See, e.g., Guantanamera Cigar Co. v. Corporacion Habanos, S.A.*, 672 F. Supp. 2d 106, 112–13 (D.D.C. 2009) (finding no "substantial effect" where defendant advertised the infringing cigars in a European journal which is distributed and circulated through the U.S., and advertised on several websites that they will deliver "anywhere in the world," including the U.S.); *see also Southco*, 982 F. Supp. 2d at 511–12 ("Absent unusual circumstances, advertising alone is not enough to constitute 'use in commerce'" and neither Fivetech's website, product catalogue, nor price quotes to SRI can constitute "use in commerce" of the Five Pentagon mark.).

For another example, Juicy Couture, Inc., known for its JUICY marks, brought claims for trademark infringement against defendants selling products under the JUICY GIRL mark throughout the world. *Juicy Couture, Inc. v. Bella Int'l Ltd.*, 930 F. Supp. 2d 489, 496 (S.D.N.Y. 2013). Defendants were residents of Hong Kong. *Id.* Juicy, like ICEE, asserted that defendants' website "is available in English, indicates that Juicy Girl sells its products worldwide, and includes

information on international shipping costs." *Id.* at 507. Through this website, defendants sold approximately $3,000 worth of products *into the U.S. Id.* at 497. Worse yet, those defendants *filed an application to register the trademark JUICY GIRL* in the U.S. *Id.* at 507. Despite *actual sales* to the U.S. and a threat of *increased domestic activity*, the court found this foreign website insufficient to establish subject matter jurisdiction because the defendants were not U.S. citizens and trademark litigation was ongoing in Hong Kong. *Id.* at 506–08; *see also Automated Marine Propulsion Sys., Inc. v. Aalborg Ciserv Int'l A/S*, 859 F. Supp. 263, 264 (S.D. Tex. 1994) (court lacks subject matter jurisdiction over Danish and Swedish entities where all sales were in foreign countries and only one sale was even attempted in U.S.); *IMAPizza, LLC v. At Pizza Ltd*, 334 F. Supp. 3d 95, 123 (D.D.C. 2018) (rejecting allegations that U.S. citizens may be confused while traveling abroad as supposition without concrete factual support).

In this case, ICEE *never* produced one single document showing the Truffle Shuffle website, much less showing that SLUSH PUPPIE lip balm was available with the option to ship to U.S. customers. Nor did ICEE ever produce any reports of U.S. consumers viewing this site. These allegations are insufficient to meet the substantial effects test.

**Third**: A third-party article misrepresenting SPL's relationship with SLUSH PUPPIE is not a "substantial effect."

ICEE alleges that "an article in the online publication Food, Drink & Franchise quoted Mark Peters, Managing Director of 'Slush Puppy Ltd., ***who owns brands such as Tango Ice Blast and Slush Puppie*.'" (Doc. 152-1, ¶ 130.) In fact, Mark Peters is not ***quoted*** as any owner. The author, *without any quotations or source,* provided the following:

> Slush Puppy Ltd, who owns brands such as Tango Ice Blast and Slush Puppie, have committed to reducing sugar across its portfolio, aiming for 85% no sugar or no added sugar in all its drinks.
>
> "We recognise that our consumers are keen to reduce their sugar intake, and wanted to do something that meant people could still reduce sugar in their diet while able to enjoy the little pleasures in life – such as Slush Puppie and Tango Ice Blast," explains Slush Puppie MD and owner of the family business Mark Peters.

(Ex. I, Laura Mullan, *Comment: Is the soft drinks industry prepared for the UK 'sugar tax'?*, FOOD, May 17, 2020.)  Moreover, ICEE never produced *any copy of the article in discovery*.

What is more, this article is only a comment on a food blog regarding the United Kingdom market.  ICEE never alleges the post was viewed by any U.S. consumers, any confusion ensued, or any harm to U.S. commerce resulted such that this Court should sanction SPL for third party editorial content.  *See Charisma World Wide Corp., S.A. v. Avon Prod. Inc.*, 243 F. Supp. 3d 450, 458 (S.D.N.Y. 2017) (finding no substantial effect where plaintiff failed to allege that consumer confusion had any effect in the U.S.).  Without ever even producing a copy of the post, ICEE cannot establish any of these additional requirements to meet the "substantial effect" threshold.

*        *        *

Since alleging the Counts in 2020, ICEE has had *three years* to gather evidence on the threshold issue of subject matter jurisdiction.  It has failed.  Specifically, Request for Production No. 37 requested "[a]ll Documents establishing that SPL's alleged infringement has a substantial effect on U.S. commerce, including ICEE's ability to license the SLUSH PUPPIE Marks in the United States." (Ex. J, ICEE Resp. to RFPs.)  ICEE's responsive production contained no evidence of any effect.  Still, as of today, ICEE has not produced and cannot prove any substantial effect.

2.  <u>SPL is Not a U.S. Citizen and has No Relevant Connection to the United States.</u>

SPL is not U.S. citizen.  (Ex. G, ¶¶ 3, 5.)  SPL has no offices, employees, property, or bank

- 14 -

accounts in the U.S. (Ex. G, ¶ 8.) SPL does not and is not licensed to do business in the U.S. (Ex. G.) ICEE does not dispute these well-established facts. (Doc. 152-1, Answer, ¶ 1; *see also* Doc. 152-1, Amended Counterclaims, ¶ 1 ("Slush Puppie Limited is a company organized under the laws of the United Kingdom, with its principal place of business at . . . Buckinghamshire, HPT12 3TA.").) This factor supports a lack of jurisdiction. *See, e.g.*, *Aerogroup Int'l*, 955 F. Supp. at 224; *Southco*, 982 F. Supp.2d at 513.

ICEE may seek to avoid this straightforward conclusion by arguing that SPL consented to jurisdiction in the Southern District of Ohio by filing suit here. However, "no action of the parties can confer subject matter jurisdiction upon a federal court." *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S.Ct. 2099 (1982) ("[T]he consent of the parties is irrelevant" in resolving subject matter jurisdiction to hear a dispute).

As such, ICEE's counterclaims fail both facially and factually with regard to this factor.

3. <u>Numerous Conflicts Exist Between SPL's Foreign Trademark Rights and ICEE's Domestic Trademark Rights.</u>

In advocating for this Court to adjudicate ICEE's extraterritorial dispute with SPL, ICEE also entices this Court to overlook conflicts relating to rights to the SLUSH PUPPIE marks in the foreign jurisdictions at issue. "[T]he existence of a conflict with a foreign trademark registration weighs against extraterritorial application of the Lanham Act." *Aristocrat Techs., Inc. v. High Impact Design & Entertainment,* 642 F.Supp.2d 1228, 1236 (D. Nev. 2009). Indeed, the parties' rights and relationships between SPL and ICEE with regarding to the SLUSH PUPPIE marks overseas are contested in *active litigation in other jurisdictions*.

As an initial matter, ICEE contends that it has trademark rights in the same foreign jurisdictions where it asks this Court to interfere. For example, ICEE pleads that "ICEE is the owner of registered trademarks for the SLUSH PUPPIE Marks . . . in . . . the United Kingdom,

and the European Union." (*See* Doc. 152-1, ¶ 120; Doc. 152-1, ¶21 (seeking intervention in the United Kingdom and Ireland); Ex. K, at 100, Trademark Search Report (United Kingdom registration for SLUSH PUPPIE); *id.,* at 78 (Ireland registration for SLUSH PUPPIE).)

Contemporaneous with this litigation, ICEE has asserted those foreign trademark rights against SPL in a number of proceedings in Europe. SPL has contested them, invoking questions regarding the validity and enforceability of ICEE's foreign trademark assets. For example, J&J Snack Foods Corporation ("J&J")[2] filed a complaint against Frozen Brothers BV (Netherlands)[3] before WIPO regarding the domain name <slushpuppie.nl>. (Ex. E.) There, J&J asserted Benelux Union and the European Union SLUSH PUPPIE marks. (*Id.* at Sec. 4.) In response, Frozen Brothers BV argued that these marks *were invalid and should be revoked due to non-use.* (*Id.*, Sec. 5(B).) Those arguments demonstrate a clear conflict with this Court *assuming* the validity of and enforcing ICEE's asserted trademark rights in foreign jurisdictions. Ultimately, WIPO denied J&J's complaint, in favor of Frozen Brothers BV's rights to the domain. (*Id.* at Sec. 7.)

Further, on February 4, 2021, J&J sued Frozen Brothers Ltd. (United Kingdom), Frozen Brothers GmbH (Germany), and Frozen Brothers Switzerland AG (Switzerland), and several managing directors of these entities (including Mark Peters and Laura Peters) (collectively, "Frozen Brothers") in the Regional Court of Landgericht Stuttgart in Germany. In J&J's complaint, J&J claims that Frozen Brothers infringes J&J's European Union trademarks, including through the domain <slushpuppie.de>. (*See* Ex. F, at 6 (SLUSH PUPPIE Union Mark 017092446), at 7 (SLUSH PUPPIE & Design Union Mark 000476200), 15-23 (including registration information), and 50 (domain search for <slushpuppie.de>).) Here too, the same invalidity and revocation arguments are available to SPL. Importantly, J&J has asserted European Union

---

[2]ICEE is J&J's frozen carbonated beverage distribution subsidiary.
[3] SPL has several subsidiaries, including, among other, Frozen Brothers BV. (Ex. G, ¶ 4.)

trademarks and claims entitlement to relief for the entirety of Europe. This litigation is ongoing.

As such, this Court's assumption of the validity and enforceability of ICEE's *domestic* trademark rights in these foreign jurisdictions presents a square conflict with ongoing litigation contesting SPL's foreign trademark rights.

Under these facts, courts have found a lack of subject matter jurisdiction. For example, in *International Café, S.A.L. v. Hard Rock Café Intern. (U.S.A.), Inc.*, the Eleventh Circuit found that it had no jurisdiction over a dispute between a Lebanese franchisee of a U.S. defendant concerning activities in Lebanon where civil suits concerning the dispute remain pending in Lebanon. 252 F.3d 1274, 1279 (11th Cir. 2001); *cf. Steele*, 73 S.Ct. at 289 (Mexican courts had already cancelled the U.S. defendant's trademark registration such that "there can be no interference with the sovereignty of another nation"); *Ubiquiti Networks,* 2012 WL 2343670, at *7–9 (denying any relief as to claims regarding Argentinian trademark actively contested in Argentina).

*    *    *

Each of the relevant factors weighs against extraterritorial application of the Lanham Act to the facts in this case. Therefore, this Court should dismiss Counterclaims 4 and 5.

**B. This Court Should Dismiss and Decline to Exercise Supplemental Subject Matter Jurisdiction Over Counts Six and Seven.**

Count Six should also be dismissed and this Court should decline supplemental jurisdiction over Count Seven. Each contain at least the following jurisdictional flaws: (1) without the Counts, ICEE's breach of contract counts do not contain the same nucleus of facts to support supplemental jurisdiction; (2) they rely *only* upon the same nucleus of post-termination, extraterritorial allegations as the Counts; and (3) they concern complicated post-termination conduct and the transition into a new brand, distinct from the central breach of contract claims.

A district court may decline to exercise supplemental jurisdiction over a state law claim

- 17 -

where it has dismissed all federal claims with original jurisdiction, or the claim substantially predominates over the claims with original jurisdiction.  28 U.S.C. § 1367(c)(2)-(3); *see also Taylor v. First of America Bank-Wayne*, 973 F.2d 1284, 1287 (6th Cir. 1992).

Under these same circumstances, courts finding no subject matter jurisdiction over extraterritorial trademark infringement claims have similarly dismissed the tag-along unfair competition and unjust enrichment claims.  *Atl. Richfield*, 150 F.3d at n.5 ("[B]ecause the same activities underlying the federal claims underlie the dilution and unfair-competition claims, which arise under New York law, and because Arco understandably does not contend that the scope of New York law is broader than that of the Lanham Act, we need not address Judge Keenan's dismissal of Arco's state-law claims."); *McBee v. Delica Co.*, 417 F.3d 107, 128 (1st Cir. 2005) (affirming dismissal of state law claims for lack of any viable federal claim).

First, courts do not possess supplemental jurisdiction without a "common nucleus of operative facts."  *Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 195, 209 (6th Cir. 2004)[4].  Courts consider "whether the claims arise from the same facts, or involve similar occurrences, witnesses or evidence."  *Hudson v. Delta Air Lines, Inc.*, 90 F.3d 451, 455 (11th Cir. 1996).  ICEE does not dispute this conclusion.  (Doc. 185, PageID #:6263 ("Our position is we terminated the contracts on June 25 of 2019, so we're certainly not alleging violation so the contract after that date."), and PageID #:6341 ("The unjust enrichment claim kicks in on that day moving forward . . . .").)  If this Court dismisses the Counts, then Counts Six and Seven will not share a nucleus of operative facts with the breach of contract claims necessary to support supplemental jurisdiction.

Second, without the Counts, no federal claims will remain.  "When all the federal claims in a case have been dismissed, there is a strong presumption in favor of dismissing any remaining

---

[4] For the same reason, Counts Six and Seven are not "compulsory."  Compulsory claims arise out of the same transaction or occurrence as the subject matter of the opposing party's claim.  Fed.R.Civ.P. 13(a).

state law claims unless the plaintiff can establish an alternate basis for federal jurisdiction." *Bishop v. Children's Ctr. for Developmental Enrichment*, 618 F.3d 533, 539 (6th Cir. 2010); *see also Southard v. Newcomb Oil Co., LLC*, 7 F.4th 451, 453 (6th Cir. 2021).

In Count Six, ICEE asserts the common law companion to the Counts. (*See* Doc. 152-1, ¶ 152 ("ICEE also has common law rights"); *see also* Doc. 152-1, ¶ 153 ("SPL's use of ICEE's SLUSH PUPPIE Marks is likely to cause confusion . . . .").) ICEE does not make any additional allegations. Further, Ohio treats the Ohio Deceptive Trade Practices Act as a corollary to trademark law. *See Torrance v. Rom* 157 N.E.3d 172 (Ohio App. 8 Dist., 08-06-2020), *app. denied*, 161 Ohio St.3d 1440, 162 N.E.3d 826 ("Ohio courts construe the Ohio Deceptive Trade Practices Act (ODTPA) consistent with authority under comparable federal statutes.").

ICEE's proposed Count Seven also relies on and extends the Counts. Courts can find supplemental jurisdiction over unjust enrichment claims against foreign entities where subject matter jurisdiction is established by federal trademark infringement claims. *Alpacific S.A. v. Diageo Latin Am. & Caribbean, Inc.*, No. 10-CV-23822-CIV, 2012 WL 12844739, at *3 (S.D. Fla. Mar. 28, 2012). Without the trademark infringement claims, ICEE is out of luck. ICEE specifically relies upon supplemental jurisdiction to support this unjust enrichment claim. (Doc. 152-2, ¶ 3 (adding 28 U.S.C. § 1367 at the same time as adding Count Seven); *see also* Doc. 152-2, ¶ 160 (selectively incorporating ¶¶ 1-78 ICEE's factual allegations), ¶¶ 120-136, 141, 142, and 145 (the Counts).) Further, under the Lanham Act, unjust enrichment is a theory of monetary damages. *George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532, 1538 (2d Cir. 1992).

Third, Count Six and Seven are distinct and certainly predominate over the breach of contract claims that are the focus of this litigation. *Cirasuola v. Westrin*, 124 F.3d 196 (6th Cir. 1997) (affirming dismissal "where the state law claims predominate"). ICEE does not dispute this

conclusion.  (Doc. 185, PageID #: 6253 ("[Y]ou know, the case is complicated enough . . . .").)  The breach of contract claims and defenses alleged by both SPL and ICEE are straightforward.  The Agreements contain clear terms, and the facts are largely undisputed.  Count Six and Seven, however, implicate international trademark rights and defenses, as set forth in detail above.  Count Six concerns post-termination conduct where SPL has contended that the termination was wrongful and continued its use in reliance upon this understanding.  (Doc. 72, ¶¶ 97-103.)  Moreover, SPL's post-termination cessation activities were complicated by the onset of the COVID-19 global pandemic.  As such, the litigation of any post-termination conduct will necessarily implicate defenses based on the impact of the pandemic.  Additionally, Count Seven concerns a *new* brand and whether SPL allegedly continued use of the SLUSH PUPPIE marks as a trademark to bolster the new Slushy Jack's brand.  This is a sophisticated, complex claim—relying upon law, concepts, and evidence drastically different from that of breach of contract claims.  All of this post-termination conduct is complicated and will predominate over the straightforward breach of contract claims that are the foci of this litigation.

This Court should dismiss Count Six and decline to exercise jurisdiction over Count Seven.

## V.    CONCLUSION

Based on the foregoing, Plaintiff, Counter-Defendant Slush Puppie Limited respectfully requests that this Court dismiss Defendant The ICEE Company's First Amended Counterclaim Counts Four and Five with prejudice.  If this Court dismisses Counts Four and Five, then this Court should also dismiss Count Six and decline to exercise jurisdiction over Count Seven.

Respectfully submitted,

BENESCH, FRIEDLANDER,
 COPLAN & ARONOFF LLP

/s/ *Eric L. Zalud*
Eric Larson Zalud (0038959)
Laura E. Kogan (0093369)
200 Public Square, Suite 2300
Cleveland, OH  44114
(216) 363-4500 - Telephone
(216) 363-4588 - Facsimile
ezalud@beneschlaw.com
lkogan@beneschlaw.com

Jennifer M. Turk (0073781)
41 South High Street, Suite 2600
Columbus, Ohio 43215
(614) 223-9300 – Telephone
(614) 223-9330 – Facsimile
jturk@beneschlaw.com

*Attorneys for Plaintiff Slush Puppie Limited*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 7, 2023, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's case management and electronic filing system. Parties may access this filing through the Court's case management and electronic filing system.

/s/ *Eric L. Zalud*
Eric Larson Zalud
*Attorney for Plaintiff Slush Puppie Limited*