**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**

| | |
|---|---|
| SLUSH PUPPIE LIMITED,<br><br>Plaintiff/Counterclaim Defendant,<br><br>v.<br><br>THE ICEE COMPANY,<br><br>Defendant/Counterclaim Plaintiff. | CASE NO. 1:19-cv-00189-MRB<br><br>Judge Michael R. Barrett |

**DEFENDANT THE ICEE COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PARTIAL RECONSIDERATION OF JUNE 27, 2025 ORDER**

## I. INTRODUCTION

ICEE seeks partial reconsideration of the Court's June 27, 2025 Opinion and Order on a narrow but important issue. In July 2023, after *Abitron* was decided by the Supreme Court, ICEE provided formal notice pursuant to Fed. R. Civ. P. 44.1 that it intended to raise an issue of foreign law, including U.K. trademark law. Thereafter, the parties extensively briefed and argued the issue of whether ICEE's claims for trademark infringement and unfair competition, if not proper under the Lanham Act and ODTPA for extraterritorial reasons, could proceed with the Court applying U.K. trademark and unfair competition law. SPL's only argument against applying U.K. trademark law to ICEE's infringement and unfair competition claims was that ICEE had not expressly pled U.K. trademark or unfair competition claims. But Rule 44.1 does not require any such pleading: "A party who intends to raise an issue about a foreign country's law must give notice by a pleading *or other writing*." Fed. R. Civ. P. 44.1 (emphasis supplied). Indeed, the advisory committee's note to this rule states that "it seems best to permit a written notice to be given outside of and later than the pleadings, provided the notice is reasonable." Fed. R. Civ. P. 44.1 Adv. Com. Note. Since SPL has had notice of ICEE's position for almost two years and its U.K. counsel, RPC, are well versed in the U.K. law of trademarks and passing off (indeed, they have admitted that summary judgment against SPL would be appropriate under the Trade Marks Act 1994), permitting ICEE to proceed with such claims could not conceivably cause SPL any prejudice.

Nonetheless, the Court's otherwise very thorough opinion did not address ICEE's argument. Accordingly, ICEE respectfully requests that the Court reconsider its dismissal of the Lanham Act and ODTPA claims and order that ICEE can pursue its infringement and unfair competition claims under the analogous U.K. substantive law, or, in the alternative, that ICEE be granted leave to file a Third Amended Counterclaim that specifically pleads the application of

U.K. law. This issue is an important one not only for this case, but also for trademark law more generally. With *Abitron* now narrowing the infringements that will be cognizable under the Lanham Act, parties in cross-border infringement cases will no doubt increasingly ask courts to apply foreign law to the portion of the claim that may not be actionable under the Lanham Act, but that is a violation of similar foreign trademark law. The parties squarely addressed this issue, and SPL's position is contradicted by the plain language of Rule 44.1. Accordingly, ICEE respectfully requests that the Court resolve it.

## II. FACTUAL AND PROCEDURAL BACKGROUND

SPL filed this case to "to enforce its contractual right to exclusive use within the United Kingdom and certain other specifically identified territories in Europe of certain trademarks owned by . . . ICEE." Doc. 5 at PAGEID 180. Among its initial claims was one under the Ohio Deceptive Trade Practices Act. That claim alleged that ICEE was "causing a likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods and services" and "a likelihood of confusion or misunderstanding as to affiliation, connection, or association with Plaintiff SPL" in violation of the ODTPA. Doc. 1-1 at PAGEID 26. The alleged wrongdoing causing this alleged harm was all outside of the U.S. Doc. 1-1 at PAGEID 21 (referring to unauthorized licensing in the "2000 Territory" under the forged 2000 Appointment, which is the U.K. and most of Europe).

SPL amended its complaint on December 16, 2019. Doc. 27. In its First Amended Complaint, SPL reasserted its claim under the ODTPA, again alleging that ICEE was causing a likelihood of confusion as to source, approval, affiliation, and so forth with regard to U.K. and European trademarks in those territories. Doc. 27 at PAGEID 374-375. And, again, SPL failed

to allege any harm to its business in the United States, or any connection of the claims to the United States.

In response to SPL's First Amended Complaint, ICEE filed two claims under the Lanham Act, the first for trademark infringement of ICEE's trademarks in the U.K. and the European Union, and based upon the substantial effect those activities had on U.S. commerce (a reference to the then-prevailing test for judging the scope of the Lanham Act's application), and the second for unfair competition and false designation of origin. Doc. 29 at PAGEID 515-520. In responding to the counterclaims, SPL failed to seek dismissal for lack of jurisdiction or under Rule 12(b)(6). Doc. 32. Three years went by without SPL making any "extraterritoriality" argument regarding ICEE's counterclaims.

In March 2023, the Court granted ICEE's motion to amend its counterclaims. Doc. 190. ICEE filed its first amended counterclaims on April 4, 2023. Doc. 196. In response, SPL filed a motion to dismiss the Lanham Act claims for lack of subject jurisdiction and for failure to state a claim. Doc. 201. Notwithstanding the fact that SPL had filed this lawsuit claiming likelihood of confusion with regard to entirely foreign activity, SPL's motion claimed that ICEE's Lanham Act claims should be dismissed on extraterritoriality grounds. Doc. 201 at PAGEID 7521-7535. In its June 27, 2025 order and memorandum, the Court held that SPL's motion to dismiss was procedurally improper because it should have been raised in response to ICEE's amended counterclaims filed in January 2020. Doc. 316 at PAGEID 15165-15168.

After briefing on the motion to dismiss was completed, on June 29, 2023, the Supreme Court decided *Abitron Austria GmbH v. Hetronic Int'l Inc.*, 600 U.S. 412 (2023). As the Court has noted, quoting McCarthy on Trademarks, "The *Abitron* decision wiped the slate clean and launched the law in a new direction." Doc. 316 at PAGEID 15159, *quoting* T. McCarthy,

*McCarthy on Trademarks and Unfair Competition* § 29:59 (5th ed. May 2025 update). The parties thereafter submitted letter briefs to the Court regarding the impact of *Abitron* on SPL's pending motion to dismiss.

In connection with this post-*Abitron* briefing and in light of the fact that *Abitron* had "effectively expunged all the various tests used by the Courts of Appeal to determine if the Lanham Act reached conduct outside the United States," Doc. 316 at PAGEID 15159, ICEE provided formal notice pursuant to Fed. R. Civ. P. 44.1 that it intended to raise issues of foreign law, including the law of the United Kingdom with regard to trademark infringement and unfair competition. Doc. 224 at PAGEID 8756. Rule 44.1 provides: "A party who intends to raise an issue about a foreign country's law must give notice by a pleading *or other writing*." (emphasis supplied). In briefs and letter briefs to the Court over the next few months, ICEE argued that, in the event the Court were inclined to accept SPL's arguments pursuant to *Abitron* that ICEE had failed to state claims under the Lanham Act because the conduct at issue was extraterritorial, the Court should apply U.K. law with regard to trademark infringement and unfair competition. For example, during the November 28, 2023 hearing ICEE counsel explained ICEE's position: "So the whole point there is that they are leveraging the Slush Puppie name. And we have testimony from their head of sales that, in fact, they had to do that. If they had not held themselves out as Slush Puppie and had they not continued to sell Slush Puppie-branded consumables and other products while transitioning to Slushy Jack's that they would have lost all the business. . . . That's a violation of UK trademark law, which we have given notice of under Rule 44.1 of the Federal Rules of Civil Procedures as we're supposed to if there is an issue of foreign law." Doc. 244 at PAGEID 9552-53. *See also* Doc. 225 at PAGEID 8773-74; Sept. 1, 2023 Letter from D. Wolfsohn to Hon. Michael R. Barrett ("the Court should . . . reject SPL's assertion that, contrary

to Rule 44.1, ICEE somehow needs to plead foreign law claims ('it seems best to permit a written notice to be given outside of and later than the pleadings, provided the notice is reasonable,' Fed. R. Civ. P. 441 Adv. Com. Note))"; Doc. 246 at PAGEID 9570 ("As we pointed out in our opposition to Plaintiff's motion to stay, SPL's conduct is illegal under U.K. and European law. Months ago, we provided notice under Fed. R. Civ. P. 441.1 of these issues of foreign law, and SPL has not challenged that assertion. In particular, trademark infringement under U.K. law does not differ in any material respect from that under the Lanham Act . . ."); Doc. 228 at PAGEID 8899 ("And if SPL turns out to be right that some of its infringement is beyond the reach of the Lanham Act, then the Court can apply the appropriate foreign law to that portion of ICEE's claim under F.R.C.P. 44.1, which courts have recognized is 'routine.'" (citing *Baker-Bauman v. Walker*, 2007 WL 1026436 (S.D. Ohio Mar. 29, 2007) and *Blockbuster, LLC v. Grup Mizbe, S.A*., 2015 WL 12712312 (S.D. Fla. July 24, 2015).

The only argument SPL has ever made against ICEE's position was that ICEE had not ***pled*** infringement or unfair competition claims under foreign law. Doc. 249 at PAGEID 9594 ("ICEE has plead [sic] no claims under foreign law. If it wishes to assert those, it should do that in Europe, i.e., a *forum mais conveniens*. Accordingly, SPL's subject matter jurisdictional arguments must prevail."), Doc. 231 at PAGEID 8983 ("ICEE has not pled any and has not raised any authority demonstrating that a United States court can determine Lanham Act liability based upon foreign law. . . . There is no claim in this case based upon foreign law."). Of course, Rule 44.1 does not require that notice be provided in a pleading; an "other writing" suffices. Fed. R. Civ. P. 44.1. And, given the fact that *Abitron* "wiped the slate clean and launched the law in a new direction," Doc. 316 at PAGEID 15159, the need to reference foreign law did not arise until after *Abitron* was decided—which was well after the second amended counterclaims

were due and after briefing on SPL's motion to dismiss was closed.

Meanwhile, on October 10, 2024, ICEE and its parent company J&J Snack Foods Corp. filed claims against Mark Peters and SPL's parent company, Ralph Peters & Sons LLP, in the High Court of Justice, Business and Property Courts of England and Wales, Intellectual Property Division. Exh. A (Claim Form). Among other things, ICEE and J&J asserted claims for violation of subsections 10(1), 10(2), and 10(3) of the U.K. Trade Marks Act 1994 and the U.K. law of passing off. *Id.* Counsel for the Benesch Respondents has described the U.K. lawsuit as "identical." Doc. 282 at PAGEID 13595 ("RPC is a major European law firm which currently represents Plaintiff in an identical claim filed in the UK by ICEE."). And SPL counsel has characterized the claims asserted in the U.K. as similar to ICEE's counterclaims. Doc. 285 at PAGEID 13992 ("However, SPL's Motion has no bearing on the English Proceedings. Unlike ICEE, SPL understands that they are two separate actions, despite the similarity of the claims, and that documents designated as Protected Material under the Order can only be used in *this* case.") (emphasis in original).

Moreover, at a hearing on motions filed by ICEE and J&J Snack Foods, SPL (now known as Frozen Brothers Limited) admitted that the case against it based on the registered marks under Section 10(1) of the Trade Marks Act 1994 was "straightforward" and that summary judgment would be warranted against SPL/FBL and in favor of the plaintiffs under that Act. Exh. B, Feb. 12, 2025 Tr. at 46:21-47:17 ("this is actually but a simple IP claim. In short, has a party infringed various registered and Phase 2 unregistered intellectual property rights"; agreeing with Mr. Justice Fancourt that "[i]t would be straightforward [if] it was brought against

FBL" and agreeing with the court that "[i]t would be summary judgment more or less, based on what has been determined already in Ohio," subject to the appropriate pleadings).[1]

After the third judge in the U.K. proceedings reversed the ruling of the first judge regarding the freezing and imaging orders requested by ICEE and J&J, the plaintiffs then prepared amended Particulars of Claim that again asserted violations of subsections 10(1) and 10(3) of the Trade Marks Act 1994 and the U.K. law of passing off, but this time adding SPL (Frozen Brothers Limited) as a defendant. ICEE and J&J sent the amended Particulars of Claim to SPL, but SPL has not provided consent to its filing or to the joinder of SPL/FBL. In the meantime, however, SPL signed a standstill agreement, and the U.K. proceedings have been stayed because of the overlap between the U.K. claims against SPL and the Ohio claims against SPL. Exh. C. Accordingly, in the event that this Court denies this motion and the stay is lifted, it is unclear whether SPL will argue in the future that any claim under the Trade Marks Act 1994 or for passing off should have been asserted in Ohio or should otherwise be dismissed on procedural grounds.

## III. ARGUMENT

District courts have the authority under common law and Rule 54(b) to reconsider interlocutory orders prior to entry of final judgment. *Cannon-El v. Meyer Tool, Inc.*, 2020 WL 13648505 at *1 (S.D. Ohio July 27, 2020). Courts have the discretion to reconsider orders where there is an intervening (1) change of controlling law, (2) new evidence available, or (3) a need to correct a clear error or prevent manifest injustice. *Id.* at *1.

[1] Ms. Collett is a London barrister who specializes in trademark and IP law.

In its June 27 order and memorandum opinion, the Court did not address ICEE's argument that, in the event the Court concluded that ICEE's Lanham Act or ODTPA claims failed to state a claim because the infringement/conduct alleged took place overseas, the Court should apply foreign law. ICEE respectfully submits that it was a clear error of law and would cause manifest injustice for the Court to dismiss those claims rather than permit ICEE's infringement and unfair competition claims to proceed while applying the UK Trade Marks Act 1994 and U.K. law of passing off.

Notably, when the parties were addressing this issue in 2023, SPL's only argument against applying U.K. law was that ICEE had failed to plead it. Doc. 249 at PAGEID 9594 ("ICEE has plead [sic] no claims under foreign law.");[2] *see also* Nov. 28, 2023 argument, Doc. 244 at PAGEID 9552-55 (Mr. Zalud, although "chomping at the bit" to speak, raising no objection to the application of UK trademark law). But, as noted, Rule 44.1 does not require that a party plead foreign law; an "other writing" suffices. As the advisory committee note states: "it seems best to permit a written notice to be given outside of and later than the pleadings, provided the notice is reasonable." Fed. R. Civ. P. 44.1 Adv. Com. Note. Given that *Abitron* was not decided until months after ICEE's second amended counterclaims were due, ICEE had no need to provide notice any earlier, much less to add references to the Trade Marks Act 1994 to those amended counterclaims. Instead, shortly after *Abitron* was decided, ICEE notified SPL formally in July 2023, and then filed of record explanations of why the Court could easily substitute the Trade Marks Act 1994 for the Lanham Act in this case. For example, ICEE argued that:

[2] SPL also argued that if ICEE wanted to assert claims under foreign law, "it should do that in Europe, i.e., a *forum mais conveniens*." Doc. 249 at PAGEID 9594. But SPL has not consented to the joinder of SPL to the U.K. proceedings, in which ICEE and J&J Snack Foods assert claims under the Trade Marks Act 1994 and for passing off.

> Even if it turns out that some of SPL's conduct is outside the reach of the Lanham Act after Abitron . . . the result would not be for this Court to deny discovery into SPL's illegal conduct, but rather to apply foreign trademark law to ICEE's claims . . . .ICEE is providing notice pursuant to Fed. R. Civ. P. 44.1 of an issue involving the law of the United Kingdom . . . Not surprisingly, those laws similarly prohibit a former licensee's willful infringement of an owner's trademark, as alleged in ICEE's second amended counterclaims. In the event that the Court determines that certain of SPL's conduct is not actionable under U.S. law, therefore, the appropriate course would be for the Court to determine relevant foreign trademark infringement law with respect to any of SPL's foreign conduct that is not actionable under United States law. Accordingly, SPL's extraterritoriality arguments are not a reason to dismiss any of ICEE's counterclaims or delay discovery even further.
>
> Doc. 225 at PAGEID 8773-8774.

Importantly, SPL never argued that the Trade Marks Act 1994 differs in any material respect from the Lanham Act, or that the Court would have any difficulty in applying that act or instructing the jury on its pertinent elements. Indeed, counsel for the Benesch Respondents argued that the claims are "identical," and Benesch has conceded their "similarity." Doc. 282 at PAGEID 13595; Doc. 285 at PAGEID 13992. And at a London hearing in February 2025, SPL admitted, through its IP specialist barrister, that the Section 10(1) claims against SPL under the Trade Marks Act 1994 are "straightforward" and that it would be appropriate to enter summary judgment against SPL on them. More recently, SPL agreed to a stay of the U.K. proceedings because of the overlap of the claims asserted in the two fora. Exh. C.

Subsections 10(1), 10(2), and 10(3) of the Trade Marks Act 1994 provide as follows:

> (1) A person infringes a registered trade mark if he uses in the course of trade a sign which is identical with the trade mark in relation to goods or services which are identical with those for which it is registered.
>
> (2) A person infringes a registered trade mark if he uses in the course of trade a sign where because—

> (a) the sign is identical with the trade mark and is used in relation to goods or services similar to those for which the trade mark is registered, or
>
> (b) the sign is similar to the trade mark and is used in relation to goods or services identical with or similar to those for which the trade mark is registered,
>
> there exists a likelihood of confusion on the part of the public, which includes the likelihood of association with the trade mark.
>
> (3) A person infringes a registered trade mark if he uses in the course of trade in relation to goods or services, a sign which—
>
> (a)is identical with or similar to the trade mark, (b) where the trade mark has a reputation in the United Kingdom and the use of the sign, being without due cause, takes unfair advantage of, or is detrimental to, the distinctive character or the repute of the trade mark.
>
> (3A)Subsection (3) applies irrespective of whether the goods and services in relation to which the sign is used are identical with, similar to or not similar to those for which the trade mark is registered.

Trade Marks Act 1994.

These subsections are similar to the following provisions in the Lanham Act:

> (1) Any person who shall, without the consent of the registrant—
>
> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or
>
> (b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,
>
> shall be liable in a civil action by the registrant for the remedies hereinafter provided.

Courts often apply foreign law much less familiar than the Trade Marks Act 1994 or the U.K. law of passing off, and much less similar than it is to the Lanham Act and ODTPA—even foreign law written in languages other than English and markedly divergent from U.S. law. *See, e.g., Baker-Bauman,* 2007 WL 1026436, at *1-2 (denying motion to dismiss patent claims under Chinese and Australian patent law); *Kinon Surface Design, Inc. v. Hyatt Corp*., 2019 WL 4731771, at *3 (S.D. Fla. January 29, 2019) (denying motion to dismiss claims under the law of the Peoples Republic of China for copyright infringement where factual allegations "involve substantial overlap"; citing Rule 44.1); *Blockbuster, LLC,* 2015 WL 12712312, at *2 (declining to dismiss trademark claims under Panamanian law; citing Rule 44.1).

Here, the claims are similar whether under the Lanham Act, the ODTPA, or under U.K. trademark and passing off law, and SPL has already conceded that the section 10(1) claim against SPL is "straightforward" and subject to summary judgment. SPL has mustered no legitimate argument about why the Court should not apply the Trade Marks Act 1994 and U.K. passing off law to ICEE's infringement and unfair competition claims, and there isn't one. Accordingly, ICEE respectfully requests that the Court reconsider the portion of its decision dismissing with prejudice the Lanham Act and ODTPA claims, instead substituting U.K. trademark and passing off law.

Further, there are compelling reasons for the infringement and unfair competition counterclaims to be tried along with the unjust enrichment and breach of contract counterclaims. As the Second Amended Counterclaims make clear, many of the key facts are relevant to both the unjust enrichment and infringement and unfair competition claims, as well as to the contract claims. *See* Doc. 196 at PAGEID 7126-7144, 7151-7155, 7162-7165. It would be inefficient to have to try the unjust enrichment and contract claims in this Court and later try the infringement

and unfair competition claims in the U.K. Moreover, the infringement and unfair competition claims arise out of ICEE's termination of the 1996 and 1999 Agreements based on SPL's breaches of those agreements, so SPL's breaches of contract are going to be part of the evidence at trial in this Court. Efficiency thus favors trying all the claims in one trial. Because there is no legitimate reason not to try all these closely related claims in this forum, it would be a manifest injustice for the Court to let stand its order dismissing the Lanham Act and ODTPA claims without also granting ICEE leave to assert those claims under U.K. law.

Moreover, SPL may assert in the U.K. proceedings that ICEE cannot assert infringement claims in the U.K. because of the parties' forum selection clauses. It would create a manifest injustice for ICEE to be barred from asserting infringement claims both here and in the U.K., especially given the fact that it was SPL that chose this forum to assert claims that its goodwill and customer relationships exclusively in the U.K. and Europe had been harmed by ICEE's conduct in licensing rights to others in the U.K. and Europe. It would be truly perverse for SPL to be permitted to block ICEE from asserting trademark infringement claims in Ohio due to extraterritoriality, but then block ICEE from asserting them in the U.K. because of the parties' forum selection clause, or for some other procedural reason. Indeed, despite SPL arguing that an overseas forum is "mais conveniens," its UK counsel has refused to consent to the joinder of SPL in the UK Proceedings or to agree that it would not seek to defend those claims on the ground that they should be decided in Ohio.

As noted, SPL's only argument against applying U.K. law was that ICEE had not expressly pled it. Of course, Rule 44.1 does not require a pleading. But to the extent the Court concludes that foreign law should have been pled, ICEE respectfully requests that the Court reconsider its decision to dismiss the infringement and unfair competition claims with prejudice,

and instead grant ICEE leave to add express reference to the applicable provisions of the Trade Marks Act 1994 to its Second Amended Counterclaims.

In dismissing ICEE's ODTPA claim, this Court relied heavily on the court's decision in *Brave Optical, Inc. v. Luxottica of Am. Inc*., 2025 WL 962827, at *9 (S.D. Ohio Mar. 31, 2025). This Court noted that Judge Cole in *Brave Optical* dismissed the ODTPA claims without prejudice so as to provide the plaintiff to seek leave to amend the claims under an appropriate state's or states' law. Doc. 316 at PAGEID 15173. This Court held that granting leave to amend would make no sense in this case "because ICEE concedes that the conduct and consequences of which it complains occurred in the United Kingdom and Europe." *Id.* But leave to amend should be granted to the extent the Court concludes that, notwithstanding Rule 44.1, claims under the Trade Marks Act 1994 needed to have been expressly pled. ICEE relied upon the parties' choice of law clause in asserting a claim under the ODTPA. Since the Trade Marks Act 1994 covers similar infringement claims, albeit where the conduct and harm did not necessarily take place in Ohio, ICEE should be permitted to so allege.

SPL has been on notice of ICEE's notification of foreign law for almost two years. SPL is also familiar with the Trade Marks Act 1994 and its applicability to the facts alleged in the Second Amended Counterclaims because of its involvement in the U.K. proceedings. SPL has even conceded that summary judgment would be appropriate under section 10(1) of the Trade Marks Act 1994 against SPL. Accordingly, SPL will not be prejudiced by an order from this Court either ruling that the Trade Marks Act 1994 applies, or permitting ICEE to amend its counterclaims to so allege.

## IV. CONCLUSION

For the foregoing reasons, Defendant/Counterclaim Plaintiff The ICEE Company respectfully requests that the Court grant its Partial Motion for Reconsideration.

Dated: July 2, 2025

Respectfully submitted,

**DUANE MORRIS LLP**


BY: *_/s/ David J. Wolfsohn_*
David J. Wolfsohn (*admitted pro hac vice*)
Tyler R. Marandola (*admitted pro hac vice*)
30 South 17th Street
Philadelphia, PA 19103
Tel.: (215) 979-1000
Fax: (215) 979-1020
djwolfsohn@duanemorris.com
tmarandola@duanemorris.com

Kenneth M. Argentieri (Ohio Bar No. 0067493)
Trial Attorney
600 Grant St., Ste. 5010
Pittsburgh, PA 15219
Tel.: (412) 497-1000
Fax: (412) 497-1001
kmargentieri@duanemorris.com

*Attorneys for Defendant/Counterclaim Plaintiff, The ICEE Company*