# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| SLUSH PUPPIE LIMITED, <br><br> Plaintiff/Counterclaim Defendant, <br><br> v. <br><br> THE ICEE COMPANY, <br><br> Defendant/Counterclaim Plaintiff. | CASE NO. 1:19-cv-00189-MRB <br><br> Judge Michael R. Barrett |

**THE ICEE COMPANY'S STATEMENT OF SUBSTANTIAL NEED FOR BENESCH'S NOTES OF ANY COMMUNICATIONS WITH PETER SPLATT**

Pursuant to the Court's order of February 3, 2026, ICEE submits the following facts that support ICEE's position that it has made the showing of "substantial need" that satisfies Fed. R. Civ. P. 26(b)(3)(A) such that any memorializations of conversations or communications between any present or former Benesch attorneys and Peter Splatt should be produced forthwith.

ICEE has been attempting to obtain information regarding Peter Splatt and his role at SPL for 5 years.

ICEE first inquired into Mr. Splatt's role with plaintiff during the March 16, 2021 deposition of Laura Peters. At this time, we now know from the Teams chats belatedly produced by SPL five years later (on January 12, 2026) that Ms. Peters was having frequent check-ins on Teams with Mr. Splatt, who was managing the conversion of Slush Puppie customers to Slushy Jack's. (Mr. Zalud stated at the February 3, 2026 conference that SPL decided not to preserve these recordings because it had determined or was advised that they were not relevant.) At her March 2021 deposition, Ms. Peters pretended to know little about Splatt, and Mr. Zalud then shut

down the examination into Mr. Splatt's role and the rebranding, arguing that this was "competitive information":

> Q. What's his role in the company?
>
> A. It has to do with the digital.
>
> Q. I'm sorry? What?
>
> A. I think he's called the digital team. I'm not a hundred percent sure.
>
> Q. What's the digital team?
>
> A. They deal with the websites, to the best of my knowledge.
>
> Q. And does he work out of the High Wycombe office?
>
> A. No.
>
> Q. Where does he work?
>
> A. Japan.

Exh. 1, 83:13-92:16.

In the fall of 2021, after the preliminary injunction hearing, ICEE discovered that, contrary to Laura Peters' May 2021 declaration that SPL had stopped using the name "SLUSH PUPPIE" as of December 2020 (Doc. 105 at PAGEID 3015), SPL had incorporated a new company called Slush Puppie Ltd a few days before the hearing. Doc. 192 at PAGEID 6958. Mr. Zalud falsely represented to the Court that this incorporation "is unrelated to anything with this case or the issues before the Court." *Id.*

On July 26, 2022, ICEE served document requests requesting all communications with Splatt and all documents relating to the Slush Puppie and IC/ICEE trademark applications and domain names. SPL refused to produce any responsive documents. Exh. 2, Sept. 13, 2022 Letter to Hon. Michael R. Barrett at its Exh. A.

2

On September 2, 2022, pursuant to the Court's direction during the August 29, 2022 discovery conference, counsel held a lengthy meet and confer with plaintiff's counsel concerning the Benesch firm's refusal to produce documents regarding Mr. Splatt's role with the company. During the meet and confer—which we now know from the privilege log served by Benesch on February 3, 2026 took place four days after Ms. Turk's and Ms. Kogan's extensive interview of Splatt—Benesch falsely claimed that Mr. Splatt was not acting as an agent of plaintiff's. Exh. 2 at its Exh. B. In fact, the chat logs produced last month show that all the department heads at the company were regularly supervised by Mr. Splatt, including those of production, finance, HR, U.K. sales, and European sales.

ICEE submitted a letter to the Court on September 13, 2022, explaining the need for all the Splatt-related documents. Exh. 2. In his September 26, 2022 response, Mr. Zalud made the specious claim that Mr. Splatt's activities in registering the company called Slush Puppie Limited and various "Slush Puppie" and "ICEE" domain names and trademarks were not related to SPL's conduct. Exh. 3.

On October 31, 2022, counsel for ICEE asked for the deposition of Mr. Splatt. Doc. 213-13. Mr. Zalud responded by stating "we may be willing to work with you" if we explained why we wanted the deposition and how long we thought it would take. Doc. 213-14. The undersigned gave counsel that information on November 8, 2022. Doc. 198-1. In response, Mr. Zalud falsely asserted that Mr. Splatt was "an independent consultant who does not have authority to speak on behalf of the company." Doc. 213-15. Again, we now know from the chat logs and emails recently produced, as well as Mr. Peters' January 2026 testimony, that Splatt was authorized to supervise the various department heads, and to handle trademark issues on behalf of the company.

After the Court ruled in ICEE's favor on SPL's motion for a protective order regarding Slushy Jack's and ICEE's motion to amend its counterclaims, ICEE renewed its request to take Mr. Splatt's deposition on March 29, 2023, and then noticed it on April 4. Doc. 198-5; Exh. 4. SPL then filed a motion for a protective order regarding the depositions of Mr. Splatt, Ms. Peters, and Mr. Peters. Doc. 198. The motion argued that any information Mr. Splatt might have "is wholly irrelevant and does not support any cause of action raised in this lawsuit." Doc. 198 at PAGEID 7303; Doc. 217 at PAGEID 8622 ("ICEE has failed to dispute [sic] that a protective order as to Mr. Splatt's deposition notice will preclude the undue burden of responding to irrelevant information."). SPL also argued that Mr. Splatt's testimony would be "duplicative" of what Ann Marie Lynskey would testify about, although SPL refused to permit Ms. Lynskey's deposition until November 2025 and, in any event, Ms. Lynskey knew or remembered very little about the conversion of Slush Puppie customers to Slushy Jack's other than the product's recipes, and was not involved in the Peters-Splatt scheme involving "Slush Puppie" and "IC" trademark registrations, domain names, and social media accounts.

After the Court denied SPL's motion for a protective order, on August 29, 2025—over three years after ICEE had requested his deposition--SPL informed ICEE for the first time that Mr. Splatt was suffering from a serious medical condition that would affect his ability to testify in a deposition. Doc. 329 at PAGEID 15611. Plaintiff counsel's delaying tactics—based on numerous false and misleading representations to counsel and the Court over the past three years—have now resulted in the unavailability of Mr. Splatt for deposition. As a result, ICEE seeks the only factual information available about what Mr. Splatt himself has said that is relevant to this lawsuit.

Counsel for the Benesch Respondents has suggested that depositions of other witnesses could substitute for counsel's notes of their interviews of Mr. Splatt.[1]  But ICEE has taken the deposition of all the witnesses that could potentially have any knowledge about Mr. Splatt's activities on behalf of plaintiff, and those witnesses have made very clear that they cannot supply the "substantial equivalent" of Mr. Splatt's testimony.  *See* Fed. R. Civ. P. 26(b)(3)(A)(ii).  Indeed, when ICEE took the deposition of then-controller Russell Wallace back in 2022, Wallace said that *Mr. Splatt* was the one to talk to about SPL's digital ordering system, which was one of the subjects ICEE wanted to explore with Mr. Splatt.  Doc. 198-5 at PAGEID 7339.  Other depositions taken by ICEE more recently in which the deponents were not knowledgeable about the customer ordering systems or registration of trademarks and obtaining domain names include Ann Marie Lynskey in November and December 2025; Laura Peters in 2025; Mark Whitton in January 2026; and Simon Shale in January 2026.  None of them testified that their responsibilities included the registration of trademarks, obtaining domain names, or social media accounts.  And, since Benesch recently produced the Splatt documents, Benesch has refused to produce other witnesses who worked with Mr. Splatt, such as Kevin Scoles, Abiodum Somorin, and Mr. Splatt's son, Cale, claiming that it does not have the ability to obtain their cooperation.

As for Mr. Peters, he claims not to remember anything about Mr. Splatt's role with regard to the company's online presence and branding: "I don't recall six years ago,"  he repeated mantra-like last week.  Jan. 29, 2026 M. Peters Dep. 22:3-7.  He couldn't even say what his fellow director and niece's role was: "I don't recall exactly what her role was. . . I just don't

---

[1] Apparently, the Reminger firm is now representing SPL as well as the Benesch Respondents since Ms. Sethi's arguments during the February 3, 2026 conference and Mr. Kasson's argument during the January 23, 2026 conference did not relate to the motion for sanctions against the Benesch Respondents but rather to a discovery dispute involving claimed work product.

5

recall six years ago." *Id.* at 22:18-23:19. Mr. Peters appears to be suffering from the same selective memory lapses that he displayed during his 2020 testimony.

In sum, ICEE has spent hundreds of thousands of dollars in motion practice attempting to depose SPL's witnesses—including Mr. Splatt—about Mark Peters' schemes. SPL and Benesch have achieved their goal of preventing Mr. Splatt's deposition so that the critical information he has about Peters' schemes does not come to light. SPL should not be rewarded for this egregious misconduct by permitting it to shield from discovery the small scraps of factual information that may be available from Benesch's communications with Splatt.[2] There is no reasonable substitute for interview notes taken several years ago of a crucial witness who is now unavailable for deposition. Accordingly, ICEE easily meets the standard of showing both witness unavailability and substantial need. Fed. R. Civ. P. 26(b)(3)(A) (production of work product is authorized if materials "are otherwise discoverable and the party shows that it for the materials to prepare its case and cannot without undue hardship obtain their substantial equivalent by other means."); *Hanson v. Gartland S.S. Col*, 34 F.R.D. 493, 495 (N.D. Ohio 1964) (statements of seamen who could not be found were subject to discovery); *Saa v. Bank of America, N.A.*, 2010 WL 11506054, at \*2 (S.D. Fla. May 25, 2010) (witness statement ordered produced notwithstanding work product protection where witness had died); *McBride v. Medicalodges, Inc.*, 2008 WL 2157114, at \*2 (D. Kansas May 22, 2008 (witness statement ordered produced where attempts to

---

[2] If the interview notes truly contain "mental impressions, conclusions, opinions, or legal theories of a party's attorney," separate from factual recitation of the details of Mr. Splatt's statements, then the Court can order that those portions redacted before production. *See* Fed. R. Civ. P. 26(b)(3)(B). As a practical matter, though, that seems unlikely here given that Benesch's privilege log identifies the notetaker as an attorney who has never entered an appearance for SPL in this case, has never signed (or even been on the signature block of) any pleadings, and has never been copied on any correspondence. Apparently, the attorney was acting as a scribe. It is also not clear whether the logged notes from 2022 described in the log sent to the Court on February 3 are the only ones that Benesch has.

6

locate witness had failed); *McCoo v. Denny's Inc.*, 192 F.R.D. 675, 684-85 (D. Kansas 2000) (witness statements of persons who failed to appear for their subpoenaed depositions because they were unavailable and there was no substantial equivalent of the information); *United States v. Davis*, 131 F.R.D. 391, 395-96 (S.D.N.Y. 1990 (witness statement discoverable where witness was effectively unavailable because he would likely invoke the Fifth and was in Greece); *McNulty v. Bally's Park Place, Inc.,* 120 F.R.D. 27, 30 (E.D. Pa. 1988) (statement from defendant's employee discoverable where plaintiff was unable to reach him); *Goldner v. Chicago & N.W.Ry. Sys.*, 13 F.R.D. 326, 329 (N.D. Ill. 1952) (statements are discoverable if witnesses cannot be found or refuse to give information); James W. Moore, Moore's Federal Practice, Discovery of Trial Preparation, ¶ 26.15[3] at 26-308 & 309 ("In general, discovery will not be permitted where the party seeking production of the statement has access to the witness and may thus obtain equivalent evidence. However, if the witness has become unavailable since making the earlier statement, production is often ordered.").

Dated:  February 5, 2026          Respectfully submitted,

**DUANE MORRIS LLP**

BY:  */s/ Tyler R. Marandola*
David J. Wolfsohn (*admitted pro hac vice*)
Tyler R. Marandola (*admitted pro hac vice*)
30 South 17th Street
Philadelphia, PA 19103
Tel.: (215) 979-1000
Fax: (215) 979-1020
djwolfsohn@duanemorris.com
tmarandola@duanemorris.com

Kenneth M. Argentieri (Ohio Bar No. 0067493)
Trial Attorney
625 Liberty Ave., Ste. 1000
Pittsburgh, PA 15222
Tel.: (412) 497-1000
Fax: (412) 497-1001
kmargentieri@duanemorris.com

*Attorneys for Defendant/Counterclaim Plaintiff, The ICEE Company*