**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**

SLUSH PUPPIE LIMITED,

       Plaintiff/Counterclaim
       Defendant,

       v.

THE ICEE COMPANY,

       Defendant/Counterclaim
       Plaintiff.

CASE NO. 1:19-cv-00189-MRB

Judge Michael R. Barrett

**THE ICEE COMPANY'S OMNIBUS RESPONSE TO SLUSH PUPPIE LIMITED'S MOTIONS *IN LIMINE* (DOC. NOS. 405, 406, 407, 408, 409, 410, 411, 412, 413, 414, 415)**

# TABLE OF CONTENTS

I.    Doc. 405 – Motion *in Limine* to Exclude Testimony of Matthew D. Gurbach, Ronald L. House, Mark Avsec, Elizabeth R. Emanuel, Jennifer M. Turk, Laura Kogan, and Justin Monday 1

II.   Doc. 406 – Motion *in Limine* to Exclude Any References to the Pending Sanctions Motions of the Actions Underlying the Sanctions Motions ........................................................................ 1

III.  Doc. 407 – Motion *in Limine* to Exclude Evidence Regarding the August 8, 2000 Appointment of Trade Mark License, the November 20, 2017 History of Working Practise, and the November 12, 2008 Lindsay Kirby Email .............................................................................. 4

IV.   Doc. 408 – Motion *in Limine* to Exclude Evidence, Innuendo, Hypotheticals, or Reference to Retail Customer Conversions ...................................................................................................... 6

V.    Doc. 409 – Motion *in Limine* to Exclude Certain Evidence Related to Defendant The ICEE Company's Alleged Unjust Enrichment Damages ........................................................................ 9

VI.   Doc. 410 – Motion *in Limine* to Exclude Any Evidence, Testimony, or Argument of or Attempt to Introduce Actual Confusion by Customers Regarding Slush Puppie and Slushy Jack's Brands and Marks ................................................................................................................ 15

VII.  Doc. 411 – Motion *in Limine* to Exclude Evidence, Innuendo, Hypotheticals, and Any Reference to "Plan B" ................................................................................................................... 18

VIII. Doc. 412 – Motion *in Limine* to Exclude Incendiary Use of "Fraud" and "Forgery" .......... 20

IX.   Doc. 413 – Motion *in Limine* As To Trademarks/Domain Names Not Owned by Slush Puppie Limited ............................................................................................................................... 22

X.    Doc. 414 – Motion *in Limine* to Exclude Speculative Testimony and Other Non-Probative Evidence Regarding Former Employee's Separation From Slush Puppie Limited or Frozen Brothers ........................................................................................................................................ 25

XI.   Doc. 415 – Motion *in Limine* to Preclude Use of Video Depositions In Lieu of Live Witness Testimony ...................................................................................................................................... 27

XII.  CONCLUSION ............................................................................................................................ 34

Counterclaim-Defendant Slush Puppie Limited filed eleven motions *in limine*, under eleven separate docket entries (Docs. 405–415). For the Court's convenience, ICEE consolidates its responses to these motions in this Omnibus Response.[1]

## I. Doc. 405 – Motion *in Limine* to Exclude Testimony of Matthew D. Gurbach, Ronald L. House, Mark Avsec, Elizabeth R. Emanuel, Jennifer M. Turk, Laura Kogan, and Justin Monday

Contemporaneously with this opposition, ICEE is responding to the Benesch attorneys' motion to quash the trial subpoenas issued to them. Doc. 402. SPL's motion *in limine* explicitly references this motion to quash and appears to have nothing new to say. Indeed, the motion *in limine* does little more than plagiarize the motion to quash. *Compare* Doc. 402, at PAGEID 20094 ("This is purely an attempt by ICEE to inflame the jury and attempt to infect the trial with the sanctions issues that the jury has no need to hear about."), *with* Doc. 405, at PAGEID 20384 ("This is nothing more than an attempt by ICEE to inflame the jury and infect the trial with sanctions issues that the jury has no need to hear about, and which have no bearing on the pending claims."). Accordingly, ICEE incorporates here its (separately filed) response to the motion to quash. *See* Doc. 425.

SPL is right about one thing: "ICEE intends to present to the jury its overarching theory that SPL, at Mr. Peters' behest, perpetrated a fraud on the Court." Doc. 405, at PAGEID 20383. That trial narrative is both true and highly relevant to ICEE's claims. The motion *in limine* should be denied.

## II. Doc. 406 – Motion *in Limine* to Exclude Any References to the Pending Sanctions Motions of the Actions Underlying the Sanctions Motions

---

[1] Because this brief responds to eleven motions, it exceeds the 20-page limit of briefs that respond to a single motion.

This motion *in limine* seeks the categorical exclusion of any evidence **related to** ICEE's pending Motions for Sanctions or **references to the actions** underlying them. Doc. 406, at PAGEID 20388. This motion should be denied, first, because it is overly broad and vague. *See, e.g.*, *In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prods. Liab. Litig.*, 518 F. Supp. 3d 1028, 1034 (S.D. Ohio 2021) ("Federal courts decline to grant broad motions in limine seeking exclusion of categories of evidence, requiring parties to identify evidence and its uses with specificity."); *United States v. Householder*, 645 F. Supp. 3d 844, 849 (S.D. Ohio 2022) ("Orders *in limine* which exclude broad categories of evidence should rarely be employed. . . . Rather, motions *in limine* are generally confined to very specific evidentiary issues of an extremely prejudicial nature.") (cleaned up). Such a broadly framed order would prohibit any reference to and evidence regarding SPL's forgeries and fraud, and in that sense this particular motion is similar to several of SPL's other motions that erroneously ask the Court to bar core evidence supporting ICEE's claims merely because SPL is worried that the jury may learn the truth about SPL's schemes.

SPL argues that any sanctions-related evidence is irrelevant to the pending claims and would only serve to inflame, confuse, and mislead the jury, and unfairly prejudice SPL. Doc. 406, at PAGEID 20390. Relevance is determined based on the allegations in the applicable pleading. And the applicable pleading here is ICEE's second amended counterclaims. That document explains in detail how the facts underlying the sanctions motion supports ICEE's breach of contract, trademark, unfair competition, and unjust enrichment claims, as explained, among other places, in response to SPL's MIL at Doc. 407. The fact that the sanctions motions (and now the Court's sanctions order) exist at all is because SPL engaged in wrongful conduct that is both sanctionable and supports ICEE's causes of action. The jury will not be confused by hearing the truth about what happened here.  And the facts surrounding the 2000 Appointment, Wendsday

Email, and History of Working Practise are key evidence of SPL's bad faith breaches of the parties' real contracts, and fraudulent scheme to keep using ICEE's marks, brands, and goodwill after all rights to use them had been terminated. Moreover, these documents and the facts surrounding them are relevant to credibility. The jury is capable of weighing this evidence appropriately without being unduly influenced.

SPL further contended at the time it wrote this motion that these sanctions matters are separate from the pending breach of contract and unjust enrichment claims because the Court has already indicated it will rule on sanctions against SPL before trial and on sanctions against SPL's counsel after trial.[2] Doc. 406, at PAGEID 20390. That is a *non sequitur*. The Court's sanctions order does not somehow render irrelevant the facts supporting the Court's decision. Obviously, those facts can be (and in fact are) relevant both to ICEE's breach of contract and unjust enrichment claims and to sanctions.

The jury should be told that SPL's claims were dismissed. But as long as SPL or its witnesses do not open the door, ICEE will not mention that the dismissal was because the Court dismissed them as a sanction.

For the foregoing reasons, ICEE respectfully requests that the Court deny SPL's motion *in limine* to preclude ICEE from introducing evidence related to ICEE's pending Motions for Sanctions or references to the actions underlying said motions.

---

[2] On February 18, 2026, two days after SPL filed its Motions *in Limine*, the Court granted ICEE's Motion for Sanctions against SPL (Docs. 73, 82, 87). Doc. 417. Rather than excluding sanctions-related evidence from jury trials, courts in this District have found adverse jury instructions necessary for remedial purposes. *See, e.g.*, *E.E.O.C. v. JP Morgan Chase Bank, N.A.*, 295 F.R.D. 166, 175 (S.D. Ohio 2013) (finding adverse jury instruction related to spoliation necessary for remedial purposes where defendant knew the evidence might be relevant to future potential litigation, was negligent in permitting the destruction of data, and the destroyed data was relevant to plaintiff's case).

**III.    Doc. 407 – Motion *in Limine* to Exclude Evidence Regarding the August 8, 2000 Appointment of Trade Mark License, the November 20, 2017 History of Working Practise, and the November 12, 2008 Lindsay Kirby Email**

SPL's motion to exclude reference to the 2000 Appointment, the Wendsday Email, and the forged 2017 History of Working Practise is wrong on the facts, wrong on the law, and inconsistent with SPL's own positions in this case. In its response to ICEE's motion for sanctions, SPL acknowledged the relevance of the forged 2000 Appointment, the History of Working Practise, and the Wendsday Email at any eventual trial that did not include claims under the 2000 Appointment: "Defendant will be able to exploit those documents in any trial to its advantage." Doc. 82, at PAGEID 2052. Not surprisingly, the Court's recent opinion on sanctions likewise acknowledges that the 2000 Appointment, the Wendsday Email, and the forged History of Working Practise were all central to SPL's attempt to unjustly enrich itself through continued use of ICEE's SLUSH PUPPiE brand. As the Court explained, the "record evidence positively establishes that Mark Peters forged documents to SPL's economic gain and *then* lied about it." Doc. 417, at PAGEID 20560; *see also id.* at PAGEID 20562 (referring to "Mark Peters' forgeries" as "crafted to boost SPL's bottom line"). The motion should be denied for this reason alone.

Beyond that, SPL's motion *in limine* is largely a *non sequitur*. SPL argues that because it removed the 2000 Appointment from *SPL's* Complaint, it is irrelevant. But, of course, the forgeries are central to *ICEE's* claims; the detailed Second Amended Counterclaims mentions or quotes from the 2000 Appointment dozens of times. *See, e.g.*, Doc. 196, at Counterclaims ¶¶ 29, 63, 65, 66, 67, 68 (among others). And that does not even account for the numerous references to Peters' other forgeries. *E.g.*, *id.* ¶¶ 69 (History of Working Practise), 73–77 (Wendsday Email). SPL even filed a motion to strike those allegations based on its argument that they were "scandalous" and "prejudicial" to SPL and "serve no purpose except to inflame the reader." Doc. 199, at PAGEID 7387–89. The "Court disagree[d]" given what it euphemistically-though-

4

accurately called the "peculiarities of this litigation." Doc. 301, at PAGEID 14583. SPL's motion *in limine* is therefore little more than a retread of the motion to strike that it filed three years ago and that was denied. ICEE's allegations are central to its claim that SPL continued to use the SLUSH PUPPiE brand to earn massive profits and opportunistically convert customers to Slushy Jack's "under circumstances where it would be unjust to do so without payment." *Desai v. Franklin*, 895 N.E.2d 875, 882 (Ohio Ct. App. 2008).

SPL's forgeries are also relevant to the relief available to ICEE on its breach of contract claims. ICEE is entitled to seek fees if SPL's breach was done in bad faith. *Columbus Med. Equip. Co. v. Watters*, 468 N.E.2d 343, 348 (Ohio Ct. App. 1983). Central to that inquiry is that, because it did not wish to abide by the real agreements, it forged one that it liked better and then fabricated other evidence in an attempt to bolster that claim. *See* Doc. 382, at PAGEID 19210–11. Thereafter, it took the meritless position in this lawsuit that ICEE could not terminate the agreements under any circumstances. But even though SPL argued that the agreements had not been terminated, it hypocritically chose to ignore those same documents by engaging in its "Plan B" Slushy Jack's scheme.

Finally, SPL argues that even if its forgery and fraud are relevant to ICEE's claims, the prejudice SPL will suffer from having the jury hear about it substantially outweighs the probative value. FED. R. EVID. 403. SPL misunderstands the nature of "unfair prejudice" under Federal Rule of Evidence 403. "Unfair prejudice 'does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest decision on an improper basis.'" *United States v. Bonds*, 12 F.3d 540, 567 (6th Cir. 1993). Mark Peters should have thought about how forgery would appear to a jury before he embarked on his scheme. It is a tad late to be regretting that decision now.

SPL's motion *in limine* attempting to keep the jury from hearing about Mark Peters' forgeries should be denied.

**IV.     Doc. 408 – Motion *in Limine* to Exclude Evidence, Innuendo, Hypotheticals, or Reference to Retail Customer Conversions**

A motion *in limine* is inappropriate to the extent it asks for a "blanket ruling on evidence not yet identified and arguments not yet fully developed." *Advance Wire Forming, Inc. v. Stein*, 2022 WL 1487605, at *18 (N.D. Ohio May 11, 2022); *see also Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975) ("Orders *in limine* which exclude broad categories of evidence should rarely be employed. A better practice is to deal with questions of admissibility of evidence as they arise."); *N.T. ex rel. Nelson v. Children's Hosp. Med. Ctr.*, 2017 WL 5957638, at *2 (S.D. Ohio Oct. 16, 2017) ("A motion *in limine* that seeks to exclude broad categories of evidence should rarely be granted."). Moreover, a "party seeking to exclude evidence on a motion *in limine* must demonstrate that the evidence is clearly inadmissible on all potential grounds." *N.T. ex rel. Nelson*, 2017 WL 5957638, at *2. Otherwise, "evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Id.*

This motion *in limine* does not identify any particular evidence that SPL believes ICEE is going to offer into evidence that SPL contends should be excluded. Indeed, its only complaint is an uncited (and inaccurate) claim that "Dan Fachner, the CEO of ICEE, has vaguely testified that *each and every* retail end user customer for frozen uncarbonated slush beverages – who were direct customers of SPL (and *not* ICEE) automatically, switched on over to become customers of Vimto." Doc. 408, at PAGEID 20402. Mr. Fachner's actual testimony was simply about how ICEE was harmed by SPL's surreptitious "Plan B" scheme to switch customers to Slushy Jack's rather than permit them to continue buying SLUSH PUPPiE from ICEE or another licensee:

Q: Are you able, Mr. Fachner, to quantify any detriment, any damage, that ICEE has sustained as a result of SLUSH PUPPiE's actions?

\*\*\*

A: The way I would answer that is that when the contract came to an end and they were notified of that, they were to turn over the customers and take down the SLUSH PUPPiE signage that they were using, turn over the formulas for the syrup, and allow us to be able to come in with a new SLUSH PUPPiE distributor.
They did not do that in an orderly fashion. Instead, they went out, fought against that, put up a forged document, told people that they were choosing to end using SLUSH PUPPiE and choosing to go to Slushy Jack[s] and went out and signed contracts exclusive to that before those customers knew.
And so we were never able to take advantage of the business that we had built over the 40 years.

\*\*\*

Q: So do you believe that every one of those end user retailers in the UK movie theaters, convenience stores, amusement parks, grocery stores, they would have automatically just entered into a new contract with Vimto?

A: I do believe that.

Q: And why do you believe that?

A: SLUSH PUPPiE brand is that strong and Vimto was a good organization to work with.

Q: And did -- when Vimto took over, did it continue relationships with prior SPL UK customers?

A: That's what we just discussed. That that turnover did not happen the way that it was intended or the way that the contract was written.

Doc. 357 (Fachner Oct. 9, 2025 Dep.), at 70:3–73:5. In other words, the import of Mr. Fachner's testimony was the opposite of what SPL represents:  He was explaining why ICEE was ***not*** able to continue to serve SLUSH PUPPiE customers after ICEE terminated its relationship with SPL.

Mr. Fachner did not make this up. The 1999 International Independent Area Distributor License expressly contemplates the sort of "orderly fashion" handover that Mr. Fachner testified about: "In the event of termination for any cause, COMPANY shall endeavor to make continued

service and PRODUCTS available to the retail customers of DISTRIBUTOR through alternative sources." Doc. 196-2, at § VIII.J. And it is neither speculation nor irrelevant for Mr. Fachner to testify that ICEE had the resources—and an alternative distributor in Vimto—that could have serviced those customers.[3] Mr. Fachner is also right that customers buying SLUSH PUPPiE *are* ICEE's customers. As SPL was a trademark *licensee*, there is no such thing as a SLUSH PUPPIE customer who is a "direct customer[] of SPL (and *not* ICEE)." Doc. 408, at PAGEID 20402. Rather, "the goodwill associated with a trademark, even if developed by a licensee, inures to the benefit of the trademark owner." *Lunkenheimer Co. v. Pentair Flow Control Pac. PTY Ltd.*, 2014 WL 4450034, at *10 (S.D. Ohio Sept. 10, 2014). Not surprisingly, the parties' Distribution Agreement likewise embodies this legal truth. The 1999 Agreement provides that "[a]ll use of the trademarks by DISTRIBUTOR inures to the benefit of COMPANY and such usage is unauthorized upon termination of this Agreement." Doc. 196-2, at § VI.D.

SPL's motion *in limine* should be denied because it does not specifically identify any evidence that SPL believes ICEE is going to offer that it contends is inadmissible, and because the only evidence it points to is a mischaracterization of Mr. Fachner's testimony at his deposition. To be clear, Mr. Fachner is qualified and entitled to testify that ICEE could have provided SLUSH PUPPiE to its European customers post-termination, but for SPL's "Plan B" efforts. But if SPL has any concern about specific questions, the proper time for the Court to consider those objections is at trial.

---

[3] To be sure, there is no requirement that ICEE "quantify" its harm for purposes of its unjust enrichment claim, since a disgorgement remedy is different from damages. The "purpose behind an equitable disgorgement award is to deprive wrongdoers of the fruits of their tortious conduct, not to compensate the victim." *Osborn v. Griffin*, 865 F.3d 417, 453 (6th Cir. 2017).

**V.     Doc. 409 – Motion *in Limine* to Exclude Certain Evidence Related to Defendant The ICEE Company's Alleged Unjust Enrichment Damages**

This motion is really a belated summary judgment motion, not an *in limine* motion. A true motion *in limine* is targeted to specific evidence or arguments that are "clearly inadmissible on all potential grounds." *N.T. ex rel. Nelson v. Children's Hosp. Med. Ctr.*, 2017 WL 5957638, at *2 (S.D. Ohio Oct. 16, 2017). In contrast, "[a] motion *in limine* that seeks to exclude broad categories of evidence should rarely be granted." *Id.* SPL acknowledges that this motion *in limine*, which purports to seek exclusion of any evidence of SPL's unjust enrichment using the SLUSH PUPPiE brand, would have been a proper subject of a motion for summary judgment, of which it has already filed two. *See* Doc. 409, at PAGEID 20406 n.1. The Court should not accept SPL's mistaken invitation to leverage a motion *in limine* into a ruling on broad issues relating to evidence of the profits that SPL made from its fraudulent scheme to extend its use of the SLUSH PUPPiE brand.

On the merits, SPL's motion continues to mischaracterize the nature of unjust enrichment and its disgorgement of profit remedy. While cases sometimes refer to disgorgement as "damages," disgorgement is not a compensatory remedy and does not depend upon the size or nature of the plaintiff's loss. Rather, the "purpose of disgorgement, an equitable remedy, is to prevent a wrongdoer from profiting from their illegal or unethical behavior by forcing them to give up any gains." *Kern v. Mishler*, 2025 WL 1365643, at *16 (Ohio Ct. App. May 12, 2025). Thus, the "purpose behind an equitable disgorgement award is to deprive wrongdoers of the fruits of their tortious conduct, not to compensate the victim." *Osborn v. Griffin*, 865 F.3d 417, 453 (6th Cir. 2017); *see also Helfrich v. PNC Bank, Ky., Inc.*, 267 F.3d 477, 482 (6th Cir. 2001) ("Restitution measures the remedy by the defendant's gain and seeks to force disgorgement of that gain. It differs in its goal or principle from damages, which measures the remedy by the

plaintiff's loss and seeks to provide compensation for that loss."); *U.S. v. United Techs. Corp.*, 190 F. Supp. 3d 752, 758–59 (S.D. Ohio 2016) (same). Disgorgement of profits as a remedy for unjust enrichment thus differs from lost profits. The former deprives the wrongdoer of his ill-gotten gains, while the latter compensates the claimant. *Osborn*, 865 F.3d at 452-55.

**ICEE need not show lost sales to be entitled to disgorgement.** SPL's contention that ICEE must present evidence that it "would have converted [SPL's customers] to becoming a customer of the syrup distributor Nichols plc ('Vimto')" is misplaced and, not surprisingly, SPL cites no law for that proposition. Doc. 409, at PAGEID 20412. That is because proof of whether ICEE would have made sales had SPL not engaged in its scheme is a ***lost profits*** concept, not a disgorgement concept. *See Osborn*, 865 F.3d at 452–55. Instead, ICEE must show that SPL earned its profits "under circumstances where it would be unjust to do so without payment." *Hambleton v. R.G. Barry Corp.*, 465 N.E.2d 1298, 1302 (Ohio 1984). Courts routinely uphold awards that serve to make the wrongdoer's conduct unprofitable by requiring it to pay over its wrongfully obtained profits to the plaintiff. *See Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg., Inc.*, 511 F. App'x. 398, 401–402 (6th Cir. 2013) (where misappropriated trade secrets used to develop LXP car model, disgorgement of the "amount Genesis profited from the LXP" was proper); *Kern v. Mishler*, 2025 WL 1365643, at *15–16 (Ohio Ct. App. May 12, 2025) (where defendant operated business on plaintiff's property without authorization, unjust enrichment disgorgement of entire gross sales was proper). *Kern* highlights the equitable, flexible nature of the unjust enrichment inquiry. There, the claimants "presented a compelling argument at trial that they were entitled to recover Kern's profits from the boat rental business, not merely their own lost profits (in the form of lost rent)." *Kern*, 2025 WL 1365643, at *15. The court affirmed the award, finding that "[i]n essence, the [claimant] sought to disgorge Kern of his

ill-gotten gains, ensuring that Kern would not profit from his wrongful conduct." *Id.* That is precisely the argument that ICEE will make at trial and that the factfinder is entitled to evaluate under the circumstances of this case.

SPL's argument that "SPL's profits have no bearing upon the reasonable value of the benefit that ICEE allegedly conferred upon SPL" and that the parties' former licensing arrangement is a better measure of how much of SPL's post-termination profit is "unjust" is a summary-judgment type argument, misplaced in a motion *in limine*. SPL needed to keep using the SLUSH PUPPiE brand to make its profits; if it didn't need to use the brand, it would have stopped in June 2019 when ICEE terminated the contracts instead of continuing to use ICEE's trademarks and holding itself out as the brand owner well into 2022. SPL's proposal that ICEE be limited to recovering only foregone license fees would be the epitome of ***injustice***, rewarding SPL for its fraudulent scheme by allowing it to keep all the profits it earned. The Court has already observed that SPL's forgeries were "crafted to boost SPL's bottom line" and that "Mark Peters forged documents to SPL's economic gain and then lied about it." Doc. 417, at PAGEID 20560, 20562. SPL is free to argue to the factfinder that it would be unjust to disgorge SPL's profits from Slushy Jack's until the middle of 2025, or that some smaller portion is a more equitable measure of relief. But the evidence will show that SPL's "Plan B"—leveraging its unique position as a longstanding (former) SLUSH PUPPiE licensee to switch customers into long-term contracts for Slushy Jack's—led directly to those ill-gotten gains. The amount of unjust enrichment recovery is a fact question, and mere "uncertainty in this regard [as to the proper amount of disgorgement] does not bar recovery." *Allied Erecting*, 511 F. App'x. at 401; *Phillies v. Harrison/Erickson*, 2021 WL 5936523, at *39 (S.D.N.Y. Aug. 10, 2021) ("Whether equity and good conscience preclude H/E from retaining the full assignment fee [under an unjust

enrichment theory] is a question of fact."); *Cowit v. CitiMortgage, Inc.*, 2014 WL 12749186, at *4 n.7 (S.D. Ohio. June 2, 2014) ("Defendant misses the point of an unjust enrichment claim—which is for this Court to determine whether the amount of time Defendant retained Plaintiffs' funds was unjust.")

SPL's cases are either inapposite or just highlight the flexible nature of unjust enrichment relief. In *Beck v. N. Natural Gas Co.*, 170 F.3d 1018 (10th Cir. 1999), a jury ***awarded*** unjust enrichment, measured by the fair rental value of the plaintiff's land on which the defendant had stored natural gas. The Tenth Circuit merely rejected the plaintiff's argument that it was entitled in that case to an award measured by Northern's profits on the sale of the ***gas***, because the plaintiff "offered nothing to show that the profits earned by Northern could reasonably be considered a benefit conferred upon Northern by them." *Id.* at 1024; *see Baatz v. Columbia Gas Transmission, LLC*, 295 F. Supp. 3d 776, 792 (N.D. Ohio 2018) (same). That made good sense in the context of those cases; the benefit the plaintiff conferred was use of the ***land*** (which plaintiff's owned), not the gas (which they did not). Here, in contrast, ICEE conferred upon SPL the benefit of the SLUSH PUPPiE brand and of being ICEE's licensee, and ICEE seeks profits SPL made from wrongful use of that brand.

SPL's other citations are even further afield. *MSC Software Corp. v. Altair Eng'g, Inc.*, 2015 WL 13359781, at *4 (E.D. Mich. Nov. 22, 2015) and *Ford Motor Co. v. Versata Software, Inc.*, 2018 WL 10733561, at *9–10 (E.D. Mich. July 9, 2018) involved trade secret misappropriation claims and the specific requirements for seeking damages in those cases. Specifically, trade secret cases require that damages be "determined by reference to the analogous line of cases involving patent infringement," which specifically requires that "expert witnesses must apportion damages such that their analysis 'reflects the value attributable to the

infringing features of the product, and no more.'" *Ford Motor*, 2018 WL 10733561, at *10. Thus, those cases involved the plaintiff seeking trade secret damages based on the value of the secret, ***but*** where the secrets related to only a portion of a larger product. *See Ford Motor*, 2018 WL 107333561, at *11 ("The 'product at issue' here includes trade secrets and non-trade secrets, such as patents, copyrights, and other non-protectable features."); *MSC Software Corp.*, 2015 WL 13359781, at *4 (expert failed to explain contribution of "three trade secrets to the entire MotionSolve product" or to "validate his alternative approach (100% of MotionSolve's value) by citing supporting facts showing that the three trade secrets were the basis for customer demand for MotionSolve"). In contrast, unjust enrichment law, and the more analogous remedy of infringer profits in trademark infringement cases, requires the ***defendant*** to prove up any deductions from its revenue, as ICEE explains below. *See, e.g.*, 15 U.S.C. § 1117(a) ("In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed.").

　　**ICEE does not bear the burden of "apportionment."** Where profit disgorgement is at issue, Ohio law is clear that "the burden falls on the wrongdoer to demonstrate any legitimate deductions from gross profits." *Kern*, 2025 WL 1365643, at *16. This is an age-old principle of equitable relief in unjust enrichment and trademark cases: "If it can be shown that the infringement had no relation to profits made by the defendant, that some purchasers bought goods bearing the infringing mark because of the defendant's recommendation or his reputation or for any reason other than a response to the diffused appeal of the plaintiff's symbol, the burden of showing this is upon the poacher." *Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 206 (1942). Thus, as is appropriate, ICEE will meet its burden on disgorgement by presenting evidence of SPL's gross profits on SLUSH PUPPiE and certain Slushy Jack's

products.[4] *See Kern*, 2025 WL 1365643, at *16. As noted above, SPL's "apportionment" cases all draw on specific damages principles from either trade secret or patent infringement cases, not Ohio unjust enrichment cases. *See Ford Motor*, 2018 WL 10733561, at *9 (in trade secret cases, alternative measures of damages like profits are "trade secret misappropriation damages are not 'subject to exact measurement'").

**SPL's argument that ICEE was "compensated" for 2019 and 2020 is erroneous and unrelated to disgorgement of profits.** SPL makes the specious argument that "SPL paid royalties to ICEE in 2019 and 2020 to compensate ICEE for the use of its intellectual property." Doc. 409, at PAGEID 20413. No, it did not. In 2019 and 2020, SPL did not have a valid license agreement—ICEE had terminated it—and was claiming in this Court that its rights to use ICEE's "intellectual property" derived from the *2000 Appointment it had forged*. Thus, nothing that SPL paid could possibly be "to compensate ICEE for the use of its intellectual property." Not surprisingly, ICEE responded to SPL's "payments" by explaining that all of SPL's "activities are and have been unauthorized since June 25, 2019" and that "acceptance of these moneys certainly does not constitute a waiver of our rights to full compensation for your past and continued infringement, nor should you interpret it to mean that we are consenting to your past and continued unauthorized and illegal conduct." Exh. A, Roshkoff to Treacher. Moreover, SPL intentionally and blatantly violated numerous terms in both contracts after ICEE terminated but while SPL was nonetheless claiming that the agreements were still in effect. SPL cannot claim that it fulfilled its obligations under the (properly terminated) agreements post-termination when

---

[4] Also like in *Kern*, the evidence will show that SPL's actual profits from its misuse of the SLUSH PUPPiE brand were "likely higher" because SPL used the SLUSH PUPPiE brand to switch some customers to *other* brands like Robinson's Fruit Ice, but ICEE is not seeking disgorgement with respect to those customers.

its "Plan B" was a thumb in the eye of those same obligations to use its best efforts to promote the SLUSH PUPPiE brand and not to compete with ICEE.

In any event, this is just a retread of SPL's argument, earlier in its vague motion, that SPL's profits are not the proper measure of unjust enrichment relief. As explained in detail above, the amount of profits to be disgorged is for the fact finder to determine.

SPL's motion *in limine* regarding unjust enrichment disgorged profits should be denied

## VI. Doc. 410 – Motion *in Limine* to Exclude Any Evidence, Testimony, or Argument of or Attempt to Introduce Actual Confusion by Customers Regarding Slush Puppie and Slushy Jack's Brands and Marks

In a turn of irony, SPL's motion *in limine* to exclude evidence of "actual confusion by customers" seems mostly to have confused SPL itself. The motion begins by acknowledging (correctly) that actual confusion is not an element of ICEE's unjust enrichment or breach of contract claims.[5] But then SPL argues, inconsistently, that ICEE should be barred from presenting evidence that ***does not*** rise to the level of actual confusion, as though that were in fact a requirement of ICEE's claims. Doc. 410, at PAGEID 20421–22. SPL is incorrect. SPL's "Plan B" scheme involved attempts to mislead or confuse consumers in a several of ways. First, as to retailers of SLUSH PUPPiE, SPL actively misled them about the nature of the transition and the reasons for it. For example, SPL's original official "Slushy Jacks/Slush Puppie Position Statement" told consumers that "[a]s both Slushy Jack's and Slush Puppie currently fall under

---

[5] Indeed, actual confusion is not an element of any claim that has ever been at issue in this case. Rather, actual confusion among consumers is simply one piece of evidence that tends to show the consumers are ***likely to be confused***, which is the test for trademark infringement and certain forms of unfair competition. *See Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Center*, 109 F3d 275, 284 (6th Cir. 1997) (while "evidence of actual confusion is undoubtedly the best evidence of likelihood of confusion" a "lack of such evidence is rarely significant"). ICEE's trademark infringement and passing off claims under U.K. law likewise do not require proof of actual confusion. *See generally* Trade Marks Act 1994, Section 10—Infringement of registered trade mark (UK) (requiring only likelihood of confusion).

Frozen Brothers control there will be no legal issues raised regarding the substitution of the Slush Puppie brand by the Slushy Jack's brand by the brand owner." Exh. B, at 32. That statement was sent to customers beginning in fall of 2020, close to a year and a half after ICEE had terminated all of SPL's rights to the SLUSH PUPPiE brand and with ongoing litigation over that termination. SPL likewise put out a statement that it was "retiring" the SLUSH PUPPiE brand, as though it had that right, and sending the brand "to pastures." Exh. C. The apparent goal of these misleading communications was to grease the wheels of the "transition" and to reassure panicking customers that they could use SLUSH PUPPiE branded syrup in Slushy Jack's machines and vice versa.

Second, SPL attempted to confuse end consumers by mixing and matching SLUSH PUPPiE and Slushy Jack's products, effectively tying the new, unfamiliar Slushy Jack's brand to the popular, well-known SLUSH PUPPiE brand. As noted, SPL assured customers that they "were fine to put Slushy Jack's syrup through the Slush Puppie branded machine and cups until the brand changes are made and vice versa." Exh. D, at SP010529. And SPL also sold SLUSH PUPPiE and Slushy Jack's syrups and other products to the same customer *at the same time* for use in their stores. Discovery has revealed more than 240 invoices issued by SPL in which it sold both SLUSH PUPPiE and Slushy Jack's.[6] Thus, SPL ensured that consumers would either encounter both brands in the marketplace or misled consumers into thinking they were getting one product (*e.g.*, SLUSH PUPPiE) while dispensing another (Slushy Jack's). Both of these types of evidence are highly relevant to ICEE's unjust enrichment claim, which considers whether SPL enriched itself through the use of ICEE's SLUSH PUPPiE brand notwithstanding

---

[6] Because of its length, ICEE has not attached the exhibit compiling these invoices to this opposition but is happy to provide it if the Court requires it. It will be ICEE's DTX 1287 at trial.

that it had lost the right to do so, and whether SPL's conduct in converting customers renders it unjust for it to retain its SLUSH PUPPiE and Slushy Jack's profits.

To be clear, various SPL witnesses have admitted in depositions or at the preliminary injunction hearing that SPL carried out the transition in a misleading or confusing manner. Again, that testimony supports ICEE's unjust enrichment claim. And SPL cites no legal support for its argument that these questions or responses are improper, much less that they meet the "clearly inadmissible on all potential grounds" standard for a motion *in limine*. *N.T. ex rel. Nelson v. Children's Hosp. Med. Ctr.*, 2017 WL 5957638, at *2 (S.D. Ohio Oct. 16, 2017). To the contrary, a person in sales or marketing stating the obvious about the SLUSH PUPPiE/Slushy Jack's overlapping branding is something "rationally based on the witness's perception" and thus the proper subject of lay opinion. FED. R. EVID. 701. In other words, the evidence will show that SPL mixed SLUSH PUPPiE and Slushy Jack's whenever it served its own interests, and the observation that that conduct would likely mislead or confuse consumers is run-of-the-mill lay opinion extrapolating from the witness's perception of those facts. Tellingly, some of the examples SPL cites do not even involve ICEE's counsel asking a question about confusion; the idea was apparently so front of mind that the witness just offered it. Take Josie Patrick: "Q: Well, would you – would the company care if somebody were putting Slushy Jack's syrup in a Robinson's Fruit Ice branded freezer? … A: Well, that would be misleading the public. Yeah, that would – that wouldn't be done because it would require clearly misleading the public." But, of course, it was official company ***strategy*** for SPL to tell customers to run their stockpiles of SLUSH PUPPiE syrup through newly rebranded Slushy Jack's freezers and to serve SLUSH PUPPiE in Slushy Jack's cups and vice versa.

SPL's motion *in limine* attempting to bar harmful evidence of consumer confusion should be denied because it seeks the exclusion of vague categories of evidence and because, more fundamentally, the evidence it seeks to exclude is eminently relevant and admissible.

## VII.    Doc. 411 – Motion *in Limine* to Exclude Evidence, Innuendo, Hypotheticals, and Any Reference to "Plan B"

ICEE's Motion *in Limine* to Exclude "Evidence," Innuendo, Hypotheticals and any Reference to "Plan B" is perhaps its oddest. Like some of the other motions *in limine*, it is more in the nature of a motion for partial summary judgment. The argument appears to be based on the (incorrect) notion that the discovery record does not support ICEE's allegations regarding SPL's "Plan B." If that were correct, SPL should have moved for partial summary judgment. Instead, SPL makes the circular, head-scratching argument that because ICEE supposedly has no evidence, that nonexistent evidence should be excluded. But a motion *in limine* is supposed to identify evidence that the movant contends, based on the Federal Rules of Evidence, is "clearly inadmissible on all potential grounds." *N.T. ex rel. Nelson v. Children's Hosp. Med. Ctr.*, 2017 WL 5957638, at *2 (S.D. Ohio Oct. 16, 2017). Here, SPL never identifies anything that it believes is inadmissible; and so, it never explains which of the evidence rules it is relying upon for its position that this Court should exclude such (unidentified) evidence. Put simply, if there is no evidence, there's nothing for this Court to exclude.

SPL does cite FRE 103(d), 401, 402, and 403 but it never explains why any of those rules are applicable here. FRE 103(d) provides that the court should conduct a jury trial so that inadmissible evidence is not suggested to the jury by any means. SPL does not, however, identify the putatively inadmissible evidence it wants to keep from the jury.

FRE 401 and 402 articulate the rules for relevant evidence. Here again, SPL does not identify any evidence that it believes is irrelevant. Nor could it. The second amended counterclaims

contain numerous, detailed allegations about Mark Peters' "Plan B." That Plan and all proofs bearing on it are indisputably relevant.

Finally, SPL cites FRE 403. But yet again, SPL identifies no evidence that is relevant but whose "probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." So, SPL utterly fails to explain why any of FRE 103(d), 401, 402, or 403 should be applied by this Court to exclude any of the mountain of evidence regarding "Plan B."

While opposition to a motion *in limine* is not the proper vehicle for ICEE to catalogue the evidence it will muster at trial to support its claims, it is worth noting that the discovery record supports every one of ICEE's allegations regarding "Plan B." Mark Peters insisted on relying on the documents he had forged until the point where his attorneys informed him that the claims based on those forgeries were "meritless" and that his attorneys could no longer ethically prosecute them. Immediately following this "come to Jesus" confrontation in September 2020, Peters pivoted to a scheme to quietly convert all the SLUSH PUPPiE customers to Slushy Jack's. Peters accomplished this by, *inter alia*, lying to the customers that SPL was the brand owner of both SLUSH PUPPiE and Slushy Jack's, telling them that Slushy Jack's had become the leading brand when in fact none had been sold, telling them that SLUSH PUPPiE was identical to Slushy Jack's, and telling them they were free to serve Slushy Jack's out of SLUSH PUPPiE freezers and cups and vice versa. His own top salesperson, Jessica Snow, thought all of this was illegal, but she was assured by a "director" that it was not. To top it off, SPL destroyed all the recordings of the key Microsoft Teams meetings regarding the transition, notwithstanding litigation holds it had received from both RPC and Benesch.

The Benesch attorneys furthered this scheme by shutting down ICEE's attempts to find out about it; submitting perjurious affidavits to the Court in opposing ICEE's motion for preliminary injunction; falsely representing that all documents relating to "Plan B" had been produced while sitting for four years on numerous smoking gun documents; frivolously contending that the 1996 and 1999 agreements had not effectively been terminated; and frivolously opposing the depositions of key witnesses until their memories either faded or they had been fired and were therefore supposedly "unavailable."

Benesch is aware of all this compelling evidence; yet not once does it argue that any of it is somehow inadmissible under the Federal Rules of Evidence. SPL's motion *in limine* regarding "Plan B" is frivolous.

## VIII. Doc. 412 – Motion *in Limine* to Exclude Incendiary Use of "Fraud" and "Forgery"

SPL's motion *in limine* trying to prevent use of the terms "fraud" and "forgery" contends that "[a]llegations that Mr. Peters or SPL have participated in a 'fraud' or 'forgery' are wholly irrelevant." Doc. 412, at PAGEID 20454. Not so. The factual circumstances surrounding the forged 2000 Agreement, Wednesday email, and History of Working Practise are directly relevant to ICEE's counterclaims for breach of contract (*i.e.*, whether SPL breached its obligations under the 1996 and 1999 Agreements in bad faith by falsely claiming these agreements had been superseded by the fabricated 2000 Appointment) and unjust enrichment (*i.e.*, whether SPL unjustly benefitted from its continued use of the SLUSH PUPPiE trademarks and associated goodwill after termination of the 1996 and 1999 Agreements under the false pretense of having broader rights under the 2000 Agreement, which purportedly rendered ICEE's termination a nullity). Peters' forgeries and fraud were designed to, and succeeded in, facilitating SPL's breach of the 1996 and 1999 agreements and continued use of ICEE's trademarks and brand for years after ICEE terminated all of SPL's rights. As alleged in detail in the Second Amended Counterclaims, the

forgeries and lies are key parts of Peters' scheme, and therefore relevant to ICEE's breach of contract and unjust enrichment claims.

As for use of the terms "fraud" and "forgery," if it walks and quacks like a duck, "duck" is the correct word to use to describe such fowl. There's nothing at all confusing about the words "fraud" and "forgery." The terms accurately describe what the evidence will show—that SPL, at Mr. Peters' direction, perpetuated a fraud vis-à-vis forged documents to its economic gain because it was unhappy with its limited rights under the 1996 and 1999 agreements. The Court's recent sanctions opinion (Doc. 417) uses variations on the term "forge" or "forgery" over a dozen times, for the simple reason that it is the most natural factual description of Mark Peters' actions. And the Court has previously referred to SPL's conduct as "fraud," which again is the word that best describes what happened. Exclusion of these terms would unfairly hamper ICEE's ability to present its characterization of the evidence. Ultimately, what would be confusing would be requiring ICEE to always use euphemisms in place of the most obvious, accurate terms to describe SPL's conduct.

SPL also contends that use of the terms "fraud" and "forgery" have a high likelihood of unfairly prejudicing SPL and confusing the jury because they are legal terms that suggest preconceived guilt and imply that a crime has been committed and that a legal conclusion occurred. Doc. 412, at PAGEID 20454-55 (citing *United States v. Dimora*, 843 F. Supp. 2d 799 (N.D. Ohio 2012); *U.S. v. Guzman*, 571 F. App'x 356, 361 (6th Cir. 2014)). SPL is mistaken. Unlike the phrase "corrupt commissioner" in *Dimora*, which directly implied guilt of the specific charges at issue, the terms "fraud" and "forgery" describe specific factual allegations without necessarily constituting legal conclusions. As in *Guzman*, where "pill mill" was permitted despite negative connotations, these terms need to be used to accurately convey ICEE's position regarding disputed

documents and actions. That's why the Court has used them, as well. It goes without saying that the claimed "prejudice" that arises from the probative value of evidence is not "unfair," such as to trigger Rule 403. *See United States v. Bonds*, 12 F.3d 540, 567 (6th Cir. 1993) ("Unfair prejudice 'does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest decision on an improper basis.'").

For the foregoing reasons, ICEE respectfully requests that the Court deny SPL's motion *in limine* to exclude the use of the terms "fraud" or "forgery" at the trial of this matter.

## IX.    Doc. 413 – Motion *in Limine* As To Trademarks/Domain Names Not Owned by Slush Puppie Limited

Unjust enrichment is an equitable, "malleable" claim in which the finder of fact must determine whether the wrongdoer has received a "benefit . . . under circumstances where it would be unjust to do so." *Reisenfeld & Co. v. Network Grp., Inc.*, 277 F.3d 856, 860 (6th Cir. 2002). This is a flexible inquiry in which the "court must consider whether the plaintiff has a 'superior equity' such that it would be 'unconscionable for the defendant to retain the benefit.'" *Barnett v. Kroger Co.*, 2025 WL 712741, at *12 (S.D. Ohio Mar. 5, 2025). Here, ICEE alleges that the benefit that SPL retained was ICEE's SLUSH PUPPiE brand and the profits that it earned using it beyond the termination date (both to sell SLUSH PUPPiE and Slushy Jack's products).

In proving its "superior equity" and that the "circumstances" make it unjust for SPL to retain its profits, ICEE will rely on evidence of SPL's fraudulent scheme to use forged documents, its under-cover-of-darkness approach to converting customers from SLUSH PUPPiE to Slushy Jack's, and its strategy of directing the customers to mix and match SLUSH PUPPiE and Slushy Jack's products to make consumers believe they were one-and-the-same. SPL's bad faith is a key piece of evidence, as it is in assessing the amount and propriety of any equitable relief. *See La*

*Bamba Licensing, LLC v. La Bamba Authentic Mexican Cuisine, Inc.*, 75 F.4th 607, 610 (6th Cir. 2023) (weighing equities for profits award can include consideration of willfulness and intent to deceive among other factors).

One aspect of SPL's bad faith is that it systematically registered trademarks and domain names that included references to SLUSH PUPPiE or ICEE (or the phonetic 'IC'). Most of these were nominally done in the name of Peter Splatt, whose absence from trial or deposition SPL procured through years of delay and obfuscation.[7] Splatt's role was further concealed by destroying the recordings of key Microsoft Teams meetings that were conducted by him.

SPL's contention that "ICEE has presented no evidence that SPL knew about Mr. Splatt's conduct, let alone that Splatt acted on SPL's instruction" is patently false, although also irrelevant to a motion *in limine.* Indeed, last month, the Court attended Mark Peters' deposition, at which he admitted that Splatt was in charge of ICEE's trademark program; that Splatt had the authority to approve payment of an invoice from SPL's trademark lawyers for the filing of a trademark registration for "SLUSH PUPPiE," and that Mark Peters himself approved Splatt's use of SPL's U.K. trademark law firm to make additional "SLUSH PUPPiE" and "IC" filings. Splatt functioned as the chief operating officer of SPL and was paid for all of his work by SPL. *See* Exh. E, at SPLATT000074 (Peters saying "I have no objection at all the Mewburn Ellis taking to you or your company as a client"). Mewburn Ellis directed invoices for the "Splatt" filings to SPL. Exh. F, at SPLATT000011 (invoice for SLUSH PUPPIE word mark in India with applicant as "Peter Splatt"

---

[7] SPL continues to make the frivolous assertion that Splatt had no significant role in SPL's business, despite the overwhelming evidence to the contrary. Even the quotation from Mark Peters' self-serving testimony highlights that Splatt had his hands in every corner of SPL's operations: he "parachutes in and out of things to help when needed." Doc. 413, at PAGEID 20463. But to provide a more explicit comparison, the entirety of SPL and third-party document productions in this case contain just over 4,000 references to "Mark Peters." For "Peter Splatt, the number is more than *48,000*. The "bit player" line that SPL continues to trot out is fiction.

directed to "Frozen Brothers Limited"); Exh. G, at SPLATT000022 (same, but for Indonesia). Splatt himself, through his company Blue Square Nominees, invoiced Frozen Brothers for tens of thousands of dollars in "digital disbursements" that match up with the times that Splatt was registering and renewing domain names "independently." Exh. H (2021 invoice requesting $14,906.36 for "digital disbursements"). Splatt registered at least 75 domains with slushpuppie or icee variants, consistent with the considerable amounts for which he sought reimbursement from Frozen Brothers.

SPL's argument that many of the domain names and trademark registrations are "inactive" or "dormant" misses the point. The fact that SPL sought to lock up so many domains and trademarks shows its bad faith in part *because* it had no intent to use them; its motivation was pure trolling: "to antagonize (others) online by deliberately posting inflammatory, irrelevant, or offensive comments or other disruptive content."[8] This sort of "passive holding" is evidence of bad faith, since SPL has no good faith reason for making the registrations after its rights to the SLUSH PUPPiE brand were long ago terminated. *See* Exh. I, WIPO Decision explaining that "inaction (eg. passive holding) in relation to a domain name registration can, in certain circumstances, constitute a domain being used in bad faith"). The Splatt filings are also proof of Laura Peters' perjury in her May 2021 declaration and in her 2021 testimony.

Notably, SPL is still using the trademarks and domains to extort ICEE. Peter Splatt, through SPL's attorneys, has said he will only "relinquish the . . . trademarks and domain names" if ICEE pays a ransom in the form of undisclosed "administrative work" and "associated costs." Exh. J, E. Zalud to Counsel Nov. 12, 2025.[9] Moreover, registering domain names causes harm regardless

---

[8] https://www.merriam-webster.com/dictionary/troll.
[9] Incredibly, SPL is arguing that this extortionate ploy is evidence that ICEE is not harmed by the myriad registrations. After all, they say, if ICEE really cared, it should pay SPL to do the transfers.

of whether the domains are "used" for SPL's business. Expiring domain names are frequently the target of opportunists who snatch them up (a practice called "drop-catching") to use for "pay-per-click" ads or other content, which tarnish the reputation of the brand. And expired or lapsed domains can be indexed by search engines and appear online in ways that never registered domain names do not. So, for example, slushpuppie.company, one of the domains Splatt registered, resolves to a page that says it is "parked free" and has a random post about "Kennels and Spaniel Breeders in Shropshire." Exh. K. The domain slushpuppie.eu is listed for sale for €2,999. Exh. L. In short, the trademark registrations and domain names constitute strong evidence of SPL's bad faith, and SPL's arguments to the contrary are either factually wrong or nonsensical.

SPL's only other argument is that it would be prejudicial for a jury to hear about domain names and trademarks that SPL does not itself own. But as noted above, the facts show that SPL paid for those trademarks and domains, and Splatt registered them on its behalf. SPL's only contrary evidence is the denials of Mark Peters (Doc. 413, at PAGEID 20466) for whom perjury is a near daily activity. Needless to say, the fact finder will be entitled to disbelieve Peters' self-serving testimony as compared to the documentary evidence and the common-sense inferences therefrom.

## X.    Doc. 414 – Motion *in Limine* to Exclude Speculative Testimony and Other Non-Probative Evidence Regarding Former Employee's Separation From Slush Puppie Limited or Frozen Brothers

SPL's motion *in limine* regarding the pattern of "disappearance" of key witnesses before they could be deposed should be denied. ICEE is entitled to elicit the fact that SPL terminated certain of its employees during the course of this case; it would leave the jury with unanswered questions not to do so. Those witnesses include Kevin Scoles, Alan Beaney, Russell Wallace, and

---

Doc. 413, at PAGEID 20465. Not unlike a hostage taker blaming the victim's family for refusing to pay a ransom.

Abiodum Somorin. There is no reason why ICEE should be barred from asking whichever SPL witnesses actually show up for trial to explain the circumstances of these witnesses' separation from the company. In truth, it is suspicious that, for example, Mr. Scoles appears to have been sacked only after giving damaging deposition testimony and before Benesch would have been obligated to produce him for a second deposition to explore the documents relating to the transition that were belatedly produced by SPL in late 2025. And it is also suspicious (and improper) that ICEE was never informed of these terminations, but, to the contrary, the witnesses were listed as *currently* employed or *currently* retained by SPL as of July 2025. See Exh. M (Second Amended Initial Disclosures at p. 3, listing Beaney, Wallace, Scoles, and Somorin as currently affiliated with SPL).

SPL's own cited case, *Peirano*, shows that courts have permitted evidence that a former employee no longer worked for the party and even allowed the parties to address details of the severance agreement. *Peirano v. Momentive Specialty Chems., Inc.*, 2012 WL 5389830, at *2–3 (S.D. Ohio Nov. 5, 2012) (granting-in-part and denying-in-part a motion *in limine* to exclude evidence of former employee's separation from defendant company). The court limited exploration into further details about the former employee's separation "[u]nless evidence at trial otherwise justifies" (*i.e.*, defendant opened the door). *Id.* at *3.

Here, the jury will presumably be instructed that they can use their common sense in drawing inferences from the facts. The facts will show that these employees were terminated under suspicious circumstances, and that Benesch concealed their termination from ICEE by serving its Second Amended Initial Disclosures and never correcting the record. Accordingly, this motion *in limine* should be denied as well.

**Doc. 415 – Motion *in Limine* to Preclude Use of Video Depositions In Lieu of Live Witness Testimony**

SPL's motion *in limine* does not dispute that each of the five witnesses it identifies (Mark Peters, Laura Peters, Ashok Makanji, Ann Marie Lynskey, and Jessica Snow) are adverse party representatives within the scope of Rule 32(a)(3). Thus, the parties agree that the Federal Rules permit ICEE to use those depositions "for any purpose" at trial. Indeed, Mark Peters and Laura Peters are directors, Ashok Makanji is the CFO, and Ann Marie Lynskey and Jessica Snow qualify as "managing agents" of SPL since they are, respectively, head of production and sales controller. *See* Exh. N (Jessica Snow LinkedIn) (Ms. Snow states in her LinkedIn profile that "I lead the UK sales team, selling our market-leading frozen drinks . . . into 12,000+ shops, cinemas, universities and other nationwide retail outlets. I'm responsible for retaining current business and generating new sales growth. Manage the national sales team by recruiting, setting targets and carrying out annual reviews. I continue to account manage various lead national accounts."); *see also Damsi v. Tarpstop, LLC*, 2023 WL 9186657, at *13 (N.D. Ohio Oct. 19, 2023) ("A managing or general agent is one who operates at the organization's highest levels or has overall authority to make high-level decisions on the part of the enterprise.") (cleaned up); *Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 624 (6th Cir. 2004) ("A managing agent is one authorized to transact all business of a particular kind at a particular place and must be vested with powers of discretion rather than being under direct superior control."). SPL does not argue otherwise.

Instead, SPL argues that the Court should nonetheless prohibit the use of depositions as substantive evidence at trial for witnesses who appear live, instead allowing such use only for impeachment. The argument is that for ICEE to play portions of their video depositions in ICEE's case in chief would be inefficient and confusing to the jury. Neither of these reasons makes any sense in this case.

Although the Sixth Circuit has not weighed in definitively on the issue, the Seventh Circuit has explained that a "pre-trial deposition of a party is in a position different from that of an ordinary witness and may be introduced as part of the adversary's substantive proof irrespective of the fact that the party is available to testify or has testified at the trial." *Fey v. Walston & Co.*, 493 F.2d 1036, 1046 (7th Cir. 1974); *see also Coughlin v. Capitol Cement Co.*, 571 F.2d 290, 308 (5th Cir. 1978) ("The Rule permits a party to introduce the deposition of an adversary as part of his substantive proof regardless of the adversary's availability to testify at trial."); *Boston Sci. Corp. v. Cook Med. LLC*, 2023 WL 3604030, at *5 (S.D. Ind. May 22, 2023) (use of deposition of adverse witness who would also testify live was permissible to allow the party to present its case in the manner it chooses and noting that non-offering party could "object at trial" if "Plaintiffs elicit live testimony that is cumulative of deposition testimony"); *Est. of Thompson v. Kawasaki Heavy Indus., Ltd.*, 291 F.R.D. 297, 305 (N.D. Iowa 2013) (permitting use of depositions of witnesses who would testify live); 8A Wright & Miller, Federal Practice & Procedure § 2145 ("The trial court has discretion to exclude parts of the deposition that are unnecessarily repetitious in relation to the testimony of the party on the stand, but it may not refuse to allow the deposition to be used merely because the party is available to testify in person."). Although a few district courts within the Sixth Circuit have precluded the playing of video depositions other than for impeachment when the witness appeared at trial, the circumstances of this case are entirely different than those at issue in those cases. *See, e.g.*, *Short v. Marvin Keller Trucking, Inc.*, 2021 WL 5410888, *1 (E.D. Ky. Nov. 18, 2021) (witness was within subpoena power of court and deposition had been taken a few months before trial).

SPL's arguments ignore the unusual circumstances of this case, which has now passed its seventh birthday. Certain depositions of Mark Peters, for example, were taken six years ago, and

Mark Peters now claims that he cannot remember anything back that far. *See, e.g.*, Exh. O (Mark Peters Jan. 29, 2026 Dep.), at 20:15–33:18 (answering "I don't recall" or "I don't recall six years ago" twenty-eight times). The initial depositions and preliminary injunction testimony of Laura Peters took place 5 years ago, and she does not even recall her testimony. Exh. P (Laura Peters Dec. 17, 2025 Dep.), at 54:16–55:4 ("Q. Your testimony wasn't just limited to machines, right, at the preliminary injunction hearing in front of Judge Barrett? MR. ZALUD: Objection. Mischaracterizes testimony. I think it was all about machines. Q. You can answer, Miss Peters. A. I don't remember, to be honest."); 74:7–16 ("Q. So this—this slide deck is talking about operations in – in Germany, Switzerland and Austria. And you testified at the August 30th 2021 preliminary injunction hearing about European operations, specifically the rebranding. Do you remember that? A. I don't remember what I testified, but – Q. You remember just testifying about what was happening in Europe in terms of the rebranding? A. No. I don't remember."). The cases that have held that live testimony should take precedence over video depositions were not dealing with a situation in which the depositions in question were conducted 5–6 years before the trial, and in which the witnesses' more recent depositions showed they had little memory of the earlier events, and even little memory of their own earlier testimony. Again, the 2020 and 2021 depositions and preliminary injunction testimony will give a much fuller and more accurate picture of the relevant events in this case.

Moreover, this Court has accurately described this case as having "peculiarities" (Doc. 301, at PAGEID 14583), and those peculiarities demand the use of depositions of SPL's witnesses as substantive evidence, unlike the situation in the cases cited by SPL. ICEE's claim is not merely that SPL went on using the SLUSH PUPPiE brand when it had no right to do so; ICEE alleges that SPL undertook a coordinated scheme involving this litigation to forge documents, fabricate

evidence, spoliate evidence, defraud ICEE and the Court, and then mislead retailers and consumers to convert to Slushy Jack's. The perjurious testimony of SPL witnesses in 2020 and 2021 are an integral part of ICEE's claims, as alleged in its Second Amended counterclaims. The jury will only be able to truly appreciate the significance of Mark Peters' and Laura Peters' testimony in 2020 and 2021 and see how it fits into ICEE's theory of the case by actually observing selections from that testimony. In July 2020, Mark Peters was testifying in deposition thinking that ICEE would be unable to prove his forgeries. The fact of how Mark Peters testified back in 2020 is evidentiarily significant because it was part of his scheme to keep using ICEE's marks and brand long after termination. Likewise, how he testified in October 2020, before ICEE knew about the destroyed laptops and "Plan B," is also evidentiarily significant in a way that viewing him testify live in 2026 will not be.

In other words, for the jury to appreciate how Peters effectuated his scheme, they should see how he stonewalled ICEE in the depositions in his effort to prevent ICEE from discovering Peters' misdeeds. Limiting the jury to snippets of that unique record in the event that the witness testifies inconsistently at trial would prevent ICEE from being able to give the jury a true and full picture of how SPL blocked ICEE from discovering first "Plan A" and then "Plan B," thereby facilitating SPL's profiting off of ICEE's marks and brand. The jury needs to see the way Mark Peters, in particular, stonewalled the discovery of his forgeries, as well as of his spoliation of evidence. There is simply no substitute for the jury getting to see witnesses confronted with forgeries, inexplicable inconsistencies, and misleading statements for the first time and to watch them react—and often dissemble—in real time.

In the case of Jessica Snow and Ann Marie Lynskey, live testimony while their boss—the guy who fired Somorin and Scoles and who decides their compensation—sits a few feet away from

the witness box staring them down will not be an accurate substitute for how they appeared at their Zoom depositions at home or in their office. That more unscripted, candid view is more telling. Clearly, it is for this very reason that SPL is trying to prevent the jury from seeing the more fulsome picture that is presented by the video depositions. Using snippets in the event of inconsistent testimony limited to impeachment is no substitute.

There is also the issue of fairness. SPL brought this suit in Ohio. ICEE's counterclaims are virtually the mirror image of SPL's original claims (SPL even claimed unjust enrichment! Doc. 1-1, at PAGEID 21 ("Defendant ICEE . . . has damaged SPL and unlawfully derived profits and gains. . . . Defendant ICEE has unjustifiably benefited from said unlawful acts and will continue to carry out such unlawful conduct and be unjustly enriched unless enjoined by this Court."). Yet ICEE cannot subpoena any current or former SPL officers, employees, or other agents. Moreover, ICEE was prevented from taking the depositions of key witnesses like Somorin and Scoles after the transition documents were belatedly produced late last year because Benesch improperly described them in its July 2025 second amended initial disclosures as currently affiliated with SPL and "may be contacted through counsel." Exh. M. But for this misconduct, ICEE could have sought depositions in the U.K. under the Hague if given sufficient time.

On the other hand, SPL is in total control over which witnesses it wants to bring live and which via video. SPL fired the witnesses it did not want to be deposed again (Somorin, Beaney, Wallace, Scoles), and is choosing to bring the trial those witnesses whom it believes did not fare so well at their depositions so SPL can have a do-over. By this motion, SPL is asking this Court to preclude the jury from seeing the most revealing testimony of the various SPL witnesses in the hopes that live testimony will be less problematic. SPL should not be permitted to profit from its improper gamesmanship. ICEE should be allowed to present its case as it chooses, barring specific

objections from SPL that certain evidence is inadmissible, cumulative, or prejudicial, which the Court could resolve.[10] *See Boston Sci. Corp.*, 2023 WL 3604030, at *5 (use of deposition of adverse witness who would also testify live was permissible to allow the party to present its case in the manner it chooses and noting that non-offering party could "object at trial" if "Plaintiffs elicit live testimony that is cumulative of deposition testimony"); *Est. of Thompson,* 291 F.R.D. at 305 (permitting use of depositions of witnesses who would testify live); 8A Wright & Miller, Federal Practice & Procedure § 2145 ("The trial court has discretion to exclude parts of the deposition that are unnecessarily repetitious in relation to the testimony of the party on the stand, but it may not refuse to allow the deposition to be used merely because the party is available to testify in person.").

Second, we will not know which witnesses will in fact show up, or when, until the trial commences. Mark Peters lives in Monaco and Malaysia. The others all reside in England. None of them is a citizen of the U.S. Even if one or more of them truly intends to make the trip, stuff happens, especially at this time of year. Illness, weather, mechanical problems, TSA, CBP—all are distinct possibilities. The Court should not preclude ICEE from being able to present the deposition testimony of witnesses whose attendance at trial cannot be guaranteed. *See Yerkes v. Ohio State Highway Patrol*, 2024 WL 4929293, at *5 (S.D. Ohio Dec. 2, 2024) (permitting deposition

---

[10] Of course, making those determinations is the purpose of deposition designations, which the parties will be filing today. In other words, the work of determining the parties' positions on which portions of the depositions are admissible is already done. Thus the concern expressed in *Gardner v. Liberty Ins. Corp.*, 2023 WL 7002781, at *3 (S.D. Ohio Oct. 23, 2023) that permitting use of the video depositions "would require extensive modifications before it could be presented to the jury due to the numerous objections, discussions of counsel, and inadmissible evidence contained therein" is moot here. ICEE has already done this work, and the work had to be done anyway since there is no guarantee that any of SPL's witnesses will in fact show up at the beginning of trial.

testimony of out-of-state witness who refused to attend trial despite receiving subpoena because the court could not compel witness's attendance under Rule 45(c)(1)).

With regard to efficiency, granting SPL's motion would result in greater inefficiency, a longer trial, and a more tedious one. Since adverse witnesses will be necessary for ICEE's case-in-chief, allowing the use of deposition clips will actually speed the trial by allowing ICEE to focus on discrete portions of testimony without requiring lengthy in-court testimony on the same matters, or the more cumbersome process of establishing that they no longer "remember" or have a different answer at trial before playing the clip. The alternative would be *less* efficiency. Specifically, either a given live witness would need to be called twice (in ICEE's case-in-chief, with SPL's redirect limited to the scope of that examination, and then again if SPL wishes to add matters outside the scope of ICEE's examination) or—to ensure a witness is called only once—the Court would need to allow SPL to go beyond the scope of ICEE's examination, which itself would prolong the presentation and risk confusing the jury. The alternative approach, ICEE's use of the deposition plus SPL's right to call the witness live as part of its own case if it so wishes, will ensure each witness is called just once and keep the presentation organized. That approach maintains both efficiency and each party's right to present evidence in their preferred manner. And it is an approach that has been used thousands of times over the past few decades, ever since video depositions became common in the 1990s.

As for jury confusion, the Court can explain to the jury that ICEE is presenting its case-in-chief first and has chosen to play prior testimony of certain SPL witnesses, some of whom (may) also be called by SPL, the counterclaim-defendant. That is not a difficult concept for jurors to grasp, in the undersigned's experience. Indeed, what would be confusing is to require ICEE to call

33

SPL witnesses live, and then have SPL's counsel attempt to present its defenses through those same witnesses.

SPL's motion would result in unfairness to ICEE, a less efficient trial, and the risk of jury confusion. SPL is trying to prevent the jury from seeing the revealing testimony of SPL's witnesses. To do that would be grossly unfair, as well as inefficient and confusing to the jury. Accordingly, ICEE respectfully requests that the Court deny SPL's motion *in limine* to preclude use of video depositions in lieu of live witness testimony.

## XII.    CONCLUSION

For the reasons stated above, ICEE's respectfully requests that the Court deny SPL's motions *in limine* as set forth above.


Dated:  February 23, 2026                          Respectfully submitted,

**DUANE MORRIS LLP**

BY:   */s/ David J. Wolfsohn*
David J. Wolfsohn (*admitted pro hac vice*)
Tyler R. Marandola (*admitted pro hac vice*)
30 South 17th Street
Philadelphia, PA 19103
Tel.: (215) 979-1000
Fax: (215) 979-1020
djwolfsohn@duanemorris.com
tmarandola@duanemorris.com

Kenneth M. Argentieri (Ohio Bar No. 0067493)
Trial Attorney
625 Liberty Ave, Ste. 1000
Pittsburgh, PA 15222
Tel.: (412) 497-1000
Fax: (412) 497-1001
kmargentieri@duanemorris.com

*Attorneys for Defendant/Counterclaim Plaintiff*
*The ICEE Company*

**CERTIFICATE OF SERVICE**

I, Tyler R. Marandola, certify that I served a true and correct copy of the foregoing to all counsel of record by ECF filing.


Dated:  February 23, 2026                    */s/ Tyler R. Marandola*