**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO**

SLUSH PUPPIE LIMITED,

        Plaintiff/Counterclaim
        Defendant,

        v.

THE ICEE COMPANY,

        Defendant/Counterclaim
        Plaintiff.

CASE NO. 1:19-cv-00189-MRB

Judge Michael R. Barrett

**DECLARATION OF DAVID J. WOLFSOHN IN SUPPORT OF ICEE'S PETITION FOR ATTORNEY'S FEES AND COSTS AWARDED PURSUANT TO THIS COURT'S FEBRUARY 18, 2026 ORDER GRANTING MOTION FOR SANCTIONS (DOC. 417)**

I, David J. Wolfsohn, pursuant to 28 U.S.C. § 1746, do hereby declare under penalty of perjury that the following is true and correct:

1. I submit this Declaration in support of ICEE's petition for attorney's fees and costs pursuant to this Court's order dated February 18, 2026 (Doc. 417), granting ICEE's Motion for Sanctions and awarding ICEE its reasonable attorney's fees and costs incurred uncovering Mark Peters' forgeries. *Id.* PAGEID 20562. I am, and have been since this case's inception, lead counsel for Defendant/Counterclaim Plaintiff The ICEE Company ("ICEE") in the above-captioned matter. I make this Declaration based upon my personal knowledge.

2. I am an attorney licensed to practice law in the Commonwealth of Pennsylvania and am admitted to practice before the Supreme Court of the United States, the United States District Court for the Eastern District of Pennsylvania, the United States District Court for the Western District of Pennsylvania, the United States Court of Appeals for the Federal Circuit, the

United States Court of Appeals for the Third Circuit, the United States Court of Appeals for the Eleventh Circuit, and the United States Court of Appeals for the Second Circuit.

3. I am, and have been since 2013, a partner at the law firm of Duane Morris LLP, located at 30 South 17th Street, Philadelphia, PA 19103. I have been licensed to practice law for approximately 36 years. My practice has focused on intellectual property and technology-related complex commercial litigation for the past 30 years.

4. I graduated cum laude and Order of the Coif from the law school of the University of Chicago. After law school, I clerked for The Honorable Walter K. Stapleton of the United States Court of Appeals for the Third Circuit.

5. Duane Morris is an AmLaw 100 law firm with more than 900 attorneys in offices across the United States and internationally. Duane Morris is repeatedly ranked among the leading U.S. law firms handling patents, trademarks, copyrights and related litigation. In 2024, Duane Morris's Intellectual Property group was named an "Intellectual Property Group of the Year" by Law360. *See* https://www.law360.com/articles/2272115/intellectual-property-group-of-the-year-duane-morris.

6. During my career, I have tried numerous cases in federal and state courts and in arbitrations. Among the IP cases I have litigated was *Graham v. Haughey*, in which I represented the plaintiff in a copyright case in which the jury awarded my client $18.9 million. The case was appealed twice to the Third Circuit and petitions for certiorari were also filed twice. I argued both Third Circuit appeals successfully. The total judgment ended up being $31 million in favor of my client, a judgment that was affirmed by the Third Circuit. In the first appeal of that case, the Third Circuit rendered the leading opinion on the application of the discovery rule in copyright cases. 568 F.3d 425 (3d Cir. 2009). In 2015, in *Warwinski v. Heinz*, I represented

Heinz in a misappropriation of idea case, obtaining a defense verdict in a jury trial.  In 2015, I obtained a favorable ruling in the Eleventh Circuit on an appeal of a jury trial in which I was lead counsel in the Middle District of Florida. *Yellow Pages v. Ziplocal,* 795 F.3d 1255 (11th Cir. 2015). The Eleventh Circuit ruled in my client's favor on a case of first impression involving how to calculate statutory damages in a copyright case. In 2019, I obtained a unanimous affirmance in the Third Circuit of an appeal of a jury verdict in my client's favor in a case involving robotic space vehicles designed to travel to and from the International Space Station, which I had successfully tried to a jury in the District of Delaware. *Moon Express, Inc. v. Intuitive Machines, Inc.*, 788 Fed. App'x 117 (3d Cir. Oct. 1, 2019).  In 2022, I obtained a unanimous affirmance in the Eleventh Circuit of a grant of summary judgment in our client's favor in a Digital Millenium Copyright case.  *Victor Elias Photography, LLC v. ICE Portal, Inc.*

7.      I am a fellow of the American College of Trial Lawyers, where I am a member of its complex litigation committee. I have been a leader in the Section of Litigation of the American Bar Association for the past twenty years.  I currently serve on the Section's Federal Practice Task Force.  I have also served as chair of the Trial Evidence Committee and the Intellectual Property Litigation Committee. I recently was retained to serve as an expert on American federal procedure, trade secrets, and patent litigation in a case filed in the Canadian federal court in Vancouver.  For the past few years, I have been selected as a Global Leader by World Trademark Review.

8.      The attorney's fees and costs set forth herein were necessarily and reasonably incurred by ICEE in connection with its defense against SPL's claims based on the forged 2000 Appointment and in uncovering Mark Peters' forgeries, including the fees and costs incurred in

3

the briefing on the motion for sanctions and the fees and costs incurred in preparing this petition and this declaration.

**Reasonableness of Hourly Rates**

9.      This case has been primarily handled by Tyler Marandola and myself since its inception in February 2019.  When Mr. Marandola began working on this case with me, he was a mid-level associate.  As he gained experience as a litigator, and was elected to the partnership effective January 1, 2023, Mr. Marandola's hourly rate has increased.  The fact that Mr. Marandola continued to work on this case and that he and I have been the primary billers since 2019 has resulted in the remarkably efficient management of this case.

10.      Over the years, we have had assistance from Ken Argentieri (a partner in Duane Morris' Pittsburgh office admitted in Ohio, who served as local counsel), Karen Kline (a transactional trademark partner who had had dealings with SPL since 2011, Simeon Poles (a junior associate), Richard Hughes (a junior associate), Cheryl Inwek (a paralegal), Wiyono Woe (who handled e-discovery), and Chris Santo (e-discovery).

11.      The hourly rates charged by Duane Morris in this matter are consistent with the prevailing market rates for attorneys of similar experience, skill, and reputation in the relevant legal community.

12.      In this case, Duane Morris typically billed our client at each timekeeper's standard rates and then applied a 15% discount to the overall billed time.  The spreadsheets attached show the pre-discounted rate and then apply the 15% discount to all the entries.  The net amounts shown in the attached spreadsheets (i.e., post-discount) are the same amounts billed to and paid by the client.

13. In 2019, my rate was $995. Applying the 15% discount, my effective rate for this matter was $845.50. The Real Rate Report states that, in 2019, the median rate for commercial litigators in firms of more than 501 lawyers was $816. Exh. A, p. 63.

14. In 2019, Mr. Marandola's standard rate was $460. Applying the 15% discount, his effective rate for this matter was $391 in 2019. The Real Rate Report states that the rate for the third quartile was $561 for commercial litigation associates in firms with more than 501 lawyers.

15. In 2020, my rate was increased to $1060, with an effective rate for this matter of $901. The Real Rate Report states that the median for partners at firms with more than 501 lawyers was $834 per hour for commercial litigators. Exh. B, 2021 report at 96.

16. In 2020, Mr. Marandola's rate was $525, with an effective rate for this matter of $446.25. The Real Rate Report states that the median for associates at firms with more than 501 lawyers was $544 per hour for commercial litigators. Exh. B, 2021 report at 96.

17. In 2021, my standard rate was $1130 with an effective rate for this matter of $960.50. The Real Rate Report for 2021 states that the third quartile of commercial litigators in firms with more than 501 lawyers billed at $1,180 per hour. Exh. B, p. 96.

18. In 2021, Mr. Marandola's rate was increased to $570, with an effective rate for this matter of $484.50. The Real Rate Report for 2021 states that the upper quartile of associates at firms with more than 501 lawyers billed at $760 per hour. Exh. B, p. 96.

19. In 2023 and 2024, my billing rate for this matter was $1100, with an effective rate of $935. The Real Rate Report states that in 2023 the upper quartile of commercial litigation partners at firms with more than 501 lawyers billed at $1076 per hour in 2023. Exh. C.

5

20.     Effective January 1, 2023, Mr. Marandola was elected to the partnership of Duane Morris LLP. Mr. Marandola's rate in 2023 was $710, with an effective rate for this matter of $603.50. As noted above, the Real Rate Report states that the upper quartile of commercial litigation partners at firms with more than 501 lawyers billed at $1076 per hour in 2023.  Exh. C, p. 92.  For partners with fewer than 21 years' experience, the median was $599 in 2023 and the upper quartile was $906.  Exh. C, P. 90.

**Itemization of Fees and Costs**

21.     Attached hereto as Exhibit D is a spreadsheet that is pulled from invoices sent to our client and paid by them. This spreadsheet contains the fees incurred beginning with the filing of the complaint in February 2019 and ending with the work done preparing the reply brief in support of the motion for sanctions.  I have removed entries reflecting amounts billed for the types of work that would have been performed even if the claims asserted were not "meritless" and had not been based on the agreement that Mark Peters forged.  For example, I removed fees relating to the negotiations and drafting of the confidentiality protective order and the Rule 26(f) report.  I also removed fees relating to ICEE's counterclaims.

22.     Exhibit E is a spreadsheet itemizing additional fees incurred and billed in early 2021, all of which have been paid by the client.  These fees were incurred after the filing of the reply brief in support of the motion for sanctions.  The work reflected in these items was necessary, however, to uncover Mr. Peters' forgeries.  The Court will recall that in September 2020, the Court ordered SPL to produce a witness knowledgeable about the Wendsday email. SPL designated Mr. Peters pursuant to Rule 30(b)(6).  The Rule 30(b)(6) deposition was scheduled for September 29, 2020, but Mr. Peters had set sail down the Thames in his oyster boat, apparently without a laptop.  Doc. 417 PAGEID 20553.  The deposition was rescheduled for October 9, 2020.  During that deposition, it was obvious that Mr. Peters was still not prepared

6

to testify about the topics for which he had been designated. Doc. 76. (In retrospect, it appears this was because he did not want to admit that he had forged the Wendsday Email.) After applying to the Court for relief, the Court ordered SPL to produce one or more witnesses knowledgeable about the Wendsday Email. SPL eventually produced Laura Peters and Abiodum Somorin to testify about the various noticed topics. Doc. 99, 100. Importantly, in early 2021, counsel for SPL and counsel were still taking the position that the Wendsday Email had been authored by Lindsay Kirby. DTX 1302 ("There is no one at SPL with knowledge of who typed the Wendsday Email, although it does note, on its face, Lindsay Kirby as the sender and that is who SPL believes typed it. She last worked for SPL in 2009."). While Ms. Peters' deposition was unilluminating, Mr. Somorin did admit that the only possible explanation for the Wendsday Email was that Mr. Peters typed it up. These depositions and the motion practice relating to them were therefore necessary to uncover information regarding Mr. Peters' forgery of the Wendsday Email.

23. Exhibit F is a spreadsheet that sets forth fees incurred and paid regarding the attorney depositions. This work was performed in 2023 and 2024. ICEE's motion sought the depositions to obtain information about Mr. Peters' forgeries (i.e., the merits). Doc. 205 PAGEID 7943-44 (SPL continues to deny Peters was behind the forgeries; purpose of counsel depositions is to obtain factual information about the forgeries). The Court ultimately ordered the attorney depositions, but for purposes of the attorney sanctions motion rather than the merits. Doc. 270. But the Court noted that the depositions were relevant to both sanctions and the merits. Doc. 270 PAGEID 11635. In fact, numerous documents relevant to uncovering Peters' forgeries were only produced in connection with those depositions—and clearly would not have been produced but for the attorney depositions. For example, the correspondence between

Benesch and Peters regarding the two versions of the History of Working Practise, the communications between Benesch and Peters regarding SPL's handwriting expert, and the communications regarding the metadata for the Wendsday Email were never produced by Benesch, but instead were produced in 2024 by Reminger (representing Benesch and the attorneys) in connection with the attorney depositions. *See, e.g.*, DTX 1065 (House to Peters sending Leonard report); DTX 1067 (House to Peters re Willard analysis); DTX 1073 (House to Peters re Wendsday Email metadata); DTX 1075 (House to Peters re two versions of History of Working Practise); DTX 1102 (Willard to Turk re Radcliff handwriting analysis). And it was not until the second deposition of Jennifer Turk in May 2024 that ICEE learned that counsel had confronted Peters (and no one else) regarding the forgeries, and at which, for the first time, counsel admitted that Mark Peters was the one who had forged the Wendsday Email. Doc. 273 PAGEID 11930-31. Indeed, this Court, in granting the sanctions motion, relied on testimony from the attorneys and documents produced in connection therewith in its sanctions opinion. Doc. 417 PAGEID 20542 (referencing Gurbach testimony re withdrawal of Wendsday Email); 20544-45 (quoting from Gurbach and Turk depositions and House's notes of conversation with handwriting expert Willard, which notes were produced in connection with the attorney depositions). Because the attorney depositions contributed to the uncovering of Peters' forgeries, the undersigned submits that the fees and costs associated with those depositions (and the motion practice necessary to obtain them) should be recoverable.

24. I spent 16.6 hours on drafting this fee application, including the time spent reviewing the bills and creating the attached spreadsheets. That time will be billed at the effective rate (after the 15% discount) of $935, for a total of $15,521.

8

## Summary of Fees and Costs

25.     As set forth in Exhibits D through G and paragraph 24 above, the fees and costs at issue are: $563,742.93 + $23,470.20 + $221,715.28 + $83,827.54 + $15,521 = $908,276.95. Accordingly, ICEE respectfully requests that it be awarded that amount pursuant to the Court's sanctions decision.

## Conclusion

26.     I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on June 17, 2026.

Respectfully submitted,

 /s/ David J. Wolfsohn
David J. Wolfsohn (*admitted pro hac vice*)
Duane Morris LLP
30 South 17th Street
Philadelphia, PA 19103
Tel.: (215) 979-1000
Fax: (215) 979-1020
djwolfsohn@duanemorris.com

*Counsel for ICEE*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 17, 2026, a copy of the foregoing Declaration of David J. Wolfsohn in Support of Petition for Attorney's Fees and Costs, was filed electronically via the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

 /s/ David J. Wolfsohn  
David J. Wolfsohn