**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT CINCINNATI**

| | |
|---|---|
| SLUSH PUPPIE LIMITED, | Case No. 1:19-cv-00189 |
|     Plaintiff/Counterclaim Defendant, | |
| | Judge Michael R. Barrett |
|     v. | |
| THE ICEE COMPANY, | |
|     Defendant/Counterclaim Plaintiff. | |

**ORDER**

On May 20, 2026, after seven days of trial (and two days of deliberation), a jury returned an advisory verdict (*see* Doc. 488) in The ICEE Company's ("ICEE") favor on its counterclaims[1] against Slush Puppie Limited ("SPL"). The jury found that SPL was unjustly enriched[2] through its unauthorized use of the SLUSH PUPPIE® brand after June 25, 2019, and awarded ICEE disgorgement of $33 million of SPL's profits[3] for each year from mid-2019 through mid-2025. The jury additionally found that SPL committed trademark infringement under the U.K. Trade Marks Act 1994, Sections 10(1) and 10(3),

---

[1] ICEE withdrew its breach of contract counterclaims prior to submission to the jury. (*See* Transcript of Proceedings, *Excerpt of Proceedings Day 7 of Jury Trial*, Doc. 497 PAGEID 24290 (18:8–24)).

[2] (Interrogatories & Verdict Form, Doc. 488 PAGEID 23398–99 (Interrogatory Nos. 1–4), PAGEID 23406 (Verdict Form (Unjust Enrichment Q.1))).

[3] (Interrogatories & Verdict Form, Doc. 488 PAGEID 23406 (Verdict Form (Unjust Enrichment Q.2–Q.8))).

1

and that SPL was liable for passing off under U.K. common law.[4]  The jury awarded disgorgement of profits on each of these claims, for a total of $3.6 million.[5]

In the wake of the advisory verdict—and while the undersigned is preparing findings of fact and conclusions of law as required under Fed. R. Civ. P. 52(a)(1)—ICEE has filed an "emergency" Motion asking the Court to issue "an Order Freezing Certain of SPL's Assets, Prohibiting Transfers of Assets, Imposing a Constructive Trust on Moneys Received from SPL by The Benesch Firm, and Requiring Financial Reporting Pending Satisfaction of Judgment."  (Docs. 490, 501).  SPL opposes ICEE's request.  (Doc. 494).  ICEE's Motion will be GRANTED in part.

**Background.**  In the interest of brevity, the Court incorporates the findings[6] contained within its Opinion & Order (Doc. 417) granting ICEE's Motion for Sanctions (Doc. 73) against SPL.[7]

The Court quotes with approval ICEE's summary of events reprinted below:

> Mark Peters is SPL's sole managing director and has describe[d] himself as follows: "I am the company." He consistently characterizes SPL as [a] "small family business." In closing argument, SPL's counsel made the same argument to the jury. Peters is the sole (100%) shareholder of Ralph Peters & Sons, the holding company that owns 100% of Frozen Brothers Limited, the

---

[4] (Interrogatories & Verdict Form, Doc. 488 PAGEID 23400–05 (Interrogatory Nos. 5–15), PAGEID 23407 (Verdict Form (Trade Mark Infringement – U.K. Trade Marks Act, Section 10(1) Q.9), (Trade Mark Infringement – U.K. Trade Marks Act, Section 10(3) Q.11), (Passing Off Q.13))).

[5] (Interrogatories & Verdict Form, Doc. 488 PAGEID 23407 (Verdict Form (Trade Mark Infringement – U.K. Trade Marks Act, Section 10(1) Q.10), (Trade Mark Infringement – U.K. Trade Marks Act, Section 10(3) Q.12), (Passing Off Q.14))).

[6] To quote but one example, "the record evidence positively establishes that Mark Peters forged documents to SPL's economic gain and then lied about it. His perjury subverted the discovery process in this litigation for nearly two years, wasting time and money.  He also squandered this Court's resources, which are in short supply."  (Doc. 417 PAGEID 20560).

[7] That Order dismissed SPL's claims with prejudice and awarded ICEE's attorneys' fees (and costs) for time spent "uncovering Mark Peters' forgeries, which were crafted to boost SPL's bottom line. And, in turn, his own."  (Doc. 417 PAGEID 20562 (footnote omitted)).

2

successor entity to SPL. Peters also owns 100% of the shares of Frozen Brothers Limited directly. SPL changed its name from Slush Puppie Limited to Frozen Brothers Limited on November 17, 2020. The entirety of this corporate structure—SPL, Ralph Peters & Sons, and Frozen Brothers Limited—is under the exclusive dominion and control of a single individual: Mark Peters. At trial, SPL's CFO admitted that Mark Peters has been paying himself exorbitant consulting fees through an Isle of Man company (a well-known tax haven that is not part of the UK or European Union) and thereby moving at least some of SPL's profits offshore.

Moreover, as ICEE documented in its December 15, 2025 letter to the Court, Mark Peters has been taking steps that appear designed to attempt to move control of the shares of Ralph Peters & Sons Limited, and his own assets, outside of the reach of UK courts. On October 29, 2024, Ralph Peters & Sons Limited filed a document changing Mark Peters' country of "usual residence" to Monaco. On March 10, 2025, Peters'[ ] Isle of Man company changed its name from Eskimo Joe's Limited—the company to whom SPL's CFO testified it has been paying consultancy fees—to "Ralph Peters & Sons IOM Limited." On May 19, 2025, the newly renamed Ralph Peters & Sons IOM issued two new shares to Mark Peters (out of 3 total shares), giving Mark Peters individually a controlling voting stake in the company. The very same day, Ralph Peters & Sons IOM became the owner of "75% or more of the shares" in Ralph Peters & Sons Limited. That is because, on that date, Mark Peters transferred 50,000 "ordinary" shares and two "special" shares in Ralph Peters & Sons Limited to the Isle of Man entity. The transaction left Mark Peters holding zero shares, making Ralph Peters & Sons IOM the sole owner. Crucially, this date was not random; these machinations occurred mere days after the UK court lifted the order freezing certain assets of Ralph Peters & Sons Limited and Mark Peters personally. In short, at the first opportunity, and realizing he was likely to lose this case, Mark Peters took steps to put the shares of Ralph Peters & Sons Limited outside UK jurisdiction, and to make himself—now identified as a resident of Monaco—the indirect owner of Ralph Peters & Sons Limited through his Isle of Man company. It is too obvious that SPL and Mark Peters have a strong incentive now to funnel away any monies they can from SPL and its subsidiaries to avoid satisfying the forthcoming judgment.

(Doc. 490 PAGEID 23424–25 (record citations omitted)).

Finally, it is undisputed that: SPL has no (known) assets in the United States; and, at trial—with criminal counsel in tow—Mark Peters invoked his Fifth Amendment right against self-incrimination as to all questions posed to him "regarding his forgeries, perjury, destruction of evidence, and scheme to defraud the Court."  (*See* Doc. 490 PAGEID 23425, 23427–28).

**Authority.**  The Court determines it has the authority to issue an asset-freezing injunction under the current circumstances.  ICEE's counterclaims seek equitable relief involving SPL's assets, hence the jury's advisory verdict as to the disgorgement of profits.

A district court has "no authority to issue a preliminary injunction preventing [a defendant] from disposing of [its] assets pending adjudication of [a plaintiff's] claim for **money** damages." *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 333 (1999) (bold emphasis added).  But "*Grupo Mexicano* applies only to cases where money damages are the **sole** form of relief sought."  *Plumbers Loc. 98 Defined Benefit Pension Fund v. Dan Allor Plumbing & Heating Co.*, No. 23-11021, 2025 WL 2428436, at \*2 (E.D. Mich. Apr. 24, 2025) (citing *Deckert v. Indep. Shares Corp.*, 311 U.S. 282, 290 (1940)) (bold emphasis added).  "[T]he *Grupo Mexicano* Court 'was not presented with, nor did it choose to address, a situation in which equitable remedies were claimed.'"  *In re Focus Media Inc.*, 387 F.3d 1077, 1085 (9th Cir. 2004) (quoting *United States ex rel. Rahman v. Oncology Assocs., P.C.*, 198 F.3d 489, 496 (4th Cir. 1999)).  Pertinent here, however, "[a] request for equitable relief invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief."  *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995); *see Reebok Int'l, Ltd. v. Marnatech Enter., Inc.*,

4

970 F.2d 552, 559 (9th Cir. 1992) ("injunction authorized by the district court's inherent equitable power to issue provisional remedies **ancillary** to its authority to provide final equitable relief") (bold emphasis added).[8]

Worth mention, in both the 1996 Manufacturing Appointment and the 1999 Distributor Agreement, SPL consented to personal jurisdiction in the "Court of Common Pleas of Hamilton County, Ohio, USA." (*See* Doc. 27-2 ¶ 24, Doc. 27-3 ¶ XVI). When SPL filed this lawsuit there, ICEE removed it here. (Doc. 1). SPL filed a motion to remand (Doc. 5) that it later withdrew (Doc. 23). Accordingly, SPL also has consented to personal jurisdiction in this Court. "Once personal jurisdiction of a party is obtained, the District Court has authority to order it to 'freeze' property under its control, whether the property be within or without the United States." *United States v. First Nat'l City Bank*, 379 U.S. 378, 384 (1965). Thus, this Court has the authority to order SPL to freeze its assets in the UK (and elsewhere).

**Merits.** The Court can issue an asset-freezing injunction under the same four-factor standard that governs preliminary injunctions more generally: (1) a likelihood of success on the merits; (2) irreparable harm absent an injunction; (3) lack of harm to third parties; and (4) the public interest. *McGirr v. Rehme*, 891 F.3d 603, 610 (6th Cir. 2018).

---

[8] SPL emphasizes that the Sixth Circuit has never "adopted" the equitable-claim exception to *Grupo Mexicano*. (Doc. 494 PAGEID 24193, 24195). True. But that's only because it hasn't yet "had occasion to consider application of *Grupo* to a case in which a preliminary injunction is sought to freeze assets in a suit asserting claims in equity," unlike "many" of the other circuit courts. *See Fifth Third Bank v. Gentile*, 2008 WL 11380020, at *3 (N.D. Ohio Oct. 12, 2008); *Plumbers Local 98*, 2025 WL 2428436, at *2 (the Sixth Circuit "has not addressed *Grupo Mexicano*'s applicability in cases where the plaintiff seeks damages *and* equitable relief") (italics in original). *Cf. Williamson v. Recovery Ltd. P'ship*, 731 F.3d 608, 625–26 (6th Cir. 2013) (defendants forfeited their argument that *Grupo Mexicano* "provides a colorable basis" for the premise that—"absent a claim in equity"—a preliminary injunction as to the sale or transfer of assets is prohibited).

"As long as there is some likelihood of success on the merits, these factors are to be balanced, rather than tallied."  *Hall v. Edgewood Partners Ins. Ctr., Inc.*, 878 F.3d 524, 527 (6th Cir. 2017).

The first factor, likelihood of success, is (as ICEE argues) "overwhelmingly" satisfied.  (Doc. 490 PAGEID 23430).  Following this Court's instructions on the law, the jury awarded ICEE $33 million "in equitable disgorgement of SPL's ill-gotten profits."  *Id.*  Yes, the verdict is advisory, but "it plainly establishes ICEE's expectation that the Court will turn the verdict into a judgment in ICEE's favor for a substantial sum."  *Id.*  Moreover, this Court has separately awarded ICEE its reasonable attorneys' fees and costs as a sanction against SPL for its "decision to file a lawsuit based on forged documents." (Doc. 417 PAGEID 20547, 20562).[9]

The second factor, irreparable harm, is also entirely likely, based upon Mark Peters' pre-suit behavior and conduct to date, including but not limited to evidence that suspiciously vanished (case-in-point, his laptops).  ICEE's worry that Peters will further "loot" SPL (now Frozen Brothers) to avoid paying a judgment isn't exaggerated, it's fully justified.[10]  "The concealment and dissipation of assets likely obtained through fraud

---

[9] "Mark Peters' (and, therefore, SPL's) misconduct 'did not concern a peripheral or an incidental matter,' but, rather, 'goes to the heart of the case[.]'  [*Cerruti 1881 S.A. v. Cerruti, Inc.*, 169 F.R.D. 573 (S.D.N.Y. 1996)].  SPL tenders a remarkable set of circumstances: it concedes that the sole document (the 2000 Appointment) underpinning the original Complaint is not 'genuine,' but only after contentious discovery and confrontation does it withdraw that document and matter-of-factly pivot to documents (the 1996 Appointment and the 1999 Agreement) previously referred to in the First Amended Complaint as 'superseded' by the not 'genuine' one."  (Doc. 417 PAGEID 20562).

[10] SPL insists that "the fraud findings in this Court's sanctions orders are being leveraged well beyond their scope."  (Doc. 494 PAGEID 24206).  "This Court found that fraud occurred in the formation of the 2000 Agreement, not in SPL's ongoing business operations or asset management."  (*Id.*).  The undersigned begs to differ.  As recently as this past January (2026), Mark Peters dodged questions concerning Peter Splatt's role in SPL's transition from SLUSH PUPPIE® branded products to the new

6

constitutes irreparable harm for the purposes of issuing a preliminary injunction." *McGirr*, 891 F.3d at 613 (cleaned up).  As ICEE explains, absent a freezing order, it "faces the irreparable harm of being unable to collect on a judgment validly obtained after years of litigation—litigation made longer and more expensive by SPL's own fraud and obstruction. This Court has already recognized that Peters' forgeries were crafted to 'boost SPL's bottom line,' and the jury found that that conduct garnered SPL millions in profits.  ICEE should not be forced to engage in yet another costly, multi-year proceeding to chase assets that Peters has scattered among shell entities or hidden in foreign accounts." (Doc. 490 PAGEID 23432).

As to the third factor, the Court does not foresee harm to any third parties if SPL's assets are frozen.  ICEE has tailored its requested relief to allow SPL to continue its "ordinary-course" business operations; "it merely prevents transfer or dissipation pending satisfaction of the [Court's anticipated] judgment."  (Doc. 490 PAGEID 23432).

Finally, the Court agrees with ICEE that the public interest is served by ensuring that federal court judgments are "meaningful and enforceable."  (*Id.* PAGEID 23433). "When a party engages in the kind of sustained fraud that this Court has found here— document fabrication, perjury, evidence spoliation, and obstruction—the public interest demands that the Court exercise its full authority to ensure that justice is not frustrated by post-judgment gamesmanship."  (*Id.*).

---

Slushy Jack's concept. . . . [He] consistently (and incredibly) responded, 'I don't recall six years ago.'" (Doc. 417 PAGEID 20560).

**Bond.**  The question of bond must now be addressed.  A court may issue a preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).  The language of Rule 65(c) "appears to be mandatory" and "many circuits have so interpreted it."  *See Molton Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995) (citations omitted). "However, the Sixth Circuit has long held that 'the district court possesses discretion over whether to require the posting of security.'" *Queen City Mechs., Inc. v. Boone Cnty., Ky.*, No. 26-35-DLB-CJS, 2026 WL 688121, at *16 (E.D. Ky. Mar. 11, 2026) (citing *Molton*). And "[i]t is the defendants' [*sic*] burden to reasonably estimate the extent to which [it] would be damaged if the preliminary injunction were improvidently granted."  *Id.* (quoting *PlanGraphics, Inc. v. Hall*, No. 05-58-KKC, 2005 WL 8165601, at *1 (E.D. Ky. Dec. 14, 2005) (citations omitted)).[11]  In its memorandum contra, SPL asks the Court to require that ICEE post a bond "of not less than $21,000,000, tailored to the scope of any restraints imposed."  (Doc. 494 PAGEID 24209–10).  In support, it maintains that the relief ICEE seeks would impose unspecified "harm" on "SPL, its customers, employees, suppliers, contactors, and the separate foreign entities."  (*Id.* PAGEID 24209).  Without detail, it categorizes the "potential" harm from a wrongful injunction as "enormous."  (*Id.* PAGEID 24210).

---

[11] *See generally Appalachian Reg'l Healthcare, Inc. v. Coventry Health & Life Ins. Co.*, 714 F.3d 424, 432 (6th Cir. 2013) ("Although no rule formally requires it, a party seeking a security bond regularly estimates the damages it will suffer if it complies with a preliminary injunction. This serves three purposes. It gives the party seeking the injunction a sense of its liability if the injunction is later found to have been unlawful. It provides the court with a basis to set the proper amount (though not necessarily a definitive one). And it furnishes an appellate court with a marker against which to review the district court's determination (though, again, not necessarily an exclusive one)").

The Court declines to set bond in an amount pulled seemingly from nowhere. What's more, SPL overplays the advisory nature of the jury's ($33M) verdict and underplays the sizable award of attorneys' fees and costs[12] it will owe to ICEE in connection with exposing Mark Peters' forgeries.

**Conclusion.**  Based on the foregoing, ICEE's "emergency" Motion (Doc. 490) is **GRANTED in part** and **as follows**:

1. Slush Puppie Limited (now known as Frozen Brothers Limited), and all persons acting in concert with it, are hereby prohibited from making any payments, making any loans, paying any dividends, or transferring any assets or interests in any assets to Mark Peters or to any entity controlled or owned, directly or indirectly, by him, including, but not limited to, Ralph Peters & Sons IOM Limited.

2. Slush Puppie Limited (now known as Frozen Brothers Limited), and all persons acting in concert with it, are hereby prohibited from transferring, dissipating, encumbering, concealing, removing, diminishing the value of, or otherwise disposing of any assets, including, but not limited to, shares in Frozen Brothers Limited, Frozen Brothers SARL, Frozen Brothers GmbH, Frozen Brothers Switzerland, Frozen Brothers BV, Frozen Brothers Manufacturing Limited, Eskimo Joe's Limited, and Frozen Brothers Investments Limited.

3. To insure compliance with paragraphs 1 & 2 above, Slush Puppie Limited (now known as Frozen Brothers Limited) is limited to ordinary-course expenditures necessary for the continued operation of its business, provided that no single

---

[12] ICEE has asked the Court to award $908,276.95.  (Wolfsohn decl., Doc. 493 ¶ 25).

transaction exceeding $25,000 (or its equivalent in any foreign currency) may be consummated without prior written notice to ICEE's counsel, which shall be Attorneys' Eyes Only; and

4. Slush Puppie Limited (now known as Frozen Brothers Limited), within thirty (30) days of the entry of this Order, must file with the Court, and serve upon ICEE, a sworn disclosure identifying all assets and holders/owners of assets—including but not limited to bank accounts, real property, intellectual property, equity interests, receivables, and tangible personal property—held by SPL or any related entity. This disclosure shall also be Attorneys' Eyes Only and may be filed under seal.

5. Bond is waived.

**IT IS SO ORDERED.**

/s/ *Michael R. Barrett*
JUDGE MICHAEL R. BARRETT

10