**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**

SLUSH PUPPIE LIMITED,

        Plaintiff/Counterclaim
        Defendant,

        v.

THE ICEE COMPANY,

        Defendant/Counterclaim
        Plaintiff.

CASE NO. 1:19-cv-00189-MRB

Judge Michael R. Barrett

**THE ICEE COMPANY'S EMERGENCY MOTION FOR AN ORDER TO SHOW CAUSE WHY SLUSH PUPPIE LIMITED AND MARK PETERS SHOULD NOT BE HELD IN CIVIL CONTEMPT FOR VIOLATION OF THIS COURT'S JULY 8, 2026 ORDER (Doc. 504)**

**INTRODUCTION**

The ICEE Company ("ICEE") respectfully moves this Court for an emergency order directing Plaintiff/Counterclaim Defendant Slush Puppie Limited ("SPL") and Mark Peters to show cause why they should not be held in civil contempt for violating Paragraph 1 of this Court's July 8, 2026 Preliminary Injunction Order (Doc. 504).

On July 8, 2026, this Court entered a preliminary injunction that *expressly prohibits* SPL "and all persons acting in concert with it" from "making any payments . . . to Mark Peters." (Doc. 504, ¶ 1.) Despite this unambiguous prohibition, SPL has twice notified this Court and ICEE's counsel that it intends to pay Mark Peters €77,250 (approximately $84,000) on August 10, 2026. (Doc. 506; Doc. 510.) SPL has scheduled this payment *before* ICEE's opposition to SPL's pending Motion for Clarification (Doc. 508) is even due, and before this Court has ruled on that motion.

1

ICEE immediately notified SPL that any payment to Mark Peters, including the proposed €77,250 payment, would be contumacious. Exh. A, T. Marandola to E. Zalud. As of the filing of this motion on the morning of August 10 London time, SPL has not informed the Court or ICEE that it has decided to withhold the payment. Accordingly, based on SPL's statements, SPL has violated the Court's July 8 Order by making a substantial payment to Mark Peters. ICEE respectfully requests that this Court issue a rule to show cause and schedule expedited proceedings.

## FACTUAL BACKGROUND

### A.      The Court's July 8, 2026 Preliminary Injunction Order

On July 8, 2026, after full briefing and consideration of ICEE's Emergency Motion for Preliminary Injunction Freezing Certain Assets of SPL (Doc. 490), this Court entered its Order (Doc. 504) granting the motion in part. Paragraph 1 of the Order states:

> SPL and all persons acting in concert with it are prohibited from making any payments, making any loans, paying any dividends, or transferring any assets or interests in any assets to Mark Peters or to any entity controlled or owned, directly or indirectly, by him, including, but not limited to, Ralph Peters & Sons IOM Limited.

Doc. 504, ¶ 1. The Order further provides, in Paragraph 3, that "[t]o insure compliance with paragraphs 1 & 2 above," SPL must provide written notice to ICEE's counsel at least seven days before making any payment exceeding $25,000 to any person or entity. *Id.*, ¶ 3.

### B.      SPL Decides to Violate the Clear and Unambiguous Terms of the Freezing Injunction Based

On July 17, 2026, SPL's counsel Eric Zalud filed a letter with the Court (Doc. 506) stating:

> I write to inform the Court that on or about August 9, 2026 SPL will be making its regular monthly salary payment to Mark Peters in his role as director of the

company, in the amount of €77,250 as an ordinary and necessary expenditure to preserve the business as per Paragraph 3 of Doc. #504. (Without waver [sic] of any SPL's procedural or substantive rights as to the extant Order).

(Doc. 506.)

On July 21, 2026, SPL filed a "Motion for Clarification" (Doc. 508) asking, *inter alia*, whether Peters' salary falls within the Paragraph 3 ordinary-course exception. That motion remains pending. ICEE's opposition is not due until August 11, 2026.  The motion makes the preposterous argument that the Court's freezing injunction "permits" as opposed to "prohibits" exorbitant payments by SPL to Peters.

On July 31, 2026, SPL's counsel filed a second letter with the Court (Doc. 510) reiterating SPL's intent to make the payment, now stating the payment would be made "on or about August 10, 2026." The letter acknowledges that "ICEE disagrees with this payment" but states that Peters "is a full-time employee of SPL, and critical to the very day-to-day business operations of SPL that this Court's Order was intended to preserve." (Doc. 510.)  The letter does not explain why counsel believes Peters can be paid in light of the plain and unambiguous prohibition on payments contained in Paragraph 1 of the Court's July 8 Order.  Nor does the letter provide any evidence that SPL has any business need to pay Peters, much less the exorbitant amount proposed.

The timeline is revealing. ICEE's opposition to the Motion for Clarification is due August 11, 2026. SPL has scheduled the payment for August 10, 2026—*one day before* ICEE's opposition is due, and well before this Court can rule. SPL thus sought to create a *fait accompli*, making the payment to Peters before the Court will have ruled on SPL's frivolous motion to amend.  Apparently, SPL believes this gambit lets it off the contempt hook.

**LEGAL STANDARD**

To establish civil contempt in the Sixth Circuit, the movant must show by clear and convincing evidence that the party to be held in contempt "violated a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *Electrical Workers Pension Tr. Fund of Local Union #58 v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 379 (6th Cir. 2003); *Gascho v. Global Fitness Holdings, LLC*, 875 F.3d 795, 800 (6th Cir. 2017). If the contemnor wishes then to raise the defense of inability to comply, he bears the burden of showing both that he is presently unable to comply and that he is not responsible for his own inability to comply. *Elec. Workers*, 340 F.3d at 382-83.

Under Rule 65(d)(2), a preliminary injunction binds not only the parties, but also their "officers, agents, servants, employees, and attorneys" along with "other persons who are in active concert or participation with anyone" subject to the injunction. Fed. R. Civ. P. 65(d)(2)(C); *see also Blackard v. Memphis Area Med. Ctr. for Women, Inc.*, 262 F.3d 568, 574 (6th Cir. 2001). Critically, [t]he law is clear that parties bound by an injunction are obligated to abide by that injunction when it is in effect even if it is later determined to be erroneous." *Blackard*, 262 F.3d at 574; *see also Maness v. Meyers*, 419 U.S. 449, 458 (1975) (a court order "must be obeyed by the parties until it is reversed by orderly and proper proceedings").

**ARGUMENT**

**A.     The Order Is Clear and Unambiguous**

Paragraph 1 of the Court's July 8 Order could not be clearer: SPL is prohibited from "making *any* payments" to Mark Peters. (Doc. 504, ¶ 1 (emphasis added).) The prohibition is absolute. It contains no exception for salary, consulting fees, directors' fees, or any other form of compensation. The language admits of no ambiguity: *any* payment means *all* payments.

4

The deadline for SPL to have appealed the July 8 Order was on August 7.  SPL chose not to appeal. Nor did SPL file a motion to amend the order to for reconsideration.  Instead, SPL filed a motion to "clarify" the order.  But nothing in the order requires clarification.  SPL argues in its motion to clarify that Peters' salary is an "ordinary and necessary expenditure" under Paragraph 3, thereby permitting it to pay him exorbitant sums.  SPL fundamentally misconstrues the Order's structure. Paragraph 3 begins: "To insure compliance with paragraphs 1 & 2 above . . . ." (Doc. 504, ¶ 3 (emphasis added).)  Paragraph 3 is thus *subordinate to* and *in service of* Paragraph 1—it does not override it. Paragraph 3 provides a mechanism for SPL to make ordinary business payments to *third parties* (vendors, suppliers, etc.) while keeping ICEE informed; it does not create a loophole authorizing the very transfers that Paragraph 1 expressly prohibits.  Paragraph 3 does not explicitly or implicitly turn the absolute prohibition on payments to Peters into a permission slip to pay him.

**B.      SPL Has Violated The Order**

SPL has not merely hinted at noncompliance. Through its counsel, SPL has filed two letters with this Court—on July 17 (Doc. 506) and July 31 (Doc. 510)—unequivocally declaring that it would pay €77,250 to Mark Peters on or about August 10, 2026. That date has arrived, and SPL has presumably now done what it said it would do.

The purpose of the freezing order is to prevent Mark Peters from looting SPL in order to force ICEE "to engage in yet another costly, multi-year proceeding to chase assets that Peters has scattered among shell entities or hidden in foreign accounts." Doc. 504 PAGEID PAGEID 24888. This Court has found that, "[a]t trial, SPL's CFO admitted that Mark Peters has been paying himself exorbitant consulting fees through an Isle of Man company (a well-known tax haven that is not part of the UK or European Union) and thereby moving at least some of SPL's profits

5

offshore." Doc. 504 PAGEID 24884.  Relying on these facts and Mark Peters' "forgeries, perjury, destruction of evidence, and scheme to defraud the Court," the Court concluded that Mark Peters and SPL had a "strong incentive now to funnel away any moneys they can from SPL and its subsidiaries to avoid satisfying the forthcoming judgment." Doc. 504 PAGEID 24884-85 (quoting with approval Docs. 490 PAGEID 23424-25, 23427-28). The Court granted ICEE's motion because, "absent a freezing order, [ICEE] 'faces the irreparable harm of being unable to collect on a judgment validly obtained after years of litigation—litigation made longer and more expensive by SPL's own fraud and obstruction.'" It is therefore imperative that the Court find Peters and SPL in contempt and impose coercive and compensatory sanctions. *See Elec. Workers*, 340 F.3d at 385 ("[J]udicial sanctions can be used not only to coerce compliance, but also to compensate the complainant.").

**C.      The Motion for Clarification Does Not Stay the Order**

SPL's pending Motion for Clarification (Doc. 508) provides no license to violate the Order. It is black-letter law that the filing of a motion does not stay or suspend the order it challenges. "The orderly and expeditious administration of justice by the courts requires that 'an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings." *Maness*, 419 U.S. at 458.

The Sixth Circuit has been equally emphatic: [t]he law is clear that parties bound by an injunction are obligated to abide by that injunction when it is in effect even if it is later determined to be erroneous." *Blackard*, 262 F.3d at 574. SPL cannot manufacture a self-executing stay simply by filing a motion to "clarify" and then proceeding as if the Order no longer applies. If every enjoined party could nullify an injunction by asking a question about it, injunctions would be

6

meaningless. That is particularly so here where SPL has decided not to appeal the July 8 order, not to seek reconsideration, and not to request any modifications.

**D.      The Payment Cannot Be Characterized as "Ordinary Course" Under Paragraph 3**

Even if Paragraph 3 could theoretically apply—and it cannot, because it is subordinate to Paragraph 1—the payment to Peters is not an "ordinary and necessary expenditure to preserve the business." The payment of €77,250 per month (approximately $84,000) to a sole director who this Court has found *by clear and convincing evidence* committed perjury, forged documents, and destroyed evidence (Doc. 417) is not "ordinary" in any sense of that term.

Moreover, this Court specifically identified Peters' practice of siphoning funds from SPL through payments to himself and entities he controls as the very harm the injunction was designed to prevent. (*See* Doc. 504; Doc. 417 (finding Peters had been extracting over £1 million per year through "consulting fees" to his Isle of Man entity).) Characterizing the continuation of that exact practice as "ordinary course" would render the injunction a nullity.

**E.      Mark Peters Is Bound by the Order**

Mark Peters is bound by the July 8 Order under Federal Rule of Civil Procedure 65(d)(2)(B) as an "officer" of SPL and (C) as a person "in active concert or participation" with SPL. *See Blackard*, 262 F.3d at 574 (Rule 65(d)(2) codifies the "common law doctrine that a decree of injunction not only binds the parties defendant but also those identified with them in interest, in 'privity' with them, represented by them or subject to their control").

Peters is not merely "in concert" with SPL—he *is* SPL. He is SPL's sole managing director, sole board member, and 100% beneficial owner. He has said of himself: "I am the company." He controls the entirety of SPL's corporate structure. He has actual notice of the Order. Under these circumstances, Peters is indisputably bound by the injunction and subject to contempt sanctions

for any violation. *See Elec. Workers*, 340 F.3d at 383 ("[W]e hold that because a civil contempt ruling either attempts to coerce compliance or compensate the complainant for losses, it is fully appropriate to impose judicial sanctions on the nonparty corporate officer.")

**F.      Contempt Sanctions Are Warranted Given Peters' History of Defying Legal Obligations**

The urgency of this motion is underscored by Mark Peters' extensive history of flouting legal obligations and attempting to place assets beyond the reach of courts. This Court has already found, by clear and convincing evidence, that Peters:

- Forged the "2000 Appointment of Trade Mark Licence" (Doc. 417);
- Manufactured the fraudulent "Wendsday" email (Doc. 417);
- Destroyed evidence relevant to this litigation (Doc. 417);
- Committed perjury (Doc. 417);
- Invoked the Fifth Amendment at trial regarding his criminal conduct (Doc. 417);
- Siphoned over £1 million per year from SPL through consulting fees to his Isle of Man entity (Doc. 417); and
- Transferred shares in Ralph Peters & Sons to an Isle of Man entity on May 19, 2025—the very day the U.K. case was stayed. (Doc. 490.)
- Engaged in a pattern of "sustained fraud" including document fabrication, perjury, evidence spoliation, and obstruction.  Doc. 504 PAGEID 24888.

Against this backdrop, SPL's payment of €77,250 to Peters is not an innocent business decision—it is the latest in a long pattern of attempts to extract value from SPL and frustrate ICEE's judgment execution efforts, in defiance of this Court's authority. Swift action is required to vindicate the Court's Order and protect ICEE's rights.

**RELIEF REQUESTED**

ICEE respectfully requests that the Court:

1. Issue an Order directing SPL and Mark Peters to show cause why they should not be held in civil contempt for violating Paragraph 1 of this Court's July 8, 2026 Order (Doc. 504);

2. Immediately order SPL not to make any payment to Mark Peters pending the hearing on this motion and the resolution of SPL's Motion for Clarification (Doc. 508);

3. Schedule an expedited hearing on this motion;

4. Award ICEE its attorneys' fees and costs incurred in connection with this motion; and

5. Grant such other and further relief as the Court deems just and proper.


Dated: August 9, 2026


Respectfully submitted,

/s/ David J. Wolfsohn

David J. Wolfsohn (admitted pro hac vice)
Tyler R. Marandola (admitted pro hac vice)
DUANE MORRIS LLP
30 South 17th Street
Philadelphia, PA 19103
Telephone: (215) 979-1000
Facsimile: (215) 979-1020
djwolfsohn@duanemorris.com
tmarandola@duanemorris.com

Philip G. Han (admitted pro hac vice)
DUANE MORRIS LLP
1201 North Market Street, Suite 501
Wilmington, DE 19801
Telephone: (302) 657-4916
Facsimile: (302) 397-2504
pghan@duanemorris.com

Kenneth M. Argentieri (Ohio Bar No. 0067493)
Trial Attorney
DUANE MORRIS LLP
625 Liberty Avenue, Ste. 100
Pittsburgh, PA 15222
Telephone: (412) 497-1000
Facsimile: (412) 497-1001
kmargentieri@duanemorris.com

9

*Attorneys for Defendant/Counterclaim*
*Plaintiff The ICEE Company*

## CERTIFICATE OF SERVICE

I hereby certify that on August 9, 2026, I caused the foregoing document to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ David J. Wolfsohn
David J. Wolfsohn

10