**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**

SLUSH PUPPIE LIMITED,

    Plaintiff/Counterclaim
    Defendant,

     v.

THE ICEE COMPANY,

    Defendant/Counterclaim
    Plaintiff.

CASE NO. 1:19-cv-00189-MRB

Judge Michael R. Barrett

### THE ICEE COMPANY'S MEMORANDUM OF LAW IN OPPOSITION TO SPL'S MOTION FOR CLARIFICATION (DOC 508)

The motion to clarify is nothing more than a cynical ploy by Mark Peters to try and avoid being held in contempt for doing precisely what the injunction was designed to prevent: looting SPL in order to force ICEE "to engage in yet another costly, multi-year proceeding to chase assets that Peters has scattered among shell entities or hidden in foreign accounts." Doc. 504 PAGEID 24888. SPL and Peters know there is no plausible basis for challenging the freezing injunction. That is why they chose not to appeal it (the deadline was August 7), or even to file a motion for reconsideration or to amend. Instead, they filed a frivolous "motion to clarify."

The motion is frivolous, first, because it argues that an order expressly ***prohibiting*** payments to Peters somehow ***permits*** him to start taking €77,250 ***monthly***—amounting to €927,000 per year—out of SPL beginning today. *See* Doc. 515-1 (July 21, 2026 Letter from T. Marandola to E. Zalud); Doc. 506, Doc. 510 PAGEID 25173.[1]

---

[1] Mark Peters has not submitted a declaration and SPL has not offered any evidence at all to support the notion that it is somehow in SPL's interest (as opposed to Mark Peters' interest) to pay him a such a "salary." Putting aside the freezing order's prohibition on paying Peters anything, it is worth comparing the amount Peters seeks to what former board member and operations manager

The motion is frivolous, second, because Peters and SPL's affiliates[2] ask this Court to issue a blanket ruling that Federal Rule of Civil Procedure 65(d) somehow does not apply to this Court's July 8 freezing injunction: They argue that a party's officers, agents, employees, attorneys, and other persons who are in active concert or participation with them should ***not***, under any circumstances, qualify as "Persons Bound" by the Court's July 8 order. Needless to say, Peters and the affiliates offer no authority or even argument as to why the Court should issue such a blanket ruling that would fly in the face of Rule 65(d) and scores of binding authorities.

What's really going on here is that Mark Peters wants to do precisely what the preliminary injunction is designed to prevent: loot the company piggybank just as it is about to have a substantial creditor in ICEE. This is a calculated strategy. As ICEE explained in the motion that precipitated the Order, Mark Peters recently changed his legal residence to Monaco and shifted his shares in SPL's parent company to the Isle of Man. Thus, if SPL were to get away with making this payment and future payments to Peters, it may be impossible for ICEE to recover it in judgment enforcement proceedings. Preventing those sorts of asset transfers is precisely why the asset freezing injunction is needed.

Peters and SPL are in contempt of the freezing injunction. *See* Doc. 515. Peters and SPL are apparently under the impression that filing a frivolous "motion to clarify" somehow suspends

---

Laura Peters made:  £90,000 per year without any eligibility for incentive compensation or bonuses. Doc. 99 at PAGEID 2791 (59:1-7).

[2] The motion is styled as one filed by SPL. But the portion of the motion dealing with Peters and the affiliates seeks a determination as to the interests of Peters personally and the affiliates' interests, not SPL's. The fact that Peters' and the affiliates' interests are being advocated in the name of SPL and by SPL's counsel proves they have no separate mind, will, or existence from Peters or SPL.

or stays a freezing injunction. That is not the law. The Court should deny this motion and issue a rule to show cause why Peters and SPL should not be held in contempt, which ICEE is requesting in its motion filed today.

### A. The July 8 Order—Which SPL Decided not to Appeal or Move to Have Modified—Prohibits any Payments by SPL to Mark Peters

In its July 8 order granting in part ICEE's motion for a freezing injunction, this Court noted that, with respect to Mark Peters' ownership of Ralph Peters & Sons and Frozen Brothers Limited, "[t]he entirety of this corporate structure—SPL, Ralph Peters & Sons, and Frozen Brothers Limited—is under the exclusive dominion and control of a single individual: Mark Peters." Doc. 504 PAGEID 24884. The Court further found that, "[a]t trial, SPL's CFO admitted that Mark Peters has been paying himself exorbitant consulting fees through an Isle of Man company (a well-known tax haven that is not part of the UK or European Union) and thereby moving at least some of SPL's profits offshore." *Id.* at PAGEID 24884. Relying on these facts and Mark Peters' "forgeries, perjury, destruction of evidence, and scheme to defraud the Court," the Court concluded that Mark Peters and SPL had a "strong incentive now to funnel away any moneys they can from SPL and its subsidiaries to avoid satisfying the forthcoming judgment." *Id.* at Doc. 504 PAGEID 24884-85 (quoting with approval Doc. 490 PAGEID 23424-25, 23427-28).

The Court granted ICEE's motion because, "absent a freezing order, [ICEE] 'faces the irreparable harm of being unable to collect on a judgment validly obtained after years of litigation—litigation made longer and more expensive by SPL's own fraud and obstruction." The Court agreed with ICEE that "ICEE should not be forced to engage in yet another costly, multi-year proceeding to chase assets that Peters has scattered among shell entities or hidden in foreign accounts." Doc. 504 PAGEID 24888, quoting Doc. 490 PAGEID 23432. "When a party engages in the kind of sustained fraud that this Court has found here—document fabrication, perjury,

3

evidence spoliation, and obstruction—the public interest demands that the Court exercise its full authority to ensure that justice is not frustrated by post-judgment gamesmanship." *Id.* at PAGEID 24888.

Accordingly, the Court ordered that SPL "and all persons acting in concert with it, are hereby prohibited from making any payments . . . or transferring any assets or interests in any assets to Mark Peters or to any entity controlled or owned, directly or indirectly, by him, including, but not limited to, Ralph Peters & Sons and IOM Limited." Doc. 504 PAGEID 24890. This provision was taken verbatim from ICEE's motion. Doc. 490-8 PAGEID 23467. Although SPL submitted a twenty-page brief opposing the preliminary injunction motion, it never argued that SPL should ***not*** be enjoined from making payments to Mark Peters. Doc. 494. Indeed, it never questioned the Court's authority to enjoin SPL from dissipating assets pending execution. *Id.* Although SPL argued that the relief ICEE sought was "overbroad, extraterritorial, and unsupported by law," Doc. 494 PAGEID 24192, it did not argue or provide any evidence SPL needs to pay anything to Mark Peters, whether in the form of moneys characterized as "salary," director compensation, consulting services, or otherwise.

SPL now belatedly argues that, despite the clear and unambiguous prohibition on payments to Mark Peters, it nevertheless should be permitted to pay him over $1 million per year. But preventing those sorts of payments is the very purpose of the injunction. Of course, if SPL actually thought the payment to Mark Peters were allowed by the injunction, it would not have notified the Court about its "intent" to make such a payment three weeks in advance. Doc. 506. SPL appears to be operating under the erroneous assumption that as long as it makes a preposterous argument flying in the face of the actual terms of the freezing injunction, it will somehow get a free pass on deliberate violations of the clear and unambiguous terms of this Court's freezing injunction. That

4

is not the law. A party may not challenge the scope of an injunction by violating it. *Banner v. City of Flint*, 99 Fed. Appx. 29, 39 (6th Cir. 2004) ("[P]arties bound on its face by an injunction must follow it when it is in effect, even if it is later found erroneous.").

Despite admitting that it seeks no modification of the injunction, Doc. 508 PAGEID 25056, SPL requests that the Court "clarify whether Mr. Peters' salary falls within the Paragraph 3 exception or is prohibited by Paragraph 1." Doc. 508, at PAGEID 25063. But there is no "Paragraph 3 exception" in the Court's July 8 Order, and the injunction is clear and unambiguous. Paragraph 1 prohibits all payments by SPL to Mark Peters. Full stop. Paragraph 3 is not an exception to this rule, but, to the contrary, is "[t]o insure compliance" with the first two paragraphs. Doc. 504, at PAGEID 24890. SPL is required to disclose large purported ordinary-course expenditures to ensure (among other things) that they are ***not*** being made to Mark Peters or to another entity he controls.

Even if SPL had sought to modify the clear and unambiguous terms of the Court's freezing injunction (which it expressly concedes it is not), it could not have met the standard for such a modification. Such a motion "must demonstrate significant 'changes in fact, law, or circumstance since the previous ruling.'" *Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 414 (6th Cir. 2012). That is to say that the evidence supporting a motion to modify "must not have been 'reasonably discoverable by due diligence during the original proceeding.'" *Id.* It goes without saying that Mark Peters' "salary" was known to SPL at the time ICEE filed its motion (it was even brought up recently at trial), and SPL could have and should have made any arguments about its supposed need to pay him exorbitant sums when it opposed ICEE's motion for a freezing injunction. Not only did it not do so, but even now, SPL has failed to support its position that allowing Peters to raid its coffers would be "necessary for the continued operation of its business."

5

The Court's injunction is clear that SPL cannot dissipate its assets by funneling them to Mark Peters. The August 10, 2026 payment to Mark Peters, and any subsequent payment to him, is prohibited by the clear and unambiguous terms of the injunction. Of course, SPL always has the option of posting a performance bond guaranteeing the full amount of the jury's verdict and ICEE's requested fees and costs. Doing so would make any restriction on payments to Mark Peters (or anyone else), and any financial disclosure obligation, moot. But unless and until SPL does so, the injunction is crucial to preserving ICEE's ability to collect the forthcoming judgment and both SPL and Peters must be held in contempt for willfully choosing to violate it.

**B.      Mark Peters Is Bound by the Injunction as an Officer and Agent of SPL**

SPL quotes Rule 65, Doc. 508 at PAGEID 25057, but then ignores it in claiming that the Court's order "does not establish a basis for binding . . . Mr. Peters." The basis, of course, is Rule 65, which provides that an injunction binds a "parties' officers, agents, servants, employees, and attorneys." Fed. R. Civ. P. 65(d)(2)(B). Thus, it goes without saying that Peters, "as an officer of the corporation and the one responsible for the corporation's affairs, was subject to the court's order just as the corporation itself was." *Elec. Workers Pension Trust Fund v. Gary's Elec. Service Co.*, 340 F.3d 373, 382 (6th Cir. 2003). That is true whether the order mentions Peters by name or not. *See id.* ("whether or not [the officer] was a named defendant in the order, or even mentioned at all, is not controlling"). As the Court found, Mark Peters "is SPL's sole managing director and has described himself as follows: 'I am the company.' He consistently characterizes SPL as [a] 'small family business.' In closing argument, SPL's counsel made the same argument to the jury. Peters is the sole (100%) shareholder of Ralph Peters & Sons, the holding company that owns 100% of Frozen Brothers Limited, the successor entity to SPL.  Peters also owns 100% of the shares of Frozen Brothers Limited directly.  . . . The entirety of this corporate structure—SPL,

6

Ralph Peters & Sons and Frozen Brothers Limited—is under the exclusive dominion and control of a single individual: Mark Peters."  Doc. 504 PAGEID 24883-84.

Thus, Peters is bound by the order just as SPL is, and they must be held in contempt for violating it. *Id.* at 383 ("[W]e hold that because a civil contempt ruling either attempts to coerce compliance or compensate the complainant for losses, it is fully appropriate to impose judicial sanctions on the nonparty corporate officer."). SPL does not cite a single case to support the conclusion, implicit in its motion, that Rule 65(d) does not mean exactly what it says.

The *Electrical Workers* case, which ICEE cited in its letter to SPL but that SPL ignores, likewise makes clear that the Court need not consider veil piercing or alter ego liability to conclude that a company officer is bound by the terms of an injunction. Indeed, it rejected precisely the argument that SPL makes here. *See Elec. Workers*, 340 F.3d at 386 ("A Corporate Officer Can Be Held In Contempt Without Piercing the Corporate Veil"). SPL does not cite a single case saying otherwise. Instead, SPL ignores Rule 65(d)(2)(B) entirely; its motion only refers to Rule 65(d)(2)(C), relating to "other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B)." SPL's arguments relating to Mark Peters should therefore be rejected. Accordingly, Mark Peters' direction to SPL to pay himself €77,250 subjects both SPL and Mark Peters to contempt sanctions.

### C. The Order Prohibits SPL and "Persons Acting in Concert With It" From Dissipating Assets of the Subsidiaries

The Court's July 8 Order is directed to "Slush Puppie Limited (now known as Frozen Brothers Limited), and all persons acting in concert with it," and bars **SPL** from "transferring, dissipating, encumbering, concealing, removing, diminishing the value of, or otherwise disposing of any assets, including, but not limited to, shares" in both itself and listed entities under its control.

As for the European and Isle of Man entities, the July 8 Order does not directly enjoin the listed entities from doing anything, and therefore whether they can be held in contempt for violating it turns on whether, under Rule 65, they have actual notice and whether they are "acting in active concert or participation with anyone described in Rule 65(d)(A) or (B)." Contrary to SPL's position, the Court's July 8 Order did not need to "state the legal basis" for binding others; Rule 65 dictates which entities the injunction reaches. That determination, as SPL's own cases show, is properly made in the context of a contempt proceeding by looking "to the actual relationship between the person enjoined and the person thought to be bound by the injunction." *Blackard v. Memphis Area Medical Center for Women, Inc.*, 262 F.3d 568, 574 (6th Cir. 2001); *see also Banner*, 99 Fed. Appx. at 34 (appeal from contempt sanctions).

While there is no need for the Court to clarify anything since Rule 65(d) governs the preliminary injunction, it is obvious that, if any of the listed entities were to aid and abet a violation of the July 8 Order, they would be doing so in active concert or participation with SPL or Mark Peters (both of whom are enjoined parties under Rule 65(d)(2)(C)). This Court has already held that the listed entities are all controlled and owned by SPL and/or Mark Peters. Indeed, Mark Peters testified (by deposition designation) at trial that his "responsibility is to all those businesses" in every country that SPL operates and that SPL "owns the outside UK entities." Doc. 74, July 1, 2020 Dep. 25:16-26:03, 34:05-34:07. Ironically, SPL's own cited cases all found active concert and participation on far less compelling facts than the total operational control and dominion exercised by Mark Peters over the European entities. *Banner v. City of Flint*, 99 Fed. Appx. 29 (6th Cir. 2004), on which SPL relies, concerned an injunction against the use of a deposition that the enjoined party—an attorney—had obtained in violation of ethical rules. The Sixth Circuit affirmed a sanctions order against a non-party attorney who used the deposition in a different proceeding,

finding that because he had obtained the deposition transcript from the enjoined attorney, he was in "active concert or participation" with the enjoined party. *Id.* at 39.

Even more compelling, in *Blackard*, the Sixth Circuit held that the Tennessee state courts were bound by an injunction entered against the Administrative Director of the Courts (the "ADC") because the ADC was "responsible for educating state court judges on injunctions prohibiting the enforcement of potentially unconstitutional statutes" even though the "ADC does not have direct supervisory authority over the judges." *Blackard*, 262 F.3d at 575-76. In the end, the conclusion turned on the "identity of interests of privity between the two." *Id.* Here, there is no serious question that Mark Peters has not only an identity of interests, but also direct supervisory control over the affiliated entities outside of Europe. They are therefore bound by the injunction and could be sanctioned for violating it should they choose to do so.

### D.    There Is no Need to Submit the Financial Report In Camera

The Court's July 8, 2026 Order requires SPL to file a sworn disclosure identifying its assets, "including but not limited to bank accounts, real property, intellectual property, equity interests, receivables, and tangible personal property—held by SPL or any related entity." Doc. 504, at PAGEID 24891. It expressly permits SPL to mark the disclosure as Attorneys' Eyes Only and to file it under seal to protect the contents from disclosure beyond the bounds of the Court's Protective Order. Those protections balance the potentially sensitive nature of certain financial information against the need for ICEE's counsel to be able to advise its client on judgment enforcement efforts. After all, the need for ICEE, through its counsel, to be able to monitor the potential concealment and dissipation of assets, was one of the animating purposes of the injunction in the first place. *McGirr v. Rehme*, 891 F.3d 603, 613 (6th Cir. 2018) (concealment and dissipation of assets irreparably harms a judgment creditor). SPL chose not to appeal this order, or to seek a

9

modification of it. SPL must comply with the order, and the only condition the Court imposed on SPL's required disclosures is that they be treated as Attorneys' Eyes Only.

SPL's motion is styled as one for "clarification," but it does not argue there is anything unclear about the disclosure provisions of the July 8th order. Thus SPL seeks to modify that order without meeting the standards required for a successful motion to modify. SPL never argued in opposition to ICEE's motion that disclosures needed to be made *ex parte*, so it has waived that argument.

Even if SPL had not waived its argument for *ex parte* disclosures, it completely ignores the good cause standard for the extreme restriction it belatedly seeks, Fed. R. Civ. P. 26(c), and not surprisingly does not identify a single case finding such a restriction appropriate in this context. The only case SPL cites **disapproved** the use of *in camera* submissions on summary judgment. *Vining v. Runyon*, 99 F.3d 1056, 1057-58 (11th Cir. 1996). It is not surprising that SPL could find no case to support its position. The type of financial information sought by ICEE is precisely the sort that is normally available through discovery in aid of execution under Federal Rule of Civil Procedure 69(a)(2). *See, e.g.*, *Iron Workers Dist. Council of S. Ohio & Vicinity Benefit Trust v. Matheny & Sons Gen. Contracting, LLC*, 2023 WL 3570605, at *1 (S.D. Ohio May 19, 2023) (granting motion to compel disclosure of assets and noting that judgment creditor "has recourse to 'the full panoply of federal discovery measures . . . to obtain information . . . about assets on which execution can issue or about assets that have been fraudulently transferred'").

SPL does not articulate how disclosing the Attorney's Eyes Only report to ICEE's counsel (or indeed even to ICEE itself) would actually "present a substantial risk of competitive harm." While the July 8, 2026 Order requires more detail, many of the types of information that will be included in the report are ones that SPL already must disclose publicly as part of its government

10

filings. Here, for example, is the disclosure of "Tangible fixed assets" that SPL made for the year ending December 31, 2024:

| 13 Tangible fixed assets | Leasehold property | Plant and machinery | Fixtures, fittings & equipment | Motor vehicles | Computer software | Total |
|---|---|---|---|---|---|---|
| | £ | £ | £ | £ | £ | £ |
| **Cost** | | | | | | |
| At 1 January 2024 | 809,045 | 27,951,027 | 444,948 | 32,217 | 110,000 | 29,347,237 |
| Additions | 10,618 | 3,776,298 | 28,243 | 166,000 | - | 3,981,159 |
| Disposals | - | (1,401,031) | (2,158) | - | - | (1,403,189) |
| At 31 December 2024 | 819,663 | 30,326,294 | 471,033 | 198,217 | 110,000 | 31,925,207 |
| **Depreciation and impairment** | | | | | | |
| At 1 January 2024 | 338,706 | 18,633,334 | 374,474 | 30,617 | 48,889 | 19,426,020 |
| Depreciation charged in the year | 69,480 | 3,622,869 | 33,067 | 33,200 | 36,667 | 3,795,283 |
| Eliminated in respect of disposals | - | (1,115,381) | (539) | - | - | (1,115,920) |
| At 31 December 2024 | 408,186 | 21,140,822 | 407,002 | 63,817 | 85,556 | 22,105,383 |
| **Carrying amount** | | | | | | |
| At 31 December 2024 | 411,477 | 9,185,472 | 64,031 | 134,400 | 24,444 | 9,819,824 |
| At 31 December 2023 | 470,339 | 9,317,693 | 70,474 | 1,600 | 61,111 | 9,921,217 |

Tangible fixed assets includes assets held under finance leases or hire purchase contracts, as follows:

| | 2024 £ | 2023 £ |
|---|---|---|
| Plant and machinery | 2,722,773 | 1,362,735 |

Exh. A, 2024 Annual Accounts, at 25. ICEE too, as a subsidiary of public company J&J Snack Foods, makes substantial public financial disclosures despite the fact that "proclaimed competitor[s]" can access them just like anyone else. SPL's motion is silent on why being required to provide additional detail under seal and only to ICEE's counsel would work a competitive harm that merits the extreme restriction of *in camera* review. And again, SPL could avoid the need for this sort of disclosure by posting a bond or paying into the Court an amount sufficient to guarantee ICEE's recourse for the full amount of the advisory jury verdict, about $33 million plus ICEE's

11

fees and costs as set forth in its fee petition. That it has not done so is itself an indication that it seeks to avoid paying what it owes.

SPL's only other point is its argument that "ICEE's counsel has previously violated confidentiality protections," apparently referring to ICEE's counsel's submission of certain materials *in private* to the High Court in the UK. Doc. 508, at 10. Needless to say, the Court concluded that it was "satisfied that the spirit of the SPO has been honored." Doc. 338 at PAGEID 15772. And, of course, the alleged violation in that instance was ***not*** ICEE's counsel providing arguably confidential documents to its ***client***, but providing them in private to a UK court for the purpose of obtaining a freezing injunction against Peters in the U.K.  Moreover, SPL agreed to a modification of the protective order in this case that permits sharing of AEO information in the UK Proceedings under similar confidentiality terms.  Doc. 289.

Nothing about the submission of information to the U.K. court suggests the need for the extraordinary relief of *in camera* review. Indeed, it is not even clear what purpose *in camera* review would serve here. Ordinarily, in discovery situations, *in camera* review facilitates the Court's assessment of whether a privilege applies or whether highly confidential materials are subject to discovery ***at all***. SPL does not seem to dispute that its finances and assets are discoverable (and, again, it did not appeal or otherwise challenge the July 8 order), it just proposes that the Court review them only *in camera*.  But to what end? Is the Court to take on the role of determining if SPL is trying to dissipate or hide assets on its own without the participation of ICEE counsel? Is the Court going to advise on judgment enforcement in England based on the information? Surely not, nor should it. The entire purpose of the disclosure is so that ICEE's counsel can review the information, get a financial snapshot of SPL, guard against dissipation and subterfuge, and advise ICEE on judgment enforcement in England when the time comes.

SPL's motion should be denied in its entirety.

August 10, 2026

Respectfully submitted,

**DUANE MORRIS LLP**

BY:  _/s/ David J. Wolfsohn_
David J. Wolfsohn (*admitted pro hac vice*)
Tyler R. Marandola (*admitted pro hac vice*)
30 South 17th Street
Philadelphia, PA 19103
Tel.: (215) 979-1000
Fax: (215) 979-1020
djwolfsohn@duanemorris.com
tmarandola@duanemorris.com

Philip G. Han *(admitted pro hac vice)*
1201 North Market Street, Suite 501
Wilmington, DE  19801
Tel: (302) 657-4916
Fax: (302) 397-2504
pghan@duanemorris.com

Kenneth M. Argentieri (Ohio Bar No. 0067493)
Trial Attorney
625 Liberty Avenue, Ste. 1000
Pittsburgh, PA 15222
Tel.: (412) 497-1000
Fax: (412) 497-1001
kmargentieri@duanemorris.com

*Attorneys for Defendant/Counterclaim Plaintiff,*
*The ICEE Company*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**

|  |  |
|---|---|
| SLUSH PUPPIE LIMITED, | CASE NO. 1:19-cv-00189-MRB |
| Plaintiff/Counterclaim Defendant, | |
| v. | Judge Michael R. Barrett |
| THE ICEE COMPANY, | |
| Defendant/Counterclaim Plaintiff. | |

**CERTIFICATE OF SERVICE**

I, Tyler R. Marandola, certify that I caused a true and correct copy of the foregoing to be served on all counsel of record by ECF filing.

Dated: August 10, 2026                    By: */s/ Tyler R. Marandola*